Exhibit 1

US008313023B1

## (12) United States Patent
### McGhie et al.

(10) **Patent No.:** **US 8,313,023 B1**

(45) **Date of Patent:** *Nov. 20, 2012**

(54) **EXCHANGE OF NON-NEGOTIABLE CREDITS OF AN ENTITY'S REWARDS PROGRAM FOR ENTITY INDEPENDENT FUNDS**

(76) Inventors: **Sean I. McGhie**, Boca Raton, FL (US); **Brian K. Buchheit**, Davie, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **13/531,904**

(22) Filed: **Jun. 25, 2012**

### Related U.S. Application Data

(63) Continuation of application No. 11/420,255, filed on May 25, 2006, now Pat. No. 7,703,673.

(51) **Int. Cl.**
*G06K 5/00* (2006.01)

(52) **U.S. Cl.** ......... **235/380**; 235/375; 235/379; 235/487

(58) **Field of Classification Search** .................. 235/380, 235/375, 379, 487, 486; 705/14, 39
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,918,716 | A | 11/1975 | Nonaka et al. |
| 4,087,660 | A | 5/1978 | Sedley |
| 4,358,672 | A | 11/1982 | Hyatt et al. |
| 4,473,825 | A | 9/1984 | Walton |
| 4,518,098 | A | 5/1985 | Fleischer |
| 4,546,241 | A | 10/1985 | Walton |
| 4,582,324 | A | 4/1986 | Koza et al. |
| 4,607,155 | A | 8/1986 | Nao et al. |
| 4,609,812 | A | 9/1986 | Drexler |
| 4,621,814 | A | 11/1986 | Stephan et al. |
| 4,634,848 | A | 1/1987 | Shinohara et al. |
| 4,689,742 | A | 8/1987 | Seymour et al. |
| 4,695,053 | A | 9/1987 | Vazquez |
| 4,760,527 | A | 7/1988 | Sidley |

(Continued)

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | 6484498 | 11/1998 |

(Continued)

#### OTHER PUBLICATIONS

"At Sports Superstore Online, Shoppers Get More for Their Money; 10,000 Reasons to Shop at Sports Superstore Online", Business Wire Dec. 4, 1998, 2 pp.

(Continued)

*Primary Examiner* — Edwyn Labaze

(74) *Attorney, Agent, or Firm* — Patents on Demand P.A.; Brian K. Buchheit; Scott M. Garrett

(57) **ABSTRACT**

In one embodiment, a rewards program for credit cards (e.g., payment artifacts) can be established. Non-negotiable credits are accrued in response to one of the payment artifacts being used for purchases of goods or services with venders. Restrictions on use prevent the non-negotiable credits from being directly applied for a purchase of at least one goods or services of a commerce partner, which is an independent entity from the entity. A quantity of the non-negotiable credits are subtracted in response to the purchase of the goods or services that cost a quantity of entity independent funds, which result from a conversion of the subtracted quantity of non-negotiable credits into the entity independent funds in accordance with a credit to fund conversion ratio. The entity provides compensation for the subtracted quantity of the non-negotiable credits. The commerce partner receives at least a portion of the compensation.

**46 Claims, 3 Drawing Sheets**

100



**US 8,313,023 B1**

Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,764,666 A | 8/1988 | Bergeron |
| 4,882,473 A | 11/1989 | Bergeron |
| 4,910,672 A | 3/1990 | Off et al. |
| 4,941,090 A | 7/1990 | McCarthy |
| 4,942,090 A | 7/1990 | Morin |
| 4,968,873 A | 11/1990 | Dethloff |
| 5,025,372 A | 6/1991 | Burton et al. |
| 5,038,022 A | 8/1991 | Lucero |
| 5,056,019 A | 10/1991 | Schultz et al. |
| 5,080,364 A | 1/1992 | Seidman |
| 5,105,184 A | 4/1992 | Pirani et al. |
| 5,117,355 A | 5/1992 | McCarthy |
| 5,128,752 A | 7/1992 | Von Kohorn |
| 5,135,224 A | 8/1992 | Yamamoto |
| 5,173,851 A | 12/1992 | Off et al. |
| 5,179,517 A | 1/1993 | Sarbin et al. |
| 5,200,889 A | 4/1993 | Mori |
| 5,201,010 A | 4/1993 | McCarthy |
| 5,202,826 A | 4/1993 | McCarthy |
| 5,233,514 A | 8/1993 | Ayyoubi et al. |
| 5,237,620 A | 8/1993 | Deaton et al. |
| 5,256,863 A | 10/1993 | Ferguson et al. |
| 5,265,874 A | 11/1993 | Dickinson |
| 5,276,312 A | 1/1994 | McCarthy |
| 5,287,268 A | 2/1994 | McCarthy |
| 5,287,269 A | 2/1994 | Dorrough et al. |
| 5,290,033 A | 3/1994 | Bittner et al. |
| 5,305,196 A | 4/1994 | Deaton et al. |
| 5,327,508 A | 7/1994 | Deaton et al. |
| 5,332,076 A | 7/1994 | Ziegert |
| 5,344,144 A | 9/1994 | Canon |
| 5,353,218 A | 10/1994 | De Lapa et al. |
| 5,371,345 A | 12/1994 | LeStrange et al. |
| 5,373,440 A | 12/1994 | Cohen et al. |
| 5,382,779 A | 1/1995 | Gupta |
| 5,388,165 A | 2/1995 | Deaton et al. |
| 5,393,061 A | 2/1995 | Manship et al. |
| 5,397,125 A | 3/1995 | Adams |
| 5,398,932 A | 3/1995 | Eberhardt et al. |
| 5,402,872 A | 4/1995 | Clurman |
| 5,424,524 A | 6/1995 | Ruppert et al. |
| 5,429,361 A | 7/1995 | Raven et al. |
| 5,430,644 A | 7/1995 | Deaton et al. |
| 5,434,394 A | 7/1995 | Roach et al. |
| 5,448,471 A | 9/1995 | Deaton et al. |
| 5,457,306 A | 10/1995 | Lucero |
| 5,457,308 A | 10/1995 | Lucero |
| 5,467,269 A | 11/1995 | Flaten |
| 5,470,079 A | 11/1995 | LeStrange et al. |
| 5,471,669 A | 11/1995 | Lidman |
| 5,477,038 A | 12/1995 | Levine et al. |
| 5,483,444 A | 1/1996 | Heintzeman et al. |
| 5,491,326 A | 2/1996 | Marceau et al. |
| 5,502,363 A | 3/1996 | Clarke |
| 5,511,781 A | 4/1996 | Wood et al. |
| 5,513,102 A | 4/1996 | Auriemma |
| 5,529,361 A | 6/1996 | Raven |
| 5,535,407 A | 7/1996 | Yanagawa et al. |
| 5,537,314 A | 7/1996 | Kanter |
| 5,551,692 A | 9/1996 | Pettit et al. |
| 5,559,312 A | 9/1996 | Lucero |
| 5,559,313 A | 9/1996 | Claus et al. |
| 5,564,546 A | 10/1996 | Molbak et al. |
| 5,564,700 A | 10/1996 | Celona |
| 5,580,309 A | 12/1996 | Piechowiak |
| 5,586,936 A | 12/1996 | Bennett et al. |
| 5,592,560 A | 1/1997 | Deaton et al. |
| 5,609,337 A | 3/1997 | Clapper, Jr. |
| 5,612,868 A | 3/1997 | Off et al. |
| 5,613,912 A | 3/1997 | Slater |
| 5,621,812 A | 4/1997 | Deaton et al. |
| 5,635,696 A | 6/1997 | Dabrowski |
| 5,638,457 A | 6/1997 | Deaton et al. |
| 5,642,485 A | 6/1997 | Deaton et al. |
| 5,643,088 A | 7/1997 | Vaughn et al. |
| 5,644,723 A | 7/1997 | Deaton et al. |
| 5,649,114 A | 7/1997 | Deaton et al. |
| 5,649,115 A | 7/1997 | Schrader et al. |

| | | |
|---|---|---|
| 5,655,961 A | 8/1997 | Acres et al. |
| 5,659,469 A | 8/1997 | Deaton et al. |
| 5,672,109 A | 9/1997 | Natanian |
| 5,673,322 A | 9/1997 | Pepe et al. |
| 5,674,123 A | 10/1997 | Roberson, Jr. et al. |
| 5,674,128 A | 10/1997 | Holch |
| 5,675,662 A | 10/1997 | Deaton et al. |
| 5,677,952 A | 10/1997 | Blakley, III et al. |
| 5,687,322 A | 11/1997 | Deaton et al. |
| 5,689,100 A | 11/1997 | Carrithers et al. |
| 5,697,611 A | 12/1997 | Kelly et al. |
| 5,708,782 A | 1/1998 | Larson et al. |
| 5,710,886 A | 1/1998 | Christensen et al. |
| 5,715,399 A | 2/1998 | Bezoz |
| 5,725,428 A | 3/1998 | Achmuller |
| 5,729,693 A | 3/1998 | Holda-Fleck |
| 5,734,838 A | 3/1998 | Robinson et al. |
| 5,741,183 A | 4/1998 | Acres |
| 5,742,845 A | 4/1998 | Wagner |
| 5,749,075 A | 5/1998 | Toader et al. |
| 5,754,655 A | 5/1998 | Hughes |
| 5,761,647 A | 6/1998 | Boushy |
| 5,761,648 A | 6/1998 | Golden et al. |
| 5,765,141 A | 6/1998 | Spector |
| 5,766,075 A | 6/1998 | Cook et al. |
| 5,769,716 A | 6/1998 | Saffari et al. |
| 5,770,533 A | 6/1998 | Franchi |
| 5,774,868 A | 6/1998 | Cragun et al. |
| 5,774,869 A | 6/1998 | Toader |
| 5,774,870 A | 6/1998 | Storey |
| 5,779,549 A | 7/1998 | Walker et al. |
| 5,794,230 A | 8/1998 | Horadan et al. |
| 5,802,275 A | 9/1998 | Blonder |
| 5,806,043 A | 9/1998 | Toader |
| 5,806,044 A | 9/1998 | Powell |
| 5,806,045 A | 9/1998 | Biorge et al. |
| 5,809,482 A | 9/1998 | Strisower |
| 5,814,796 A | 9/1998 | Benson et al. |
| 5,816,918 A | 10/1998 | Kelly et al. |
| 5,820,460 A | 10/1998 | Fulton |
| 5,822,230 A | 10/1998 | Kikinis et al. |
| 5,823,874 A | 10/1998 | Adams |
| 5,832,457 A | 11/1998 | O'Brien et al. |
| 5,832,458 A | 11/1998 | Jones |
| 5,833,536 A | 11/1998 | Davids et al. |
| 5,834,748 A | 11/1998 | Litman |
| 5,836,817 A | 11/1998 | Acres |
| 5,839,117 A | 11/1998 | Cameron et al. |
| 5,844,230 A | 12/1998 | Lalonde |
| 5,845,259 A | 12/1998 | West et al. |
| 5,848,399 A | 12/1998 | Burke |
| 5,851,148 A | 12/1998 | Brune et al. |
| 5,855,007 A | 12/1998 | Jovicic et al. |
| D404,436 S | 1/1999 | McGahn et al. |
| 5,857,175 A | 1/1999 | Day et al. |
| 5,864,822 A | 1/1999 | Baker, III |
| RE36,116 E | 2/1999 | McCarthy |
| 5,870,722 A | 2/1999 | Albert et al. |
| 5,876,284 A | 3/1999 | Acres et al. |
| 5,882,261 A | 3/1999 | Adams |
| 5,882,262 A | 3/1999 | Balhorn |
| 5,884,277 A | 3/1999 | Khosla |
| 5,892,827 A | 4/1999 | Beach et al. |
| 5,892,900 A | 4/1999 | Ginter et al. |
| 5,892,905 A | 4/1999 | Brandt et al. |
| 5,898,838 A | 4/1999 | Wagner |
| 5,902,184 A | 5/1999 | Bennett |
| 5,902,983 A | 5/1999 | Crevelt et al. |
| 5,903,874 A | 5/1999 | Leonard et al. |
| 5,903,880 A | 5/1999 | Biffar |
| 5,905,246 A | 5/1999 | Fajkowski |
| 5,905,908 A | 5/1999 | Wagner |
| 5,907,830 A | 5/1999 | Engel et al. |
| 5,907,831 A | 5/1999 | Lotvin et al. |
| 5,909,023 A | 6/1999 | Ono et al. |
| 5,909,486 A | 6/1999 | Walker et al. |
| 5,911,418 A | 6/1999 | Adams |
| 5,913,210 A | 6/1999 | Call |
| 5,915,017 A | 6/1999 | Klapka |

**US 8,313,023 B1**

Page 3

| | | |
|---|---|---|
| 5,915,019 A | 6/1999 | Ginter et al. |
| 5,915,243 A | 6/1999 | Smolen |
| 5,915,244 A | 6/1999 | Jack et al. |
| 5,918,211 A | 6/1999 | Sloane |
| 5,918,213 A | 6/1999 | Bernard et al. |
| 5,918,214 A | 6/1999 | Perkowski |
| 5,919,091 A | 7/1999 | Bell |
| 5,920,847 A | 7/1999 | Kolling et al. |
| 5,923,016 A | 7/1999 | Fredregill et al. |
| 5,933,811 A | 8/1999 | Angles et al. |
| 5,935,000 A | 8/1999 | Sanchez, III |
| 5,937,391 A | 8/1999 | Ikeda et al. |
| 5,937,394 A | 8/1999 | Wong et al. |
| 5,938,727 A | 8/1999 | Ikeda |
| 5,940,506 A | 8/1999 | Chang et al. |
| 5,941,771 A | 8/1999 | Haste, III |
| 5,941,772 A | 8/1999 | Paige |
| 5,943,241 A | 8/1999 | Nichols et al. |
| 5,946,664 A | 8/1999 | Ebisawa |
| 5,947,820 A | 9/1999 | Morro et al. |
| 5,949,042 A | 9/1999 | Dietz, II et al. |
| 5,950,173 A | 9/1999 | Perkowski |
| 5,951,397 A | 9/1999 | Dickinson |
| 5,952,638 A | 9/1999 | Demers et al. |
| 5,953,005 A | 9/1999 | Liu |
| 5,956,038 A | 9/1999 | Rekimoto |
| 5,956,695 A | 9/1999 | Carrithers et al. |
| 5,956,700 A | 9/1999 | Landry |
| 5,959,277 A | 9/1999 | Lucero |
| 5,967,896 A | 10/1999 | Jorasch et al. |
| 5,970,469 A | 10/1999 | Scroggie et al. |
| 5,970,470 A | 10/1999 | Walker |
| 5,971,277 A | 10/1999 | Cragun et al. |
| 5,974,135 A | 10/1999 | Breneman et al. |
| 5,974,398 A | 10/1999 | Hanson et al. |
| 5,978,777 A | 11/1999 | Garnier |
| 5,979,757 A | 11/1999 | Tracy et al. |
| 5,980,385 A | 11/1999 | Clapper |
| 5,982,520 A | 11/1999 | Weiser et al. |
| 5,983,196 A | 11/1999 | Wendkos |
| 5,983,205 A | 11/1999 | Brams et al. |
| 5,984,191 A | 11/1999 | Chapin, Jr. |
| 5,988,500 A | 11/1999 | Litman |
| 5,991,376 A | 11/1999 | Hennessy et al. |
| 5,991,736 A | 11/1999 | Ferguson et al. |
| 5,992,738 A | 11/1999 | Matsumoto et al. |
| 5,992,752 A | 11/1999 | Wilz, Sr. et al. |
| 5,993,316 A | 11/1999 | Coyle |
| 5,995,942 A | 11/1999 | Smith et al. |
| 5,999,324 A | 12/1999 | Hopkins |
| 5,999,914 A | 12/1999 | Blinn et al. |
| 6,000,608 A | 12/1999 | Dorf |
| 6,002,771 A | 12/1999 | Nielsen |
| 6,003,013 A | 12/1999 | Boushy et al. |
| 6,007,426 A | 12/1999 | Kelly et al. |
| 6,009,411 A | 12/1999 | Kepecs |
| 6,009,412 A | 12/1999 | Storey |
| 6,009,458 A | 12/1999 | Hawkins |
| 6,012,038 A | 1/2000 | Hoffman et al. |
| 6,012,051 A | 1/2000 | Sammon, Jr. et al. |
| 6,012,636 A | 1/2000 | Smith |
| 6,014,594 A | 1/2000 | Heidel |
| 6,014,634 A | 1/2000 | Scroggie et al. |
| 6,014,635 A | 1/2000 | Harris et al. |
| 6,015,344 A | 1/2000 | Kelly et al. |
| 6,016,476 A | 1/2000 | Maes et al. |
| 6,018,695 A | 1/2000 | Ahrens et al. |
| 6,018,718 A | 1/2000 | Walker et al. |
| 6,018,724 A | 1/2000 | Arent |
| 6,021,399 A | 2/2000 | Demers et al. |
| 6,024,640 A | 2/2000 | Walker et al. |
| 6,026,370 A | 2/2000 | Jermyn |
| 6,026,375 A | 2/2000 | Hall et al. |
| 6,026,377 A | 2/2000 | Burke |
| 6,032,133 A | 2/2000 | Hilt et al. |
| 6,032,136 A | 2/2000 | Brake, Jr. et al. |
| 6,032,955 A | 3/2000 | Luciano et al. |
| 6,035,280 A | 3/2000 | Christensen |
| 6,035,281 A | 3/2000 | Crossley et al. |
| 6,036,601 A | 3/2000 | Heckel |
| 6,038,321 A | 3/2000 | Torigai et al. |
| 6,039,244 A | 3/2000 | Finsterwald |
| 6,039,648 A | 3/2000 | Guinn |
| 6,041,308 A | 3/2000 | Walker et al. |
| 6,041,309 A | 3/2000 | Laor |
| 6,044,360 A | 3/2000 | Picciallo |
| 6,047,269 A | 4/2000 | Biffar |
| 6,048,269 A | 4/2000 | Burns et al. |
| 6,049,778 A | 4/2000 | Walker et al. |
| 6,049,779 A | 4/2000 | Berkson |
| 6,055,573 A | 4/2000 | Gardenswartz et al. |
| 6,058,371 A | 5/2000 | Djian |
| 6,058,482 A | 5/2000 | Liu |
| 6,061,660 A | 5/2000 | Eggleston et al. |
| 6,062,980 A | 5/2000 | Luciano |
| 6,064,979 A | 5/2000 | Perkowski |
| 6,064,987 A | 5/2000 | Walker |
| 6,065,120 A | 5/2000 | Laursen et al. |
| 6,068,533 A | 5/2000 | Parker |
| 6,068,553 A | 5/2000 | Parker |
| 6,072,468 A | 6/2000 | Hocker et al. |
| 6,073,840 A | 6/2000 | Marion |
| 6,075,863 A | 6/2000 | Krishnan et al. |
| 6,076,101 A | 6/2000 | Kamakura et al. |
| 6,078,898 A | 6/2000 | Davis et al. |
| 6,081,900 A | 6/2000 | Subramaniam et al. |
| 6,088,730 A | 7/2000 | Kato et al. |
| 6,089,982 A | 7/2000 | Holch |
| 6,092,069 A | 7/2000 | Johnson et al. |
| 6,092,201 A | 7/2000 | Turnbull et al. |
| 6,094,486 A | 7/2000 | Marchant |
| 6,098,837 A | 8/2000 | Izawa |
| 6,101,483 A | 8/2000 | Petrovich et al. |
| 6,101,484 A | 8/2000 | Halbert et al. |
| 6,101,485 A | 8/2000 | Fortenberry et al. |
| 6,105,001 A | 8/2000 | Masi et al. |
| 6,105,865 A | 8/2000 | Hardesty |
| 6,110,041 A | 8/2000 | Walker et al. |
| 6,110,042 A | 8/2000 | Walker et al. |
| 6,113,098 A | 9/2000 | Adams |
| 6,113,495 A | 9/2000 | Walker et al. |
| 6,115,737 A | 9/2000 | Ely et al. |
| 6,119,229 A | 9/2000 | Martinez |
| 6,119,230 A | 9/2000 | Carter |
| 6,124,947 A | 9/2000 | Sea |
| 6,128,599 A | 10/2000 | Walker et al. |
| 6,128,603 A | 10/2000 | Dent et al. |
| 6,129,274 A | 10/2000 | Suzuki |
| 6,131,810 A | 10/2000 | Weiss et al. |
| 6,134,318 A | 10/2000 | O'Neil |
| 6,134,548 A | 10/2000 | Gottsman et al. |
| 6,138,911 A | 10/2000 | Fredregill et al. |
| 6,139,431 A | 10/2000 | Walker et al. |
| 6,141,161 A | 10/2000 | Sato et al. |
| 6,141,653 A | 10/2000 | Conklin |
| 6,141,684 A | 10/2000 | McDonald et al. |
| 6,145,739 A | 11/2000 | Bertina et al. |
| 6,148,405 A | 11/2000 | Liao et al. |
| 6,154,214 A | 11/2000 | Uyehara et al. |
| 6,161,096 A | 12/2000 | Bell |
| 6,162,122 A | 12/2000 | Acres |
| 6,164,533 A | 12/2000 | Barton |
| 6,165,071 A | 12/2000 | Weiss |
| 6,168,522 B1 | 1/2001 | Walker et al. |
| 6,173,267 B1 | 1/2001 | Cairns |
| 6,178,407 B1 | 1/2001 | Lotvin et al. |
| 6,178,408 B1 | 1/2001 | Copple et al. |
| 6,182,894 B1 | 2/2001 | Hackett et al. |
| 6,183,362 B1 | 2/2001 | Boushy |
| 6,183,366 B1 | 2/2001 | Goldberg et al. |
| 6,185,541 B1 | 2/2001 | Scroggie et al. |
| 6,186,893 B1 | 2/2001 | Walker et al. |
| 6,186,894 B1 | 2/2001 | Mayeroff |
| 6,189,103 B1 | 2/2001 | Nevarez et al. |
| 6,193,608 B1 | 2/2001 | Walker et al. |
| 6,195,677 B1 | 2/2001 | Utsumi |
| 6,196,458 B1 | 3/2001 | Walker et al. |
| 6,199,099 B1 | 3/2001 | Gershman et al. |

**US 8,313,023 B1**

Page 4

| | | | | | | |
|---|---|---|---|---|---|---|
| 6,216,129 | B1 | 4/2001 | Eldering | 6,829,586 | B2 | 12/2004 | Postrel |
| 6,222,914 | B1 | 4/2001 | McMullin | 6,842,739 | B2 | 1/2005 | Postrel |
| 6,224,483 | B1 | 5/2001 | Mayeroff | 6,843,720 | B2 | 1/2005 | Luciano |
| 6,227,972 | B1 | 5/2001 | Walker et al. | 6,846,238 | B2 | 1/2005 | Wells |
| 6,229,533 | B1 | 5/2001 | Farmer | 6,852,031 | B1 | 2/2005 | Rowe |
| 6,231,442 | B1 | 5/2001 | Mayeroff | 6,856,976 | B2 | 2/2005 | Bible et al. |
| 6,234,896 | B1 | 5/2001 | Walker et al. | 6,866,586 | B2 | 3/2005 | Oberberger |
| 6,236,978 | B1 | 5/2001 | Tuzhilin | 6,898,570 | B1 | 5/2005 | Tedesco et al. |
| 6,243,688 | B1 | 6/2001 | Kalina | 6,915,271 | B1 | 7/2005 | Meyer et al. |
| 6,244,958 | B1 | 6/2001 | Acres | 6,920,611 | B1 | 7/2005 | Spaeth et al. |
| 6,249,773 | B1 | 6/2001 | Allard et al. | 6,929,550 | B2 | 8/2005 | Hisada |
| 6,267,671 | B1 | 7/2001 | Hogan | 6,931,538 | B1 | 8/2005 | Sawaguchi |
| 6,273,820 | B1 | 8/2001 | Haste, III | 6,947,898 | B2 | 9/2005 | Postrel |
| 6,280,326 | B1 | 8/2001 | Saunders | 6,951,302 | B2 | 10/2005 | Potts |
| 6,280,328 | B1 | 8/2001 | Holch | 6,985,876 | B1 | 1/2006 | Lee |
| 6,289,261 | B1 | 9/2001 | Heidel | 6,997,807 | B2 | 2/2006 | Weiss |
| 6,289,322 | B1 | 9/2001 | Kitchen et al. | 7,003,496 | B2 | 2/2006 | Ishii |
| 6,292,786 | B1 | 9/2001 | Deaton et al. | 7,025,674 | B2 | 4/2006 | Adams et al. |
| 6,293,865 | B1 | 9/2001 | Kelly et al. | 7,043,752 | B2 | 5/2006 | Royer et al. |
| 6,293,866 | B1 | 9/2001 | Walker et al. | 7,072,864 | B2 | 7/2006 | Brake, Jr. et al. |
| 6,293,867 | B1 | 9/2001 | Heidel | 7,096,190 | B2 | 8/2006 | Postrel |
| 6,298,335 | B1 | 10/2001 | Bernstein | 7,127,414 | B1 | 10/2006 | Awadallah et al. |
| 6,302,793 | B1 | 10/2001 | Fertitta, III | 7,128,652 | B1 | 10/2006 | Lavoie |
| 6,306,035 | B1 | 10/2001 | Kelly et al. | 7,130,828 | B2 | 10/2006 | Phillips et al. |
| 6,311,076 | B1 | 11/2001 | Yoseloff et al. | 7,134,959 | B2 | 11/2006 | Penrice |
| 6,312,333 | B1 | 11/2001 | Acres | 7,137,883 | B1 | 11/2006 | Falciglia |
| 6,315,665 | B1 | 11/2001 | Faith | 7,146,342 | B1 | 12/2006 | Angelin |
| 6,319,125 | B1 | 11/2001 | Acres | 7,168,089 | B2 | 1/2007 | Nguyen |
| 6,327,573 | B1 | 12/2001 | Walker et al. | 7,174,315 | B2 | 2/2007 | Phillips et al. |
| 6,332,099 | B1 | 12/2001 | Heidel | 7,187,947 | B1 | 3/2007 | White et al. |
| 6,332,157 | B1 | 12/2001 | Mighdoli et al. | 7,200,571 | B1 | 4/2007 | Jenninges et al. |
| 6,341,353 | B1 | 1/2002 | Herman | 7,249,139 | B2 | 7/2007 | Chuah |
| 6,345,261 | B1 | 2/2002 | Feidelson et al. | 7,249,197 | B1 | 7/2007 | Roestenburg et al. |
| 6,352,175 | B2 | 3/2002 | Izawa | 7,289,970 | B1 | 10/2007 | Siegel |
| 6,358,149 | B1 | 3/2002 | Schneider et al. | 7,290,061 | B2 | 10/2007 | Lentini et al. |
| 6,363,362 | B1 | 3/2002 | Burfield et al. | 7,291,064 | B2 | 11/2007 | Yamada |
| 6,379,247 | B1 | 4/2002 | Walker et al. | 7,321,901 | B1 | 1/2008 | Blinn et al. |
| 6,394,907 | B1 | 5/2002 | Rowe | 7,349,867 | B2 | 3/2008 | Rollins et al. |
| 6,402,029 | B1 | 6/2002 | Gangi | 7,360,693 | B1 | 4/2008 | Sullivan |
| 6,408,284 | B1 | 6/2002 | Hill et al. | 7,387,571 | B2 | 6/2008 | Walker |
| 6,431,983 | B2 | 8/2002 | Acres | 7,390,264 | B2 | 6/2008 | Walker |
| 6,438,527 | B1 | 8/2002 | Powar | 7,398,226 | B2 | 7/2008 | Haines et al. |
| 6,452,498 | B2 | 9/2002 | Stewart | 7,455,586 | B2 | 11/2008 | Nguyen |
| 6,476,830 | B1 | 11/2002 | Farmer | 7,613,629 | B2 | 11/2009 | Antonucci et al. |
| 6,484,940 | B1 | 11/2002 | Dilday et al. | 7,641,547 | B2 | 1/2010 | Walker et al. |
| 6,486,788 | B1 | 11/2002 | French et al. | 7,680,688 | B2 | 3/2010 | Hessburg |
| 6,491,584 | B2 | 12/2002 | Graham | 7,703,673 | B2 | 4/2010 | Buchheit et al. |
| 6,505,772 | B1 | 1/2003 | Mollett et al. | 7,747,463 | B1 | 6/2010 | Phillips et al. |
| 6,510,998 | B1 | 1/2003 | Stanford et al. | 7,765,124 | B2 | 7/2010 | Postrel |
| 6,511,377 | B1 | 1/2003 | Weiss | 7,827,056 | B2 | 11/2010 | Walker et al. |
| 6,522,889 | B1 | 2/2003 | Aarnio | 7,827,057 | B1 | 11/2010 | De Lapa et al. |
| 6,533,664 | B1 | 3/2003 | Crumby | 7,828,206 | B2 | 11/2010 | Hessburg et al. |
| 6,547,131 | B1 | 4/2003 | Foodman | 7,856,376 | B2 | 12/2010 | Storey |
| 6,549,912 | B1 | 4/2003 | Chen | 7,886,011 | B2 | 2/2011 | Buchheit |
| 6,554,705 | B1 | 4/2003 | Cumbers | 8,046,256 | B2 | 10/2011 | Chien et al. |
| 6,572,471 | B1 | 6/2003 | Bennett | 8,062,116 | B2 | 11/2011 | Lutnick et al. |
| 6,575,832 | B1 | 6/2003 | Manfredi et al. | 8,100,758 | B2 | 1/2012 | Walker et al. |
| 6,578,015 | B1 | 6/2003 | Haseltine et al. | 8,123,127 | B2 | 2/2012 | McGhie et al. |
| 6,579,179 | B2 | 6/2003 | Poole et al. | 8,162,209 | B2 | 4/2012 | Buchheit et al. |
| 6,601,040 | B1 | 7/2003 | Kolls | 8,181,863 | B1 | 5/2012 | McGhie et al. |
| 6,607,441 | B1 | 8/2003 | Acres | 8,181,864 | B1 | 5/2012 | McGhie et al. |
| 6,609,150 | B2 | 8/2003 | Lee et al. | 8,186,583 | B1 | 5/2012 | McGhie et al. |
| 6,609,969 | B1 | 8/2003 | Luciano | 8,201,734 | B1 | 6/2012 | McGhie et al. |
| 6,609,970 | B1 | 8/2003 | Luciano | 8,234,164 | B1 | 7/2012 | Walker et al. |
| 6,609,978 | B1 | 8/2003 | Paulsen | 2001/0032137 | A1 | 10/2001 | Bennett et al. |
| 6,623,357 | B2 | 9/2003 | Chowdhury | 2001/0032182 | A1 | 10/2001 | Kumar et al. |
| 6,631,358 | B1 | 10/2003 | Ogilvie | 2001/0032183 | A1 | 10/2001 | Landry |
| 6,631,849 | B2 | 10/2003 | Blossom | 2001/0034259 | A1 | 10/2001 | Luciano et al. |
| 6,645,077 | B2 | 11/2003 | Rowe | 2001/0034649 | A1 | 10/2001 | Acres |
| 6,648,755 | B1 | 11/2003 | Luciano, Jr. | 2001/0034653 | A1 | 10/2001 | Yamamoto |
| 6,656,050 | B2 | 12/2003 | Busch | 2001/0034720 | A1 | 10/2001 | Breck |
| 6,685,559 | B2 | 2/2004 | Luciano | 2001/0037295 | A1 | 11/2001 | Olsen |
| 6,687,679 | B1 | 2/2004 | Van Luchene et al. | 2001/0041610 | A1 | 11/2001 | Luciano et al. |
| 6,721,743 | B1 | 4/2004 | Sakakibara | 2001/0044337 | A1 | 11/2001 | Rowe |
| 6,748,365 | B1 | 6/2004 | Quinlan et al. | 2001/0046891 | A1 | 11/2001 | Acres |
| 6,800,029 | B2 | 10/2004 | Rowe | 2001/0047342 | A1 | 11/2001 | Cuervo |
| 6,813,609 | B2 | 11/2004 | Wilson | 2001/0054003 | A1 | 12/2001 | Chien et al. |
| 6,820,061 | B2 | 11/2004 | Postrel | 2002/0002075 | A1 | 1/2002 | Rowe |
| 6,826,594 | B1 | 11/2004 | Pettersen | 2002/0002532 | A1 | 1/2002 | Tso |

US 8,313,023 B1

Page 5

| | | | | | | |
|---|---|---|---|---|---|---|
| 2002/0002538 | A1 | 1/2002 | Ling | 2003/0130948 | A1 | 7/2003 | Algiene et al. |
| 2002/0010025 | A1 | 1/2002 | Kelly et al. | 2003/0148807 | A1 | 8/2003 | Acres |
| 2002/0013728 | A1 | 1/2002 | Wilkman | 2003/0163425 | A1 | 8/2003 | Cannon, Jr. |
| 2002/0013767 | A1 | 1/2002 | Katz | 2003/0182218 | A1 | 9/2003 | Blagg |
| 2002/0016734 | A1 | 2/2002 | McGill et al. | 2003/0186747 | A1 | 10/2003 | Nguyen |
| 2002/0020965 | A1 | 2/2002 | Potter | 2003/0187762 | A1 | 10/2003 | Coyle |
| 2002/0026348 | A1 | 2/2002 | Fowler et al. | 2003/0200142 | A1 | 10/2003 | Hicks et al. |
| 2002/0039923 | A1 | 4/2002 | Cannon | 2003/0200144 | A1 | 10/2003 | Antonucci et al. |
| 2002/0045476 | A1 | 4/2002 | Poole | 2003/0208445 | A1 | 11/2003 | Compiano |
| 2002/0046110 | A1 | 4/2002 | Gallagher | 2003/0211883 | A1 | 11/2003 | Potts |
| 2002/0049631 | A1 | 4/2002 | Williams | 2003/0216960 | A1 | 11/2003 | Postrel |
| 2002/0052940 | A1 | 5/2002 | Myers et al. | 2003/0216967 | A1 | 11/2003 | Williams |
| 2002/0055874 | A1 | 5/2002 | Cohen | 2003/0228902 | A1 | 12/2003 | Walker |
| 2002/0056044 | A1 | 5/2002 | Andersson | 2003/0229584 | A1 | 12/2003 | Brown |
| 2002/0062253 | A1 | 5/2002 | Dosh et al. | 2003/0236749 | A1 | 12/2003 | Shergalis |
| 2002/0065126 | A1 | 5/2002 | Miller et al. | 2004/0002369 | A1 | 1/2004 | Walker et al. |
| 2002/0068624 | A1 | 6/2002 | Ellis | 2004/0006531 | A1 | 1/2004 | Kwan |
| 2002/0069109 | A1 | 6/2002 | Wendkos | 2004/0015438 | A1 | 1/2004 | Compiano et al. |
| 2002/0069150 | A1 | 6/2002 | Ni | 2004/0019522 | A1 | 1/2004 | Bortolin |
| 2002/0072412 | A1 | 6/2002 | Young | 2004/0019560 | A1 | 1/2004 | Evans et al. |
| 2002/0075844 | A1 | 6/2002 | Hagen | 2004/0035923 | A1 | 2/2004 | Kahr |
| 2002/0077173 | A1 | 6/2002 | Luciano et al. | 2004/0039644 | A1 | 2/2004 | Postrel |
| 2002/0077890 | A1 | 6/2002 | LaPointe et al. | 2004/0039692 | A1 | 2/2004 | Shields et al. |
| 2002/0077978 | A1 | 6/2002 | O'Leary et al. | 2004/0043806 | A1 | 3/2004 | Kirby |
| 2002/0082918 | A1 | 6/2002 | Warwick | 2004/0048658 | A1 | 3/2004 | Sanders |
| 2002/0082920 | A1 | 6/2002 | Austin | 2004/0049439 | A1 | 3/2004 | Johnston et al. |
| 2002/0082990 | A1 | 6/2002 | Jones | 2004/0053693 | A1 | 3/2004 | An |
| 2002/0086733 | A1 | 7/2002 | Wang | 2004/0068438 | A1 | 4/2004 | Mitchell |
| 2002/0087468 | A1 | 7/2002 | Ganesan et al. | 2004/0078273 | A1 | 4/2004 | Loeb et al. |
| 2002/0091593 | A1 | 7/2002 | Fowler | 2004/0097287 | A1 | 5/2004 | Postrel |
| 2002/0095365 | A1 | 7/2002 | Slavin et al. | 2004/0098317 | A1 | 5/2004 | Postrel |
| 2002/0107072 | A1 | 8/2002 | Giobbi | 2004/0107140 | A1 | 6/2004 | Postrel |
| 2002/0107733 | A1 | 8/2002 | Liu et al. | 2004/0111346 | A1 | 6/2004 | Macbeath |
| 2002/0111210 | A1 | 8/2002 | Luciano, Jr. | 2004/0111366 | A1 | 6/2004 | Schneider |
| 2002/0111907 | A1 | 8/2002 | Ling | 2004/0128197 | A1 | 7/2004 | Barn |
| 2002/0111919 | A1 | 8/2002 | Weller et al. | 2004/0143500 | A1 | 7/2004 | Lopez |
| 2002/0116257 | A1 | 8/2002 | Helbig | 2004/0143501 | A1 | 7/2004 | Lopez |
| 2002/0120513 | A1 | 8/2002 | Webb et al. | 2004/0158492 | A1 | 8/2004 | Lopez |
| 2002/0123949 | A1 | 9/2002 | VanLeeuwen | 2004/0173673 | A1 | 9/2004 | Potts |
| 2002/0143614 | A1 | 10/2002 | MacLean et al. | 2004/0215505 | A1 | 10/2004 | Sullivan |
| 2002/0146018 | A1 | 10/2002 | Kailamaki et al. | 2004/0220854 | A1 | 11/2004 | Postrel |
| 2002/0147047 | A1 | 10/2002 | Letovsky | 2004/0229671 | A1 | 11/2004 | Stronach |
| 2002/0152116 | A1 | 10/2002 | Yan | 2004/0262381 | A1 | 12/2004 | Mesaros |
| 2002/0160838 | A1 | 10/2002 | Kim | 2005/0015332 | A1 | 1/2005 | Chen |
| 2002/0161630 | A1 | 10/2002 | Kern et al. | 2005/0021399 | A1 | 1/2005 | Postrel |
| 2002/0169021 | A1 | 11/2002 | Urie | 2005/0021400 | A1 | 1/2005 | Postrel |
| 2002/0169660 | A1 | 11/2002 | Taylor et al. | 2005/0021401 | A1 | 1/2005 | Postrel |
| 2002/0177479 | A1 | 11/2002 | Walker | 2005/0021457 | A1 | 1/2005 | Johnston et al. |
| 2002/0194069 | A1 | 12/2002 | Thakur et al. | 2005/0043082 | A1 | 2/2005 | Peterson |
| 2002/0198043 | A1 | 12/2002 | Chowdhury | 2005/0060225 | A1 | 3/2005 | Postrel |
| 2003/0003996 | A1 | 1/2003 | Nguyen | 2005/0080727 | A1 | 4/2005 | Postrel |
| 2003/0004802 | A1 | 1/2003 | Callegari | 2005/0080728 | A1 | 4/2005 | Sobek |
| 2003/0004808 | A1 | 1/2003 | Elhaossine et al. | 2005/0096124 | A1 | 5/2005 | Stronach |
| 2003/0008707 | A1 | 1/2003 | Walker et al. | 2005/0107155 | A1 | 5/2005 | Potts et al. |
| 2003/0009379 | A1 | 1/2003 | Narasimhan et al. | 2005/0137015 | A1 | 6/2005 | Rogers |
| 2003/0013438 | A1 | 1/2003 | Darby | 2005/0143174 | A1 | 6/2005 | Goldman |
| 2003/0018523 | A1 | 1/2003 | Rappaport et al. | 2005/0149394 | A1 | 7/2005 | Postrel |
| 2003/0033534 | A1 | 2/2003 | Rand | 2005/0177428 | A1 | 8/2005 | Ganz |
| 2003/0036425 | A1 | 2/2003 | Kaminkow et al. | 2005/0177519 | A1 | 8/2005 | Block |
| 2003/0040964 | A1 | 2/2003 | Lacek | 2005/0182693 | A1 | 8/2005 | Alivandi |
| 2003/0045353 | A1 | 3/2003 | Paulsen | 2005/0192864 | A1 | 9/2005 | Ganz |
| 2003/0050831 | A1 | 3/2003 | Klayh | 2005/0240472 | A1 | 10/2005 | Postrel |
| 2003/0055722 | A1 | 3/2003 | Perreault et al. | 2005/0250415 | A1 | 11/2005 | Barthold |
| 2003/0055780 | A1 | 3/2003 | Hansen et al. | 2005/0261056 | A1 | 11/2005 | Smolucha |
| 2003/0060264 | A1 | 3/2003 | Chilton | 2006/0004629 | A1 | 1/2006 | Neemann et al. |
| 2003/0061097 | A1 | 3/2003 | Walker | 2006/0020511 | A1 | 1/2006 | Postrel |
| 2003/0062242 | A1 | 4/2003 | Hallowell et al. | 2006/0035692 | A1 | 2/2006 | Kirby |
| 2003/0069787 | A1 | 4/2003 | Tendon et al. | 2006/0046827 | A1 | 3/2006 | Saffari et al. |
| 2003/0069842 | A1 | 4/2003 | Kight et al. | 2006/0052150 | A1 | 3/2006 | Hedrick et al. |
| 2003/0074311 | A1 | 4/2003 | Saylors et al. | 2006/0063580 | A1 | 3/2006 | Nguyen |
| 2003/0078094 | A1 | 4/2003 | Gatto | 2006/0079150 | A1 | 4/2006 | Filoseta |
| 2003/0083943 | A1 | 5/2003 | Adams et al. | 2006/0100018 | A1 | 5/2006 | Ganz |
| 2003/0087650 | A1 | 5/2003 | Aarnio | 2006/0148559 | A1 | 7/2006 | Jordan |
| 2003/0087692 | A1 | 5/2003 | Weiss | 2006/0178217 | A1 | 8/2006 | Jung |
| 2003/0101131 | A1 | 5/2003 | Warren et al. | 2006/0178899 | A1 | 8/2006 | Jung |
| 2003/0104862 | A1 | 6/2003 | Acres | 2006/0178964 | A1 | 8/2006 | Jung |
| 2003/0104865 | A1 | 6/2003 | Itkis | 2006/0178965 | A1 | 8/2006 | Jung |
| 2003/0106769 | A1 | 6/2003 | Weiss | 2006/0178966 | A1 | 8/2006 | Jung |
| 2003/0115456 | A1 | 6/2003 | Kapoor | 2006/0178967 | A1 | 8/2006 | Jung |

# US 8,313,023 B1

Page 6

| 2006/0178968 | A1 | 8/2006 | Jung |
|---|---|---|---|
| 2006/0178970 | A1 | 8/2006 | Jung |
| 2006/0178972 | A1 | 8/2006 | Jung |
| 2006/0178975 | A1 | 8/2006 | Jung |
| 2006/0178985 | A1 | 8/2006 | Jung |
| 2006/0195376 | A1 | 8/2006 | Jung |
| 2006/0195377 | A1 | 8/2006 | Jung |
| 2006/0195378 | A1 | 8/2006 | Jung |
| 2006/0195394 | A1 | 8/2006 | Jung |
| 2006/0205481 | A1 | 9/2006 | Dominelli |
| 2006/0224505 | A1 | 10/2006 | Jung |
| 2006/0229976 | A1 | 10/2006 | Jung |
| 2007/0073582 | A1 | 3/2007 | Jung |
| 2007/0087822 | A1 | 4/2007 | Van Luchene |
| 2007/0167218 | A1 | 7/2007 | Rothschild |
| 2007/0168266 | A1 | 7/2007 | Questembert |
| 2007/0239523 | A1 | 10/2007 | Yi |
| 2008/0086759 | A1 | 4/2008 | Colson |
| 2009/0023490 | A1 | 1/2009 | Moshal et al. |
| 2010/0174600 | A1 | 7/2010 | Walker et al. |
| 2010/0227675 | A1 | 9/2010 | Luxton et al. |
| 2010/0248823 | A1 | 9/2010 | Smith |
| 2011/0151976 | A1 | 6/2011 | Holloway |
| 2011/0183749 | A1 | 7/2011 | Allen |
| 2011/0207525 | A1 | 8/2011 | Allen |
| 2011/0256924 | A1 | 10/2011 | McGhie et al. |
| 2011/0275432 | A1 | 11/2011 | Lutnick et al. |
| 2012/0041810 | A1 | 2/2012 | Hofer |

### FOREIGN PATENT DOCUMENTS

| AU | 2497399 | 11/1999 |
|---|---|---|
| AU | 2497499 | 11/1999 |
| AU | 2497599 | 11/1999 |
| AU | 199924973 | 11/1999 |
| AU | 199924974 | 11/1999 |
| AU | 199924975 | 11/1999 |
| AU | 3018500 | 11/2000 |
| AU | 200030185 | 11/2000 |
| EP | 0308224 | 3/1989 |
| EP | 0525363 | 2/1993 |
| EP | 0949596 | 10/1999 |
| EP | 1107196 | 6/2001 |
| EP | 1399897 | 3/2004 |
| GB | 2319381 | 5/1998 |
| GB | 2333879 | 8/1999 |
| GB | 2380687 | 4/2003 |
| JP | 8235276 | 9/1996 |
| JP | 2003132224 | 5/2003 |
| WO | W09215174 | A1 | 3/1992 |
| WO | WO9215174 | A1 | 3/1992 |
| WO | 9323817 | 11/1993 |
| WO | 9416781 | 8/1994 |
| WO | 9713228 | 4/1997 |
| WO | 9748078 | 12/1997 |
| WO | 9926176 | 5/1999 |
| WO | 9930256 | 6/1999 |
| WO | 9952051 | 10/1999 |
| WO | 9960503 | 11/1999 |
| WO | 0014665 | 3/2000 |
| WO | 0031658 | 6/2000 |
| WO | 0033159 | 6/2000 |
| WO | 0033222 | 6/2000 |
| WO | 0079461 | 12/2000 |
| WO | 0101282 | 1/2001 |
| WO | 0152078 | 7/2001 |
| WO | 0157617 | 8/2001 |
| WO | 0164306 | 9/2001 |
| WO | WO200506113 | 1/2005 |
| WO | 200582480 | 9/2005 |
| WO | 2006020413 | 2/2006 |
| WO | 2009094395 | 7/2009 |

### OTHER PUBLICATIONS

"Amazon.com and Netflix.com Establish Promotional Relationship for the Sale and Rental of DVD Titles" Business Wire Dec. 4, 1998, 3 pp.

Brook, Valerie. "GM turns up the heat with plan to cross-sell some financial products." Nov. 18, 1994 http://www.americanbanker.com/issues/159_150/-49630-1.html?zkPrintable=true.

"Beneficial, Casual Male Team Up on Card", American Banker. May 4, 1998. http://www.americanbanker.com.

"E-Centives," (http://www.emaginet.com/de...memfaq.shtml), download date: May 23, 1999, 3 pp. X.

Bloom, Jennifer Kingson. "Wal-Mart on Retail Road Less Traveled: Cobranding," The American Banker Sep. 11, 1998, 2 pp.

Elkin, Tobi "Promotions: Mastercard Wins Coveted On-Pack Real Estate in Tie-in with Microsoft" Brandweek Sep. 14, 1998, 1 page.

"Microsoft and First USA Announces $90 Million Online Advertising Alliance" EDP Weekly's IT Monitor Nov. 2, 1998, 2 pp.

Feldman, Amy "Paying with Plastic Not Such a Smart Idea", New York Daily News Nov. 4, 1998, 2 pp.

Cowell, Alan "America's Turn to Colonize; Creditcard Issuers Invade Britain, with U.S. Firepower", The New York Times Nov. 12, 1998, 5 pp.

Armstrong, Larry, "The Free-PC Game: Lure 'Em in and Lock 'Em Up," Business Week, Information Technology, Jul. 19, 1999, 1 pg.

"Shoppers Charge Accounts Co. to Administer Private Label Credit Card for Lew Magram LTD; Program Marks SCA,s Entry into Retail Catalog/Mail Order Industry" PR Newswire Jun. 29, 1998, 6 pp.

"About Click Rewards." Wired Magazine. http://www.wired.com/wired/subscribe/clickmiles.html.

Souccar, Miriam K. "Epidemic of Rate Shopping Spurs a Search for remedies," Jan. 7, 1999, Copyright 1999 American Banker, Inc.

"Wellsparks Group Launches V.I.P. Rewards; The Most Comprehensive Relationship Marketing Program Ever Created by a Mall Developer", Business wire May 19, 1998, 2 pp.

"Jay Jacobs Inc. Introduces Private Label Credit Card", Business Wire May 18, 1998, 1 page.

Meece, Mickey "Big Finance Companies May Want Piece of Limited's Private-Label Card Program", The American Banker Apr. 12, 1995, 2 pp.

"Points Earn Little Credit as Cardholders Fail to Cash in" Birmingham Post May 9, 1998, 2 pp.

"Card Briefs: Beneficial, Casual Male Team Up on Card" The American Banker May 4, 1998 1 pg.

AAdvantage Auction "Experience More with You AAdvantage Miles". http://www.aa.com/il8n/urls/auction.jsp?anchorLocation=DirectURL&title=auction.

Wald, Matthew L. "Spending It; Untying Cellular Phones From Those Annual Contracts" The New York Times Mar. 15, 1998, 2 pp.

Wijnen, Renee "Cendant Eyes Cross-Marketing Opportunities; CUC International-HFS Inc. Merger Expected to Yield an Additional 2 Million Club Members" DM News Feb. 2, 1998, 2 pp.

Sanders, Edmund "Tricky Business; The Magic of Rebate Cards can Quickly Disappear", Chicago Tribune Aug. 18, 1997, 3 pp.

Simon, Ruth "Make Sure Your Rebate Card Still Delivers the Goods", Money Aug. 1997, 2 pp.

Selasky, Susan "Easy-To-Swallow Savings; Diner Credit Cards Serve Wide menu of Discounts", Pittsburgh Post-Gazette Dec. 5, 1996, 3 pp.

"Chemical Bank and AT&T Smart Cards form Strategic Alliance", www.att.com/press/1193/931117.blb.html, 3 pp.

Kristof, Kathy "Card Sharks are in Season; be Wary of Discounts and Rebates as You Shop Around for Good Credit Deals", Chicago Tribune, Nov. 23, 1993, 2 pp.

Wessel, Harry "Rewarding Experience?; Credit Cards Offering Bonuses Not for Everyone", Chicago Poet-Gazette Dec. 5, 1996, 3 pp.

Ross, Chuck et al., "Coke Card promotion set for '98", (http //adage com/news.sub.—and.sub.—features/features/19971117/article3 html), Copyright Nov. 1997, 2 pp.

Singletary, Michelle, "Electronic World, Unchecked Problem?", The Washington Post, Mar. 4, 1997, Section: Financial, p. C01, 4 pp.

Ellin, Abby, "Listening to an Earful for Savings," (Hear the Pitches and talk for Free), The New York Times, Jan. 24, 1999, 1 pg.

Cox, Beth, "Visa, Travelweb Enter Online Marketing Partnership," Internetnews.com, Jan. 21, 1999, 1 pg.

Tedesco, Richard. "Pactel Pushes Net Access." Broadcasting & Cable. Jun. 3, 1996, pp. 64-65.

**US 8,313,023 B1**

Page 7

Colman, Price. "Cross-marketing Cuts Cable Bills." Broadcasting & Cable. Jul. 15, 1996, p. 44, 2 pp.

O'Brien, Timothy L., "The Market: Market Place—Taking the Danger out of Danger out of Risk; Chase says Models Helped it avoid Financial Minefields," The New York Times Business/Financial Desk, Jan. 20, 1999 Section C. col. 2 at p. 1, 4 pp.

"Rent from NetFlix.com Buy from Amazon.com," Official Press Release, Jan. 17, 1999, 1 pg.

"Let's Play the Cash Register Receipts Lottery", The New York Times, Dec. 25, 1990, Section: Section 1, p. 30, col. 4, Editorial Desk, 1 pg.

Dennis, Sylvia. "Visa Gets ready for Interactive Set-Top Boxes," Newsbytes, Dec. 14, 1998, 2 pp.

"Philips offers customers financing through Citicorp; Philips Medical Systems North America, Citicorp North America Inc." Health Industry Today, Jun. 1991, Section: vol. 54, No. 6, p. 4, ISSN: 0745-4678, 1 page.

Sinclair, Stewart. "To Mail or Not to Mail?" Strategy, Strategy Directresponse Special Report, Couponing, Oct. 12, 1998 at p. D21, 4 pp.

"Winn-Dixie/The Salvation Army Report Contributions for War Against Hunger", PR Newswire, Jun. 10, 1993, Section: Financial News, 1 pg.

Armstrong, Larry. "Coupon Clippers, save Your Scissors," Vons Supermarkets are Revolutionizing the Delivery of Discounts. Business week, Jun. 20, 1994, No. 3377 at p. 164, 2 pp.

Patch, Kimberly. "Sled InterNIC Debut Internet Services; Sled Corp Offers Electronic Coupons for Encryption software; InteNIC Information Services Launches InfoGuide to Internet Computer Network" PC Week, May 16, 1994 vol. 11 No. 19 at p. 130, ISSN: 0740-1604, 1 page.

"American Eagle Outfitters" PR Newswire. Mar. 26, 2010. www. printthis.clickability.com/pt/cpt?expire=&title= American+Eagle+Outfitters%2C+Inc.+Introduces+the . . . .

Andreoli, Tom et al., "Cash Machines Offer a Whole Lotto Money . . . ", Crain's Chicago Business, Jun. 19, 1995, Section: News, p. 8, 2 pp.

Brochure: "MyPoints (R)", MotivationNet, Inc. (TM), Homepage: www.mypoints.com, Copyright: Apr. 1998, 29 pp.

Bonnici, Joseph et al., "Consumer issues in coupon usage: An exploratory analysis", Journal of Applied Business Research, winter 1996/1997, vol. 13, No. 1, pp. 31-40, ISSNn: 0892-7626, CODEN: JPBEBK, 11 pp.

Hoeschen, Brad. "Brookfield Square Hopes Mall Card Strikes a Chord," Business Journal-Milwaukee, vol. 14, No. 50, p. 19, Sep. 12, 1997, 2 pp.

Armstrong, Larry. "The Free-PC Game: Lure 'Em in and Lock 'Em Up". Jul. 19, 1999 http://www.businessweek.com/1999/99__29/b3638169.htm?scriptFramed.

Iverson, Mark. "DataCard Partners With CSI to Offer Card-Based Loyalty Solution to Merchants." Jul. 19, 1998 http://www.thefreelibrary.com/_/print/PrintArticle.aspx?id=20883274.

"Cardbriefs: Stored-Value Card Designed for Casinos", The American Banker, Oct. 31, 1995, Section: Credit/Debit/ATMS, 1 pg.

"Tecmark Reward Terminal", (http //www tecmarkinc com/terminal htm), copyright, 1996 Tecmark Services, Inc., 1 pg.

WAP WTLS: Wireless Application Protocol Wireless Transport Layer Security Specification, Wireless Applications Forum, Limited, Apr. 30, 1998. [Retrieved on Jan. 19, 2009]. Retrieved from the Internet <Oct. 7, 2008>.

Fallon: "UK Retailers Loyal Customer 'Card Wars' Prove costly (Most major retailers in the UK have grown their sales over the past 2 years by lunching loyalty-card program" ; Supermarket News, May 5, 1997; vol. 47, No. 18, p. 57

Booker, Ellis, "Checkout lines to offer more than just candy and waiting", Computer World, May 21, 1990, 1 pg.

Fickenscher, Lisa, "Merchant: American Express Seeks to Mine Its Data on Cardholder Spending Patters", The American Banker, Mar. 24, 1997, Credit/Debit/ATMS, 2 pg.

Fickenscher, Lisa, "Amex to Start Free Rewards Program with Discounts on Merchandise", The American Banker, Oct. 18, 1996, Section: Credit/Debit/ATMS, p. 10, 2 pp.

Fitzgerald, Kate, "Amex program moves loyalty to next level: Custom Extras finds a medium customers can't ignore: Billing Statements", Advertising Age, Nov. 4, 1996, Section: News, 2 pg.

Amato-McCoy, Deena, "Co-Branded Acme Credit Card Rewards Loyal Users" Supermarket News, Jun. 15, 1998, Section: p. 17, ISSN: 0039-5803, 2 pages "DataCard Partners With CSI to Offer Card-Based Loyalty Solution to Merchants", Business Wire, Jul. 9, 1998, 1 pg.

Albright, Mark, "Grocery savings via Web coupons", St. Petersburg Times, Jul. 22, 1998, Section: Business, 2 pg.

Notice of Allowance; U.S. Appl. No. 13/441,365; Mailing Date Jun. 16, 2012.

Non Final Rejection dated May 4, 2012; U.S. Appl. No. 13/428,656; pp. 1-6.

Notice of Allowance; U.S. Appl. No. 13/428,656; Mailing Date May 15, 2012.

Non Final Rejection dated Mar. 6, 2012; U.S. Appl. No. 13/359,120; pp. 1-7.

Notice of Allowance; U.S. Appl. No. 13/359,120; Mailing Date Apr. 18, 2012.

Non Final Rejection dated Mar. 12, 2012; U.S. Appl. No. 13/359,104; pp. 1-8.

Notice of Allowance; U.S. Appl. No. 13/359,104; Mailing Date Apr. 13, 2012.

Non Final Rejection dated Mar. 6, 2012; U.S. Appl. No. 13/359,080; pp. 1-11.

Notice of Allowance; U.S. Appl. No. 13/359,080; Mailing Date Apr. 11, 2012.

Non Final Rejection dated Jan. 10, 2012; U.S. Appl. No. 12/759,506; pp. 1-10.

Notice of Allowance; U.S. Appl. No. 12/759,506; Mail date Mar. 5, 2012.

Non Final Rejection dated Dec. 15, 2012; U.S. Appl. No. 12/720,743; pp. 1-10.

Notice of Allowance; U.S. Appl. No. 12/720,743; Mailing date Jan. 24, 2012.

Non Final Rejection dated May 12, 2009; U.S. Appl. No. 11/420,255; pp. 1-7.

Notice of Allowance; U.S. Appl. No. 11/420,255; Mailing Date Dec. 16, 2009.



100

**FIG. 1**



200
Ecommerce Site 210
Mr. Smith, you have 3 items in your shopping cart.
Purchase Options:
Credit Card
Check
E-wards
215
E-wards Account 220
Mr. Smith:
Airline Rewards
10,000
Loyalty Rewards
2,000
Entertainment Rewards
100.00
Funds
$100.00
222
Convert Checked Credits to Funds
225
E-wards Account 230
Mr. Smith,
You have selected to pay $100 credits (1 credit = 1 USD) to Ecommerce Site.
Is this correct?
Yes
Cancel
232
233
Ecommerce Site 240
Receipt
Mr. Smith, we have received your payment of $100.00 for 3 items.
Thank You

FIG. 2

U.S. Patent        Nov. 20, 2012        Sheet 3 of 3        US 8,313,023 B1



**300**

Consumer logs onto a rewards Web site

305

Rewards web site accesses user account information to determine the quantity of user earned non-negotiable credits

310

Consumer elects to redeem the non-negotiable credits

315

Consumer optionally selects a conversion form for the non-negotiable credits

320

A conversion ratio is determined, either internally through the rewards Web site or via a system that is remote and/or independent of the Web site, and a selected type of negotiable funds

325

An electronic commerce transaction is initiated to establish a converted quantity of negotiable funds in a user account

330

The quantity of converted non-negotiable credits is subtracted from the user's account

335

Consumer is presented via the rewards Web site with an access means for using the negotiable credits

340

Consumer logs off of the rewards Web site

345

**FIG. 3**

US 8,313,023 B1

**1**

## EXCHANGE OF NON-NEGOTIABLE CREDITS OF AN ENTITY'S REWARDS PROGRAM FOR ENTITY INDEPENDENT FUNDS

### CROSS-REFERENCE TO RELATED APPLICATIONS

This continuation application claims the benefit of U.S. patent application Ser. No. 11/420,255 filed 25 May 2006 entitled "Web Based Conversion of Non-Negotiable Credits Associated with an Entity to Entity Independent Negotiable Funds." The entire contents of U.S. application Ser. No. 11/420,255 are incorporated by reference herein.

### BACKGROUND

The present disclosure relates to the field of exchanging non-negotiable credits for entity independent funds.

Entities often reward consumers for utilizing their services with non-negotiable credits, such as frequent flier miles, consumer loyalty points, and entertainment credits. These non-negotiable credits can be applied towards products and/or services provided by a granting entity or its affiliates. For example, consumers can apply frequent flyer credits towards the purchase of airline tickets or airline upgrades. In another example, a consumer can utilize purchase points from a credit card company to receive percentage discounts on goods provided by affiliates. In still another example, entertainment credits can be redeemed for prizes offered in a winnings storefront of an entertainment site.

Many problems are inherent to the current techniques for the redemption of entity provided credits. One such problem is the restriction on usage to goods and/or services of the entity. That is, a consumer may have no need for the products or services listed by the entity for which the non-negotiable credits can be redeemed. Further, additional restrictions and limitations can be placed upon the non-negotiable credits that lessen the usefulness of non-negotiable credits from the consumer's perspective. For instance, airlines often limit the choice of travel dates, known as black-out dates, to which frequent flyer credits can be applied.

Another problem encountered by consumers when redeeming non-negotiable credits is time. Once a consumer submits a request to redeem their non-negotiable credits, the consumer must wait for the entity to perform one or more actions required to fulfill their request. These steps often require days or weeks to complete. For instance, consumers participating in online entertainment sites often are required to wait a minimum of three days for their entertainment credits to be redeemed. Redemption delay can be particularly aggravating to e-commerce consumers, who by nature of an e-commerce marketplace expect rapid responses and immediate consumer gratification.

Time can also be a factor for redeeming credits having an associated expiration date. A consumer's non-negotiable credits may expire before a sufficient quantity is acquired for a desired purchase. Lesser purchases requiring fewer credits may not have a significant appeal for the consumer. Hence, credit expiration dates can further decrease the consumer value of non-negotiable credits.

Yet another problem with conventional implementation of non-negotiable credits is that consumers often belong to multiple credit-earning programs that provide the consumers with multiple incompatible forms of non-negotiable credit. Each of these multiple programs can span a single industry or can span multiple industries. For example, a consumer can

**2**

acquire a moderate number of frequent flyer miles with multiple airlines, where each airline specific account contains insufficient credits to have any meaningful consumer value. Consumers can also have many different types of non-negotiable credits, such as multiple merchant specific credit, credit card credits, and frequent flier miles, each having different redemption values and program redemption rules. These different programs, values, and rules can understandably confuse and frustrate consumers, who due to their confusion, often elect to avoid participating in an entity sponsored credit program.

### BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS

FIG. 1 is a schematic diagram of a Web based conversion of non-negotiable credits associated with an entity to entity independent funds system in accordance with an embodiment of the inventive arrangements disclosed herein.

FIG. 2 is a schematic diagram of successive GUIs that illustrate the Web based conversion of non-negotiable credits associated with an entity to entity independent funds system in accordance with an embodiment of the inventive arrangements disclosed herein.

FIG. 3 is a flow chart of a method for the Web based conversion of non-negotiable credits associated with an entity to entity independent funds system in accordance with an embodiment of the inventive arrangements disclosed herein.

### DETAILED DESCRIPTION

The present disclosure permits consumers to transform non-negotiable credits provided by an entity to negotiable funds in an approximately immediate fashion using the Web. More specifically, a conversion agency can function as an intermediary that converts entity provided credits into entity independent funds. The conversion agency can be an independent entity that is not directly affiliated with the credit providing entities.

The conversion can occur automatically using a Web initiated action and can have approximately immediate results. Approximately immediate as used herein can signify that a transaction can occur within a single Web session with user acceptable delay tolerances, typically under half an hour and often under a few minutes. In one embodiment, credits can be automatically converted to funds as part of an e-commerce checkout. In another embodiment, credits can be converted into a user accessible account held with a financial institution.

The present disclosure can be implemented in accordance with numerous aspects consistent with material presented herein. For example, one aspect of the present disclosure can include a method for converting credits to funds. The method can include a step of a Web site receiving user identification information. Non-negotiable credits can be identified that are associated with an entity with which the user has previously interacted. The previous interactions could have earned the non-negotiable credits. Responsive to a user request, a conversion agency can convert a quantity of the non-negotiable credits into a quantity of negotiable funds. The conversion agency can be an agency not directly associated with the entity. The user can be permitted to access the quantity of negotiable funds. The quantity of negotiable funds can be applied to user specified purchases. At least a portion of the purchases can involve at least one vender that does not honor the non-negotiable credits.

Another aspect of the present disclosure can include a software method for converting non-negotiable credits into

US 8,313,023 B1

**3**

negotiable funds. The method can receive a user request to convert a quantity of non-negotiable credits held in a user account associated with an entity. A conversion rate between the non-negotiable credits available to the user and a form of negotiable funds can be automatically determined. A quantity of non-negotiable credits can be automatically subtracted from the user account. A quantity of the negotiable funds based upon the determined conversion rate and quantity of subtracted funds can be automatically transferred to a financial account. The financial account can be an account that is not associated with the entity. The entire method can occur in an approximately immediate fashion.

Still another aspect of the present disclosure can include a Web-based credit to fund conversion system. The system can include a non-negotiable credit account, a negotiable funds account, and a conversion agency. The non-negotiable credit account can be associated with an entity. Non-negotiable credits contained within the non-negotiable credit account can be earned though previous interactions between a user and the entity. The negotiable funds account can include negotiable funds that the user is able to apply to user specified e-commerce purchases. One or more venders involved in the e-commerce purchases can be venders that do not honor the non-negotiable credits for the e-commerce purchases. The conversion agency can automatically and approximately immediately convert a quantity of credits from the non-negotiable credit account to a quantity of funds in the negotiable funds account responsive to a request from the user.

It should be noted that various aspects of the disclosure can be implemented as a program for controlling computing equipment to implement the functions described herein, or a program for enabling computing equipment to perform processes corresponding to the steps disclosed herein. This program may be provided by storing the program in a magnetic disk, an optical disk, a semiconductor memory, or any other recording medium. The program can also be provided as a digitally encoded signal conveyed via a carrier wave. The described program can be a single program or can be implemented as multiple subprograms, each of which interact within a single computing device or interact in a distributed fashion across a network space.

It should also be noted that the methods detailed herein can also be methods performed at least in part by a service agent and/or a machine manipulated by a service agent in response to a service request.

FIG. **1** is a schematic diagram of a Web based conversion of non-negotiable credits associated with an entity to entity independent funds system **100** in accordance with an embodiment of the inventive arrangements disclosed herein. System **100** includes consumer **105** and conversion agency server **130**.

Consumer **105** interacts with conversion agency server **130** via client **110**. Client **110** can be any of a variety of interfaces including, but not limited to, another human being, a personal computer, a kiosk, a graphical user interface (GUI), a Web page, a telephone, a personal data assistant (PDA), a mobile phone, and the like.

Client **110** can operate in a stand-alone fashion. Alternatively, client **110** can be a device that cooperatively participates in a network of distributed computing devices. Client **110** can also be another human being utilizing an interface form of Client **110** to access conversion agency server **130** via network **115**. Network **115** can facilitate data exchanges over wireless as well as line-based communication pathways and protocols.

Both consumer **105** and conversion agency server **130** can interact with associate server **150**, e-commerce server **120**,

**4**

and financial institution server **140** via network **115**. Conversion agency server **130** includes user account data store **135** in which consumer **105** is a member. Associate server **150** includes customer data store **155** in which consumer **105** is a member. Financial institution server **140** includes account data store **142**. Account data store **142** includes conversion agency account **144** corresponding to conversion agency **130**.

Consumer **105** earns non-negotiable credits from associate server **150**. The quantity of these non-negotiable credits is saved in customer data store **155**. The method in which consumer **105** earns credits can be any of a variety of activities including, but not limited to, making online purchases, making in-store purchases, playing online games, participating in online games of chance, participating in surveys, and the like. Consumer **105** uses conversion agency server **130** to convert the non-negotiable credits from associate server **150** into negotiable funds provided by e-commerce server **120** or financial institution **140**. In one embodiment, conversion agency **130** can include multiple reward accounts of consumer **105**.

For example, consumer **105** earns five hundred credits from participating in an online game of chance hosted by associate server **150**. Consumer **105** can choose to use conversion agency **130** to convert any or all of these credits to a monetary equivalent. Conversion agency **130** withdraws the necessary amount from conversion agency account **144** contained within the account data store **142** of financial institution **140** and transfers it to an account specified by consumer **105**. In another example, consumer **105** uses conversion agency **130** to complete a purchase at e-commerce server **120**. Again, conversion agency **130** withdraws the necessary amount from conversion agency account **144** contained within the account data store **142** of financial institution **140** and transfers it to the account of e-commerce server **120**.

E-commerce server **120** can be any Web site that supports online purchases of goods or services. In one embodiment, e-commerce server **120** can include a distinct payment option for conversion agency **130**. This distinct payment option could process the conversion of credits through their Web site. Alternatively, the distinct payment option could launch an application to process the conversion of credit that is separate from their Web site. In another embodiment, associate server **150** can act as e-commerce server **120**.

Financial institution server **140** can be any of a variety of entities including, but not limited to, a bank, a credit card company, an investment firm, and the like. In one embodiment, financial institution server **140** can reside in the same country as consumer **105** and/or associate server **150**. In another embodiment, financial institution server **140** can reside in a country other than that of consumer **105** and/or associate server **150**.

FIG. **2** is a schematic diagram of successive GUIs that illustrate the Web based conversion of non-negotiable credits associated with an entity to entity independent funds system **200** in accordance with an embodiment of the inventive arrangements disclosed herein.

GUI **210** can be a checkout window from any e-commerce site. GUI **210** includes payment button **215**. Payment button **215** can represent a payment option that includes the conversion of non-negotiable credits to purchase the items in the shopping cart. Selection of payment button **215** by a user can produce GUI **220**.

GUI **220** can be a display window from a conversion agency. GUI **220** includes display box **222** and button **225**. GUI **220** can be rendered by any of a variety of means including, but not limited to, a Web browser, a JAVA applet, a PERL script, and the like. In one embodiment, GUI **220** can be

5

contained within the e-commerce site. GUI **220** can display the balance of non-negotiable credits from one or more reward programs. GUI **220** contains a means by which the user selects the type of non-negotiable credits to convert including, but not limited to, a set of radio buttons, a set of checkboxes, a highlighting mechanism, and the like. Display box **222** can display the monetary value of the selected non-negotiable credits. The value displayed in display box **222** can be based on preset conversion factors. Button **225** can represent the initiation of the process by which the selected non-negotiable credits are converted to negotiable funds. Selection of button **225** by a user can produce GUI **230**.

GUI **230** can be a display window from a conversion agency. GUI **230** includes yes button **232** and cancel button **233**. GUI **230** can be rendered by any of a variety of means including, but not limited to, a Web browser, a JAVA applet, a PERL script, and the like. In one embodiment, GUI **230** can be contained within the e-commerce site. GUI **230** can display a summary message of the transaction initiated by GUI **220**. GUI **230** can include a means to continue the transaction, yes button **232**, and a means to cancel the transaction, cancel button **233**. Selection of cancel button **233** by a user cancels the transaction and can return the user to GUI **220**. Selection of yes button **232** by a user completes the transaction initiated in GUI **220** and can produce GUI **240**.

GUI **240** can be a display window from the same said e-commerce site. GUI **240** can contain a message acknowledging the successful conversion of the user's non-negotiable credits into negotiable funds for the purchase of the items in the shopping cart.

FIG. **3** is a flow chart of a method **300** for the Web based conversion of non-negotiable credits associated with an entity to entity independent funds system in accordance with an embodiment of the inventive arrangements disclosed herein.

Method **300** can begin in step **305**, where a consumer logs onto a rewards Web site. In step **310**, the rewards Web site utilizes the user information provided in step **305** to access the consumer's account information and display the amount of non-negotiable credits in the consumer's account. The consumer elects to redeem some quantity of non-negotiable credits in step **315**. If supported by the rewards Web site, step **320** can occur in which the consumer can select the form of negotiable funds to convert the non-negotiable credits. In step **325**, a ratio is determined for the conversion of the non-negotiable credits to the selected type of negotiable funds. This ratio can be determined by any of a variety of means including, but not limited to, an algorithm internal to the rewards Web site, an algorithm contained in a system that is remote and/or independent of the rewards Web site, and the like. An electronic commerce transaction is initiated in step **330** to establish the converted amount of negotiable funds in a user account. The quantity of converted non-negotiable credits is subtracted from the user's account in step **335**. In step **340**, the rewards Web site presents the consumer with an access means for the negotiable funds. Lastly, the consumer terminates the session by logging off the rewards Web site in step **345**.

The present disclosure may be realized in hardware, software, or a combination of hardware and software. The present disclosure may be realized in a centralized fashion in one computer system or in a distributed fashion where different elements are spread across several interconnected computer systems. Any kind of computer system or other apparatus adapted for carrying out the methods described herein is suited. A typical combination of hardware and software may be a general purpose computer system with a computer pro-

6

gram that, when being loaded and executed, controls the computer system such that it carries out the methods described herein.

The present disclosure also may be embedded in a computer program product, which comprises all the features enabling the implementation of the methods described herein, and which when loaded in a computer system is able to carry out these methods. Computer program in the present context means any expression, in any language, code or notation, of a set of instructions intended to cause a system having an information processing capability to perform a particular function either directly or after either or both of the following: a) conversion to another language, code or notation; b) reproduction in a different material form.

This disclosure may be embodied in other forms without departing from the spirit or essential attributes thereof. Accordingly, reference should be made to the following claims, rather than to the foregoing specification, as indicating the scope of the disclosure.

What is claimed is:

**1**. A method comprising:

at least one of one or more computers identifying non-negotiable credits earned as part of a rewards program of an entity that provides a payment artifact, the non-negotiable credits being accrued or earned by charging amounts to an account linked to the payment artifact, the amounts charged being for goods or services purchased using the payment artifact, wherein the reward program credits are stored as digitally encoded information in at least one storage device, wherein the goods or services purchased are purchased from at least one different entity than the entity;

at least one of one or more computers receiving a request to transfer or convert a quantity of the non-negotiable credits to entity independent funds of a commerce partner, the commerce partner being a company that is not the entity; and

responsive to the request to transfer or convert the quantity of non-negotiable funds, at least one of one or more computers transferring or converting at least a subset of the non-negotiable credits into entity independent funds that the commerce partner accepts for goods or services that the commerce partner provides, wherein in absence of the non-negotiable credits being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides.

**2**. The method of claim **1**, wherein the converting or transferring of the subset of the non-negotiable credits into entity independent funds permits access to the entity independent funds thereby enabling purchases of the goods or services that the commerce partner provides.

**3**. The method of claim **1**, wherein charging amounts to the account linked to the payment artifact occurs as part of a set of previous interactions involving a member participating in the rewards program and the entity that provides the payment artifact.

**4**. The method of claim **1**, wherein the one or more computers are computers for serving content of a Web site, wherein the Web site is used for converting or transferring the quantity of non-negotiable funds into the entity independent funds.

**5**. The method of claim **1**, wherein a point of sale device is a device from which the request to transfer the quantity of the non-negotiable credits originates.

US 8,313,023 B1

7

**6**. The method of claim **1**, further comprising:

responsive to the transferring or converting of the subset of non-negotiable credits, at least one of the one or more computers subtracting the subset of non-negotiable credits from a total number of available non-negotiable credits earned through the rewards program.

**7**. The method of claim **1**, further comprising:

at least one of the one or more computers identifying a ratio for transferring or converting the non-negotiable credits into entity independent funds; and

at least one of the one or more computers transferring or converting the subset of the non-negotiable credits into entity independent funds in accordance with the identified ratio.

**8**. The method of claim **1**, wherein the payment artifact is a credit card, and wherein the non-negotiable credits are reward program points for the rewards program associated with the credit card.

**9**. The method of claim **1**, wherein per terms of the rewards program, the non-negotiable credits have no cash or monetary value, wherein the non-negotiable credits are accrued in proportion to the amount charged to the account.

**10**. The method of claim **1**, wherein the non-negotiable credits have a restriction on use related to an expiration date, whereby the non-negotiable credits either have an expiration date, have an expiration date triggered by a previously defined condition related to a status of the account linked to the payment artifact, or the entity has expressly reserved a right of imposing an expiration date on already accrued non-negotiable credits.

**11**. The method of claim **1**, wherein a single one of the one or more computers performs the identifying of the non-negotiable credits, the receiving of the request, and the converting or transferring of the non-negotiable credits to entity-independent funds.

**12**. The method of claim **1**, wherein a plurality of the one or more computers performs the identifying of the non-negotiable credits, the receiving of the request, and the converting or transferring of the non-negotiable credits to entity-independent funds.

**13**. The method of claim **1**, wherein each of the one or more computers comprises computing equipment having at least one processor executing program instructions that are digitally encoded in at least one storage device.

**14**. The method of claim **1**, wherein the entity charges members participating in the rewards program a fee for converting or transferring the non-negotiable credits into entity-independent funds.

**15**. The method of claim **1**, wherein the entity-independent funds are loyalty points of a program of a company or organization that is not the entity.

**16**. A method comprising:

at least one of one or more computers establishing a rewards program for credit cards, the credit cards being referred to herein as payment artifacts, wherein each of the payment artifacts are provided by an entity to one or more card holders, wherein card holders participating in the rewards program are referred to herein as members;

at least one of one or more computers accruing non-negotiable credits, referred to as membership reward points, in response to one of the payment artifacts being used for purchases of goods or services with venders accepting the payment artifact, wherein a quantity of non-negotiable credits accrued is directly proportional to amounts spent for the purchases using the payment artifact, wherein the non-negotiable credits have restrictions on use, wherein the restrictions on use prevent the non-

8

negotiable credits from being directly applied for a purchase of at least one goods or services of a commerce partner, wherein the commerce partner is an independent entity from the entity; and

at least one of one or more computers subtracting a quantity of the non-negotiable credits in response to the purchase of the goods or services, the purchase costing a quantity of entity independent funds, the entity independent funds resulting from a conversion of the subtracted quantity of non-negotiable credits into the entity independent funds in accordance with a credit to fund conversion ratio, wherein the entity provides compensation for the subtracted quantity of the non-negotiable credits, wherein the commerce partner receives at least a portion of the compensation.

**17**. The method of claim **16**, wherein the compensation is in negotiable funds.

**18**. The method of claim **16**, wherein a conversion agency converts the non-negotiable credits into the entity independent funds.

**19**. The method of claim **18**, where the conversion agency is not the entity.

**20**. The method of claim **16**, wherein each of the one or more computers comprises computing equipment having at least one processor executing program instructions that are digitally encoded in at least one storage device.

**21**. The method of claim **16**, wherein a single one of the one or more computers performs the accruing and subtracting of the non-negotiable credits.

**22**. The method of claim **16**, wherein the entity charges members participating in the rewards program a fee for converting or transferring the non-negotiable credits into entity independent funds.

**23**. The method of claim **16**, wherein the entity-independent funds are loyalty points of a program of the commerce partner.

**24**. The method of claim **16**, wherein the entity-independent funds are negotiable funds.

**25**. The method of claim **16**, wherein per terms of the rewards program, the non-negotiable credits have no cash or monetary value, and wherein the non-negotiable credits have at least one restriction on use related to an expiration date, whereby the non-negotiable credits either have an expiration date, have an expiration date triggered by a previously defined condition related to a status of the account linked to the payment artifact, or the entity has expressly reserved a right of imposing an expiration date on already accrued non-negotiable credits.

**26**. The method of claim **16**, wherein the entity provides non-negotiable credits to incentive the card holders to utilize the payment artifacts for the purchase with venders, wherein the entity charges the venders that accept the payment artifact in accordance with a vender charged ratio of the amounts spent.

**27**. A method comprising:

at least one of one or more computers establishing an account for non-negotiable credits provided by an entity to one or more users, wherein the established account is a rewards program account, wherein the non-negotiable credits are reward program points, wherein the entity provides credit cards to the one or more users, wherein usage of the credit cards earns the reward program points;

at least one of one or more computers detecting interactions in which one of the credit cards is utilized for one or more purchases, each of the interactions earning a quantity of non-negotiable credits, wherein the quantity

**9**

of non-negotiable credits from the interactions are added to the account, wherein in absence of a conversion operation that converts the non-negotiable credits to entity independent funds, the at least one commerce partner does not accept the non-negotiable credits for a sale of goods or services provided by the commerce partner; and

at least one of one or more computers subtracting a quantity of the non-negotiable credits from the account, the subtracted quantity of non-negotiable credits corresponding to a quantity of entity independent funds in accordance with a conversion rate established for the conversion operation that converts the non-negotiable credits to the entity independent funds, wherein the quantity of entity independent funds resulting from the conversion operation are able to be exchanged with the commerce partner for goods or services provided by the commerce partner.

**28**. The method of claim **27**, wherein the entity-independent funds are negotiable funds.

**29**. The method of claim **27**, wherein the entity-independent funds are loyalty points of a program of the commerce partner.

**30**. A computer program product comprising:

one or more non-transitory computer-readable medium;

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to establish a rewards program for credit cards, the credit cards being referred to herein as payment artifacts, wherein each of the payment artifacts are provided by an entity to one or more card holders, wherein card holders participating in the rewards program are referred to herein as members;

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to accrue non-negotiable credits, referred to as membership reward points, in response to one of the payment artifacts being used for purchases of goods or services with venders accepting the payment artifact, wherein a quantity of non-negotiable credits accrued is directly proportional to amounts spent for the purchases using the payment artifact, wherein the non-negotiable credits have restrictions on use, wherein the restrictions on use prevent the non-negotiable credits from being directly applied for a purchase of at least one goods or services of a commerce partner, wherein the commerce partner is an independent entity from the entity; and

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to subtract a quantity of the non-negotiable credits in response to the purchase of the goods or services, the purchase costing a quantity of entity independent funds, the entity independent funds resulting from a conversion of the subtracted quantity of non-negotiable credits into the entity independent funds in accordance with a credit to fund conversion ratio, wherein the entity provides compensation for the subtracted quantity of the non-negotiable credits, wherein the commerce partner receives at least a portion of the compensation.

**31**. A method comprising:

a commerce partner agreeing to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds in accordance with a credits-to-funds ratio, wherein the non-negotiable credits have been earned as part of a rewards program of an entity, wherein the commerce partner accepts the entity independent funds for goods or services that the commerce partner provides, wherein in absence of the non-negotiable cred-

**10**

its being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides, wherein the entity-independent funds are loyalty points of a loyalty program of the commerce partner;

at least one of one or more computers detecting a communication over a network to grant a consumer a quantity of the entity independent funds, wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-funds ratio, wherein the subset of the non-negotiable credits are expended as part of the conversion or transfer, and wherein the commerce partner is compensated for providing the entity independent funds to the consumer;

responsive to the communication, at least one of one or more computers granting the consumer the quantity of the entity independent funds; and

the at least one of the one or more computers accepting at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, wherein the one or more computers do not accept the non-negotiable credits of the entity's rewards program for the goods or services in absence of the conversion or transfer.

**32**. The method of claim **31**, wherein the granting of the quantity of entity independent funds comprises:

at least one of the one or more computers accessing a loyalty program account for the loyalty program that the commerce partner maintains for the consumer; and

at least one of the one or more computers adding the quantity of entity independent funds, referred to as loyalty points, to an existing quantity of loyalty points for the consumer, wherein records for the loyalty program account are maintained by the one or more computers within one or more non-transitory storage mediums.

**33**. The method of claim **32**, further comprising:

at least one of the one or more computers completing a sale of the goods or services, where the consumer expends at least the portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides.

**34**. The method of claim **31**, further comprising:

at least one of the one or more computers transferring or converting the subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-funds ratio.

**35**. The method of claim **31**, wherein the entity, the commerce partner, or both charges members participating in the rewards program or the loyalty program a fee for converting or transferring the subset of non-negotiable credits into the quantity of entity-independent funds.

**36**. The method of claim **31**, wherein a single one of the one or more computers detects the communication, grants the consumer the quantity of entity independent funds, and accepts the portion of the quantity of entity independent funds.

**37**. The method of claim **31**, wherein a plurality of different ones of the one or more computers detects the communication, grants the consumer the quantity of entity independent funds, and accepts the portion of the quantity of entity independent funds.

**38**. The method of claim **31**, wherein the one or more computers are owned by or operated for the commerce partner.

US 8,313,023 B1

**11**

**39**. A computer program product comprising:

one or more non-transitory computer-readable mediums;

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to detect a communication over a network to grant a consumer a quantity of entity independent funds, wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of non-negotiable credits into the quantity of entity independent funds in accordance with a credit-to-funds ratio, wherein the subset of the non-negotiable credits are expended as part of the conversion or transfer, and wherein the commerce partner is compensated for providing the entity independent funds to the consumer, wherein the commerce partner agrees to accept transfers or conversions of quantities of the non-negotiable credits to entity independent funds in accordance with the credits-to-funds ratio, wherein the non-negotiable credits have been earned as part of a rewards program of the entity, wherein the commerce partner accepts the entity independent funds for goods or services that the commerce partner provides, wherein in absence of the non-negotiable credits being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides, wherein the entity-independent funds are loyalty points of a loyalty program of the commerce partner;

one or more non-transitory computer-readable mediums;

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to, responsive to the communication, grant the consumer the quantity of the entity independent funds; and

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to accept at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, wherein, per the program instructions, the non-negotiable credits are not accepted for the goods or services in absence of the conversion or transfer.

**40**. The computer program product of claim **39**, wherein the program instructions to grant of the quantity of entity independent funds comprise:

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to access a loyalty program account for the loyalty program that the commerce partner maintains for the consumer; and

**12**

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to add the quantity of entity independent funds, referred to as loyalty points, to an existing quantity of loyalty points for the consumer, wherein records for the loyalty program account are maintained by the one or more computers within one or more non-transitory storage mediums.

**41**. The computer program product of claim **39**, further comprising:

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to complete a sale of the goods or services, where the consumer expends at least the portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides.

**42**. The computer program product of claim **39**, further comprising:

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to transfer or convert the subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-funds ratio.

**43**. The computer program product of claim **39**, wherein the entity, the commerce partner, or both charges members participating in the rewards program or the loyalty program a fee for converting or transferring the subset of non-negotiable credits into the quantity of entity-independent funds.

**44**. The computer program product of claim **39**, wherein a single computer executes the program instructions to detect the communication, the program instructions to grant the consumer the quantity of entity independent funds, and the program instructions to accept the portion of the quantity of entity independent funds.

**45**. The computer program product of claim **39**, wherein a plurality of different computers communicating with each other execute the program instructions to detect the communication, the program instructions to grant the consumer the quantity of entity independent funds, and the program instructions to accept the portion of the quantity of entity independent funds.

**46**. The computer program product of claim **39**, wherein the one or more computers upon which the program instructions are loaded and executed are owned by or operated for the commerce partner.

\*   \*   \*   \*   \*