# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | |
| Plaintiff, | Civil Action No. 2:13-cv-655-JRG (LEAD CASE) |
| v. | |
| AMERICAN AIRLINES, INC., | |
| Defendant. | |
| LOYALTY CONVERSION SYSTEMS CORPORATION, | |
| Plaintiff, | Civil Action No. 2:13-cv-659-JRG |
| v. | |
| DELTA AIR LINES, INC., | |
| Defendant. | |
| LOYALTY CONVERSION SYSTEMS CORPORATION, | |
| Plaintiff, | Civil Action No. 2:13-cv-660-JRG |
| v. | |
| FRONTIER AIRLINES, INC. | |
| Defendant. | |

LOYALTY CONVERSION SYSTEMS
CORPORATION,

      Plaintiff,

v.

SOUTHWEST AIRLINES CO.

      Defendant.

Civil Action No. 2:13-cv-663-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

      Plaintiff,

v.

SPIRIT AIRLINES, INC.

      Defendant.

Civil Action No. 2:13-cv-664-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

      Plaintiff,

v.

UNITED AIRLINES, INC.,

      Defendant.

Civil Action No. 2:13-cv-665-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

      Plaintiff,

v.

US AIRWAYS, INC.

      Defendant.

Civil Action No. 2:13-cv-666-JRG

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

I.     NATURE AND STAGE OF THE PROCEEDING ........................................... 1

II.    STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT ............ 1

III.   SUMMARY OF THE ARGUMENT ................................................................. 2

IV.    STATEMENT OF FACTS ................................................................................ 4

       A.    The Specifications of the Patents-in-Suit ............................................ 4

       B.    '023 Patent Claims ............................................................................... 7

       C.    '550 Patent Claims ............................................................................... 9

V.     ARGUMENT ................................................................................................... 11

       A.    Applicable Legal Standards ................................................................ 11

             1.    Judgment On The Pleadings Is Appropriate Where There Are No
                   Disputed Facts And Judgment On the Merits Can Be Rendered
                   Based on The Pleadings .......................................................... 11

             2.    Ineligible Subject Matter Is A Threshold Question Of Law That Is
                   Appropriately Decided Now Upon A Motion For Judgment On
                   The Pleadings .......................................................................... 12

       B.    The '023 Patent Claims And The '550 Patent Claims Are Not Eligible for
             Patentability Under 35 U.S.C. § 101 .................................................. 14

             1.    The '023 Patent Claims Are Not Patentable Because They Purport
                   to Claim the Abstract Idea of Currency Conversion .............. 15

             2.    The '023 Patent Claims Fail the Federal Circuit's "Machine-or-
                   Transformation" Test ............................................................... 19

             3.    Like The '023 Patent Claims, The '550 Patent Claims Are Also
                   Not Patentable Because They Also Purport to Claim the Abstract
                   Idea of Currency Conversion. ................................................. 22

             4.    Like The '023 Patent Claims, The '550 Patent Claims Also Fail the
                   Federal Circuit's "Machine-or-Transformation" Test ............. 25

VI.    CONCLUSION ................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
    728 F.3d 1336 (Fed. Cir. 2013).................................................................3, 18, 24

*Ashcroft v.Iqbal,*
    556 U.S. 662 (2009)...........................................................................................11

*Bancorp Servs, L.L.C. v. Sun Life Assurance Co.,*
    687 F.3d 1266 (Fed. Cir. 2012) .................................................................. *passim*

*In re Bilski,*
    545 F.3d 943 (Fed. Cir. 2008), *aff'd* 130 S. Ct. 3218 (2010) ........................ *passim*

*buySAFE, Inc. v. Google Inc.,*
    2013 WL 3972261 (D. Del. July 29, 2013) ......................................................14

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
    No. 6:12-CV-674, 2014 WL923280 (E.D. Tex. Jan. 21, 2014)...............2, 1,, 12, 15

*CLS Bank Int'l v. Alice Corp.,*
    717 F.3d 1269 (Fed. Cir. 2013) (en banc), *cert. gratned*, 134 S. Ct. 734 (2013) .............17, 18

*CyberFone Sys., LLC v. Cellco P'ship,*
    No. 11-827, 2012 WL 3528115 (D. Del. Aug. 16, 2012)......................................13

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011)................................................................... *passim*

*Dealertrack, Inc. v. Huber,*
    674 F.3d 1315, 1333-34 (Fed. Cir. 2012), .................................................. passim

*Diamond v. Diehr,*
    450 U.S. 175 (1981)...........................................................................................14

*Digitech Image Techs., LLC v. Sigma Corp.,*
    No. 8:12-cv-1681, 2013 WL 3947137 (C.D. Cal. July 31, 2013) ....................8, 16, 17

*Doe v. MySpace, Inc.,*
    528 F.3d 413 (5th Cir. 2008) ............................................................................11

*Erickson v. Pardus,*
    127 S.Ct. 2197 (2007)........................................................................................11

*Fort Props., Inc. v. Am. Master Lease, LLC*,
  671 F.3d 1317 (Fed. Cir. 2012)..................................................................21, 26

*Funk Brothers Seed Co. v. Kalo Inoculant Co.*,
  333 U.S. 127 (1948) ...........................................................................................14

*Glory Licensing LLC v. Toys "R" Us, Inc.*,
  No. 09-4252, 2011 WL 1870591 (D.N.J. May 16, 2011) ....................................12

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ..................................................................................... *passim*

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ..............................................................................11

*H-W Tech., L.C. v. Apple, Inc.*,
  No. 3:11-cv- 651, 2012 WL 959316 (N.D. Tex. Feb. 23, 2012), *report and
  recommendation adopted*, 2012 WL 923751 (N.D. Tex. Mar. 19, 2012) ............13

*Internet Patents Corp. v. Gen. Auto. Ins. Servs., Inc.*,
  No. C 12-05036, 2013 WL 7936688 (N.D. Cal. Sept. 24, 2013) ...............10, 15, 24

*Le Roy v. Tatham*,
  55 U.S. 156 (1853)..............................................................................................14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) ...........................................................................2, 3, 14, 16

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  No. C-12-1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012).............................15

*Parker v. Flook*,

  437 U.S. 584 (1987)................................................................................ 8, 15, 16, 17

*Prompt Medical Systems, L.P. v. Allscriptsmysis Healthcare*,
  No. 6:10-cv-71, 2012 WL 678216 (E.D. Tex. Feb. 13, 2012) (Davis, J.) .............13

*SiRF Tech., Inc. v. ITC*,
  601 F.3d 1319 (Fed. Cir. 2010).............................................................................18

*Ultramercial, LLC v. Hulu, LLC*,
  657 F.3d 1323 (Fed. Cir. 2011), *vacated on other grounds by WildTangent, Inc. v.
  Ultramercial, LLC*, 132 S.Ct. 2431 (2012)...........................................................13

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.*
    No. 6:12-CV-375, 2013 WL 7393173 (E.D. Tex Mar. 27, 2013) ................................. *passim*

*Voest-Alpine Trading USA Corp. v. Bank of China*,
    142 F.3d 887 (5th Cir. 1998) ............................................................................................11

**STATUTES, RULES AND REGULATIONS**

35 U.S.C. § 101 ................................................................................................................ *passim*

Rule R. Civ. P.12(b)(6) .......................................................................................................11, 12

Fed. R. Civ. P. 12(c) ...........................................................................................................11, 12

# I. NATURE AND STAGE OF THE PROCEEDING

On August 20, 2013, Plaintiff Loyalty Conversion Systems Corporation ("LCSC") filed these actions against Delta Air Lines, Inc. ("Delta"), US Airways, Inc. ("US Airways"), United Airlines, Inc. ("United"), American Airlines, Inc. ("American"), Southwest Airlines, Co. ("Southwest"), Spirit Airlines, Inc. ("Spirit"), and Frontier Airlines, Inc. ("Frontier") (collectively "Defendants"). LCSC alleges that each of the Defendants' loyalty points programs infringe U.S. Patent No. 8,313,023 ("the '023 Patent")[1] and U.S. Patent No. 8,511,550 ("the '550 Patent")[2] (collectively "the Patents-in-Suit"). On March 17, 2014, Petitions for Covered Business Method ("CBM") Patent Review were filed under the Leahy-Smith America Invents Act in the U.S. Patent and Trademark Office seeking review of the Patents-in-Suit.[3] Defendants have simultaneously filed a motion to stay pending review of the CBM petitions. If the Court is not inclined to grant the stay, Defendants respectfully move this Court to grant judgment on the pleadings that at least claims 31-34, 36-42, and 44-46 of the '023 Patent ("'023 Patent Claims") and claims 1-3 and 5-7 of U.S. Patent 8,511,550 ("'550 Patent Claims") (collectively referred to as "asserted claims") are invalid as ineligible subject matter under 35 U.S.C. § 101.

# II. STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT

Whether the '023 and '550 Patents are invalid pursuant to 35 U.S.C. § 101 as ineligible subject matter.

---

[1] The '023 Patent is attached to each filed complaint as Exhibit 1. *See*, *e.g.*, Dkt 1-1 of 2:13-cv-00659-JRG.

[2] The '550 Patent is attached to each filed complaint as Exhibit 2. *See*, *e.g.*, Dkt 1-2 of 2:13-cv-00659-JRG.

[3] Defendants Delta Air Lines, United Airlines, U.S. Airways, American Airlines, and Frontier Airlines filed the CBM petitions (hereafter, referred to collectively as "the CBM Defendants").

III.    **SUMMARY OF THE ARGUMENT**

The '023 Patent Claims and '550 Patent Claims are directed to nothing more than the abstract and well-known idea of currency conversion. For instance, the '023 Patent Claims are directed to "transfers or conversion of quantities of non-negotiable credits to entity independent funds in accordance with a credits-to-funds ratio," ('023 Patent at 9:60-63) and the '550 Patent Claims are directed to "a conversion option to convert at least a subset of the shown non-negotiable credits into a quantity [of] entity independent funds . . . in accordance with a fixed credits-to-funds conversion ratio." '550 Patent at 6:54-6; *see* also '023 Patent and '550 Patent Figs. 2 (showing 100 entertainment rewards converted to $100). This abstract process of currency conversion has been performed for years by human beings simply by exchanging one type of paper currency for another based on an exchange rate. Case law from the Supreme Court, Federal Circuit, and district courts make clear that such a process is not eligible for patentability.

Indeed, the Patents-in-suit contemplate that the claimed methods can be implemented by a human being. *See* '023 Patent at 3:42-44 and '550 Patent at 3:64-67 ("the methods detailed herein can also be methods performed at least in part by *a service agent* and/or a machine manipulated by a *service agent*," (emphases added)). Such simple calculations that can be performed by human beings, without the use of any inventive, special-purpose hardware or software, are as a matter of law unpatentable abstract ideas. *See, e.g., Gottschalk v. Benson*, 409 U.S. 63, 72 (1972); *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012); *see also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,* No. 6:12-CV-674, 2014 WL923280, at *1, *4 (E.D. Tex. Jan. 21, 2014) (Davis, J.) (ruling that claims directed to a "system which facilitates sales from an

inventory of the selling entity," were unpatentable because the independent claim could be "performed entirely by a human, mentally or with pencil and paper").

Moreover, the Patents-in-Suit acknowledge that the claimed conversion can be performed by using nothing more than a general purpose computer and a general computer program written in any expression or any language. For example, both of the Patents-in-suit explicitly state that "[a]ny kind of computer system or other apparatus adapted for carrying out the methods described herein is suited . . . [such that a] typical combination of hardware and software *may be a general purpose computer system with a computer program*." '023 Patent at 5:64-6:3 (emphases added) and '550 Patent at 6:18-24 (emphases added).

While independent claims 31 and 39 of the '023 Patent recite "at least one or more computers" or "one or more non-transitory computer-readable mediums," and independent claim 1 of the '550 Patent recites "a computer," "Web pages," and "graphical user interface," these terms are merely generic recitations of general purpose computers that are not tied to any particular machine, require no special programming, and provide no meaningful recitation. Nor do the dependent claims' recite any additional components.

Merely adding terms like "computer" or "Internet" or "web page" reciting basic functionality of any general purpose computer, does not confer patentability on an otherwise abstract idea. *See, e.g., Bilski* 130 S. Ct. at 3230; *Mayo*, 132 S. Ct. at 1294; *Dealertrack, Inc. v. Huber*, 674 F. 3d 1315 (Fed. Cir. 2012); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[S]imply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one."), *petition for cert. filed,* 82 U.S.L.W. 3469 (U.S. Jan. 31, 2014) (No. 13-918); *Uniloc USA, Inc. v. Rackspace Hosting, Inc.* No. 6:12-CV-

375, 2013 WL 7393173, at *4 (E.D. Tex Mar. 27, 2013) (Davis, J.). General purpose computers programmed in an unspecified manner cannot make these claims patent eligible under the machine-or-transformation test, nor do they provide inventive subject matter to promote the claims from mere abstract ideas. *Id.*

Judgment on the pleadings in favor of Defendants is warranted because the '023 Patent and '550 Patent claim the abstract idea of converting currency, subject matter that is not patent eligible. This case is ripe for such a judgment because no discovery is needed to resolve this issue of law, there are no claim construction issues that bear on whether the claims recite an unpatentable abstract idea, and the grant of judgment on the pleadings in favor of Defendants would avoid unnecessary litigation.

For these reasons, and as more fully set forth below, the Claims of the Patents-in-Suit are invalid under at least 35 U.S.C. § 101.

IV.    **STATEMENT OF FACTS**

A.    **The Specifications of the Patents-in-Suit[4]**

The Patents-in-Suit relate to converting "non-negotiable credits provided by an entity to negotiable funds." '023 Patent at 2:32-34; '550 Patent at 2:53-55. In other words, the Patents-in-Suit relate to converting currency. *See* '023 and '550 Patents at Fig. 2. The "non-negotiable credits" are described as credits, such as "frequent flier miles, consumer loyalty points, and entertainment credits" that cannot be negotiated for goods or services with any entity other than the entity issuing them to a consumer. *See* '023 Patent at 1:20-37; '550 Patent at 1:40-57. "Negotiable funds" (also described as entity independent funds) are described as a monetary amount (*e.g.*, monetary currency) that can be negotiated for goods and services and are

---

[4] The specifications of the Patents-in-Suit are nearly identical and will be addressed together.

4

independent of any relationship to an entity. *See* '023 Patent at 5:1-13, Figure 2; '550 Patent at 5:23-34.

As shown in Fig. 1 (reproduced below), the disclosed "entity independent funds system" includes a client 110, which can be any of a variety of interfaces including, but not limited to another *human being*, a personal computer . . . , a mobile phone, and the like." '023 Patent at 3:53-55 (emphasis added); '550 Patent 3:64-4:12.



The Patents-in-Suit do not provide any detail regarding the hardware or structure of servers 120, 130, 140, and 150 other than the fact that"[a]ny kind of computer system" including a "general purpose computer system" can be used to implement such components. *See* '023 Patent at 5:64-67 and '550 Patent at 6:18-24. With respect to the process of converting non-negotiable credits to negotiable funds, the Patents-in-Suit merely state that the consumer can use a "conversion agency" to convert earned loyalty points into their "monetary equivalent." *See* '023 Patent at 4:8-25 and '550 Patent at 4:30-47. There is no disclosure on how the conversion takes place, or how the conversion agency is implemented.

Such a conversion from one form of currency to another has been around for years and is not a novel concept. In fact, a search for patents directed to currency conversion on the website for the United States Patent and Trademark Office, www.uspto.gov, reveals at least the following two such patents: U.S. Patent Nos. 3,083,906 and 3,795,795 (showing a 1963 and a 1974 apparatus including a slide-rule for currency conversion). Tellingly, the patent itself does not state that the mechanisms by which its claimed conversion takes place are novel. To the contrary, the patent discloses that the methods can be performed by a human being, with the assistance of only a general purpose computer system. *See* '023 Patent at 3:42-45 and 5:64-66 and '550 Patent at 3:64-67 and 6:18-20 (emphasis added) (the disclosed methods can be "performed at least in part by a **service agent**" and/or "[a]ny kind of computer system or other apparatus adapted for carrying out the methods described herein is suited.")

While the computer system disclosed in the Patents-in-Suit includes servers, the patents acknowledge that a special-purpose computer is not required to practice the claimed subject matter. *See* '023 Patent at 5:66-6:3 and '550 Patent at 6:20-24 ("a typical combination of hardware and software may be a general purpose computer system with a computer program"). Further, nothing more than a general purpose computer is needed because currency conversion is a simple calculation that can be performed by using a pen and paper, or alternatively, a manual calculator, or a slide rule. *See* '023 Patent at 3:42-45 and'550 Patent at 3:64-67. Here, the claimed conversion is the simple multiplication equation:

$$Currency\ A * Conversion\ Ratio = Currency\ B.$$

The Patents-in-Suit apply this simple equation by disclosing converting 100 entertainment reward points into $100 using a 1:1 ratio which is simply multiplying 100 entertainment points (Currency A) by 1 (Conversion Ratio) which results in $100 dollars (Currency B).

$100 (entertainment rewards) *1/1 = 100 (points)

*See* '023 and '550 Patent at Figure 2.

The claimed "conversion," as disclosed, is nothing more than the simple application of a mathematical ratio to determine the amount of currency that should be exchanged for a number of credits or loyalty points. And, as referenced in the patent, this conversion is something that can be performed easily by a human. *See* '023 Patent at 3:42-45, 5:64-66 and '550 Patent at 3:64-67 and 6:18-20.

## B. '023 Patent Claims[5]

The '023 Patent Claims include independent claims 31 and 39 and dependent claims 32-34, 36-38, 40-42, and 44-46. Claim 31, which is similar in scope to claim 39, is directed to a method for currency conversion comprising the steps of:

> a commerce partner **agreeing to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds in accordance with a credits-to-funds ratio**, wherein the non-negotiable credits have been earned as part of a rewards program of an entity, wherein the commerce partner accepts the entity independent funds for goods or services that the commerce partner provides, wherein in absence of the non-negotiable credits being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides, wherein the entity-independent funds are loyalty points of a loyalty program of the commerce partner;
>
> at least one of one or more computers detecting a communication over a network to **grant a consumer a quantity** of the entity independent funds, wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-funds ratio, wherein the subset of the non-negotiable credits are expended as part of the conversion

---

[5] During the prosecution of the '023 Patent, on September 6, 2012, the USPTO issued a Non-Final Office Action rejecting unasserted claims 1-30 under section 101. In response to the Office Action, Applicant amended independent claim 30 to merely add the term "non-transitory" to overcome the 101 rejection and added new claims 31-46 that—according to applicants—were taken from a different perspective. This has no bearing on the issue here – whether the claims disclose an unpatentable abstract idea in accordance with 101. All the asserted claims of the '023 Patent are included in these newly added claims. These claims were allowed without any rejection, and the '023 Patent issued on November 20, 2012

or transfer, and wherein the commerce partner is compensated for providing the entity independent funds to the consumer; responsive to the communication,

at least one of one or more computers **granting the consumer** the quantity of the entity independent funds; and

the at least one of the one or more computers **accepting at least a portion** of the quantity of entity independent funds **in exchange for the goods or services** that the commerce partner provides, wherein the one or more computers do not accept the non-negotiable credits of the entity's rewards program for the goods or services in absence of the conversion or transfer.

'023 Patent at 9:60-10:27 (emphases added).

Claim 31 is solely directed to the abstract concept of converting currency and, as part of claiming that concept, includes steps that are not novel, or inventive in any way. For example, all that is really described is a) an agreement to accept transfers of funds that are converted based on a ratio; b) granting a consumer a quantity of the converted funds; and c) accepting a portion of the converted funds to purchase goods or services from a commerce partner. *Id.* These steps are merely directed to exchanging currency and purchasing goods with the exchanged currency, and—as the patent acknowledges—can be performed manually by a human being. *Id.* at 3:42-45. Thus, they are not novel, and do not render the claimed methods statutory subject matter. "[I]f a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory." *See Digitech Image Techs., LLC v. Sigma Corp.*, No. 8:12-cv-1681, 2013 WL 3947137, at *8 (C.D. Cal. July 31, 2013) (quoting *Parker v. Flook*, 437 U.S. 584, 595 (1978)).

Independent claim 39 is similar in scope to claim 31 and merely differs from claim 31 in that claim 39 recites "non-transitory computer-readable medium" instead of "at least one or more computers." *See* '023 Patent at 11:1-41. Thus, claim 39 is also directed to the abstract concept of

currency conversion which can be performed by a human being and, at most, only recites the use of a general purpose computer.

Dependent claims 32-34, 36-38, 40-42, and 44-46 also do not recite anything more than abstract steps related to currency conversion and/or the use of general purpose computers.  *See* '023 Patent at 10:28-67 and 11:42-12:46.

## C.    '550 Patent Claims[6]

The '550 Patent Claims include independent claim 1 and dependent claims 2, 3, and 5-7. Like claims 31 and 39 of the '023 Patent, claim 1 of the '550 Patent is also directed to a method for currency conversion comprising the steps of:

> a computer serving a set of one or more Web pages for a loyalty program of an entity to one or more remotely located client machines, wherein the Web pages are able to be rendered within a client-side browser as a graphical user interface on the one or more client machines, wherein upon being rendered within the client-side browser said graphical user interface **shows a quantity of non-negotiable credits**, wherein said non-negotiable credits are loyalty points of the loyalty program possessed by a member, wherein upon being rendered within the client-side browser the graphical user interface comprises **a conversion option to convert at least a subset of the shown non-negotiable credits into a quantity entity independent funds**, wherein said entity independent funds are different loyalty points of a different loyalty program of a commerce partner, wherein said entity independent funds are possessed by the member, wherein **an agreement exists between the entity and the commerce partner**, wherein the agreement permits members to convert the non-negotiable credits to the entity independent funds in accordance with a fixed credits-to-funds conversion ratio, wherein the **agreement specifies that the entity is to compensate the commerce partner in an agreed upon amount of cash or credit** for conversions of non-negotiable credits to entity independent funds, wherein said agreed upon amount is a multiple of a quantity of converted non-negotiable credits, wherein the entity **independent funds are redeemable per the different loyalty program for commerce partner goods or for commerce partner services**, wherein the commerce partner is not said entity, wherein in absence of being converted the non-negotiable credits are not accepted as payment for commerce partner goods or for commerce partner services;

---

[6] The '550 Patent issued without any prior art rejections during a brief four month prosecution.

9

the computer responsive to receiving a message indicating a selection of the conversion option, **processing the selection to effectuate changes in the served set of Web pages**; and

responsive to the processing, the computer **serving one or more Web pages or Web page updates** that include the effectuated changes to the one or more remotely located client machines, wherein upon being rendered within the client-side browser the graphical user interface is updated with the effectuated changes, wherein the updated graphical user interface shows a reduced quantity of non-negotiable credits possessed by the member in the loyalty program, said reduced quantity resulting at least in part from the subset of non-negotiable credits being converted into the quantity of entity independent funds in accordance with the fixed credits-to-funds conversion ratio.

'550 Patent at 6:42-7:26 (emphases added).

Claim 1 is solely directed to the abstract concept of converting currency and, as part of claiming that concept, includes steps that are not novel, or inventive in any way. At most, the difference between the steps in the '023 Patent Claims and the steps in claim 1 of the '550 Patent is that these steps include reciting post-solution activity, i.e., showing results of the conversion on a Web page. *See Dealertrack,* 674 F. 3d at 1334 (a computer-aided method claim with references to display device and terminal devices and nothing more particular was found ineligible); *Internet Patents Corp. v. Gen. Auto. Ins. Servs., Inc.*, No. C 12-05036, 2013 WL 7936688, at *1, * 4 (N.D. Cal. Sept. 24, 2013) (ruling that a claim for providing "Dynamic Tabs for a Graphical User Interface" that includes displaying icons on a web page was invalid under Section 101 because "[t]he addition of a computer limitation does not transform the abstract idea into a patentable invention.") Showing results of currency conversion have been performed for many years and can merely be shown on a paper identifying the exchanged amount and the exchange rate or manually when one type of paper currency is exchanged for another type of paper currency. Like the '023 Patent, the '550 Patent also concedes that these steps can be performed by a human being or at most by a general purpose computer. *See* '550 Patent at 3:64-67 and 6:18-24.

Dependent claims 2, 3, and 5-7 also do not recite anything more than abstract steps related to currency conversion and/or the use of general purpose computers. *See* '550 Patent at 7:27-55.

## V. <u>ARGUMENT</u>

### A. Applicable Legal Standards

#### 1. Judgment On The Pleadings Is Appropriate Where There Are No Disputed Facts And Judgment On the Merits Can Be Rendered Based on The Pleadings

Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant." *Clear with Computers,* 2014 WL923280, at * 2 (citing *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007) (per curiam)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 556 U.S. 662, 678 (2009). "'A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). In considering a Rule 12(c) motion for judgment on the pleadings, the court may look at documents attached to the complaint "'because these documents thereby [become] part of [the] pleadings.'" *Id.* at 313 (quoting *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n. 4 (5th Cir. 1998)).

### 2. Ineligible Subject Matter Is A Threshold Question Of Law That Is Appropriately Decided Now Upon A Motion For Judgment On The Pleadings

Section 101 of the Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court has repeatedly identified three areas of subject matter that are ineligible for patenting: (1) laws of nature, (2) physical phenomena, and (3) abstract ideas. *Bilski*, 130 S. Ct. at 3225. The primary issue presented by this motion—invalidity under § 101—is a question of law. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (en banc), *aff'd*, 130 S. Ct. 3218 (2010) . The pleadings themselves are the threshold of litigation, and the question of invalidity under § 101 is a "threshold inquiry" of law. *Id*. at 950.

Section 101 issues are properly addressed at the motion to dismiss stage in cases, such as this one, where the asserted patent claims plainly cover subject matter that is not patentable. *See, e.g.*, *Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-cv-4252, 2011 WL 1870591, at *1-4 (D.N.J. May 16, 2011) (dismissing patent infringement complaint for failure to state a claim because claims covering a "system for processing information" on a programmed computer were directed to an "abstract idea" and thus unpatentable under § 101). In fact, this Court recently granted a motion to dismiss on the pleadings under Fed. R. Civ. P. 12(c), on the grounds that the asserted patent claims are invalid under § 101. *Clear with Computers,* 2014 WL923280, at *8. Similarly, this Court granted a motion to dismiss under Fed. R. Civ. P. 12(b)(6), on the grounds that the asserted patent claims did not embody patentable subject matter under § 101. *Uniloc USA,* 2013 WL 7393173, at *5.

Moreover, claim construction is not necessary here because the claims are not directed to anything more than the abstract concept of currency conversion. Claim construction will not

effect the determination of whether the claims are eligible for patentability given that the claimed steps are: 1) directed to an abstract idea; 2) the claimed steps can be provided by a human being; and 3) the Patents-in-Suit explicitly recite that nothing more than a general purpose computer is needed to perform the claimed steps. Further, the Federal Circuit and this Court have both confirmed that Section 101 issues can be determined without claim construction. *See, e.g.*, *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (noting that, in *Bilski*, "the Supreme Court f[ound] subject matter ineligible for patent protection without claim construction") *petition for cert. filed,* 82 U.S.L.W. 3319 (U.S. Nov. 8, 2013) (No. 13-584); *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1325 (Fed. Cir. 2011) ("[T]he subject matter at stake and its eligibility does not require claim construction"), *vacated on other grounds by WildTangent, Inc. v. Ultramercial, LLC*, 132 S.Ct. 2431 (2012); *CyberFone Sys., LLC v. Cellco P'ship*, No. 11-827, 885 F.Supp.2d 710, 715 (D. Del. 2012) (holding claims to the use of a telephone for capturing, processing, and storing data not patentable under § 101 "without the benefit of claim construction") *aff'd sub nom. Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,* No. 2012-1673, 2014 WL 718153 (Fed. Cir. Feb. 26, 2014); *H-W Tech., L.C. v. Apple, Inc*., No. 3:11-cv- 651, 2012 WL 959316, at *5 (N.D. Tex. Feb. 23, 2012) ("claim construction may not always be necessary for determining subject matter eligibility"), *report and recommendation adopted*, 2012 WL 923751 (N.D. Tex. Mar. 19, 2012); *Prompt Med. Sys., L.P. v. Allscriptsmysis Healthcare Solutions, Inc.*, No. 6:10-cv-71, 2012 WL 678216 at *3 (E.D. Tex. Feb. 13, 2012) (Davis, J.) (claim construction is "not always necessary").

As noted above, given that the claims are directed to the abstract concept of currency conversion, there are no claim construction issues that have any bearing on the patent eligibility under § 101, and no discovery or facts extraneous to the pleadings are necessary to make this

legal determination. *See buySAFE, Inc. v. Google Inc.*, 964 F. Supp. 2d 331, 337 (D. Del. 2013) (granting judgment on the pleadings that asserted patent was invalid under §101). Resolution of the issue now, early in the case, will alleviate the parties from extending considerable resources conducting discovery and preparing for Markman and trial.

**B.** **The '023 Patent Claims And The '550 Patent Claims Are Not Eligible for Patentability Under 35 U.S.C. § 101**

In determining whether a claim is directed to eligible subject matter, courts consider the claim as a whole rather than evaluating elements separately. *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). Although § 101 includes as eligible subject matter "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," the Supreme Court has repeatedly emphasized, "laws of nature, physical phenomena, and abstract ideas" are "part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none." *Bilski*, 130 S.Ct. at 3225 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). Mathematical calculations are a paradigmatic example of "abstract ideas." *Benson*, 409 U.S. at 65; *Le Roy v. Tatham*, 55 U.S. (14 How.) 156, 175 (1853) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right."). A claim is not patent-eligible where it merely recites a law of nature or abstract idea and adds additional steps that merely reflect routine, conventional activity of those who work in the field. *Mayo,* 132 S. Ct. at 1298. The Supreme Court accordingly has enforced "a bright-line prohibition against patenting . . . mathematical formulas and the like," let alone a simple calculation involving a ratio. *Prometheus*, 132 S.Ct. at 1303.

LCSC's Pleadings violate this "bright-line prohibition" and should be dismissed as a matter of law.

### 1. The '023 Patent Claims Are Not Patentable Because They Purport to Claim the Abstract Idea of Currency Conversion.

As noted above, the '023 Patent Claims cover nothing more than the abstract concept of currency conversion. *See* '023 Patent at 2:32-39. The Supreme Court has many times ruled that mathematical calculations, even if they are innovative (which is not the case here), are unpatentable abstract ideas. *Benson*, 409 at 72; *Flook*, 437 U.S. at 587-86. Indeed, this Court recently ruled that a patent for "optimizing the processing of floating point numbers," or numbers with digits to the right and left of the decimal, by a computer which is more complex than processing integers, was invalid under § 101 for claiming a mathematical formula. *Uniloc USA,* 2013 WL 7393173, at *4 ("[J]ust as in *Benson*, Claim 1 discloses a 'procedure for solving a given type of mathematical problem.'") (quoting *Benson,* 409 U.S. at 65); *see also Clear with Computers,* 2014 WL923280, at * 1, *4 (ruling that claims directed to a "system which facilitates sales from an inventory of the selling entity," were unpatentable because the independent claim could be "performed entirely by a human, mentally or with pencil and paper").

Similarly, the U.S. District Court for the Northern District of California recently ruled that a patent for "pricing a product for sale" was invalid under Section 101 because it claimed nothing more than "the calculation of a demand curve based on consumer response to different price points," and was "as abstract as *Bilski*'s patent." *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233, 2012 WL 3985118, at *2, *16-17 (N.D. Cal. Sept. 11, 2012); *see also Internet Patents Corp.*, 2013 WL 7936688, at * 4 ("The addition of a computer limitation does not transform the abstract idea into a patentable invention.")

The '023 Patent likewise claims only the abstract idea of converting currency with nothing more than "well-understood, routine, conventional activity" added. *See Mayo*, 132 S.

Ct. at 1294. The '023 Patent Claims do not add anything beyond routine, conventional activities to this unpatentable abstract concept. *See* '023 Patent at 9:59-12:46. For example, as noted above, claim 31 involves several largely insignificant steps related to currency conversion including: (1) "a commerce partner *agreeing* to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds in accordance with a credits-to-funds ratio…;" (2) "*granting* the consumer the quantity of the entity independent funds;" and (3) "*accepting* at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides." *Id.* at 9:60-10:27 (italics added).

These steps are insignificant because they are not novel, or inventive in any way, and all that is described is an agreement to accept transfers; a granting of the requested quantity; and accepting a portion of the requested quantity. *Id.* These concepts were well known before the filing of the patent, and have been performed manually when exchanging currency for years.

The Federal Circuit has confirmed, "mental processes" — such as those in *Benson*, *Flook*, and Claim 31 of the '023 Patent — are not patentable, whether they are completed manually, or require computer implementation. *Bancorp*, 687 F.3d at 1278. Further, such a simple mathematical calculation is not eligible for patent protection. "'[I]f a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory.'" *Digitech Image Techs.,* 2013 WL 3947137, at *8 (quoting *Flook*, 437 U.S. at 595).

The abstract nature of the '023 Patent Claims is confirmed by the patent itself, which makes clear that the currency conversions recited in the claims can be performed manually. Specifically, the patent discloses that "the methods detailed herein can also be methods performed at least in part by a service agent and/or a machine manipulated by a service agent in response to a

service request." '023 Patent at 3:42-45. The '023 Patent further states that a consumer can interact with a "conversion agency server 130 via client 110…[which] can be any of a variety of interfaces including, but not limited to, another human being." '023 Patent at 3:52-54, 60-63, FIG. 1. This demonstrates the '023 Patent Claims' invalidity because methods which can be performed "in the human mind, or by a human using a pen and paper" are unpatentable. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

While claim 31 of the '023 Patent recites "at least one or more computers" the '023 Patent makes clear that this computer may be "[a]ny kind of computer system" including a "general purpose computer system." '023 Patent at 5:64-67. Based on well-established law, the use of a general purpose computer renders claim 31 unpatentably abstract. Using a computer "for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes." *Bancorp Servs,* 687 F.3d at 1278. The computer must be "integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Id.* "[A]ppending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit claim scope for purposes of patent eligibility." *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (en banc) (citing *Bancorp*, 687 F.3d at 1278, and *Dealertrack*, 674 F.3d at 1333-34 (finding that the claimed computer-aided clearinghouse process is a patent-ineligible abstract idea)), *cert. granted,* 134 S. Ct. 734 (2013); *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly,

*i.e.*, through the utilization of a computer for performing calculations."); *Accenture Global Servs.,* 728 F.3d at 1345 ("simply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one.").

Nothing in the patent suggests that a computer is integral to the invention. Rather, the patent makes clear that the computer is merely disclosed to accept the request for conversion, convert the non-negotiable credits into entity independent funds based on a simple "credits-to-funds" ratio, and make the entity independent funds available to the consumer for use. There is nothing special about the computer and, in fact, the patent specifically discloses <u>only</u> a general purpose computer. *See e.g.*, '023 Patent at 9:59-12:46, FIG. 2, FIG. 3. Each of these steps can be performed by humans without the aide of computers. It is clear the computer disclosed in the '023 Patent is merely automating steps humans can, and have, easily performed on their own for some time. *See* U.S. Patent Nos. 3,083,906 and 3,795,795 showing a 1963 and a 1974 apparatus including a slide-rule for currency conversion).

Independent claim 39 is similar in scope to claim 31 and is also directed to the abstract idea of currency conversion. *See* '023 Patent at 11:1-41. The primary difference is that claim 39 replaces the conventional component of "at least one or more computers" with the conventional component of "non-transitory computer-readable medium." *Id.* The use of non-transitory computer-readable medium, however, does not change the fact that independent claim 39 of the '023 Patent is also directed to an abstract idea and recites non-transitory computer-readable medium "for no more than its most basic function—making calculations or computations—[and] fails to circumvent the prohibition against patenting abstract ideas and mental processes." *Bancorp*, 687 F.3d at 1278.

Dependent claims 32-34, 36-38, 40-42, and 44-46 are as abstract as independent claims 31 and 39, and do not make the purported invention patentable. For example, claims 32 and 40 are directed to "loyalty program account" of the consumer and recite the mathematical step of "*adding* the quantity of independent funds" into the account. *See* '023 Patent at 10:28-38 and 11:42-12:8. Claim 33 is directed to "*completing* a sale of good or services, where the consumer expends . . . the entity independent funds." *Id.* at 10:39-44. Claims 34 and 42 are directed to the mathematical step of using a "credit-to-fund ratio" to transfer or convert the entity independent funds. *Id.* at 10:45-49 and 11:18-24.

Claims 36 and 44 recite that a "single" computer (which the '023 Patent discloses as a general purpose computer) "detects . . . , grants . . . and accepts," while claims 37 and 45 recite that a "plurality" of computers perform these same steps. *Id.* at 10:55-64 and 12:30-42. Claims 38 and 46 merely identify that the one or more computers are "owned by or operated for the commerce partner." *Id.* at 10:65-67 and 12:43-46.

Thus, like independent claims 31 and 39, dependent claims 32-34, 36-38, 40-42, and 44-46 are directed to abstract concepts of performing addition, applying ratios, completing sales, identifying owners, and merely recite the use of general purpose computers for no more than their performing basic functions.

Accordingly, the '023 Patent Claims are directed to ineligible subject matter and are invalid under 35 U.S.C. § 101 for at least these reasons.

### 2. The '023 Patent Claims Fail the Federal Circuit's "Machine-or-Transformation" Test

Prior to the Supreme Court's decision in *Bilski*, the Federal Circuit evaluated Section 101 issues using a "machine-or-transformation" test. In *Bilski*, the Supreme Court held that, although

this is "not the sole test" for determining whether a patent covers eligible subject matter, it can be a "useful and important clue." 130 S.Ct. at 3227.

Under the "machine-or-transformation" test, a process may be patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski*,130 S.Ct. at 3225-26 (quoting *In re Bilski*, 545 F.3d at 954). However, the "machine" portion of the test requires more than simply performing an unpatentable process on a general purpose computer. The "particular" machine must impose a meaningful limit on the scope of the claim, "rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, *i.e.*, through the utilization of a computer for performing calculations." *Dealertrack,* 674 F.3d at 1333. Moreover, the "transformation" portion of the test cannot be satisfied by the "[m]anipulation or reorganization of data," or the transfer of data from one format to another. *CyberSource*, 654 F.3d at 1375 (holding that such manipulation of data was merely "the incidental use of a computer to perform [a] mental process").

As stated above, the '023 Patent Claims merely recite conventional components including "at least one or more computers," "a computer program product," "non-transitory computer-readable medium" and/or "program instructions. *See* '023 Patent 9:59-12:46. The '023 Patent, however, explicitly states that these components are nothing more than a general purpose computer:

> The present disclosure may be realized in hardware, software, or a combination of hardware and software. The present disclosure may be realized in a centralized fashion in one computer system or in a distributed fashion where different elements are spread across several interconnected computer systems. ***Any kind of computer system or other apparatus*** adapted for carrying out the methods described herein is suited. A typical combination of hardware and software may be ***a general purpose computer system*** with a computer program, that when being loaded and executed, controls the computer system such that it carries out the methods described herein…. ***Computer program in the present context means any expression, in any***

**language, code or notation, of a set of instructions intended to cause a system having any information processing capability to perform a particular function** either directly or after either or both of the following: a) conversion to another language, code or notation; b) reproduction in a different material form.

*Id.* at 5:59-6:15 (emphasis added).

Nothing in the claims or the patent indicates that any particular machine or device is needed. "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not. *See Bancorp*, 687 F.3d at 1278. The minimal computer involvement found in the '023 Patent has long been found insufficient to impart patent-eligibility. *See, e.g., Benson*, 409 U.S. at 67 (invalidating claims that "can be carried out in existing computers long in use, no new machinery being necessary," and that "can also be performed without a computer"); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) (invalidating claims "using a computer" because the computer did not "play a significant part in permitting the claimed method to be performed") (quoting *Dealertrack,* 674 F.3d at 1333).

Finally, the '023 Patent Claims also do not transform any article into a different state or thing. The claims merely describe converting one form of currency—non-negotiable credits—into negotiable funds or entity independent funds by using a "ratio [that] can be determined by any of a variety of means." See '023 Patent at 5:47-51; 9:59-12:46, FIG. 2, FIG. 3. Performing a simple calculation using a ratio is not a patent-eligible transformation. *See, e.g., CyberSource*, 654 F.3d at 1375; *see also Bancorp*, 687 F.3d. at 1273; *Uniloc USA*, 2013 WL 7393172, at *3 (holding that "[m]ere manipulation of data does not satisfy the machine-transformation test). Thus, '023 Patent Claims fail both prongs of the machine-or-transformation test because its recitation of a general purpose computer ("at least one or more computer" or "non-transitory

computer-readable medium") is not a meaningful limitation and its reorganization of data (converting or transferring non-negotiable credits to entity independent funds) does not constitute the necessary transformation. Moreover, as the case law makes clear, because the claimed method constitutes an abstract idea that can be performed manually by a human being, it cannot be made patentable simply by involving a computer in the process to make that process go quicker.

Thus, the '023 Patent Claims are not tied to a particular machine and do not transform articles, and are invalid under 35 U.S.C. § 101.

### 3. Like The '023 Patent Claims, The '550 Patent Claims Are Also Not Patentable Because They Also Purport to Claim the Abstract Idea of Currency Conversion.

Similar to the '023 Patent Claims, the '550 Patent Claims also cover nothing more than the abstract concept of currency conversion. *See e.g.*, '550 Patent at 6:41-7:55. As noted above, at most, the difference between the steps in the '023 Patent Claims and the steps in claim 1 of the '550 Patent is that these steps include post-solution activity, i.e., showing results of the conversion on a graphical user interface that displays Web pages[7]. *Id.* The Supreme Court, however, made clear that reciting a "computer" or components thereof cannot make an otherwise unpatentable claims, patentable. *Benson*, 409 U.S. at 72 (warning against "indirect attempts to obtain patents and avoid the rejection by [claiming] a machine **or components**

---

[7] Claim 1 of the '550 Patent also recites details of an agreement "wherein an agreement exists between the entity and the commerce partner, wherein the agreement permits members to convert the non-negotiable credits to the entity independent funds in accordance with a fixed credits-to-funds conversion ratio, wherein the agreement specifies that the entity is to compensate the commerce partner in an agreed upon amount of cash or credit for conversions of non-negotiable credits to entity independent funds, wherein said agreed upon amount is a multiple of a quantity of converted non-negotiable credits." Such recitations confirm that the '550 Patent claims are directed to an abstract idea of two parties entering into an agreement.

***thereof*** programmed in a given manner") (quoting The President's Commission on the Patent System; emphasis added).

Even with the use of web pages and graphical user interfaces, the claimed steps simply convert currency for use in the purchase of goods or services. *See* '550 Patent at 6:41-7:55. First, the steps disclosed in claim 1 of the '550 Patent can be performed by showing results of the conversion on a paper. Second, the steps of displaying web pages with results of the currency conversion show a rearrangement or reformatting of display data, which the Supreme Court has held is not a patent eligible conversion. *Benson*, 409 U.S. at 64. For example, the patent in *Benson* was directed to "the programmed conversion of numerical information [sic] in general-purpose digital computers." *Id*. The purported inventors claimed a method of programming a general purpose computer to convert signals from binary-coded decimal form ("BCD") into pure binary form. *Id*. at 65. The Supreme Court held that the claimed formulas for the conversion from one form of numerical representation to another were not patentable, because they were "mental processes, and abstract intellectual concepts." *Id*. at 67-68. The Court emphasized that "one may not patent an idea," and warned that this would have been the practical result of allowing to stand a patent that covered a mathematical algorithm for converting numbers that had "no substantial practical application except in connection with a digital computer." *Id.* at 71-72. Thus, like *Benson*, the reformatting of display data to show results on a web page in a graphical user interface of claim 1 of the '550 Patent is also not patentable.

Moreover, adding conventional components like "a browser," "a graphical user interface," and/or "Web pages," does not render an otherwise non-statutory claim statutory. *See*, *Dealertrack,* 674 F. 3d at 1334-35 (a computer-aided method claim with references to

display device and terminal devices and nothing more particular was found ineligible); *Accenture Global Servs.,* 728 F.3d at 1345 ("[S]imply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one.") For example, the U.S. District Court for the Northern District of California recently ruled that a claim for providing "Dynamic Tabs for a Graphical User Interface" that includes displaying icons on a web page was invalid under Section 101 because "[t]he addition of a computer limitation does not transform the abstract idea into a patentable invention." *Internet Patents Corp.* 2013 WL 7936688, at * 4.

Further, like the '023 Patent, the '550 Patent also makes clear that the currency conversions recited in the claims can be performed manually and at most recite a general purpose computer. *See* '550 Patent at 3:64-67 and 6:18-24. This further demonstrates the claims' invalidity because methods which can be performed "in the human mind, or by a human using a pen and paper" are unpatentable abstract ideas. *CyberSource*, 654 F.3d at 1372. Thus, for these reasons and the same reasons as identified above with respect to the '023 Patent Claims, claim 1 of the '550 Patent is also invalid under 35 U.S.C. § 101. *See Supra* § IV.B.1.

Dependent claims 2, 3, and 5-7 are as abstract as independent claim 1 and dependent claims of the '023 Patent discussed above, and do not make the purported invention patentable. For example, claim 2 is directed to showing a quantity of entity independent funds resulting from a conversion "in accordance with the fixed credits-to-funds conversion ratio." '550 Patent at 7:27-31. Claim 3 is directed to showing available entity independent funds "for use as payment for the goods and services." *Id*. at 7:32-37. Claim 5 identifies a "lower threshold amount" on the quantity of entity independent funds, claim 6 identifies the loyalty program being of "an airline, hotel, or credit card loyalty program," and claim 7 recites that Web pages are served in "a

single user-interactive Web session." *Id.* at 7:42-55. Thus, like independent claim 1, dependent claims 2, 3, and 5-7 are directed to abstract concepts of applying a ratio, showing available balance to purchase goods, identifying a minimum amount required for conversion, and merely recite the use of general purpose computers for no more than their performing basic functions.

Accordingly, the '550 Patent Claims are also directed to ineligible subject matter and are invalid under 35 U.S.C. § 101 for at least these reasons.

### 4. Like The '023 Patent Claims, The '550 Patent Claims Also Fail the Federal Circuit's "Machine-or-Transformation" Test

As noted above, the '550 Patent itself emphasizes that the so-called invention may be implemented by any general purpose computer. *See* '550 Patent at 6:13-35. Nothing in the '550 Patent Claims or the patent indicates that any particular machine or device is needed. "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not. *Bancorp*, 687 F.3d at 1278. The minimal computer involvement found in the '550 Patent has long been found insufficient to impart patent-eligibility. *See, e.g., Benson*, 409 U.S. at 67 (invalidating claims that "can be carried out in existing computers long in use, no new machinery being necessary," and that "can also be performed without a computer"); *Fort Props.*, 671 F.3d at 1323 (invalidating claims "using a computer" because the computer did not "play a significant part in permitting the claimed method to be performed") (quoting *Dealertrack*, 674 F.3d at 1333).

The '550 Patent Claims also do not transform any article into a different state or thing. Instead, the claims merely describe converting one form of currency—non-negotiable credits— into negotiable funds or entity independent funds by using a "ratio [that] can be determined by any of a variety of means" and performing post-solution activity including displaying web pages.

*See* '550 Patent at 5:47-51; 9:59-12:46, FIGS. 2 and 3. Such a conversion can be performed by a human being and would not involve changing the state of any article. *Id*. at 3:42-44. Even if the conversion is performed by a general purpose computer displaying web pages, and even if the conversion includes changing data from one format to another using a simple ratio, the Supreme Court has held that converting data from one format to another, through a known process, does not render a claim patent eligible. *See Benson*, 409 U.S. at 65. Moreover, performing a simple calculation using a ratio and displaying post-solution activity is not a patent-eligible transformation. *See*, *e.g.*, *CyberSource*, 654 F.3d at 1375; *see also Bancorp*, 687 F.3d. at 1273. Thus, performing the claimed calculation using a ratio and showing the results of the calculation by reformatting data is not a patent-eligible transformation. *See*, *e.g.*, *CyberSource*, 654 F.3d at 1375; *see also Bancorp*, 687 F.3d. at 1273; *Uniloc USA*, 2013 WL 7393173, at *3 (holding that mere manipulation of data does not satisfy the machine-transformation test).

Because the '550 Patent Claims are not tied to a particular machine and do not transform articles, and because the claims are directed to an abstract idea without adding significantly more, the '550 Patent Claims are invalid under 35 U.S.C. § 101 for these reasons and for the same reasons as identified above with respect to the '023 Patent Claims. *See Supra* § IV.B.2.

## VI.    <u>CONCLUSION</u>

In summary, the '023 Patent Claims and the '550 Patent Claims are unpatentable because they express no more than the abstract idea of currency conversion, and fail the "machine-or-transformation" test.  Accordingly, pursuant to Rule 12(c), Defendants move this Court to grant judgment on the pleadings that the'023 and '550 Patents are invalid under 35 U.S.C. § 101.

Dated:  April 4, 2014

Respectfully submitted,

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Telephone: (903) 509-5000
Facsimile: (903) 509-5092


Stephen E. Baskin
Virginia Bar No. 47567
sbaskin@mayerbrown.com
Ann Marie Duffy *(pro hac vice)*
aduffy@mayerbrown.com
Dara M. Kurlancheek
New York Bar No. 4701181
dkurlancheek@mayerbrown.com
Saqib J. Siddiqui
ssiddiqui@mayerbrown.com
Cody Gillians
cgillians@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

**ATTORNEYS FOR DEFENDANTS
AMERICAN AIRLINES, INC., DELTA
AIR LINES, INC., FRONTIER AIRLINES,
INC., UNITED AIRLINES, INC. AND US
AIRWAYS, INC.**

*/s/ Thomas C. Wright*
*(with permission by Jennifer p. Ainsworth)*
Ross Cunningham
Texas Bar No. 24007062
Thomas C. Wright
Texas Bar No. 24028146
Alex J. Whitman
Texas Bar No. 24081210
ROSE WALKER, L.L.P.
3500 Maple Avenue, Suite 900
Dallas, Texas 75216
Telephone: 214.752.8600
Facsimile: 214.752.8700
rcunningham@rosewalker.com
twright@rosewalker.com
awhitman@rosewalker.com


Michael C. Smith
State Bar No. 18650410
Seibman, Burg, Phillips, LLP
113 E. Austin Street
P.O. Box 1556
Marshall, TX 75671
Telephone:  903-938-8900
Facsimile:  903.767.4620
michaelsmith@seibman.com

**ATTORNEYS FOR DEFENDANT
SPIRIT AIRLINES, INC.**

/s/ Max Ciccarelli
(with permission by Jennifer p. Ainsworth)
Max Ciccarelli
State Bar No. 00787242
Max.ciccarelli@tklaw.com
Daniel Murray
State Bar No. 24086422
Daniel.murray@tklaw.com
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214.969.1700
Facsimile: 214.969.1751

**ATTORNEYS FOR DEFENDANT
SOUTHWEST AIRLINES CO**.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on April 4th, 2014.

/s/ Jennifer P. Ainsworth
Jennifer P. Ainsworth