**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | |
| Plaintiff, | Civil Action No. 2:13-cv-655-JRG (LEAD CASE) |
| v. | |
| AMERICAN AIRLINES, INC., | |
| Defendant. | |
| LOYALTY CONVERSION SYSTEMS CORPORATION, | |
| Plaintiff, | Civil Action No. 2:13-cv-659-JRG |
| v. | |
| DELTA AIR LINES, INC., | |
| Defendant. | |
| LOYALTY CONVERSION SYSTEMS CORPORATION, | |
| Plaintiff, | Civil Action No. 2:13-cv-660-JRG |
| v. | |
| FRONTIER AIRLINES, INC. | |
| Defendant. | |

LOYALTY CONVERSION SYSTEMS
CORPORATION,

     Plaintiff,

v.

SOUTHWEST AIRLINES CO.

     Defendant.

Civil Action No. 2:13-cv-663-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

     Plaintiff,

v.

SPIRIT AIRLINES, INC.

     Defendant.

Civil Action No. 2:13-cv-664-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

     Plaintiff,

v.

UNITED AIRLINES, INC.,

     Defendant.

Civil Action No. 2:13-cv-665-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

       Plaintiff,

v.

US AIRWAYS, INC.

       Defendant.

Civil Action No. 2:13-cv-666-JRG

## DEFENDANTS' MOTION TO STAY PROCEEDINGS AND MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF THE PROCEEDING.......................................................... 1

II.  SUMMARY OF THE ARGUMENT ............................................................................. 2

III.  ARGUMENT ................................................................................................................. 4

    A.  The AIA Permits the Court to A Enter A Stay Pending the Resolution of the CBM Review Once the CBM Petition is Filed. ................................................ 4

    B.  Congress Enacted § 18(b) of the AIA to Encourage Stays of Litigation Pending CBM Review. ................................................................................................ 5

    C.  All Four of the Statutory Factors Strongly Favor a Stay. ..................................... 6

        1.  A Stay Should Issue Because the CBM Reviews Will Eliminate or Narrow the Issues for Trial. .................................................................... 6

        2.  The Early Stage of this Case Favors Granting a Stay ............................ 10

        3.  Issuing a Stay Will Not Cause LCSC to Suffer Undue Prejudice ........... 11

        4.  Issuing a Stay Will Reduce the Burden of Litigation on the Parties and the  Court ............................................................................................ 14

IV.  CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alza Corp. v. Wyeth & Wyeth Pharm., Inc.,*
No. 9:06-cv-156, 2006 WL 3500015 (E.D. Tex. Nov. 21, 2006)........................................6, 10

*Cascades Computer Innovation, LLC v. SK Hynix Inc.,*
2012 WL 2086469 (N.D. Ill. May 25, 2012) ...........................................................................3

*CLS Bank Int'l v. Alice Corp.,*
717 F.3d 1269 (Fed. Cir. 2013) (en banc), *cert. granted,* 134 S. Ct. 734 (2013) ....................8

*Constellation IP, LLC v. AllState Corp.,*
No. 5:07-cv-132, 2008 WL 4787625 (E.D. Tex. May 12, 2008) .............................................6

*Crown Cent. Petroleum Corp. v. Dep't of Energy,*
102 F.R.D. 95 (D. Md. 1984)....................................................................................................3

*Dealertrack, Inc. v. Huber,*
674 F.3d 1315 (Fed. Cir. 2012).................................................................................................8

*Landis v. N. American Co.,*
299 U.S. 248 (1936)..................................................................................................................3

*Landmark Tech., LLC v. iRobot Corp.,*
No. 13-cv-411, 2014 WL 486836 (E.D.Tex. Jan. 24, 2014) .......................................11, 13, 14

*Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.,*
922 F. Supp. 2d 486 (D. Del. 2013).............................................................................4, 11, 14

*Microlinc, LLC v. Intel Corp.,*
No. 2:07-cv-488, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010)..........................................12

*Premier Int'l Assocs. v. Hewlett-Packard Co.,*
554 F. Supp. 2d 717 (E.D. Tex. 2008)....................................................................................10

*Progressive Casualty Insurance Co. v. Safeco Insurance Co.,*
No. 1:10cv01373, 2013 WL 1662952, at *5 (n.D. Ohio Apr. 17, 2013)................................10

*PureChoice, Inc. v. Honeywell Int'l, Inc.,*
No. 2:06-CV-244, 2007 WL 1189844 (E.D. Tex. Apr. 20, 2007)..........................................11

*Sightsound Techs., LLC v. Apple, Inc.,*
No. 11-1292, 2013 WL 2457284 (W.D. Pa. June 6, 2013) ...............................................4, 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Softview Computer Prods. Corp. v. Haworth,*
 No. 97-cv-8815, 2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000).......................................14, 15

*Visual Interactive Phone Concepts, Inc. v. Samsung Telecomms. Am., LLC,*
 No. 11-12945, 2012 WL 1049197 (E.D. Mich. Mar. 28, 2012) ...........................................14

*Zillow, Inc. v. Trulia, Inc.,*
 No. C12-1549, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013) .......................................10, 11

**STATUTES, RULES AND REGULATIONS**

37 C.F.R § 42.200(c)...............................................................................................................12

37 C.F.R. § 42.207 ...................................................................................................................13

37 C.F.R. § 42.220 ...................................................................................................................13

37 C.F.R. § 42.301 ...................................................................................................................12

77 Fed. Reg. 48756, 48757 (Aug. 14, 2012)...............................................................................4

35 U.S.C. § 101 ................................................................................................................. passim

35 U.S.C. § 102.............................................................................................................1, 2, 9, 10

35 U.S.C. § 103.............................................................................................................1, 2, 9, 10

35 U.S.C. § 112 ...........................................................................................................................1

35 U.S.C. § 282(b) ......................................................................................................................7

35 U.S.C. § 311 (2012) ...............................................................................................................7

35 U.S.C. § 311(a) (2006) ..........................................................................................................7

35 U.S.C. § 321(b) ......................................................................................................................7

American Inventions Act § 18(a)(1) .........................................................................................13

American Inventions Act § 18(b)(1)................................................................................4, 5, 6, 14

Fed. R. Civ. P. 12(c) ......................................................................................................... passim

**OTHER AUTHORITIES**

157 Cong. Rec. S1361 (daily ed. Mar. 8, 2011) .......................................................................15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) ...............................................................5

157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) ...............................................................5

http://www.ctipatents.com/about-us/business-overview/ ..............................................11

http://www.ipprotheinternet.com/ipprotheinternetnews/article.php?article_id=3585#.UzH
  -BvldXAQ...............................................................................................................15

http://www.southwest.com/travel_center/routemap_dyn.html ......................................15

IPPro The Internet, Frank Webb, *US Senators Want to Protect USPTO Funding and Fees* ........15

Whether the asserted patents claim patent eligible subject matter is a threshold question facing the parties and the Court and should be resolved early either by the Patent Office or by this Court.  Defendants Delta Air Lines, Inc., Frontier Airlines, Inc., United Airlines, Inc., US Airways, Inc., American Airlines, Inc., Southwest Airlines Co., and Spirit Airlines, Inc. (collectively, "Defendants") respectfully ask that the Court either stay these cases and the Related Actions[1] pending resolution of the recently filed CBM petitions (which would let the Patent Office take up this threshold question), or for the Court to take up expeditiously the Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings being filed concurrently with this motion to stay (in which case this Court would take up the threshold question).

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiff, Loyalty Conversion Systems Corporation ("LCSC") filed this case against Defendants, and the Related Actions, on August 20, 2013.  Each of the lawsuits allege infringement of claims 31-34, 36-42, and 44-46 of U.S. Patent No. 8,313,023 ("the '023 Patent") and claims 1-3 and 5-7 of U.S. Patent No. 8,511,550 ("the '550 Patent") (collectively, "the Patents-in-Suit").  *See*, *e.g.*, United Airlines, Inc. Compl. ¶¶ 11-13 [Dkt. 1]**.**  The Court held a scheduling conference on January 3, 2014; LCSC served its infringement contentions on January 24, 2014; and Defendants served invalidity contentions on February 14, 2014.[2]  On March 17, 2014, Covered Business Method Review ("CBM") petitions were filed seeking a determination that the Patents-in-Suit be held invalid in accordance with 35 U.S.C. §§ 101, 102, 103, and 112.[3]

---

[1] *Loyalty Conversion Systems Corp. v. JetBlue Airways Corp.,* 2013-cv-00662; *Loyalty Conversion Systems Corp. v. Hawaiian Airlines, Inc.,* 2013-cv-00661 (collectively the "Related Actions").  As the Court is aware, there are jurisdictional motions pending in both the *JetBlue* and *Hawaiian* matters.

[2] The Docket Control Order ("DCO") was entered on February 14, 2014 for these cases and the Related Actions.  In accordance with the DCO, the Markman hearing is scheduled for August 28, 2014, and trial is currently scheduled for March 9, 2015.

[3] Defendants Delta Air Lines, United Airlines, U.S. Airways, American Airlines, and Frontier

## II.    <u>SUMMARY OF THE ARGUMENT</u>

The facts of this case weigh heavily in favor of a stay.  The parties and the Court face a threshold question in this litigation: whether the '023 Patent and '550 Patents claim patent eligible subject matter pursuant to 35 U.S.C. § 101.  Defendants maintain that the Patents-in-Suit are directed to nothing more than the abstract concept of currency conversion.  Therefore, they claim unpatentable subject matter and are invalid as a matter of law.[4]  Because this threshold question is case determinative, Defendants have worked diligently to bring this question to the forefront for speedy resolution.  To that end, the CBM Defendants filed two Covered Business Method ("CBM") review petitions with the Patent Trial and Appeal Board ("PTAB") raising this very question.[5]  The CBM Defendants exercised this option pursuant to the America Invents Act ("AIA"), through which Congress provided a specific mechanism to challenge the validity of business method patents that are directed to financial services.  The intent behind creation of this proceeding was to provide an alternate forum in which the validity of patents could be litigated, thus unclogging the Court's docket.  The PTAB's review of the petitions could resolve this case in its entirety.  Moreover, there is no prejudice to LCSC if a stay is entered. LCSC is a non-practicing entity and will be entitled to seek any appropriate damages if and when the stay is lifted.

Because patent eligibility under Section 101 is a threshold question for this case, it should be resolved in one forum or another before the parties and the Court expend considerable resources litigating this matter.  Should the Court, for whatever reason, be hesitant to stay these cases and the Related Actions pending resolution of the CBM petitions, Defendants respectfully

Airlines filed the CBM petitions (hereafter, referred to collectively as "the CBM Defendants").

[4] Defendants' argument is set forth in detail in the concurrently filed Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings.

[5] To ensure the CBM petitions were comprehensive, Defendants raised not only the Section 101 argument, but also arguments under 35 U.S.C. §§ 102, 103 and 112.

ask the Court to rule expeditiously on the concurrently filed Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings, which addresses squarely the question of patent eligibility under Section 101 of both the '023 and '550 Patents.[6]

Given the stage of the litigation, a stay pending resolution of either the CBM petitions or the Rule 12(c) Motion would not prejudice any party and could effectively prevent the Court and the parties from extending unnecessary resources.  No substantive discovery has taken place. The parties have only exchanged initial non-infringement and invalidity contentions, pursuant to the Local Patent Rules; and Defendants have issued several  third party subpoenas seeking prior art.   No depositions have been noticed, no discovery requests or demand letters have been served, and claim construction has not begun.  Moreover, the CBM Defendants have presented strong arguments to the PTAB for consideration, this case does not involve competitors, and the patents were only given cursory review during examination having issued only four months and five months, respectively, after filing, despite over 700 references being cited by the applicants during prosecution of the '023 patent, and over 800 references cited for the '550 patent.

Given the lack of activity on the case, there is no prejudice to LCSC by staying the litigation.  Rather, a stay would promote efficiency for the parties and the Court.  The issues raised by Defendants are case determinative.  Should the PTAB, or this Court, find the patents invalid under Section 101, the case will be fully resolved.

For these reasons and as more fully articulated below, Defendants' motion to stay should be granted.

---

[6] The Court's inherent power to manage its docket includes the ability to stay any action. *See, e.g.*, *Cascades Computer Innovation, LLC v. SK Hynix Inc.*, 2012 WL 2086469, at *2 (N.D. Ill. May 25, 2012); *Crown Cent. Petroleum Corp. v. Dep't of Energy*, 102 F.R.D. 95, 98 (D. Md. 1984) (citing *Landis v. N. American Co.*, 299 U.S. 248, 254-55 (1936)).

III.   **ARGUMENT**

A.   **The AIA Permits the Court to A Enter A Stay Pending the Resolution of the CBM Review Once the CBM Petition is Filed.**

The AIA specifically permits the Court to enter a stay pending CBM review once the CBM petition is filed.  Section 18(b)(1) of the AIA states that "the court shall decide whether to enter a stay" whenever "a party seeks a stay of a civil action alleging infringement of a patent … relating to a *transitional proceeding* for that patent." AIA §18(b)(1) (emphasis added); *see also Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 490 n.5 (D. Del. 2013); *Sightsound Techs., LLC v. Apple, Inc.*, No. 11-1292, 2013 WL 2457284, at \*3-4 (W.D. Pa. June 6, 2013) (following *Market-Alerts*).  The PTO recognizes that a transitional proceeding begins with the filing of a petition. *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48757 (Aug. 14, 2012).  Here, the CBM Defendants have filed petitions challenging the validity of the Patents-in-Suit with the PTAB under the Transitional Program for Covered Business Method Patents, which have been verified and accorded a filing date.  *See* Exs. 1 and 2 of Declaration of Ann Marie Duffy ("Duffy Decl.").  As a result, the transitional proceedings have begun and this Court may immediately enter a stay pending the resolution of these proceedings.

The Court should issue the stay now rather than waiting the six months for the PTAB to issue its initial determination.[7]  Entering a stay will avoid the unnecessary time and expense of litigating this case pending the PTAB's review.  Defendants recognize that the Court has the discretion to re-evaluate the prudency of the stay at the time the PTAB issues its determination, and submits that granting the stay now with reserving the right to review again in six months is the prudent way to proceed.

---

[7] Staying these cases and the Related Actions will give the Court the benefit of the PTAB's insight into the merits of the CBM petitions, particularly on the 101 issue.

4

**B.** **Congress Enacted § 18(b) of the AIA to Encourage Stays of Litigation Pending CBM Review.**

Congress enacted the CBM review procedure to create "a cost effective alternative to litigation" in district courts.  Thus, once the CBM review process has begun, district court proceedings should be stayed.  *See* 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Leahy).  To assess whether a district court action should be stayed pending a CBM review proceeding, Congress codified a four-factor test.  The four factors for the Court to evaluate are:

> (A) whether a stay, or denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether the trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b).  Congress added the fourth factor to "place[] a very heavy thumb on the scale in favor of a stay" pending a CBM review proceeding.  *See* 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).  "Absent some exceptional circumstances, the institution of a business-methods proceeding–which requires a high up-front showing and will be completed in a relatively short period of time–should serve as a substitute for litigation, and result in a stay of co-pending district court litigation."  157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer). Moreover, as noted in the Congressional Record, stays should be liberally granted and "[i]t is congressional intent that a stay should only be denied in extremely rare instances."  *Id*. at S1363 (statement of Sen. Schumer). Here, no exceptional circumstances exist to deny a stay.  In fact, Defendants have moved expeditiously to file the CBM petitions and to seek a stay as soon as practically possible.  Moreover, each of the four factors articulated weighs heavily in favor of a stay.

5

### C.    All Four of the Statutory Factors Strongly Favor a Stay.

The four factors set forth in AIA § 18(b) demonstrate that a stay is appropriate and justified here because: (1) the PTAB's post grant reviews of the Patents-in-Suit will eliminate or narrow the issues pending before the Court; (2) the case is in its early stages before any substantial judicial resources have been expended; (3) LCSC will not be prejudiced by the stay; and (4) a stay will decrease the burden of litigation on the parties and the Court.

### 1.    A Stay Should Issue Because the CBM Reviews Will Eliminate or Narrow the Issues for Trial.

Courts, including those in this district, have recognized that staying a case pending post-grant review proceedings can be an effective way to simplify if not eliminate issues for trial. "Put simply, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers." *Alza Corp. v. Wyeth & Wyeth Pharm., Inc.*, No. 9:06-cv-156, 2006 WL 3500015, at *2 (E.D. Tex. Nov. 21, 2006) (quotation marks omitted).

CBM Defendants petitions will either eliminate or narrow issues for trial. Importantly, all of the asserted claims in these litigations have been challenged in the CBM petitions.  Should the PTAB find the asserted claims disclose unpatentable subject matter, these cases and the Related Actions will be dismissed.  If the asserted claims survive the Section 101 challenge, it is unlikely they will also survive the 102, 103 and 112 challenges raised in the petitions.  Even in the unlikely event that the PTAB confirms all claims, the PTAB's decision will still streamline these cases and the Related Actions because the Court will have the benefit of the insight of the PTAB.  "[T]he technical expertise provided by the reexamination proceedings will be helpful to the Court on any issues that remain." *Constellation IP, LLC v. AllState Corp.*, No. 5:07-cv-132, 2008 WL 4787625, at *3 (E.D. Tex. May 12, 2008).

6

The Patent Office's track record with similar procedures demonstrates that claims are likely to be amended or canceled in the CBM proceedings, thus streamlining the case. Ten out of the eleven instituted CBM reviews that have reached final decision have cancelled all the claims at issue.[8]   Moreover, the previously utilized *inter partes* reexamination procedure resulted in canceled or amended claims in 92% of decided reviews before December 16, 2013. *See* Ex. 3 to Duffy Decl.  (*Inter Partes* Reexamination Filing Data).  CBM petitions are likely to have an equal or even greater chance of affecting the scope of the patents than *inter partes* reexamination given the broader range of permitted challenges. *Compare* 35 U.S.C. § 321(b) (allowing CBM Review challenges based upon any ground for invalidity listed in 35 U.S.C. § 282(b)) *with* 35 U.S.C. § 311(a) (2006) (current version at 35 U.S.C. § 311 (2012)) (allowing *inter partes* reexamination challenges only on the basis of prior art).

> a.  *The '550 and '023 Patents are directed to unpatentable subject matter*

As detailed in the CBM petitions (and Defendant's concurrently filed Rule 12(c) motion), the claims of the '550 and '023 Patents are directed to unpatentable subject matter. *See* Exs. 4 and 5 to Duffy Decl. ('550 and '023 CBM petitions).  Specifically, the claims relate to converting "non-negotiable credits provided by an entity into negotiable funds," or in other words, converting one form of currency into another. *See id*.

Importantly, the asserted claims do not add anything beyond routine, conventional activities to this unpatentable abstract concept.  *See*, *e.g.*, Ex. 6 to Duffy Decl. ('023 Patent) at 9:59-12:46. For example, claim 31 involves several largely insignificant steps related to currency

---

[8] The eleven cases that have reached final decision are: CBM2012-00001, CBM2012-00002, CBM2012-00003,  CBM2012-00004,  CBM2012-00005,  CBM2012-00010,  CBM2013-00002, CBM2013-00004, CBM2013-00005, CBM2013-00009.   In each proceeding except CBM2012-00003, all challenged claims were disclaimed by the patent owner or cancelled.  In CBM2012-00003, seventeen out of twenty claims were cancelled.

conversion including: (1) "a commerce partner *agreeing* to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds in accordance with a credits-to-funds ratio…;" (2) "*granting* the consumer the quantity of the entity independent funds;" and (3) "*accepting* at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides." *Id.* at 9:60-10:27 (italics added).  These steps are insignificant because they are not novel, or inventive in any way, and all that is described is an agreement to accept transfers; a granting of the requested quantity; and accepting a portion of the requested quantity. *Id.*

Moreover, the claims are not tied to any special purpose computer.  Rather, the patents make clear that

> [a]ny kind of computer system or other apparatus adapted for carrying out the methods described herein is suited.  A typical combination of hardware and software may be a general purpose computer system with a computer program, that when being loaded and executed, controls the computer system such that it carries out the methods described herein.

Ex. 6 to Duffy Decl. at 5:64-6:3.  "Appending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit claim scope for purposes of patent eligibility." *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (en banc) (citing *Bancorp*, 687 F.3d at 1278, and *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34 (Fed. Cir. 2012)), *cert. granted,* 134 S. Ct. 734 (2013). Moreover, "the methods detailed [in the patents] can also be methods performed at least in part by a service agent and/or a machine manipulated by a service agent in response to a service request." Ex. 6 to Duffy Decl. at 3:42-45.  Thus, as provided for in the specification, a human being can perform the process set forth in the claims.  For these reasons and more, the claims are not patent eligible under Section 101.

        b.    *The asserted claims of the '550 and '023 Patents are invalid under §102 and §103*

The asserted claims of the '550 and '023 Patents are also invalid under Sections 102 and 103 because they are anticipated and/or rendered obvious by prior art.  As disclosed in the CBM petitions, at least U.S. Pat. Appl. Pub. No. 2002/0143614 ("Maclean"), discloses each element of the asserted claims.  Specifically, Maclean discloses a web-based system to "convert points of one LP into points issued by a different LP," where LP is disclosed in MacLean to be a loyalty program. *See*, *e.g.*, Ex. 5 to Duffy Decl. at 36-38.  MacLean "relates to apparatus and methods for keeping track of points and, in particular, for managing and exchanging those points that are issued and redeemed in the context of a loyalty program (LP)." *Id*. One of the "object of this invention [*MacLean*] is to enable a consumer to convert points of one LP into points issued by a different LP." *Id.*. The loyalty programs (LPs) disclosed in *MacLean* include "travel (airlines and hotels), financial (credit cards), retail and network (AirMiles, ClickRewards and WebMiles)." *Id.*

To the extent Maclean does not disclose each and every element of the asserted claims, U.S. Patent Pub. No. 2003/0200144 ("Antonucci") either independently or in combination with Maclean renders the asserted claims of the '550 and '023 Patents obvious.  *See* Ex. 5 to Duffy Decl. at 51-57.  For example, Antonucci discloses:

> Hilton Reward points may be transferred to a United Airlines frequent flyer account. In one embodiment, a conversion engine facilitates any point value conversions that may be appropriate. For example, if a consumer desires to transfer five hundred Hilton Reward points to a United Airlines frequent flyer account, the conversion engine may determine that the five hundred Hilton Rewards points only translate into one hundred United Airlines frequent flyer points. As such, the system would only increase the United Airlines frequent flyer account by one hundred points.

*Id*.

Thus, for these reasons, the Patents-in-Suit are invalid under section 102 as anticipated based on Maclean and/or Antonucci, or are rendered obvious under section 103.

### 2.    The Early Stage of this Case Favors Granting a Stay

Courts in this district have found that this early stage in the case favors granting a stay. *Premier Int'l Assocs. v. Hewlett-Packard Co.*, 554 F. Supp. 2d 717, 725 (E.D. Tex. 2008) (finding this factor favored a stay when sought recently after the scheduling conference); *Alza Corp.*, 2006 WL 3500015, at *2 (finding this factor favored a stay when sought before any discovery had been taken). Even in cases further along than ours, courts have found granting a stay appropriate.[9]

These cases are still in its early stages. The parties have only exchanged non-infringement and invalidity contentions, and several third party subpoenas for prior art have been issued. No other discovery has taken place. Neither party has exchanged written discovery and no depositions have been noticed or scheduled. Claim construction has not begun and the *Markman* hearing and trial are five and eleven months away, respectively. Importantly, this Court has thus far only issued a few routine and administrative orders and has not yet invested substantial resources into the case. To proceed while the Petitions are pending would cause prejudice to the Defendants, in that significant and potentially unnecessary resources and costs

---

[9] In *Sightsound*, the court granted a stay nineteen months into the case, after fact discovery and claim construction were complete, reasoning that "[w]e are still at a point, under the present circumstances, where a stay can maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." 2013 WL 2457284, at *32 (quotation marks and alterations omitted). In *Zillow, Inc. v. Trulia, Inc.*, the court granted a motion to stay after the parties exchanged several rounds of discovery and produced 120,000 pages of documents, reasoning that "in light of the significant amount of discovery, claim construction analysis, and motions practice that still lies ahead for the parties and the court prior to trial, the court finds that on balance this factor weighs in favor of granting the stay." No. C12-1549, 2013 WL 5530573, at *6 (W.D. Wash. Oct. 7, 2013). And in *Progressive Casualty Insurance Co. v. Safeco Insurance Co.*, the court granted a motion to stay after invalidity and unenforceability contentions were exchanged. No. 1:10cv01370, 2013 WL 1662952, at *5 (N.D. Ohio Apr. 17, 2013).

will be incurred.  This factor strongly favors granting a stay.

### 3.     Issuing a Stay Will Not Cause LCSC to Suffer Undue Prejudice

LCSC will not be prejudiced by a stay.  LCSC is a non-practicing entity that was formed in 2013, and its  parent company, Copytele, is in the business of licensing patents.[10] Accordingly, LCSC has no revenue from product or business sales that will be affected during a stay.  Additionally, the stay in and of itself will not prejudice LCSC.  In fact, "[i]t is well-established that the delay inherent in the reexamination process by itself does not constitute undue prejudice."  *Zillow, Inc. v. Trulia, Inc.,* No. C12-1549*,* 2013 WL 5530573, at *6 (W.D. Wash. Oct. 7, 2013); *see also Landmark Tech., LLC v. iRobot Corp.,* No. 13-cv-411, 2014 WL 486836, at *3-5 (E.D.Tex. Jan. 24, 2014) (holding that although a delay in proceeding with the plaintiff's case may be somewhat prejudicial, it is not unduly prejudicial).

To determine whether a party will suffer undue prejudice from a stay, courts assess "additional considerations including the timing of the stay request, the timing of the administrative review request, the status of the review proceedings, and the relationship between the parties." *Market-Alerts Pty.,* 922 F. Supp. 2d at 494.   All of these factors weigh in Defendants' favor.  First, the CBM Defendants filed the  petitions at this early stage in the case to bring the threshold issue of patentability under Section 101 to the forefront.  While Courts will occasionally find prejudice where a patent re-examination is filed or a stay is sought to improperly delay proceedings for a tactical advantage, Defendants stand to gain no tactical advantage here.  *See, e.g., PureChoice, Inc. v. Honeywell Int'l, Inc.*, No. 2:06-CV-244, 2007 WL 1189844, at *1 (E.D. Tex. Apr. 20, 2007).  Defendants request a stay here to allow the PTAB to address issues of patentability under Section 101, 102, 103 and 112.  Also, as noted above, the

---

[10] CTI develops and acquires patented technologies for the purposes of patent monetization and patent assertion.  *See* http://www.ctipatents.com/about-us/business-overview/.

Patents-in-Suit received only a brief review at the patent office during examination despite having hundreds of references before it to review.

Second, as explained above, this case is still very much in its infancy.  The CBM Defendants diligently prepared and filed the two CBM petitions approximately two months after receiving the infringement contentions and serving invalidity contentions.  Defendants now seek a stay to avoid the extensive costs associated with litigating these patents that, as set forth in the petitions and in the accompanying Rule 12(c) motion, are invalid as a matter of law.

Third, any delay to this case will be definite and brief, avoiding any potential undue prejudice to LCSC. The CBM review process is required by the AIA to be speedy and cost-effective, thereby addressing any concerns with granting indefinite and lengthy stays under the pre-AIA patent reexamination regime. Unlike the pre-AIA reexamination proceedings, which could drag on for years, CBM Review is required by law to reach conclusion one year after institution. *See* 37 C.F.R. §§ 42.301, 42.200(c).  As such, the CBM petitions will be resolved quickly and will allow the PTAB to review the issues and make a determination on the validity of the Patents-in-Suit.  The PTAB is also required to issue its initial determination within six months of the CBM petitions' filing.  This allows the Court to stay the case now and revisit the stay in six months with the insight from the PTAB on the issues set forth in the petitions.

Fourth, a stay will not prejudice LCSC. LCSC is a non-practicing entity.  Therefore, Defendants are not competitors. When parties compete, a delay can result in the plaintiff's loss of market share and price erosion. But that is not the case here. "[S]ince [plaintiff] does not manufacture or sell any products, or otherwise practice the patent, there is no risk of customer losses or of injury to market share during the stay." *Microlinc, LLC v. Intel Corp.*, No. 2:07-cv-488, 2010 WL 3766655, at *2 (E.D. Tex. Sept. 20, 2010). If there is a finding of infringement

later, there is no harm caused due to the case being stayed because LCSC will still be entitled to money damages and interest. *See Landmark Tech.,* 2014 WL 486836, at \*4 ("Should iRobot eventually be found to have infringed, Landmark can be adequately compensated by money damages for any harm suffered during the PTO proceedings.").  Moreover, as provided above, the CBM petitions present strong arguments as to the validity of the asserted claims. Any slight prejudice to LCSC should be outweighed by the strength of the legal issues presented in the CBM petitions, and properly balanced with the fact that LCSC's remedy overall will remain intact while the case is stayed.

Fifth, LCSC will be afforded full opportunity to defend the validity of the Patents-in-Suit during the CBM process. *See* AIA § 18(a)(1) (stating that CBM Review will generally employ the same procedures and post-grant review proceedings); *see generally* 37 C.F.R. §§ 42.207 & 42.220 (allowing the patent holder to respond to the petition); *id.* § 42.223 (allowing the patent holder to file supplemental information); *id.* § 42.221 (allowing the patent holder to amend patent claims); *id.* § 41.70 (providing either party with the right to an oral hearing).  Thus, LCSC will be able to defend its claims in a formal proceeding.

Finally, when balancing the parties' interests – while a stay will not prejudice LCSC – the failure to stay the case will prejudice Defendants.  Defendants will be forced to expend substantial sums on litigation of claims that have the potential to be cancelled or changed in the CBM review.  Defendants submit that this factor, particularly when balanced with the substantive issues presented to the PTAB in the CBM proceeding, strongly favors a stay in this case.  While still in its beginning stages, this case will quickly progress to where the Defendants will need to expend significant resources defending the case. There is likely no dispute among

the parties that patent litigation is expensive.[11] Because there is no prejudice to LCSC and substantial prejudice to Defendants, this factor favors a stay.

    4.    <u>Issuing a Stay Will Reduce the Burden of Litigation on the Parties and the Court</u>

The fourth factor favors granting a stay, as it will ease the burden of this litigation on the Court and on the parties. Congress added this fourth factor to AIA § 18(b) to ensure that courts would grant stays pending CBM Review at an increased rate and expected that this fourth factor would cause a stay to issue in almost every set of circumstances. *See* Section III.B, *supra; see also Landmark Tech.,* 2014 WL 486836, at *4-5 (finding that Congress intended that this factor weigh heavily in favor of a stay); *see also Market-Alerts Pty.,* 922 F. Supp. 2d at 496.

Here, a stay will greatly reduce the burden on the Court and the parties. A stay would spare all parties the burden of potentially unnecessary litigation while the patents are being reviewed at the PTAB. Following the PTAB decisions, the burden on the Court and parties will be further reduced if some or all of the claims will be invalidated as they will require no further review. Moreover,

> [i]t is an indisputable waste of judicial resources to hold a Markman hearing, rule on discovery and dispositive motions, and conduct a trial, all at great expense to the parties, when the PTO's decision could render these proceedings moot or substantially alter the claims being litigated. *Visual Interactive Phone Concepts, Inc. v. Samsung Telecomms. Am., LLC,* No. 11-12945, 2012 WL 1049197, at *4 (E.D. Mich. Mar. 28, 2012); *see also Softview Computer Prods. Corp. v. Haworth,* No. 97-cv-8815, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000).

And, should the CBM Reviews lead to cancellations or amendments, much of the Court's and parties' work performed on claim construction, discovery or dispositive motions could be rendered moot. Specifically, if the claims are amended, work performed for this

---

[11] Costs for patent litigation are substantial, ranging of up to $5 million per case where the amount in controversy exceeds $25 million. *See* Patent Assertion And U.S. Innovation, at 9 (June 2013) (citing AIPLA 2013 Report of the Economic Survey).

litigation may need to be redone, driving up the cost of this litigation for both sides.  Because the CBM Reviews will likely be completed after the *Markman* hearing, the amount of repeated work could be substantial.

Furthermore, the citizens of this District do not have a significant interest in the outcome of this litigation.  The Defendants, LCSC, and the Patents-in-Suit currently have no connection to Texas.  *See* Duffy Decl. at 12.  In fact, the inventors of the patents-at-issue are located in Florida and have no connection to Texas.  *See id.* at 13.  Additionally, minimal accused infringing activity is occurring in this District.[12]  *See id.* at14. Devoting significant local resources to preparations for a trial having minimal effect on its citizens is a waste of local resources, particularly when it is likely that the Patents-in-Suit will be deemed invalid.  The self-funded PTAB is much better equipped financially to handle these proceedings and to alleviate the burden on the citizenry of this District to decide a matter that has little to no impact on them.[13]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court stay these cases pending review of the CBM petitions.

---

[12] By way of example, in 2013, only 0.1% of accused infringing activity for US Airways and United occurred in this District, and less than 0.5% of accused infringing activity occurred for Frontier and only 0.16% of accused activity occurred for Delta.  While Southwest has not performed a rigorous analysis, given that it does not fly to the Eastern District Southwest likewise believes little accused infringing activity takes place in this District.  *See* (http://www.southwest.com/travel_center/routemap_dyn.html)

[13] *See* 157 Cong. Rec. S1361 (daily ed. Mar. 8, 2011) (statement of Sen. Leahy); IPPro The Internet, Frank Webb, *US Senators Want to Protect USPTO Funding and Fees,* Mar. 14, 2014, at http://www.ipprotheinternet.com/ipprotheinternetnews/article.php?article_id=3585#.UzH-BvldXAQ.

Dated:  April 7, 2014                           Respectfully submitted,

/s/ Jennifer Parker Ainsworth               /s/ Thomas C. Wright
Jennifer Parker Ainsworth                   (with permission by Jennifer p. Ainsworth)
Texas Bar No. 00784720                      Ross Cunningham
jainsworth@wilsonlawfirm.com                Texas Bar No. 24007062
WILSON, ROBERTSON & CORNELIUS, P.C.         Thomas C. Wright
909 ESE Loop 323, Suite 400                 Texas Bar No. 24028146
P.O. Box 7339 [75711]                       Alex J. Whitman
Tyler, Texas 75701                          Texas Bar No. 24081210
Telephone: (903) 509-5000                   ROSE WALKER, L.L.P.
Facsimile: (903) 509-5092                   3500 Maple Avenue, Suite 900
                                            Dallas, Texas 75216
                                            Telephone: 214.752.8600
                                            Facsimile: 214.752.8700
Stephen E. Baskin                           rcunningham@rosewalker.com
Virginia Bar No. 47567                      twright@rosewalker.com
sbaskin@mayerbrown.com                      awhitman@rosewalker.com
Ann Marie Duffy (pro hac vice)
aduffy@mayerbrown.com
Dara M. Kurlancheek
New York Bar No. 4701181                    Michael C. Smith
dkurlancheek@mayerbrown.com                 State Bar No. 18650410
Saqib J. Siddiqui                           Seibman, Burg, Phillips, LLP
ssiddiqui@mayerbrown.com                    113 E. Austin Street
Cody Gillians                               P.O. Box 1556
cgillians@mayerbrown.com                    Marshall, TX 75671
MAYER BROWN LLP                             Telephone:  903-938-8900
1999 K Street, N.W.                         Facsimile:  903.767.4620
Washington, DC 20006                        michaelsmith@seibman.com
Telephone: (202) 263-3000
Facsimile: (202) 263-3300                   **ATTORNEYS FOR DEFENDANT
                                            SPIRIT AIRLINES, INC.**
**ATTORNEYS FOR DEFENDANTS
AMERICAN AIRLINES, INC., DELTA
AIR LINES, INC., FRONTIER AIRLINES,
INC., UNITED AIRLINES, INC. AND US
AIRWAYS, INC.**

*/s/ Max Ciccarelli*
*(with permission by Jennifer p. Ainsworth)*
Max Ciccarelli
State Bar No. 00787242
Max.ciccarelli@tklaw.com
Daniel Murray
State Bar No. 24086422
Daniel.murray@tklaw.com
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214.969.1700
Facsimile: 214.969.1751

**ATTORNEYS FOR DEFENDANT
SOUTHWEST AIRLINES CO.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a), on this the 7th day of April, 2014.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth

## CERTIFICATE OF CONFERENCE

In compliance with E.D. Tex. Loc. Ct. R. CV-7(h), counsel for Defendants Delta Air Lines, Inc., Frontier Airlines, Inc., United Airlines, Inc., US Airways, Inc., and American Airlines, Inc. conferred with counsel for Plaintiff Loyalty Conversion Systems Corporation, on March 21, 2014 via telephone with respect to defendants' Motion to Stay the Proceedings.  Counsel for Defendants Delta Air Lines, Inc., Frontier Airlines, Inc., United Airlines, Inc., US Airways, Inc., American Airlines, Inc., Southwest Airlines Co., and Spirit Airlines, Inc. again conferred with counsel for Plaintiff Loyalty Conversion Systems Corporation on March 25, 2014 via telephone with respect to defendants' Motion to Stay the Proceedings.  Plaintiff could not agree to the relief sought by Defendants in the foregoing motion and discussions on this issue have conclusively ended in an impasse, leaving an open issue for the Court to resolve.  Accordingly, the foregoing motion is submitted as an opposed motion.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth