<u>Trials@uspto.gov</u>                                    Paper 17
571-272-7822                                      Entered: October 8, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

APPLE INC.
Petitioner

v.

SIGHTSOUND TECHNOLOGIES, LLC
Patent Owner
_____

Case CBM2013-00019
Patent 5,191,573


Before MICHAEL P. TIERNEY, JUSTIN T. ARBES, and
GEORGIANNA W. BRADEN, *Administrative Patent Judges.*


Opinion for the Board filed by *Administrative Patent Judge* ARBES.


Opinion Concurring filed by *Administrative Patent Judge* TIERNEY.


ARBES, *Administrative Patent Judge.*


DECISION
Institution of Covered Business Method Review
*37 C.F.R. § 42.208*

Case CBM2013-00019
Patent 5,191,573

Petitioner Apple Inc. filed a Corrected Petition (Paper 8) ("Pet.") to institute a covered business method review of claims 1, 2, 4, and 5 of Patent 5,191,573 (the "'573 patent") pursuant to 35 U.S.C. § 321 *et seq*. Patent Owner SightSound Technologies, LLC filed a preliminary response ("Prelim. Resp."). We have jurisdiction under 35 U.S.C. § 324. For the reasons that follow, the Board has determined not to institute a covered business method review.[1]

# I. BACKGROUND

The standard for instituting a covered business method review is set forth in 35 U.S.C. § 324(a):

> THRESHOLD—The Director may not authorize a post-grant review to be instituted unless the Director determines that the information presented in the petition filed under section 321, if such information is not rebutted, would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable.

Petitioner challenges claims 1, 2, 4, and 5 as unpatentable under 35 U.S.C. §§ 101 and 112. Pet. 34-58. We deny the Petition as discussed below.

## A. The '573 Patent (Ex. 1001)

The '573 patent, entitled "Method for Transmitting a Desired Digital Video or Audio Signal," issued on March 2, 1993 based on Application 07/586,391, filed September 18, 1990, which is a file wrapper continuation

---

[1] In a decision entered concurrently, a covered business method review of the '573 patent is being instituted in Case CBM2013-00020.

Case CBM2013-00019
Patent 5,191,573

of Application 07/206,497, filed June 13, 1988.  The '573 patent has expired.

The '573 patent was previously the subject of an *ex parte* reexamination (Control No. 90/007,402) requested by Napster, Inc. on January 31, 2005.  Following reexamination, claims 1-6 of the '573 patent were confirmed.  Ex. 1001 at 10-25 (reexamination certificate issued November 30, 2010).  Claims 1, 2, 4, and 5 of the '573 patent also are the subject of Case CBM2013-00020 (grounds based on 35 U.S.C. §§ 102 and 103).

The '573 patent relates to a "method for the electronic sales and distribution of digital audio or video signals."  Ex. 1001, col. 1, ll. 9-14.  The patent describes how three types of media used for storing music at the time of the invention—records, tapes, and compact discs—did not allow for music to be transferred easily and had various problems, such as low capacity and susceptibility to damage during handling.  *Id.*, col. 1, l. 17-col. 2, l. 9.  The patent discloses storing "Digital Audio Music" (i.e., music encoded into binary code) on a computer hard disk and selling and distributing such music electronically.  *Id.*, col. 1, ll. 53-56; col. 2, ll. 10-35.

Case CBM2013-00019
Patent 5,191,573

Figure 1 of the '573 patent is reproduced below:



FIG. 1

As shown in Figure 1 above, an agent authorized to sell and distribute "Digital Audio Music" has a control unit 20 (control panel 20a, control integrated circuit 20b, and sales random access memory chip 20c) and hard disk 10, which stores the music to be distributed. *Id*., col. 3, ll. 44-67. On the other side of the figure, a user has a control unit 50 (control panel 50a, control integrated circuit 50b, incoming random access memory chip 50c, and playback random access memory chip 50d), hard disk 60, video display unit 70, and speakers 80. *Id*., col. 3, l. 67-col. 4, l. 10. The agent and user are connected via telephone lines 30. *Id*., col. 3, ll. 63-67. According to the '573 patent, control units 20 and 50 are "designed specifically to meet the teachings of this invention," but all other components shown in Figure 1 were "already commercially available." *Id*., col. 4, ll. 16-23.

The patent describes a process by which a user transfers money "via a telecommunications line" to purchase music from the agent and the music is transferred electronically "via a telecommunications line" to the user and stored on the user's hard disk. *Id*., col. 5, ll. 29-45. Control integrated

4

Case CBM2013-00019
Patent 5,191,573

circuits 20b and 50b regulate the electronic transfer. *Id.*, col. 4, ll. 29-47.
The agent's sales random access memory chip 20c stores music temporarily
so that it can be transferred to the user. *Id.* The user's incoming random
access memory chip 50c stores music temporarily before storage in hard disk
60, and playback random access memory chip 50d stores music temporarily
so that it can be played. *Id.* Once a song is stored in the user's hard disk 60,
the user can select it among others in a visual display using control panel
50a and play it on speakers 80. *Id.*, col. 4, ll. 52-63. In addition to "Digital
Audio Music," the patent contemplates "Digital Video" being sold and
distributed electronically via the disclosed methods. *Id.*, col. 5, l. 67-col. 6,
l. 2.

## B. Related Matters

The '573 patent was asserted previously in two district court
litigations: *SightSound.com Inc. v. N2K, Inc. et al.*, W.D. Pa. Case No.
2:98-cv-00118-DWA (filed January 16, 1998) (the "N2K litigation"), and
*SightSound Techs., LLC et al. v. Roxio, Inc. et al.*, W.D. Pa. No.
2:04-cv-01549-DWA (filed October 8, 2004). Pet. 17-18. Both cases settled
prior to trial. *See* Ex. 2001. The '573 patent is being asserted currently
against Petitioner in *SightSound Techs. LLC v. Apple Inc.*, W.D. Pa. Case
No. 2:11-cv-01292-DWA (filed October 10, 2011) (the "Apple litigation").
Pet. 17-18. The Apple litigation has been stayed. Prelim. Resp. 9.

Case CBM2013-00019
Patent 5,191,573

*C. Exemplary Claim*

Claim 1 of the '573 patent is exemplary of the claims at issue:

1. A method for transmitting a desired digital audio signal stored on a first memory of a first party to a second memory of a second party comprising the steps of:

transferring money electronically via a telecommunication line to the first party, at a location remote from the second memory and controlling use of the first memory, from the second party financially distinct from the first party, said second party controlling use and in possession of the second memory;

connecting electronically via a telecommunications line the first memory with the second memory such that the desired digital audio signal can pass therebetween;

transmitting the desired digital audio signal from the first memory with a transmitter in control and possession of the first party to a receiver having the second memory at a location determined by the second party, said receiver in possession and control of the second party; and

storing the digital signal in the second memory.

*D. The Asserted Grounds*

Petitioner challenges claims 1, 2, 4, and 5 of the '573 patent on the grounds that the claims do not recite patent-eligible subject matter under 35 U.S.C. § 101 and lack sufficient written description support under 35 U.S.C. § 112.

*E. Claim Interpretation*

Consistent with the statute and legislative history of the America Invents Act (AIA), the Board interprets claims of an unexpired patent using the "broadest reasonable construction in light of the specification of the

Case CBM2013-00019
Patent 5,191,573

patent in which [they] appear[]." 37 C.F.R. § 42.300(b); *see also* Office

Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48766 (Aug. 14, 2012).

For claims of an expired patent, however, the Board's claim interpretation

analysis is similar to that of a district court. *See In re Rambus Inc.*, 694 F.3d

42, 46 (Fed. Cir. 2012). Claim terms are given their ordinary and customary

meaning as would be understood by a person of ordinary skill in the art at

the time of the invention and in the context of the entire patent disclosure.

*In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). We

apply this standard to the claims of the expired '573 patent.

We note that the district court interpreted various terms of the '573

patent in both the N2K litigation and Apple litigation. *See SightSound.com

Inc. v. N2K, Inc.*, 185 F. Supp. 2d 445 (W.D. Pa. 2002) (report and

recommendation in the N2K litigation); Exs. 1014-15 (Apple litigation).

Petitioner's proposed interpretations are consistent with the district court's

interpretations in the Apple litigation, and Patent Owner does not dispute

Petitioner's proposed interpretations in its preliminary response. *See* Pet.

30-34. We have reviewed the district court's claim interpretations and

determine that the interpretations in the Apple litigation are consistent with

the ordinary and customary meaning of the terms as understood by one of

ordinary skill in the art. Accordingly, for purposes of this decision, we

adopt the following interpretations of terms in claims 1, 2, 4, and 5 of the

'573 patent:

| Claim Term | Interpretation |
|---|---|
| "first party" | a first entity, whether a corporation or a real person |

Case CBM2013-00019
Patent 5,191,573

| Claim Term | Interpretation |
|---|---|
| "second party" | a second entity, whether a corporation or a real person |
| "telecommunication line" (claim 1), "telecommunications line" (claims 1 and 4) | an electronic medium for communicating between computers |
| "electronically" | through the flow of electrons |
| "connecting electronically" | connecting through devices or systems which depend on the flow of electrons |
| "transferring money electronically" | providing payment electronically (i.e., through devices or systems which depend on the flow of electrons) |
| "digital audio signal" | digital representation of sound waves |

All other terms in claims 1, 2, 4, and 5 are given their ordinary and customary meaning and need not be further construed at this time.

## II. ANALYSIS

We turn now to Petitioner's asserted grounds of unpatentability and Patent Owner's arguments in its preliminary response to determine whether Petitioner has met the threshold standard of 35 U.S.C. § 324(a).

### A. Standing

The parties disagree as to whether Petitioner has standing to file a petition for a covered business method review of the '573 patent. *See* Pet. 11-17; Prelim. Resp. 23-39.

Section 18 of the AIA provides for the creation of a transitional program for reviewing covered business method patents. Section 18 limits

Case CBM2013-00019
Patent 5,191,573

reviews to persons or their privies that have been sued or charged with
infringement of a "covered business method patent," which does not include
patents for "technological inventions." AIA §§ 18(a)(1)(B), 18(d)(1); *see*
37 C.F.R. § 42.302. It is undisputed that Petitioner has been sued for
infringement of the '573 patent. The Apple litigation was filed in the U.S.
District Court for the Western District of Pennsylvania on October 10, 2011,
and is pending. *See* Pet. 17; Prelim. Resp. 8-9. The only dispute is whether
the '573 patent is a "covered business method patent" as defined in the AIA.
*See* Pet. 11-17; Prelim. Resp. 23-39. For the reasons explained below, we
conclude that the '573 patent is a "covered business method patent" and
Petitioner has standing to file a petition for a covered business method
review of the '573 patent.

## 1. Financial Product or Service

A "covered business method patent" is a patent that "claims a method
or corresponding apparatus for performing data processing or other
operations used in the practice, administration, or management of a financial
product or service, except that the term does not include patents for
technological inventions." AIA § 18(d)(1); *see* 37 C.F.R. § 42.301(a). For
purposes of determining whether a patent is eligible for a covered business
method patent review, the focus is on the claims. *See* Transitional Program
for Covered Business Method Patents—Definitions of Covered Business
Method Patent and Technological Invention; Final Rule, 77 Fed. Reg.
48734, 48736 (Aug. 14, 2012) ("CBM Rules"). A patent need have only one
claim directed to a covered business method to be eligible for review. *Id.*

Case CBM2013-00019
Patent 5,191,573

In promulgating rules for covered business method reviews, the Office considered the legislative intent and history behind the AIA's definition of "covered business method patent." *Id.* at 48735-36.  The "legislative history explains that the definition of covered business method patent was drafted to encompass patents 'claiming activities that are financial in nature, incidental to a financial activity or complementary to a financial activity.'" *Id.* (citing 157 Cong. Rec. S5432 (daily ed. Sept. 8, 2011) (statement of Sen. Schumer)).  The legislative history indicates that "financial product or service" should be interpreted broadly.  *Id.*

Claim 1 of the '573 patent is directed to activities that are financial in nature, namely the electronic sale of digital audio.  Claim 1 recites "transferring money electronically via a telecommunication line to the first party . . . from the second party."  The electronic transfer of money is a financial activity, and allowing such a transfer amounts to providing a financial service.  Indeed, Patent Owner acknowledges that a fundamental step of claim 1 of the '573 patent is "selling" a desired digital audio signal to a user.  *See* Prelim. Resp. 9-10.  The financial nature of the claimed method is indicated further by the fact that the claim requires the first and second parties to be "financially distinct" from each other.  The Specification of the '573 patent also confirms the claimed method's connection to financial activities.  The Specification states that the invention is a method for the electronic "sale[]" of digital audio where a user may "purchase" and receive digital audio.  *See, e.g.*, Ex. 1001, col. 1, ll. 9-14; col. 2, ll. 26-30; col. 2, ll. 51-58; *see also* claim 3 ("providing a credit card number of the second party . . . so the second party is charged money").  We are persuaded that claim 1 recites a method for performing data processing or other operations

Case CBM2013-00019
Patent 5,191,573

used in the practice, administration, or management of a financial product or
service, as required by Section 18(d)(1) of the AIA.

In its preliminary response, Patent Owner makes a number of
arguments that the '573 patent does not qualify as a "covered business
method patent."  Patent Owner contends that Congress intended covered
business method reviews to apply only to a "narrow class of patents,"
relying on various statements in the legislative history of the AIA.  Prelim.
Resp. 25-30.  In particular, Patent Owner asserts that only patents with a
"clear nexus to the financial business" are eligible for a covered business
method review.  *Id*. at 23-24, 27, 30.  As such, "a petitioner must show more
than just the existence of a payment step or a monetary element in a patent
claim to establish the necessary nexus between the patent and a financial
product or service."  *Id*. at 27.

It is the statutory language, however, that controls whether a patent is
eligible for a covered business method review.  The AIA does not require a
"nexus" to a "financial business," but rather a "method or corresponding
apparatus for performing data processing or other operations used in the
practice, administration, or management of a financial product or service."
AIA § 18(d)(1).  Further, contrary to Patent Owner's view of the legislative
history, the legislative history indicates that the phrase "financial product or
service" is *not* limited to the products or services of the "financial services
industry" and is to be interpreted broadly.  CBM Rules, 77 Fed. Reg. at
48735-36.  Senator Schumer, for example, stated:

> Nothing in the America Invents Act limits use of section
> 18 to banks, insurance companies or other members of the
> financial services industry.  *Section 18 does not restrict itself to
> being used by petitioners whose primary business is financial*

11

Case CBM2013-00019
Patent 5,191,573

> *products or services.* Rather, it applies to patents that can apply
> to financial products or services. Accordingly, the fact that a
> patent is being used by a company that is not a financial
> services company does not disqualify the patent from section 18
> review. . . .
>
> The plain meaning of "financial product or service"
> demonstrates that section 18 is not limited to the financial
> services industry. *At its most basic, a financial product is an*
> *agreement between two parties stipulating movements of money*
> *or other consideration now or in the future.* . . .

157 Cong. Rec. S5432 (daily ed. Sept. 8, 2011) (statement of Sen. Schumer)

(emphasis added). Although claim 1 of the '573 patent does not relate to a

financial services business, it does recite the electronic movement of money

between financially distinct entities, which is an activity that is financial in

nature.

Patent Owner further argues that SightSound Technologies, LLC was

formed as a media company, not a financial services company, and the

entities sued by Patent Owner for infringement of the '573 patent (including

Petitioner) sell digital content, not financial products. Prelim. Resp. 30-31.

Again, however, as the legislative history cited above demonstrates, a patent

need not be used by a financial services company or involve a traditional

financial services business to qualify as a covered business method patent.

The cited entities may not provide typical financial services, but, according

to Petitioner, they do sell digital content, which is the financial activity

recited in claim 1.

Finally, Patent Owner argues that a determination that the '573 patent

is a covered business method patent would be a "radical expansion of the

scope of patents subject to CBM review" where "[v]irtually any patent that

mentions a sale would be subject to CBM review, even when the patent

Case CBM2013-00019
Patent 5,191,573

itself has nothing to do with finance." *Id*. at 31-33.  Patent Owner's argument is not persuasive.  The Board reviews petitions on their own facts to determine whether the challenged patent is a "covered business method patent" under the AIA definition.  Petitioner's argument that every patent mentioning a sale would be subject to covered business method review ignores the specific language of claim 1 ("transferring money electronically" from a second party to a "financially distinct" first party) and the claim's expressly stated connection to financial activity.[2]  Further, we do not agree with Patent Owner that the '573 patent has nothing to do with finance.  The Specification of the '573 patent states repeatedly that the disclosed method involves the electronic "sale" of digital audio and the electronic "transfer" of "money."  *See, e.g.*, Ex. 1001, col. 1, ll. 9-14; col. 2, ll. 26-30; col. 2, ll. 51-58; col. 3, ll. 3-8; col. 5, ll. 33-35.  For the reasons stated above, and based on the particular facts of this proceeding, we conclude that claim 1 of the '573 patent meets the "financial product or service" component of the definition in Section 18(d)(1) of the AIA.

## 2. Technological Invention

The definition of "covered business method patent" in Section 18(d)(1) of the AIA does not include patents for "technological inventions." To determine whether a patent is for a technological invention, we consider "whether the claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art; and solves a technical

---

[2] Petitioner's argument also ignores the fact that a patent mentioning a sale, but directed to a "technological invention[]," would not be a covered business method patent.  *See* AIA § 18(d)(1); *infra* Section II.A.2.

Case CBM2013-00019
Patent 5,191,573

problem using a technical solution." 37 C.F.R. § 42.301(b).  The following

claim drafting techniques, for example, typically do not render a patent a

"technological invention":

> (a) Mere recitation of known technologies, such as computer hardware, communication or computer networks, software, memory, computer-readable storage medium, scanners, display devices or databases, or specialized machines, such as an ATM or point of sale device.

> (b) Reciting the use of known prior art technology to accomplish a process or method, even if that process or method is novel and non-obvious.

> (c) Combining prior art structures to achieve the normal, expected, or predictable result of that combination.

Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48763-64 (Aug. 14,

2012).

　　　We are persuaded that claim 1 as a whole does not recite a

technological feature that is novel and unobvious over the prior art.  *See* Pet.

11-17.  The method of claim 1 utilizes various technical components:  a

"first memory," "second memory," "telecommunications line,"

"transmitter," and "receiver."  All of these components, however, were

generic hardware devices known in the prior art.  The Specification of the

'573 patent discloses, for instance, that "agent's Hard Disk 10," "user's Hard

Disk 60," and "Telephone Lines 30" were "already commercially available."

*See* Ex. 1001, col. 4, ll. 16-20; Pet. 14.  The applicant also acknowledged

during prosecution that certain prior art references had a "transmitter" and

"receiver," and stated that claim 1 can use "[a]ny suitable recording

apparatus" and is "not limited to a predesigned receiver."  *See* Ex. 1002 at

100, 139-41; Pet. 10, 14-15.  Claim 1 is merely the recitation of known

technologies to perform a method, which indicates that it is not a patent for a

Case CBM2013-00019
Patent 5,191,573

technological invention.  *See* Office Patent Trial Practice Guide, 77 Fed.
Reg. at 48764 (examples a and b).

Patent Owner does not dispute that the individual technical
components of claim 1 were known in the art, but argues that Petitioner fails
to address whether the particular *combination* of steps in claim 1 was novel
and non-obvious.  Prelim. Resp. 33-37.  Petitioner, however, discusses claim
1 as a whole in its Petition and explains sufficiently why the combination of
steps does not recite a technological feature that is novel and non-obvious
over the prior art.  *See, e.g.*, Pet. 11-16 (addressing Patent Owner's
admissions regarding the claim).

Patent Owner also argues that claim 1 of the '573 patent is not merely
an abstract idea and is not a business process capable of being performed
using a pen and paper.  Prelim. Resp. 35-37.  According to Patent Owner,
the hardware components recited in the claim are necessary to perform the
claimed method.  *Id*.  Patent Owner's argument appears to relate to whether
claim 1 recites patent-eligible subject matter under 35 U.S.C. § 101 rather
than whether the patent is for a "technological invention" under the AIA.
The tests are not the same.  As explained above, none of the technical
components of claim 1 were novel or non-obvious at the time of the '573
patent, and we are not persuaded that the particular combination of
components in the claim amounts to a technological feature that is novel and
unobvious over the prior art.  Further, while we agree with Patent Owner
that the steps in claim 1 must be implemented using the recited hardware
(i.e., a "first memory," "second memory," "telecommunications line,"
"transmitter," and "receiver"), that does not mean necessarily that the patent

15

Case CBM2013-00019
Patent 5,191,573

is for a technological invention because the components themselves were known in the art.

We also have considered whether the method of claim 1 solves a technical problem using a technical solution, but, because we conclude that claim 1 does not recite a technological feature that is novel and unobvious over the prior art, the '573 patent is a "covered business method patent" and is eligible for a covered business method patent review.

## B. Asserted Ground Based on 35 U.S.C. § 101

Petitioner challenges claims 1, 2, 4, and 5 of the '573 patent as claiming patent-ineligible subject matter under 35 U.S.C. § 101. Pet. 34-51. Petitioner relies on the declaration of Dr. John P. J. Kelly (Exhibit 1051) in support of its position. *Id.* Patent Owner, in its preliminary response, does not argue the merits of Petitioner's asserted ground of unpatentability based on Section 101. In connection with its standing argument, however, Patent Owner asserts that the challenged claims are not directed to an "abstract idea" and instead claim a specific combination of "critical hardware components." Prelim. Resp. 35-37. Upon review of Petitioner's analysis and supporting evidence, we determine that Petitioner has not established that claims 1, 2, 4, and 5 are more likely than not unpatentable under Section 101 for the reasons explained below.

The Supreme Court has made it clear that the test for patent eligibility under Section 101 is not amenable to bright-line categorical rules. *Bilski v. Kappos*, 130 S. Ct. 3218, 3229-30 (2010). Further, the Federal Circuit has recognized that it has been especially difficult to apply Section 101 properly

Case CBM2013-00019
Patent 5,191,573

in the context of computer-implemented inventions.  *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1277 (Fed. Cir. 2013).

Our analysis begins with the statute.  Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  "'In choosing such expansive terms . . . modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope.'"  *Bilski*, 130 S. Ct. at 3225 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)).  There are, however, three limited, judicially created exceptions to the broad categories of patent-eligible subject matter in Section 101:  laws of nature, natural phenomena, and abstract ideas.  *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012).

While an abstract idea by itself is not patentable, a practical application of an abstract idea may be deserving of patent protection.  *Id*. at 1293-94; *Bilski*, 130 S. Ct. at 3230; *Diamond v. Diehr*, 450 U.S. 175, 187 (1981).  To be patent-eligible, a claim cannot simply state the abstract idea and add the words "apply it."  *See Mayo*, 132 S. Ct. at 1294.  The claim must incorporate enough meaningful limitations to ensure that it claims more than just an abstract idea and is not merely a "drafting effort designed to monopolize the [abstract idea] itself."  *See id*. at 1297.  Limiting the claim to a particular technological environment or field of use, or adding insignificant pre- or post-solution activity, do not constitute meaningful limitations.  *See Bilski*, 130 S. Ct. at 3230; *Diehr*, 450 U.S. at 191-92; *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978).

17

Case CBM2013-00019
Patent 5,191,573

It is undisputed that the challenged claims of the '573 patent each recite a "method," or process, that is by definition statutory subject matter under Section 101. The question is whether the claims recite just an abstract idea and, therefore, fall under the abstract idea exception. Petitioner has not persuaded us that it is more likely than not that they do.

We address primarily independent claim 1 of the '573 patent, as Petitioner's arguments are directed to that claim. *See* Pet. 34-36. Petitioner contends that claim 1 recites the abstract idea of "selling digital music electronically in a series of rudimentary steps between a buyer and seller" and preempts the entire field of "selling downloadable digital music." *Id*. at 34-42; Ex. 1051 ¶¶ 58-64.

We do not view claim 1 as reciting merely a seller selling digital music electronically to a buyer. The claim recites a specific combination of computer components, at specific locations, that interact in a specific way to accomplish the steps of the method. Money is transferred electronically "via a telecommunication line" from a second party to a first party. The second party is in control of a "second memory" and is remote from the first party, which is in control of a "first memory" where a desired digital audio signal is stored. The first memory and second memory are connected electronically "via a telecommunications line" so that the desired signal can pass between. The signal is transmitted from the first memory with a "transmitter" in control of the first party to a "receiver" in control of the second party and having the second memory, where the signal then is stored.

The "first memory," "second memory," "transmitter," "receiver," and "telecommunications line" components, and the specific functions performed using those components, represent meaningful limitations on the

18

Case CBM2013-00019
Patent 5,191,573

scope of the claim that take it beyond the abstract concept of selling music.
To illustrate, the claim does not recite merely transferring money from one
party to another to buy music and then transmitting the music purchased
with that money.  Instead, a desired digital audio signal is stored in a
particular location ("first memory"), transmitted with a particular device
("transmitter") to another location over a particular medium
("telecommunications line"), received with a particular device ("receiver"),
and stored in the other location ("second memory").  These specific
functions performed using the components are not insignificant pre- or
post-solution activity—they are the solution itself.

       Petitioner further argues that the specific computer components
recited in claim 1 add nothing to the claims because each was known
individually in the prior art and can be found in a general purpose computer.
*Id*. at 37, 42-45; *see* Ex. 1051 ¶¶ 58-78.  Petitioner's analysis, however, does
not account sufficiently for the claim as a whole (i.e., the particular
combination of components and how the claim requires that they be used).[3]
The Supreme Court's holding in *Diehr* is instructive on this point:

              In determining the eligibility of [a] claimed process for
       patent protection under § 101, . . . claims must be considered as
       a whole.  It is inappropriate to dissect the claims into old and
       new elements and then to ignore the presence of the old
       elements in the analysis.  This is particularly true in a process

_____

[3] As explained above, we are satisfied that Petitioner has addressed claim 1
as a whole in arguing that the claim (i.e., the particular combination of claim
steps) does not recite a technological feature that is novel and unobvious
over the prior art.  *See supra* Section II.A.2.  The issue of whether the claim
as a whole (i.e., the particular combination of claim steps) represents an
abstract idea as opposed to a practical application of an idea, however, is a
different question.

Case CBM2013-00019
Patent 5,191,573

> claim because a new combination of steps in a process may be
> patentable even though all the constituents of the combination
> were well known and in common use before the combination
> was made.

450 U.S. at 188; *see also Bilski*, 130 S. Ct. at 3230.  Thus, while components
like computer memory and telecommunications lines were known at the
time of the invention, it is those components in combination (with the
specific functions performed using the components) that must be analyzed.
Assessing claim 1 in that light, we are not convinced that the claim
represents only the abstract idea of selling music.

We view claim 1 of the '573 patent (and the other challenged claims
2, 4, and 5) as analogous to the claim at issue in *Ultramercial, Inc. v. Hulu,
LLC*, 722 F.3d 1335 (Fed. Cir. 2013).  The claimed invention in that case
was a method of monetizing and distributing copyrighted products over the
Internet.  *Id*. at 1337-38.  The steps recited in the claim involved specific
electronic interactions between specific computer systems over a
communications network.  *Id*. at 1350.  According to the Federal Circuit, the
method in *Ultramercial* required an "extensive computer interface" and
performance of the method "through computers, on the internet, and in a
cyber-market environment."  *Id*. at 1350-52.  The Court held that the claim
was not directed to the abstract idea of monetizing advertising, but rather
had meaningful limitations restricting it to a practical application of that
idea.  *Id*. at 1352-54.  As the Court observed in *Ultramercial*:

> When assessing computer implemented claims, while the mere
> reference to a general purpose computer will not save a method
> claim from being deemed too abstract to be patent eligible, the
> fact that a claim is limited by a tie to a computer is an important
> indication of patent eligibility.  This tie to a machine moves it
> farther away from a claim to the abstract idea itself.  Moreover,

20

Case CBM2013-00019
Patent 5,191,573

> that same tie makes it less likely that the claims will pre-empt
> all practical applications of the idea.
>
> This inquiry focuses on whether the claims tie the
> otherwise abstract idea to a *specific way* of doing something
> with a computer, or a *specific computer* for doing something; if
> so, they likely will be patent eligible.  On the other hand, claims
> directed to *nothing more than the idea* of doing that thing on a
> computer are likely to face larger problems.  While no
> particular type of limitation is necessary, meaningful limitations
> may include the computer being part of the solution, being
> integral to the performance of the method, or containing an
> improvement in computer technology.

*Id*. at 1348 (citations omitted); *see also id*. at 1344 ("the relevant inquiry is
whether a claim, as a whole, includes *meaningful* limitations restricting it to
an application, rather than merely an abstract idea").

We also note that, like the claim at issue in *Ultramercial*, claim 1 does
not involve a mere recitation of steps with a statement that the steps are
performed "on a computer."  *See id*. at 1352.  Nor does the claim involve the
mere performance of calculations that any general purpose computer can do.
Nor does it involve steps that can be performed by a human (e.g., using a
pen and paper).  The specific computer components recited in the claim are
integral to the performance of the claimed method.

As to the remaining challenged claims, Petitioner does not address
specifically the language of claims 2, 4, and 5.  *See* Pet. 34-51.  We are not
persuaded that these claims are more likely than not unpatentable under
35 U.S.C. § 101 for reasons similar to those explained above for claim 1.  In
addition, while Petitioner argues that the challenged claims are directed to
the abstract idea of selling digital *music* electronically, *see* Pet. 34-42, claims
4 and 5 of the '573 patent recite the transmission of a desired digital *video*
signal.  We are not persuaded by Petitioner's analysis for this reason as well.

Case CBM2013-00019
Patent 5,191,573

Based on the information presented in the Petition and supporting evidence, we are not persuaded that claims 1, 2, 4, and 5 are more likely than not unpatentable as claiming patent-ineligible subject matter under 35 U.S.C. § 101.

### C. Asserted Ground Based on 35 U.S.C. § 112

Petitioner challenges claims 1, 2, 4, and 5 of the '573 patent as lacking adequate written description support so as to preclude patentability under 35 U.S.C. § 112, first paragraph.[4]  Pet. 52-58.  Petitioner relies on the testimony of Dr. Kelly in support of its position.  *Id.* (citing Ex. 1051). Upon review of Petitioner's analysis and supporting evidence, we determine that Petitioner has not established that claims 1, 2, 4, and 5 are more likely than not unpatentable for lacking an adequate written description for the reasons explained below.

The written description requirement of 35 U.S.C. § 112, first paragraph, requires that "the disclosure of the application relied upon reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).  One shows "possession" by descriptive means such as words, structures, figures, diagrams, and formulas that set forth fully the claimed invention.  *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).  It is not sufficient for purposes of the written description requirement that "the

---

[4] Section 4(c) of the AIA re-designated 35 U.S.C. § 112, first paragraph, as 35 U.S.C. § 112(a).  Because the '573 patent has an effective filing date before September 16, 2012, we refer to the pre-AIA version of 35 U.S.C. § 112.

Case CBM2013-00019
Patent 5,191,573

disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose." *Id*. "One shows that one is 'in possession' of *the invention* by describing *the invention*, with all its claimed limitations, not that which makes it obvious." *Id*. "[T]he hallmark of written description is disclosure. . . . [T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad*, 598 F.3d at 1351. Also, the claimed invention does not have to be described *in ipsis verbis* in the specification to satisfy the written description requirement. *Union Oil Co. of California v. Atlantic Richfield Co.*, 208 F.3d 989, 1000 (Fed. Cir. 2000).

Independent claim 1 (emphasis added) recites the steps of "transferring money electronically *via a telecommunication line* to the first party . . . from the second party," "connecting electronically *via a telecommunications line* the first memory with the second memory such that the desired digital audio signal can pass therebetween," and "transmitting the desired digital audio signal." Independent claim 4 recites similar limitations for a desired digital video signal.

Petitioner argues that the challenged claims lack adequate written description support because the specification of the '573 patent, as filed originally,[5] disclosed electronic communication over "telephone lines" rather than "telecommunications lines." Pet. 52-58. The originally filed '573 patent specification described the electronic sale and distribution of

---

[5] *See* Ex. 1002 at 11-18, 49-61, 73-88. Application 07/586,391, which issued as the '573 patent, was a file wrapper continuation of Application 07/206,497 under the now obsolete procedure of 37 C.F.R. § 1.62.

Case CBM2013-00019
Patent 5,191,573

Digital Audio Music "via telephone lines," specifically Telephone Lines 30 shown in Figure 1. Ex. 1002 at 12, 14-16. On December 9, 1991, the applicant filed an Office Action response amending the claims to recite connecting first and second memories "via a telecommunications link." *Id.* at 134-36. The response also amended the specification to add certain disclosure mirroring the language of the amended claims and reciting connection "via a telecommunications line" or "via a telecommunication link." *Id.* at 127, 132-34. The Examiner objected to the specification under 35 U.S.C. § 112, first paragraph, as "failing to provide clear support for the amendments" to the specification, and rejected claim 11 as indefinite under 35 U.S.C. § 112, second paragraph, because "the 'telecommunications link' is not well connected in the system." *Id.* at 148.

In a subsequent Office Action response dated June 23, 1992, the applicant amended the specification by deleting the previously added material and adding new disclosure describing the transfer of money "via a telecommunications line" and the connection of first and second memories "via a telecommunications line." *Id.* at 151-55. The applicant also amended the claims similarly. *Id.* at 155-59. The Examiner then allowed all of the pending claims but one, which the applicant cancelled, and the '573 patent issued. *Id.* at 193-204.

According to Petitioner, because the term "telecommunications line" is broader than "telephone line," the added disclosure pertaining to a "telecommunications line" constituted impermissible new matter lacking written description support in the originally filed specification. Pet. 54-57. We agree with Petitioner that the term "telecommunications line" is broader than "telephone line." As explained above, we interpret the term

24

Case CBM2013-00019
Patent 5,191,573

"telecommunications line" to mean an electronic medium for communicating between computers.  A telephone line, by contrast, is an electronic medium for a particular type of communication (i.e., telephone communication).

We are not persuaded, however, that the originally filed specification lacks adequate written description support for the "telecommunications line" aspects of the challenged claims.  Petitioner's arguments do not address the overall disclosure of the original specification or explain sufficiently why the original specification as a whole would not have indicated possession of the invention to a person of ordinary skill in the art.  The original specification describes repeatedly the storage, sale, distribution, transfer, and retrieval of Digital Audio Music (i.e., music encoded into binary code) "electronically."  *See* Ex. 1002 at 14-18.  For example, the specification discloses that "[i]nasmuch as Digital Audio Music is software and this invention electronically transfers and stores such music, electronic sales and distribution of the music can take place via telephone lines onto a hard disk." *Id*. at 14.  Original claim 1 also recited a system in which "the binary structure of Digital Audio Music can be electronically transferred via telephone lines from a hard disk of the seller to the hard disk of the user." *Id*. at 18, 59.  These disclosures are directed broadly to electronic communication of digital signals.  They provide an example of what the communication "can" be (i.e., via a telephone line) and do not limit expressly the invention to an embodiment communicating via a telephone line. *See, e.g.*, *id.* at 17 (stating that "different embodiments of the invention" are possible).

Case CBM2013-00019
Patent 5,191,573

A patent applicant is not required to describe in the specification every embodiment of the invention. *See LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) ("A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language. That is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before.") (citations omitted); *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003) (a specification may contain sufficient written description of a "'broadly claimed invention without describing all species that [the] claim encompasses'") (citation omitted); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001). Petitioner does not explain sufficiently why the broad disclosures in the original specification are not indicative of possession of a method involving communicating over a broader "telecommunications line." *See, e.g.*, *Commonwealth Sci. & Indus. Res. Organisation v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1379-82 (Fed. Cir. 2008) (finding that a specification amendment to replace "radio frequencies in excess of 10 GHz" with "radio frequencies" in general was not improper new matter based on broad disclosures in the specification as a whole).

Further, we are not persuaded by Petitioner's arguments given the nature of the technology at issue and the level of ordinary skill in the art at the time. As the Federal Circuit held in *Ariad*, "the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." 598 F.3d at 1351 (for generic claims, the adequacy of

Case CBM2013-00019
Patent 5,191,573

the disclosure should be evaluated in light of "'the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue'") (citation omitted).  Dr. Kelly testifies that a person of ordinary skill in the art would have had "a bachelor's degree or equivalent in computer engineering or computer science and approximately two years of experience in developing software and hardware that transmit and receive files over a network," and that various media for communicating between computers, such as a telephone line for computer modem communication and Ethernet and Apple LocalTalk local area networks (LANs), were known in the art. Ex. 1051 ¶¶ 14, 46-50, 86-93.  Petitioner has not provided sufficient and credible evidence demonstrating that such an individual, with knowledge of computer communication methods, would have viewed the applicant as only in possession of a method using a "telephone line" rather than "telecommunications lines" in general.

We have reviewed Dr. Kelly's testimony regarding technical differences between telephone line communication and communication via certain other telecommunications lines of the time.  *See id.* ¶¶ 82-94.  The original specification, however, need not explain the technical details of how every type of telecommunications line would work to provide sufficient written description support for the claimed invention involving "telecommunications lines."  Given what the original specification does disclose, the nature of the technology at issue, and the level of ordinary skill in the art at the time, we are not persuaded that the claims lack adequate written description support in the original specification.

Case CBM2013-00019
Patent 5,191,573

Based on the information presented in the Petition and supporting evidence, we are not persuaded that independent claims 1 and 4, as well as claims 2 and 5 that depend therefrom, are more likely than not unpatentable for lacking an adequate written description under 35 U.S.C. § 112, first paragraph.

## D. Conclusion

We conclude that Petitioner has not demonstrated that the challenged claims are more likely than not unpatentable based on the asserted grounds. Therefore, we do not institute a covered business method review on any of the asserted grounds as to any of the challenged claims.

## III. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the Petition is denied as to all challenged claims of the '573 patent.

Case CBM2013-00019
Patent 5,191,573


TIERNEY, *Administrative Patent Judge*, concurring in the result only.

I concur in the result only.

Case CBM2013-00019
Patent 5,191,573


PETITIONER:

J. Steven Baughman
Ching-Lee Fukuda
ROPES & GRAY LLP
steven.baughman@ropesgray.com
ching-lee.fukuda@ropesgray.com


PATENT OWNER:

David R. Marsh
Kristan L. Lansbery
ARNOLD & PORTER LLP
david.marsh@aporter.com
kristan.lansbery@aporter.com