# Exhibit 11



Portfolio Media, Inc. | 860 Broadway, 6th Floor | New York, NY 10003 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# AIA Reviews A Growing Worry For Patent Owners, Attys Say

By **Ryan Davis**

Law360, Washington (April 03, 2014, 5:33 PM ET) -- The new America Invents Act patent review proceedings have proven to be more popular, expensive and effective at canceling patents than many anticipated, striking fear into the hearts of those whose patents are targeted in the programs, attorneys said at a panel discussion Thursday.

Since the proceedings became available in late 2012, the U.S. Patent and Trademark Office has canceled about 95 percent of the patent claims that have been challenged, creating huge risks for patent owners, Gene Quinn of Zies Widerman & Malek said at the American Bar Association Intellectual Property Law Conference in Arlington, Va.

"These proceedings are drastically altering the patent assertion landscape," he said. "If you're a patent owner and you get a challenge, you absolutely, positively, immediately have to take it seriously."

The new systems, known as inter partes review and covered business method patent review, were proposed by Congress as a way to eliminate bad patents, primarily those wielded by so-called patent trolls filing frivolous lawsuits.

In practice, however, they have been used to challenge patents of all sorts, "so from a patentee perspective, whether you're a troll or not, it's very scary," said Scott McKeown of Oblon Spivak McClelland Maier & Neustadt LLP.

"The proceedings are game changers, not just for patent trolls," he said. "This is also an issue for innovators and tech companies."

Far more of the new proceedings have been filed than the USPTO predicted and the volume of petitions appears to be increasing at a rapid clip as accused infringers see the high success rate those challenging patents are having, attorneys said.

The USPTO predicted that 420 inter partes review petitions would be filed in fiscal 2013, but 563 were actually filed. The office envisioned 450 reviews being filed in fiscal 2014, but with six months to go before the year ends Sept. 30, 540 have been filed to date.

Quinn said that there is increasing concern among patent experts that the USPTO's Patent Trial and Appeal Board, which hears the proceedings, is a threat to patent rights. He pointed to an **October speech** by Federal Circuit Chief Judge Randall Rader, in which he referred to the board as "death squads" wiping out patents.

"There's a real concern that the PTAB going to end up killing a lot of patents," Quinn said.

The new proceedings have also not resulting in reduced litigation costs, as proponents

claimed they would, but are in fact doing the opposite, Eldora Ellison of Sterne Kessler Goldstein & Fox PLLC said.

"This was meant to be a low-cost alternative to district court litigation," she said. "What a lie. That's just not what's happening."

Instead, many patents are being subjected to AIA reviews while district court cases are going on at the same time, driving up legal costs, she said.

While the proceedings don't cost millions of dollars like district court litigation, they still cost hundreds of thousands of dollars, Quinn said, so "not by any stretch of imagination is it cheap."

McKeown noted that the USPTO has always invalidated a large swath of patents that come before it for review, and the re-examination system that existed before the AIA had similarly high rates of canceling claims. The difference is that re-examinations often dragged on for years, making them an unattractive option for many litigants, while the AIA mandates that the new proceedings be completed in a year.

"It's just a matter of things happening faster. It's not any different," he said.

Not only is the Patent Trial and Appeal Board is "a pretty unforgiving tribunal," it is also laser-focused on the technical aspects of the patent, Ellison said. Whereas a patent owner in district court can sway the jury with a David and Goliath story or other intellectual appeals, that doesn't fly at the board.

"While the judges on the PTAB are human, that's not what they're focused on," she said. "It's a different scenario than what may be more compelling for you in district court. What the PTAB tends to care about is core patentability issues."

Because the AIA reviews are entirely new proceedings that have never existed before, case law and precedent about the board operates is being rapidly developed with each decision that it issues. Attorneys working on the proceedings must pay close attention to all of the rulings, Ellison said.

"If you find yourself in a position of advising a client on an inter partes review, you've really got to find counsel that knows the nuts and bolts of these proceedings," she said. "It's not enough to just read the rules."

--Editing by Chris Yates.

All Content © 2003-2014, Portfolio Media, Inc.