**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>    Defendant. | Civil Action No. 2:13-cv-655-JRG<br>(LEAD CASE) |
| LOYALTY CONVERSION SYSTEMS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>    Defendant. | Civil Action No. 2:13-cv-659-JRG |
| LOYALTY CONVERSION SYSTEMS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>FRONTIER AIRLINES, INC.<br><br>    Defendant. | Civil Action No. 2:13-cv-660-JRG |

Case 2:13-cv-00655-WCB Document 74 Filed 05/08/14 Page 2 of 15 PageID #: 1381

| | |
|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.<br><br>    Defendant. | Civil Action No. 2:13-cv-663-JRG |
| LOYALTY CONVERSION SYSTEMS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>SPIRIT AIRLINES, INC.<br><br>    Defendant. | Civil Action No. 2:13-cv-664-JRG |
| LOYALTY CONVERSION SYSTEMS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>    Defendant. | Civil Action No. 2:13-cv-665-JRG |

| | |
|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>US AIRWAYS, INC.<br><br>    Defendant. | Civil Action No. 2:13-cv-666-JRG |

# **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants submit this reply in support of its Rule 12(c) Motion for Judgment on the Pleadings ("Motion"). The Motion sets forth that claims 31-34, 36-42, and 44-46 of U.S. Patent No. 8,313,023 ("the '023 Patent") and claims 1-3 and 5-7 of U.S. Patent 8,511,550 ("the '550 Patent") (patents collectively referred to as "Patents-in-Suit"; claims collectively referred to as "Asserted Claims") are invalid pursuant to 35 U.S. C. § 101. The parties agree that this Motion is ripe for adjudication.[1] *See* Dkt. 71 ("Opposition") at 1-21; *see also* Dkt. 69 at 1. If the Court is not inclined to enter a stay so that the USPTO can decide whether the Asserted Claims are invalid under 35 U.S.C. § 101, an early ruling on this motion would potentially save significant resources that the parties and the Court will be expending over the next few weeks and months.

## I. INTRODUCTION

The Asserted Claims provide for the conversion of "non-negotiable credits to entity independent funds in accordance with a credit-to-funds ratio." '023 Patent, claims 31; 39 / '550 Patent, claim 1. Put simply, what is claimed is the abstract concept of a conversion of one form of currency to another. Plaintiff, Loyalty Conversion Systems Corporation's ("LCSC") opposition brief spends considerable time on whether the Asserted Claims involve "currency." This issue is irrelevant for purposes of determining whether the Asserted Claims are invalid under 35 U.S.C. § 101. The Asserted Claims provide for "conversion" based on a mathematical formula through the use of a "computer." A simple calculation such as conversion is itself an abstract concept. And, mathematical formulas are not patentable.

In an effort to save the Asserted Claims, LCSC, without any support, claims in conclusory fashion that a special purpose computer is disclosed. This is, however, not supported

---

[1] As the Court is aware, several of the defendants have also filed a motion to stay the proceedings pending review of two CBM petitions. The filing of these motions simultaneously is similar to *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*. No. 6:12-CV-674, 2014 WL 923280, at *1, *4 (E.D. Tex. Jan. 21, 2014) (Davis, J.). There, Judge Davis granted the 12(c) motion on similar grounds and ruled that the motion to stay was therefore moot. *See* discussion, infra at 3, 5, and 6.

1

by the claim language and is inconsistent with the specification. For instance, the claims only provide for "a computer." The specification clearly sets out that the claimed computer is a general purpose computer. *See* '023 Patent at 5:64-6:3 and '550 Patent at 6:18-24 ("A typical combination of hardware and software may be a general purpose computer system"). Indeed, the claimed steps can be performed by a "service agent and/or a machine manipulated by a service agent." '023 Patent at 3:42-44 and '550 Patent at 3:64-67. Nowhere in the Asserted Claims or in the specification is there any statement indicating that the computer is anything other than a general purpose computer. To make matters worse for LCSC, the steps performed on this computer are converting one form of currency/non-negotiable credits to another "in accordance with the credit-to-funds ratio." '023 Patent at 9:62-63. This claim limitation merely states that the conversion is done based on a mathematical ratio or equation, which supports the conclusion that the process claimed here is abstract. (*See e.g.*, Patents-in-Suit at Fig. 2 – converting Mr. Smith's Entertainment Rewards of $100.00 to Funds of $100.00 based on a 1:1 ratio)[2].

Thus, whether there is "currency" conversion, or just simply conversion of one item to another, does not impact the patentability of the Asserted Claims. The fact is that the Patents-in-Suit claim nothing more than the abstract idea of conversion, where one item is converted to another based on a simple mathematical equation via a general purpose computer, or even a service agent operating a general purpose computer. LCSC has no credible argument to the contrary, which is why it failed to address any of these points in its opposition. The arguments LCSC did raise in its opposition include mere conclusory statements without any support from the Patents-in-Suit or established law. For instance, the fact that there is an agreement resulting

---

[2] During oral arguments at the Supreme Court for *Alice Corporation v. CLS Bank*, Solicitor General, Mr. Verrilli commented that "the first person who came up with a frequent flier program wouldn't have been able to claim patent there, because, after all, that's a business method for improving customer loyalty implemented on a computer." Ex. 1, *CLS* Transcript at 51:5-9; *see also Id.* at 52:1-9; 52:17-24; and 53:13-17.

in a "concrete transaction" does not save these claims. Indeed, an agreement in this context is between two entities whereby each have agreed in advance, in writing, to convert or exchange one form of currency (e.g. hotel points) to another (e.g. airline miles). That written agreement further provides for the conversion rate (e.g. 1:1 or 2:1) for each transaction. This does not provide any additional meaningful limitations to the Asserted Claims. [3]

Contrary to LCSC's assertions, the fact that some of the claims provide for "non-transitory computer-readable medium" or are considered Beauregard type claims also adds nothing. This is because an otherwise unpatentable claim does not somehow become patentable simply by including such a recitation. *See e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011). Recognizing that the Asserted Claims claim unpatentable subject matter, LCSC submits that the Patents-in-Suit provide for a transaction where there is a tax consequence and that this somehow changes the Asserted Claims from an abstract idea to patentable subject matter. LCSC fails to cite to any language in the Patents-in-Suit, or any case law, that supports this position.

For the reasons set forth in the Motion and in this Reply, the Asserted Claims are invalid under 35 USC § 101.

## II. ARGUMENT

"Assessing whether a claim covers an abstract idea or its application involves two steps. First, the Court identifies what, if any, abstract idea is involved in the claim; and second, 'whether *meaningful limitations* in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine and specific application of that idea.'" *See Clear with Computers,*

---

[3] Instead of explaining how the Asserted Claims meet the Federal Circuit's "Machine-or-Transformation" Test, LCSC incorrectly relies on an overruled and oft-criticized *State Street Bank* test of "useful, concrete and tangible result." *See* Dkt. 71 at 2, 6, 8, 15, 16, 17, and 19; *see also* Dkt. 61 at 19-22 and 25-26 (explaining that the Asserted Claims fail the Machine-or-Transformation Test).

2014 WL 923280, at *2 (quoting *Ultramercial, Inc.*, *v. Hulu, LLC*, 722 F.3d 1335, 1349 n.2 (Fed.Cir.2013)). As discussed below, the Asserted Claims (1) are directed to the abstract idea of currency conversion (or conversion of one item to another); and (2) do not recite any meaningful limitations, but instead only recite steps performing basic functions and/or post-solution activity.

    A.    <u>The Asserted Claims are Directed to An Abstract Concept and Therefore Claim Unpatentable Subject Matter</u>

The Asserted Claims do not disclose a special-purpose computer. Claim 31 of the '023 Patent recites "one or more computers" ('023 Patent at 9:59-10:27), claim 39 of the '023 Patent recites "non-transitory computer-readable mediums" (*id.* at 11:1-41), and claim 1 of the '550 patent recites "a computer." ('550 Patent at 6:42-7:26). No special-purpose computer is disclosed in any claim. Any statement or argument otherwise would be misleading and contrary to the plain language of the Patents-in-Suit.[4] To the contrary, the Patents-in-Suit explicitly disclose that "[a]ny kind of computer system or other apparatus adapted for carrying out the methods described herein is suited . . . [such that a] typical combination of hardware and software may be a general purpose computer system with a computer program" ('023 Patent at 5:64-6:3). LCSC's Opposition fails to address or acknowledge this disclosure.

Moreover, the Asserted Claims are also solely directed to the abstract concept of performing a simple conversion calculation. For example, claim 31 of the '023 Patent recites three-basic steps: (1) "*agreeing* to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds in accordance with a credits-to-funds ratio…;" (2) "*granting* the consumer the quantity of the entity independent funds;" and (3) "*accepting* at least a portion of the quantity of entity independent funds in exchange for the goods or services that the

---

[4] LCSC fails to cite to any disclosure of specific "specially programmed hardware." That is because there are no such disclosures in the Patents-in-Suit. Any references are limited to basic, generic hardware or software. *See e.g.* '023 Patent, claim 39 (provides generally for a "computer program product").

4

commerce partner provides." *See* '023 Patent at 9:59-10:27; *see also* similar steps in claim 39 of the '023 Patent claim 1 of the '550 Patent. Thus, all three steps of claim 31 recite nothing more than ancillary functions related to performing a mathematical conversion. The use of a "computer" does not impart any meaningful limitation.

The Patents-in-Suit explicitly disclose that these claimed steps of "agreeing," "granting" and "accepting" can be performed by a human being. *See e.g.*, '023 Patent at 3:42-44 and '550 Patent at 3:64-67 ("the methods detailed herein can also be methods performed at least in part by *a service agent* and/or a machine manipulated by a *service agent*," (emphases added)); *see* also '023 Patent at 3:53-55 and '550 Patent 3:64-4:12 (client 110 "can be any of a variety of interfaces including, but not limited to another *human being*, a personal computer . . ." (emphasis added)). This is similar to what the Court saw in the *Clear with Computers* case. There, the Court noted that a "human" could replace certain claim language to where the claims could still be performed consistent with the disclosed steps; albeit, now with a human performing the step. 2014 WL923280, at *4-5 (replacing "configuration engine" with "human"). The Court, therefore, granted the defendants 12(c) motion holding that the asserted patent claimed an abstract idea and was therefore unpatentable under 35 U.S.C. § 101. *Id.*

The abstract nature of the Asserted Claims becomes even clearer when it is analogized with the real world example of converting US dollars to British pounds. If traveling to England, a consumer is required to exchange the dollars into pounds based on a conversion ratio, i.e., exchange rate. Applying the claim language to this scenario, a clerk at a currency-exchange booth may "agree to accept" conversion; the clerk may "grant" the converted currency (by performing a simple calculation), and finally a clerk at a store may "accept" the converted dollars to provide goods or services, with or without the use of a computer.

As explained by the Federal Circuit, the Supreme Court analyzed a similar abstract claim in *Benson,* where the patent claimed "a method of programming a general-purpose computer to convert binary-coded decimal ("BCD") numbers into pure binary through the use of a mathematical algorithm." *See CyberSource*, 654 F.3d at 1371 (citing *Gottschalk v. Benson*, 409 U.S. 63, 65 (1972)). "The Court focused in part on the mental character of the claimed process stating that:

> The conversion of BCD numerals to pure binary numerals can be done mentally . . . . The method sought to be patented varies the ordinary arithmetic steps a human would use by changing the order of the steps, changing the symbolism for writing the multiplier used in some steps, and by taking subtotals after each successive operation. The mathematical procedures can be carried out in existing computers long in use, no new machinery being necessary. And, as noted, they can also be performed without a computer.

In finding that the process in *Benson* was not patent-eligible, the Supreme Court appeared to endorse the view that methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas—the 'basic tools of scientific and technological work' that are open to all." *Id.* (quoting *Benson*, 409 U.S. at 67).

Thus, like the claims in *Benson* and *CyberSource*, the Asserted Claims are unpatentable because they are directed to nothing more than a simple calculation—involving a conversion of one thing to another based on a mathematical ratio—that can be performed by a human being using a pen and a paper. The Supreme Court also has enforced "a bright-line prohibition against patenting . . . mathematical formulas and the like." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1303 (2012). This Court has also held that claims directed to such calculations are ineligible subject matter. *See Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, No. 6:12-CV-375, 2013 WL 7393173, at *4 (E.D. Tex. Mar. 27, 2013) (citing *Parker v. Flook*, 437 U.S. 584, 585 (1978)) ("the Supreme Court found unpatentable claims directed to an improved

6

method for calculating, using a generalized formulation for **converting** numbers").

Reciting nothing more than generic computers fails to circumvent the prohibition against patenting abstract ideas and mental processes. *Bancorp Servs. v. Sun Life Assurnace Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). To support patentability in this context, the computer must be "integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Id.* Here, the recited computers do nothing more than their basic functions. For example, in claim 31 of the '023 Patent, the computer simply detects a communication, grants funds, and accepts funds for goods or services. *See* '023 Patent at 10:7-27; *see also* similar recitations in claim 39 of the '023 Patent at 11:2-41. In addition to these functions, and as explained above, claim 1 of the '550 Patent recites only a computer that displays web pages. *See* '550 Patent at 6:43-7:26. These functions are nothing more than data processing or post-solution functions and do not impart meaningful limitations.[5] For these same reasons, and as fully set forth in Defendants' Motion, the Asserted Claims also fail the "Machine-or-Transformation" test. *See* Dkt. 61 at 19-22 and 25-26.

Further, LCSC's reliance on *Apple Inc. v. Sightsound Tech., LLC,* CBM2013-00019, slip opinion (PTAB. 2013), a PTAB decision, supports the conclusion that the Asserted Claims are invalid. In that case, the PTAB determined that the claim did "not involve a mere recitation of steps with a statement that the steps are performed 'on a computer' . . . Nor [did] the claim involve the mere performance of calculations that any general purpose computer can do. Nor [did] it involve steps that can be performed by a human."[6] *Id.* at 21. As shown herein, this is not

---

[5] *See* e.g. *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (en banc); *Clear with Computers,* 2014 WL923280, at *4 ("claiming a computer implementation of a purely mental process that could otherwise be performed without the use of a computer does not render a claim patentable"); *Uniloc USA*, 2013 WL 7393173, at *2; *Intellectual Ventures I LLC, et al., v. Capital One Fin. Corp.*, No. 1:13-cv-00740, 2014 WL 1513273 at *3, (E.D. Va. Apr. 16, 2014); *Internet Patents Corp. v. Gen. Auto. Ins. Servs., Inc.*, No. C 12-05036, 2013 WL 7936688, at *1, * 4 (N.D. Cal. Sept. 24, 2013).

[6] The PTAB further commented that the claim at issue is not abstract because it does not "recite merely transferring

true for the Asserted Claims.

The Asserted Claims are directed to nothing more than the abstract concepts of performing basic math, applying ratios, completing sales, and reciting the use of general purpose computers for no more than performing basic functions. Accordingly, the Asserted Claims are invalid under 35 U.S.C. § 101.

### B. LCSC's Efforts to Place Import on Certain Limitations Is Not Credible, Nor Is it Supported Legally

LCSC argues that the Patents-in-Suit are not directed to the abstract concept of conversion because the Asserted Claims: (1) include "non-transitory computer-readable medium"; (2) require a "contractual agreement" (*Id.* at 14-15); or (3) are directed to a concrete transaction requiring an "economic action resulting in a tax consequence." *Id.* at 15-19. For the reasons detailed below, none of LCSC's arguments have merit.

As discussed above, the Asserted Claims can be performed by a human being and do not recite anything more than a general purpose computer for performing basic functions that can be performed using a pen and paper. This same analysis also applies for recitations of "non-transitory computer-readable medium" in claims 39-42 and 44-46 of the '023 Patent. As disclosed in the Patents-in-Suit, the claimed "non-transitory computer-readable medium" is implemented by nothing more than a general purpose computer. *See* '023 Patent at 5:64-6:3 and '550 Patent at 6:18-24.[7] The Federal Circuit has expressly stated that a "Beauregard claim," i.e., a claim to a computer readable medium containing program instructions, is not patentable just because it recites a "computer readable medium." The Federal Circuit explained that "reciting computer readable medium "does not make the otherwise unpatentable method patent-eligible

---

money from one party to another to buy music and then transmitting the music purchased with that money." *Id.* at 19
[7]MPEP § 2106 suggests the addition of "non-transitory" to claims to make clear that the applicant is not claiming "non-statutory transitory forms of signal transmission." Here, the asserted claims are not invalid under § 101 because they are directed to a signal, but they are invalid because they are directed to an abstract idea.

under § 101." *CyberSource*, 654 F.3d 1366, 1375 (invalidating a claim under 35 U.S.C. § 101 despite the claim reciting "[a] computer readable medium containing program instruction . . . wherein the execution of program instructions by one or more processors of a computer system causes the one or more processors to carry out the steps"). Thus, the recitation of "non-transitory computer-readable medium" does not entitle claims 39-42 and 44-46 of the '023 Patent to special treatment—as LCSC suggests—when determining patent eligibility. *See Bancorp,* 687 F.3d at 1276-77 ("a claim directed to a 'computer readable medium,' despite its format, should be treated no differently from the comparable process claims held to be patent ineligible under § 101."); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("the basic character of a process claim drawn to an abstract idea is not changed by . . . claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium) (quoting *CyberSource*, 654 F.3d at 1375).

Without citing to any authority, LCSC contends the recitation of "an agreement of the commerce partner . . . ," in the Asserted Claims makes the claims statutory. *See* Opposition at 14-15. As noted in Defendants' Motion, reciting an agreement in a claim does not render that claim patentable. In this context, it actually confirms that the claims are directed to an abstract idea and do not claim statutory subject matter. *See also* supra at 3. The Federal Circuit addressed this issue directly explaining that "[u]nder *Bilski*, this abstract concept cannot be transformed into patentable subject matter merely because of connections to the physical world through deeds, contracts, and real property." *Fort Properties*, 671 F.3d at 1322; *see also Id.* ("in *In re Comiskey*, we found claims to a method of 'mandatory arbitration resolution' unpatentable under § 101 even though those claims required the use of physical "unilateral and contractual documents.'). Thus, the recitation of "contractual agreement" does not make a claim patentable.

9

Without citing to any authority, LCSC contends that because the Asserted Claims require an "economic action resulting in a tax consequence" that results in a "concrete transaction" it somehow makes the claims statutory. *See* Opposition at 15-19. LCSC's repeated references to a "concrete transaction" does nothing to support the notion that the Asserted Claims are directed to statutory subject matter under 35 USC § 101. This is simply a misapplication of law. LCSC relies on an overruled and oft-criticized *State Street Bank Test* ("useful, concrete and tangible" result test) instead of the machine transformation test. *See e.g., Bilski v. Kappos*, 130 S. Ct. 3218 3232 (2010) (the Supreme Court explained that "it would be a grave mistake to assume that anything with a 'useful, concrete and tangible result,' . . . may be patented").

Moreover, the Federal Circuit held a claim directed to a "method of creating a real estate investment instrument adapted for performing tax-deferred exchanges" invalid under § 101. *See Fort Properties*, 671 F. 3d at 1319. The Federal Circuit explained that "the claims in *Bilski* were tied to the physical world through at least two tangible means: commodities and money . . . These ties, however, were insufficient to render the abstract concept of hedging patentable." *Id.* at 1322. Thus, the claims found to be directed to ineligible subject matter in *Bilski* also involved money and therefore had tax implications. *See also*, *Bancorp,* 687 F.3d at 1269, 1281 (holding claims directed to insurance policies that provide "post-retirement benefits on a tax-advantaged basis" invalid under § 101). There is no authority, nor does LCSC cite to any, that holds that a claim is statutory because it recites an economic action with a tax consequence. Any conclusion otherwise would be contrary to well-established law.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that its Motion be granted and that the lawsuits be dismissed as a matter of law.

| | |
|---|---|
| Dated: May 8, 2014 | Respectfully submitted, |
| | |
| */s/ Jennifer Parker Ainsworth* | */s/ Thomas C. Wright* |
| Jennifer Parker Ainsworth | *(with permission by Jennifer p. Ainsworth)* |
| Texas Bar No. 00784720 | Ross Cunningham |
| jainsworth@wilsonlawfirm.com | Texas Bar No. 24007062 |
| WILSON, ROBERTSON & CORNELIUS, P.C. | Thomas C. Wright |
| 909 ESE Loop 323, Suite 400 | Texas Bar No. 24028146 |
| P.O. Box 7339 [75711] | Alex J. Whitman |
| Tyler, Texas 75701 | Texas Bar No. 24081210 |
| Telephone: (903) 509-5000 | ROSE WALKER, L.L.P. |
| Facsimile: (903) 509-5092 | 3500 Maple Avenue, Suite 900 |
| | Dallas, Texas 75216 |
| | Telephone: 214.752.8600 |
| Stephen E. Baskin | Facsimile: 214.752.8700 |
| Virginia Bar No. 47567 | rcunningham@rosewalker.com |
| sbaskin@mayerbrown.com | twright@rosewalker.com |
| Ann Marie Duffy *(pro hac vice)* | awhitman@rosewalker.com |
| aduffy@mayerbrown.com | |
| Dara M. Kurlancheek | |
| New York Bar No. 4701181 | Michael C. Smith |
| dkurlancheek@mayerbrown.com | State Bar No. 18650410 |
| Saqib J. Siddiqui *(pro hace vice)* | Seibman, Burg, Phillips, LLP |
| ssiddiqui@mayerbrown.com | 113 E. Austin Street |
| MAYER BROWN LLP | P.O. Box 1556 |
| 1999 K Street, N.W. | Marshall, TX 75671 |
| Washington, DC 20006 | Telephone: 903-938-8900 |
| Telephone: (202) 263-3000 | Facsimile: 903.767.4620 |
| Facsimile: (202) 263-3300 | michaelsmith@seibman.com |
| | |
| **ATTORNEYS FOR DEFENDANTS AMERICAN AIRLINES, INC., DELTA AIR LINES, INC., FRONTIER AIRLINES, INC., UNITED AIRLINES, INC. AND US AIRWAYS, INC.** | **ATTORNEYS FOR DEFENDANT SPIRIT AIRLINES, INC.** |

       */s/ Max Ciccarelli*
       *(with permission by Jennifer p. Ainsworth)*
       Max Ciccarelli
       State Bar No. 00787242
       Max.ciccarelli@tklaw.com
       Daniel Murray
       State Bar No. 24086422
       Daniel.murray@tklaw.com
       THOMPSON & KNIGHT LLP
       One Arts Plaza
       1722 Routh Street, Suite 1500
       Dallas, Texas 75201
       Telephone: 214.969.1700
       Facsimile: 214.969.1751

       **ATTORNEYS FOR DEFENDANT**
       **SOUTHWEST AIRLINES CO**.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a), on this the 8th day of May, 2014.

       */s/ Jennifer P. Ainsworth*
       Jennifer P. Ainsworth