# Exhibit 1

Official - Subject to Final Review

1

```
 1        IN THE SUPREME COURT OF THE UNITED STATES
 2   - - - - - - - - - - - - - - - - - x
 3   ALICE CORPORATION PTY.            :
 4   LTD.                              :
 5        Petitioners,                 :  No. 13-298
 6     v.                              :
 7   CLS BANK INTERNATIONAL,           :
 8   ET AL.                            :
 9   - - - - - - - - - - - - - - - - - x
10               Washington, D.C.
11               Monday, March 31, 2014
12
13        The above-entitled matter came on for oral
14   argument before the Supreme Court of the United States
15   at 10:04 a.m.
16   APPEARANCES:
17   CARTER G. PHILLIPS, ESQ., Washington, D.C.; on behalf
18     of Petitioners.
19   MARK A. PERRY, ESQ., Washington, D.C.; on behalf of
20     Respondents.
21   DONALD B. VERRILLI, JR., ESQ., Solicitor General,
22     Department of Justice, Washington, D.C.; on behalf of
23     the United States, as amicus curiae, supporting
24     Respondents.
25
```

```
 1              C O N T E N T S
 2   ORAL ARGUMENT OF                                  PAGE
 3   CARTER G. PHILLIPS, ESQ.
 4     On behalf of the Petitioners                    3
 5   ORAL ARGUMENT OF
 6   MARK A. PERRY, ESQ.
 7     On behalf of the Respondents                    26
 8   ORAL ARGUMENT OF
 9   DONALD B. VERRILLI, JR., ESQ.
10     On behalf of the United States, as amicus
11     curiae, supporting Respondents                  44
12   REBUTTAL ARGUMENT OF
13   CARTER G. PHILLIPS, ESQ.
14     On behalf of the Petitioners                    53
15
16
17
18
19
20
21
22
23
24
25
```

1  be patent eligible.
2      And I -- I would submit for the Court that
3  the key point here, I think, is that now, given where
4  the Court -- what the Court has held in Bilski, given
5  what it's held in Mayo, the abstract ideas exception is
6  really the only tool left to deal with what I -- what I
7  think I fairly read Bilski as saying is a significant
8  problem, the proliferation of patents of business
9  methods.
10      JUSTICE KENNEDY:      Is there an example that
11  you can give us of a -- what we can call a business
12  process that is patentable, a process that doesn't
13  involve improving the workings of a computer?
14      GENERAL VERRILLI:      I -- I think it's going
15  to be difficult for me to do that.  I think, for
16  example, if you had a business method, a process for
17  additional security point-of-sale credit card
18  transactions using particular encryption technology,
19  that might well be patent eligible.  It's a technology
20  that it makes conduct of business more efficient or
21  effective.
22      But there is a technological link here, and
23  we do think that's critical to our -- to our point of
24  view with respect to the case.  And I -- and I do think,
25  remember, that when we say something is not patent

1  eligible, we're not saying they can't do it.  We're
2  saying they can't monopolize it.
3      And the concern in a situation like this one
4  is that if this is patent eligible, it's hard to see
5  why, for example, the first person who came up with a
6  frequent flier program wouldn't have been able to claim
7  a patent there, because, after all, that's a business
8  method for improving customer loyalty implemented on a
9  computer.
10     CHIEF JUSTICE ROBERTS:  General, I -- you
11 mentioned a while ago the need for greater clarity and
12 certainty in this area.  And I'm just wondering, in your
13 brief, you've got a non-exhaustive of factors to
14 consider, and there are 6 different ones.  And I'm just
15 doubtful that that's going to bring about greater
16 clarity and certainty.
17     GENERAL VERRILLI:  I take -- I take the
18 point, Mr. Chief Justice, but I think the key is that
19 they are all directed to answering the question of
20 whether the innovation that is claimed and is an
21 innovation in either, A, the improvement of a computer's
22 functioning or, B, the use of computer technology to
23 improve the functioning of another technological
24 process, and a case like Diehr would be in the latter
25 category.

1      And so I do think that that's the key
2  benchmark.  That's the baseline.  That's the test that
3  we do think can be applied clearly and consistently by
4  the courts or the PTO.  And it avoids the risk of things
5  like frequent flier programs or the Oakland A's money
6  ball methods for evaluating the contributions in
7  individual baseball players make or any one of a host of
8  other things that our intuitions tell us just don't
9  belong in the patent system.
10     That's the -- drawing that line keeps them
11  out; not drawing that line lets them in.  And with all
12  due respect, I don't think that the novelty and
13  nonobviousness filters that 102 and 103 really deal with
14  that problem effectively, because when you get to
15  nonobviousness in 103, for example, you'll be asking a
16  different question.
17     If you take the frequent flier program, you
18  would say, well, is this innovation in building consumer
19  loyalty something that would have been obvious to
20  somebody who runs an airline?  It's totally divorced
21  from the question of technology at that point and,
22  therefore, I don't think you're going to get the screen
23  that you need to get in order for the patent system to
24  be confined to its traditional and appropriate scope.
25     If there are no further questions, thank

1   you.

2         JUSTICE GINSBURG:   I have a question about

3   how do you identify an abstract concept.  The -- a

4   natural phenomenon, a mathematical formula, those are

5   easy to identify, but there has been some confusion on

6   what qualifies as an abstract concept.

7         GENERAL VERRILLI:   We would define

8   abstract -- an abstract concept as a claim that is not

9   directed to a concrete innovation in technology,

10  science, or the industrial arts.  So it's the -- it's

11  abstract in the sense that it is not a concrete

12  innovation in the traditional realm of patent law.

13        Thank you.

14        CHIEF JUSTICE ROBERTS:   Thank you, General.

15        Mr. Phillips, you have four minutes

16  remaining.

17     REBUTTAL ARGUMENT OF CARTER G. PHILLIPS

18         ON BEHALF OF THE PETITIONERS

19        MR. PHILLIPS:   Thank you, Mr. Chief Justice.

20        I'd just like to make a few points.

21        First of all, with respect to the question

22  you asked, which is looking at 159, et cetera, all I can

23  tell you is that if you look at claim 33, it talks about

24  matched orders, the matched orders that are described in

25  286 and 287, and then makes specific reference to 159,

1  and that flow chart that's there.  And it's all designed
2  as a package.  It's only one element of the -- of the
3  invention, but it is a central element, and it's an easy
4  one to understand.  And it goes well beyond simply the
5  notion of hedge -- hedge against settlement risk and do
6  it by a computer.
7          JUSTICE SOTOMAYOR:       Your adversary says that
8  his -- the appendix to his brief are the only patents at
9  issue, that the flow charts are not at issue in this
10 case.
11         MR. PHILLIPS:      There's no basis for that
12 statement, Your Honor.  There -- remember, this went off
13 on a very truncated litigation process.  So there's --
14 you know, we -- we got cut off at the beginning of it.
15 There's been no construction of the -- of the claims
16 and -- and obviously, these are specifications that go
17 to how you interpret the claim.
18         JUSTICE SOTOMAYOR:       If we were to say that
19 there are no business patents --
20         MR. PHILLIPS:      Yes.
21         JUSTICE SOTOMAYOR:       -- would your patent
22 survive at all?
23         MR. PHILLIPS:      No, I don't -- I don't
24 believe so.  I think there's no question.  And, you
25 know, General Verrilli could not have been any plainer

1  in his statement of how he wants to interpret the
2  abstract idea concept.
3      JUSTICE SOTOMAYOR:    Yes, he wants to say no
4  business patents.
5      MR. PHILLIPS:    No business -- just another
6  way of saying no business methods.  And, you know, the
7  Court rejected that.  And it seems to me extraordinary
8  to say Congress didn't reject no business methods in
9  101, but we're going to do -- we're going to manipulate
10 the judicial exception to accomplish precisely that same
11 thing.  It seems to me that's wholly inappropriate.
12     Justice Ginsburg, you asked my -- my friend
13 here, you know, what's his test?  He didn't answer that
14 question, you'll notice, because he doesn't have an
15 answer.  His basic argument is, whatever you do, just
16 kill this patent.
17     And if I were in his shoes, I suppose I'd
18 take that same position.  I think what's absolutely
19 clear is that the test ought to be one that is
20 structured as a very coarse filter, not the kind of
21 filter that he's pushing for where it changes over time.
22 I mean, I thought his -- I thought his response to one
23 of the questions about e-mail and word processing that
24 Justice Sotomayor asked is over time it would change.
25 Well, that's exactly what 102 and 103 are for.  That is

1    not the purpose of -- of Section 101.
2         And then he uses the example of encryption.
3    I guarantee you if we were arguing about encryption in
4    this case, he would say to me that that's an abstract
5    principle because encryption is a concept that's been
6    around since time immemorial.  George Washington used
7    it.  Everybody has used encryption.
8         And a question again, that's not the
9    solution to these problems.  The question is, how did we
10   go about doing it.  And we go beyond the basics of
11   simply saying use a computer, and that's what we ask
12   this Court to focus on and to evaluate.
13        As to the frequent flier program, it's
14   pretty clear to me that even though it was a novel idea
15   in some sense, the concept itself would have been viewed
16   in -- in the KSR fashion as quite obvious as a means of
17   improving customer loyalty.
18        There are solutions here.      Giving us 101
19   pass doesn't create a monopoly.  It just gets us to the
20   102 and 103 inquiries that are at the heart of what the
21   patent laws -- and 112 that are at the heart of what the
22   patent laws ought to be dealing with.
23        If there are no further questions, Your
24   Honor, thank you.
25        CHIEF JUSTICE ROBERTS:      Thank you, counsel.

Official - Subject to Final Review

57

 1   The case is submitted.
 2          (Whereupon, at 11:05 a.m., the case in the
 3   above-entitled matter was submitted.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25