**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | § § § | |
| Plaintiff, | § § | Case No. 2:13-CV-655 |
| v. | § § | (LEAD CASE) |
| AMERICAN AIRLINES, INC., *et al.*, | § § | |
| Defendants. | § | |

**PLAINTIFF LOYALTY CONVERSION SYSTEMS CORPORATION'S
SURREPLY TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Loyalty Conversion Systems Corporation ("Loyalty Conversion" or "Plaintiff") files this Surreply to the Rule 12(c) Motion for Judgment on the Pleadings (the "Motion") filed by Defendants Delta Air Lines, Inc. ("Delta"), US Airways, Inc. ("US Airways"), United Airlines, Inc. ("United"), American Airlines, Inc. ("American"), Southwest Airlines, Co. ("Southwest"), Spirit Airlines, Inc. ("Spirit") and Frontier Airlines, Inc. ("Frontier") (collectively "Defendants") [Civil Action No. 2:13-cv-00662, Dkt. No. 61] (the "Motion"), and in support thereof states as follows:

Defendants' Motion urges this Court to dismiss Plaintiff's lawsuit under Rule 12(c) because U.S. Patent No. 8,313,023 (the "'023 Patent") and U.S. Patent No. 8,511,550 (the "'550 Patent") (collectively, the "Patents-in-Suit") allegedly lack patentable subject matter.

**I.     SURREPLY**

**A.     The Challenged Claims Are Not Directed to a General Purpose Computer**

Defendants argue that the challenged claims are directed to a general purpose computer because the specification provides that a general purpose computer can be used and programmed

in accordance with the invention.  *See* Reply at 2.  Yet even the portion of the specification cited by Defendants refers to the special-purpose programming claimed—Defendants simply omit the relevant language without indication by ellipses or otherwise.  *See* '023 Patent at 5:64-6:3 ("A typical combination of hardware and software may be a general purpose computer system **with a computer program that, when being loaded and executed, controls the computer system such that it carries out the methods described herein**") (omitted language emphasized).

Moreover, the Defendants make the logical leap that because the specification refers to a general purpose computer, such a computer cannot be programmed to be a special purpose computer.  However, that argument is contrary to established law.  For computer implemented processes, the hardware is often disclosed as a general purpose computer.

> In these cases, the general purpose computer may be sufficiently "particular" when programmed to perform the process steps. Such programming creates a new machine because a general purpose computer, in effect, ***becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software***. *In re Alappat*, 33 F.3d 1526, 1545, 31 USPQ 1545, 1558 (Fed. Cir. 1994); *see also Ultramercial v. Hulu*, 657 F.3d 1323, 1329, 100 USPQ2d 1140, 1145 (Fed. Cir. 2011) (stating "a programmed computer contains circuitry unique to that computer").

MPEP § 2106 (emphasis added).

The Federal Circuit, sitting *en banc*, applied these principles to hold patent-eligible a claim that would read on a general purpose computer programmed to carry out the operations recited in the claim.  *In re Alappat*, 33 F.3d 1526, 1545 (Fed.Cir.1994) (en banc).  Although many of the means-plus-function elements recited in the only asserted independent claim represented circuitry elements that perform mathematical calculations, "the claimed invention as a whole [was] directed to a combination of interrelated elements which combine to form a machine" for performing the invention's anti-aliasing technique.  *Id.* at 1544.  The *Alappat* court explained that "[t]his is not a disembodied mathematical concept which may be characterized as

2

an 'abstract idea,' but rather a specific machine." *Id.*  Although the patent applicant admitted

that its claim "would read on a general purpose computer programmed to carry out the claimed

invention," the Federal Circuit held that the claim was patent-eligible under § 101, explaining

that "such programming creates a new machine, because a general purpose computer in effect

becomes a special purpose computer once it is programmed to perform particular functions

pursuant to instructions from program software." *Id.*

### B. <u>The Claims Cannot Be Performed by a Service Agent Alone</u>

In similar fashion, Defendants take a passage from the specification and argue that the

steps of the claims can be performed by a service agent alone without a computer.  *See* Reply at

2 (citing '023 Patent at 3:42-44 and '550 Patent at 3:64-67).   Yet that passage specifically

qualifies the statement to "at least in part." *Id.*  A person of ordinary skill in the art would not

understand the claims to be entirely performed by a human being.  Taking claim 1 of the '550

Patent by way of example, the claim calls out the performance of ***each step*** of the claimed

method by a computer, and provides substantial detail regarding features and actions that are

only accomplished by a programmed computer.  Defendants cannot seriously contend that the

following method steps are performable by a service agent without a computer programmed to

carry out the claimed steps.

1.    A method comprising:

> a computer serving a set of one or more Web pages for a loyalty
> program of an entity to one or more remotely located client
> machines, wherein the Web pages are able to be rendered within a
> client-side browser as a graphical user interface on the one or more
> client machines, wherein upon being rendered within the client-
> side browser said graphical user interface shows a quantity of non-
> negotiable credits, wherein said non-negotiable credits are loyalty
> points of the loyalty program possessed by a member, wherein
> upon being rendered within the client-side browser the graphical
> user interface comprises a conversion option to convert at least a
> subset of the shown non-negotiable credits into a quantity entity

independent funds, wherein said entity independent funds are different loyalty points of a different loyalty program of a commerce partner, wherein said entity independent funds are possessed by the member, wherein an agreement exists between the entity and the commerce partner, wherein the agreement permits members to convert the non-negotiable credits to the entity independent funds in accordance with a fixed credits-to-funds conversion ratio, wherein the agreement specifies that the entity is to compensate the commerce partner in an agreed upon amount of cash or credit for conversions of non-negotiable credits to entity independent funds, wherein said agreed upon amount is a multiple of a quantity of converted non-negotiable credits, wherein the entity independent funds are redeemable per the different loyalty program for commerce partner goods or for commerce partner services, wherein the commerce partner is not said entity, wherein in absence of being converted the non-negotiable credits are not accepted as payment for commerce partner goods or for commerce partner services;

the computer responsive to receiving a message indicating a selection of the conversion option, processing the selection to effectuate changes in the served set of Web pages; and

responsive to the processing, the computer serving one or more Web pages or Web page updates that include the effectuated changes to the one or more remotely located client machines, wherein upon being rendered within the client-side browser the graphical user interface is updated with the effectuated changes, wherein the updated graphical user interface shows a reduced quantity of non-negotiable credits possessed by the member in the loyalty program, said reduced quantity resulting at least in part from the subset of non-negotiable credits being converted into the quantity of entity independent funds in accordance with the fixed credits-to-funds conversion ratio.

'550 Patent, claim 1.  As the Supreme Court recognized in *Bilski*, whether a claim is tied to a machine is "an important and useful tool" for assessing that it is directed to patent eligible subject matter.  *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218, 3227, 177 L.Ed.2d 792 (2010).

## C.   The Claims Are Not Merely Abstract

The subject matters of both claim 31 of the '023 Patent and claim 1 of the '550 Patent are not merely abstract because the claims recite substantive limitations in the recited steps that

sufficiently narrow the claims so they do not cover the full abstract idea.  *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013) (preemption analysis includes whether "additional substantive limitations . . . narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself.").  The inquiry is focused on "whether a claim, as a whole, includes meaningful limitations restricting it to an application, rather than merely an abstract idea." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013).

Rather than the abstract concept of currency conversion; the subject claims are directed to a concrete transaction implemented by specially-programmed hardware.  Those substantive limitations are summarized on page 8 of the Response and are not repeated here.  Moreover, Defendants do not challenge that there are real-world tax consequences to the real-world transaction enabled by the claimed system—they simply question the relevance.  *See* Reply at 10.  The relevance is that the claims are not directed to a merely abstract concept, a proposition with which Defendants implicitly agree.  *See id.*

### D.    Defendants Have Not Demonstrated that the Claimed Inventions Would "Preempt" Currency Conversion

Defendants' contention that the claims are directed to the abstract concept of currency conversion fundamentally fails because it is plainly not coextensive with the claim scope, which includes meaningful limitations such as entity independent funds and non-negotiable credits—limitations not encompassed within Defendants' putative abstraction of the claims.  Accordingly, Defendants have failed to demonstrate that the claims would have "preempted" currency conversion and did not add any significant meaningful limitations to this purported abstract idea. *See Accenture Global Servs.*, 728 F.3d at 1344-45 (Fed. Cir. 2013); *accord TQP Dev., LLC v. Intuit Inc.*, 2:12-CV-180-WCB, 2014 WL 651935, at *3-4 (E.D. Tex. Feb. 19, 2014).

E.       **Defendants Incorrectly Claim that Real-World Consequences are Irrelevant to the Analysis**

Defendants claim that the fact that the claim relates to a transaction that is subject to accounting is of no relevance.  On the contrary, it is a factor to consider when evaluating whether claimed subject matter is merely abstract, which must be mitigated against in the context of a consummated transaction requiring reporting and external accounting.

While Defendants are correct that the *State Street* test of "useful, concrete, and tangible result" was overturned, the relevance of a ***tangible result*** to a claim of mere abstraction can hardly be debated.  *See* Reply at 10.  Accordingly, the machine-or-transformation test provides that a claim is directed to patentable subject matter and is "surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a ***different state*** or thing." *Bilski v. Kappos*, 130 S.Ct. at 3227 (emphasis added).

In *VS Technologies*, the patent claimed a process of formatting of data to create a forum for people to discuss and interact in real-time.  2:11CV43, 2011 WL 4744572, at *1 (E.D. Va. Oct. 5, 2011).   Like in *Ultramercial*, the process in *VS Technologies* created something tangible to the consumer via the Internet from raw data very different from the end product.  *See id.*; *see also Ultramercial,* 722 F.3d 1335. The court in *VS Technologies* denied the defendant's motion for summary judgment because a reasonable juror could find that the patented process satisfied the machine-or-transformation test even without a physical transformation.  2011 WL 4744572, at *1. Similarly, this Court[1]—in addition to the Eastern District of California[2] and the Southern

---

[1] *See, e.g.*, *Prompt Med. Sys., L.P. v. Allscriptsmysis Healthcare Solutions, Inc.,* 6:10-CV-71, 2012 WL 678216, at *1 (E.D. Tex. Feb. 13, 2012).
[2] *See, e.g.*, *Iconfind, Inc. v. Google, Inc.,* 2:11-CV-0319-GEBJFM, 2012 WL 158366, at *1 (E.D. Cal. Jan. 18, 2012).

District of New York[3]—has denied a defendant's motion for summary judgment in a software process patent case because a reasonable juror could find the invention patent eligible even though no physical transformation occurred.

As the Northern District of California has explained:

> As the Federal Circuit explained, "Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *In re Bilski,* 545 F.3d at 963. In this case, Claim 1 takes digital data elements and turns them into a "distinct series of coded data elements," which Claim 10 in turn decodes. '747 Patent 14:46–47. The digital data elements are "representative" and likely meet the transformation prong of the MOT test articulated in *In re Bilski*. Regardless of whether the MOT test is met, however, it is but one part of the analysis for patent eligibility, and I find that the remainder of the analysis is sufficient to support my ultimate conclusion.

*France Telecom S.A. v. Marvell Semiconductor Inc.*, 12-CV-04967-WHO, 2014 WL 1478850, at *9 (N.D. Cal. Apr. 14, 2014) (emphasis added) (quoting *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008). As evidenced above, the *France Telecom* Court found that the transformation prong of the machine-or-transformation test was likely met where the conversion (*i.e.*, "turns them into") of digital data elements turned the elements into a distinct series of coded elements, which was thereafter decoded. *Id.* (further noting that the test is only one part of the applicable analysis).

Similarly, claim 1 of the '023 Patent requires a conversion of non-negotiable credits into entity independent funds:

> wherein said non-negotiable credits are loyalty points of the loyalty program possessed by a member, wherein upon being rendered within the client-side browser the graphical user interface comprises a conversion option to convert at least a subset of the shown non-negotiable credits into a quantity entity

---

[3]*See, e.g.*, *Island Intellectual Prop. LLC v. Deutsche Bank AG*, 09 CIV. 2675 KBF, 2012 WL 386282, at *1 (S.D.N.Y. Feb. 6, 2012).

independent funds, wherein said entity independent funds are different loyalty points of a different loyalty program of a commerce partner

'023 Patent, Claim 1.  Thus, similar to *France Telecom*, a conversion of credits into loyalty

points of a commerce partner meets the machine-or-transformation test.

## II.     CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that Defendants' Motion be

denied, and the Court rule that the Patents-in-Suit are directed to patentable subject matter under

35 U.S.C. § 101.

Dated: May 19, 2014                                   Respectfully submitted,

                                                      /s/ Andrew G. DiNovo
                                                      Andrew G. DiNovo
                                                      Texas State Bar No. 00790594
                                                      Adam G. Price
                                                      Texas State Bar No. 24027750
                                                      Stefanie T. Scott
                                                      Texas State Bar No. 24061617
                                                      **DiNovo Price Ellwanger & Hardy LLP**
                                                      7000 N.  MoPac Expressway, Suite 350
                                                      Austin, Texas  78731
                                                      Telephone:  (512) 539-2626
                                                      Telecopier:  (512) 539-2627

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 19th day of May, 2014, with a copy of the foregoing document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

                                                      */s/ Andrew G. DiNovo*
                                                      Andrew G. DiNovo