# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

LOYALTY CONVERSION SYSTEMS
CORPORATION
    Plaintiff,

    v.

AMERICAN AIRLINES, INC., *et al.*,
    Defendants.

Case No. 2:13-CV-655
(LEAD CASE)

## PLAINTIFF LOYALTY CONVERSION SYSTEMS CORPORATION'S
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Loyalty Conversion Systems Corporation ("Loyalty Conversion" or "Plaintiff") files this Motion to preliminarily enjoin Defendants Southwest Airlines, Co. ("Southwest"), JetBlue Airways Corporation ("JetBlue"), Delta Air Lines, Inc. ("Delta"), Frontier Airlines, Inc. ("Frontier"), United Airlines, Inc. ("United"), US Airways, Inc. ("US Airways"), American Airlines, Inc. ("American"), Hawaiian Airlines, Inc. ("Hawaiian") and Spirit Airlines, Inc. ("Spirit") (collectively "Defendants") from filing relating actions in other courts, and in support thereof states as follows:

I.    INTRODUCTION

Shortly prior to the hearing conducted on four motions before the Court on June 10, 2014, Southwest threatened to sue Loyalty Conversion and its parent company in Texas state district court for libel for asserting patent infringement. True and correct copies of the correspondence and threatened complaint are attached hereto as Exhibits 1 and 2. Loyalty Conversion is entitled to assert its presumptively valid patent rights (*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238 (2011)), and enjoys a privilege to make patent infringement allegations before this tribunal under the *Noerr-Pennington* doctrine.

Also on June 10, 2014, the U.S. District Court for the Southern District of New York heard Loyalty Conversion's Motion to Dismiss JetBlue's claims against Loyalty Conversion, its parents and officer John Roop individually for allegedly breaching terms of use of JetBlue's website by collecting evidence of JetBlue's patent infringement. JetBlue's allegation of subject matter jurisdiction was under 28 U.S.C. §1338(a) (*see* Exhibit 3, ¶6), and can only be understood to be relating to Loyalty Conversion's underlying claims of patent infringement before this Court.

Despite Defendants' repeated assertions that they are concerned with preserving court and party resources (for example, in connection with their Motion to Stay (Doc. No. 63)), Defendants

1

Southwest and JetBlue have engaged in a course of conduct intend to multiply litigation in other forums for related claims that are legally untenable and intentionally taxing on Plaintiff's resources. Accordingly, Plaintiff Loyalty Conversion has been forced to seek relief in this Court.

## II.   STATEMENT OF FACTS

Loyalty Conversion filed this case against the defendants on August 20, 2013, alleging infringement of U.S. Patent No. 8,313,023 (the "'023 Patent") and U.S. Patent No. 8,511,550 (the "'550 Patent") (collectively, the "Patents"). The Court held a scheduling conference on January 3, 2014. Plaintiff served its infringement contentions on January 24, 2014; defendants served their invalidity contentions on February 14, 2014.

On March 14, 2014, JetBlue filed a Complaint (the "New York JetBlue Complaint") attached as Exhibit 1) against Loyalty Conversion Systems Corporation, CTI, CTI's parent, CopyTele, and John Roop individually (the "NY Defendants").[1] The gravamen of the New York JetBlue Complaint is that the NY Defendants breached the JetBlue terms of use by accessing evidence of JetBlue's infringement on its website and using that evidence "commercially" in this judicial proceeding.

On June 10, 2014, this Court conducted a hearing regarding Defendants' Motion for Judgment on the Pleadings (Doc. No. 61), Motion to Stay (Doc. No. 63), JetBlue's Motion to Dismiss for Improper Venue [Civil Action No. 2:13-cv-00662, Dkt. No. 11], and Hawaiian's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 12).

Also on June 10, 2014, the U.S. District Court for the Southern District of New York held oral argument on (1) JetBlue's Motion for Preliminary Injunction relative to the New York

---

[1] Mr. Roop resides in California, and is an officer of CopyTele.

2

Defendants, seeking to enjoin Plaintiff from proceeding with its infringement allegations in this forum; and (2) the NY Defendants' Motion to Dismiss.

Trial in this case is set for March 9, 2015.  Doc. No. 24-1, Exh. A.

### III.     LEGAL STANDARD

A preliminary injunction is an equitable remedy that may be granted only if the movant satisfies four requirements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.  *Sunbeam Products, Inc. v. West Bend Co.*, 123 F.3d 246, 250 (5th Cir. 1997).[2]

Under the *Noerr–Pennington* doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  While the *Noerr–Pennington* doctrine originated in the antitrust context, the Supreme Court has extended its application to actions outside the antitrust field.  *Id.* at 929–30. "Conduct incidental to a lawsuit ... falls within the protection of the *Noerr–Pennington* doctrine." *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

---

[2] Some cases apply a different standard for a "pre-filing injunction," and note that authority resides in the inherent power of the Court.  *See, e.g., Quereshi v. U.S.*, 600 F.3d 525, 526 (5th Cir. 2010).  That standard does not apply in the present case, since Plaintiff does not seek to preclude filing by any Defendant, but rather to enjoin their filing related claims in distant forums.

## IV. ARGUMENT

### A. Plaintiffs Have a Substantial Likelihood of Success on the Merits

Southwest's threatened libel claims are frivolous and raised in bad faith for the sole purpose of inducing settlement so that Plaintiff might avoid the cost of defending the related claim in a different forum. *See* Exhibits 1 & 2.

Plaintiff enjoys a privilege under the *Noerr–Pennington* doctrine to make its allegations of patent infringement in this tribunal and to publish those claims. The principles first enunciated by the Supreme Court in *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657 (1965) (known as the *Noerr-Pennington* doctrine), preclude Southwest from pursuing claims that Loyalty Conversion has engaged in libel simply by filing a lawsuit for patent infringement.

Initiating and prosecuting a patent infringement action—and divulging public aspects of that litigation—is the type of petitioning activity generally protected by the *Noerr–Pennington* doctrine. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (extending the "philosophy" of Noerr and Pennington to "the approach of citizens or groups of them to administrative agencies ... and to courts").

In *Noerr*, the Supreme Court stated that this immunity may be withheld from petitioning conduct if it is a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." 365 U.S. at 144. As subsequently "adapted to the adjudicatory process*,*" *California Motor Transport*, 404 U.S. at 516, this sham exception has a "two-part definition." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 50, 60 (1993).

To constitute sham, the lawsuit first "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* This "objective prong"

4

incorporates "the notion of probable cause, as understood and applied in the common law tort of wrongful civil proceedings." *Id.* at 62. Just as the existence of probable cause establishes an "absolute defense" to the tort of wrongful civil proceedings, so too does it "irrefutably demonstrate[ ]" that an antitrust defendant is "entitled to *Noerr* immunity." *Id.* at 63. Secondly, there must be subjectively malicious intent. *See id.*

Southwest's claims do not fall under the limited exceptions to the doctrine, because this case is not "objectively baseless," and the litigation is neither a sham nor an attempt to enforce patents obtained by fraud. *See Asahi Glass Co., Ltd. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 993 (N.D. Ill. 2003) (dismissing sham litigation allegations because "efforts to commercialize and/or enforce issued U.S. patents do not give rise to a claim of sham litigation absent unusual circumstances such as fraud or known invalidity.")

More generally, with respect to any other claims Southwest, JetBlue or any other Defendant might contrive, this Court is empowered to exercise jurisdiction over unfair competition claims relating to Loyalty Conversion's allegations of patent infringement.

> The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.

28 U.S.C. §1338(b).

Moreover, Rule 13 of the Federal Rules of Civil Procedure mandate that compulsory counterclaims be joined in the original action.

> (1) In General. A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

5

(B) does not require adding another party over whom the court cannot acquire jurisdiction.[3]

Thus, Southwest's claim is both substantively and procedurally improper. With respect to the remaining Defendants, any claims arising out of Loyalty Conversion's claims of patent infringement should be joined in this forum. Plaintiff thus has a substantial likelihood of success on the merits.

### B.  Plaintiffs Will Suffer Irreparable Injury Absent the Injunction

Plaintiffs will suffer irreparable injury if the injunction is not entered. Irreparable injury is a "potential harm which cannot be redressed by legal or equitable remedy following trial." *Campbell Soup Co. v. ConAgra Inc.*, 977 F.2d 86, 91 (3rd Cir.1992). If Defendants are not enjoined from engaging in the threatened Southwest litigation and other litigation in disparate forums for related claims of unfair competition, Plaintiff will be subject to untold expense, distraction and multiplicitous litigation the apparent intention of which is to distract Loyalty Conversion from obtaining statutory relief in this Court. These losses cannot be quantified nor adequately remedied at law. *See Ambato Media, LLC v. Clarion Co., Ltd*, No. 2:09-cv-242-JRG, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012); *Voltstar Techs., Inc. v. Superior Commc'ns, Inc.*, No. 2:12-cv-00082, 2013 WL 4511290, at *2 (E.D. Tex. Aug. 22, 2013) (recognizing plaintiff's legitimate interest in obtaining timely recovery).

### C.  The Threatened Injury Outweighs Any Damage That the Injunction May Cause the Opposing Party

The threatened loss to Plaintiff greatly outweighs any damage to Defendants that may result from the imposition of an injunction. Defendants are free to seek the relief and/or file the

---

[3] Putting aside the propriety of whether they should have been joined in the NY action in the first instance, none of the NY Defendants challenge the jurisdiction of this Court.

counterclaims they choose to assert before this Court.  *See Welsh v. Rockmaster Equip. Mfg. Inc.*, 4 F. Supp. 2d 659, 667-68 (E.D. Tex. 1998).

    **D.**    <u>The Granting of the Injunction Is Not Adverse to the Public Interest</u>

Granting the injunction protects the public interest by promoting the well-accepted public policy of preserving court resources, a public interest Defendants recently urged in their Motion to Stay and in connection with the hearing conducted on June 10, 2014.  Furthermore, granting the injunction promotes the general principles of equity and justice.  *See Welsh v. Rockmaster Equip. Mfg. Inc.*, 4 F. Supp. 2d 659, 667-68 (E.D. Tex. 1998).

**V.**    **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Motion for Preliminary Injunction be granted, and that Defendants in this action be required to claims relating to Loyalty Conversion's allegations of patent infringement and associated evidence gathering before this Court, and for such other and further relief as the Court may deem just, including an award of Loyalty Conversion's fees and costs.

Dated: June 13, 2014

Respectfully submitted,

/s/  Andrew G.  DiNovo\_\_\_\_
Andrew G.  DiNovo
Texas State Bar No. 00790594
Jay D. Ellwanger
Texas State Bar No. 24036522
Adam G. Price
Texas State Bar No. 24027750
Stefanie T. Scott
Texas State Bar No. 24061617
**DiNovo Price Ellwanger & Hardy LLP**
7000 N.  MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone:  (512) 539-2626
Telecopier:  (512) 539-2627

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 13th day of June, 2014, with a copy of the foregoing document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

                                              */s/ Andrew G. DiNovo*
                                              Andrew G. DiNovo