**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

LOYALTY CONVERSION SYSTEMS
CORPORATION
      Plaintiff,

    v.

AMERICAN AIRLINES, INC., *et al.*,
      Defendants.

Case No. 2:13-CV-655
(LEAD CASE)

**PLAINTIFF LOYALTY CONVERSION SYSTEMS CORPORATION'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................1

II.     LEGAL PRINCIPLES OF CLAIM CONSTRUCTION ....................................................1

III.    LOYALTY CONVERSION'S PROPOSED CONSTRUCTION OF CLAIM
       TERMS ...............................................................................................................3

       A.    The '550 Patent ................................................................................... 3
            1.     "To Convert" ..........................................................................3

       B.    The '023 Patent ................................................................................... 7
            1.     "Transfer(s) or Conversion(s)" / "Conversion or Transfer" .......................7
            2.     "The at Least One of the One or More Computers" / "The One or
                  More Nontransitory Computer-Readable Mediums"...................................8

IV.    CONCLUSION.....................................................................................................8

i

**TABLE OF AUTHORITIES**

## Cases

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324 (Fed. Cir. 2006)..........................2

*Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc*., 31 F.3d 1154 (Fed. Cir. 1994) .... 6

*Chimie v. PPG Industries, Inc.*, 402 F.3d 1371 (Fed. Cir. 2005) .................................................... 3

*CollegeNet, Inc. v. ApplyYourself, Inc*., 418 F.3d 1225 (Fed. Cir. 2005) ........................................ 2

*Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321 (Fed. Cir. 2009) ........................................... 5

*Graham v. John Deere Co*., 383 U.S. 1 (1966)................................................................................. 2

*Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008) ............................................... 3

*Innovative Communications Tech., Inc. v. Vivox, Inc.*, 2012 WL 5331573 (E.D. Va. 2012).......... 2

*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ..................... 3

*Invitrogen Corp. v. Biocrest Mfg., L.P.,* 327 F.3d 1364 (Fed. Cir. 2003) ........................................ 3

*Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898 (Fed. Cir. 2004)............................................ 6

*Markman v. Westview Instruments, Inc*., 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517
    U.S. 370 (1996)............................................................................................................................2

*Minks v. Polaris Indus., Inc.*, 546 F.3d 1364 (Fed. Cir. 2008) ........................................................ 2

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) ................................................. 8

*O2 Micro v. Beyond Innovation*, 521 F.3d 1351 (Fed. Cir. 2008).................................................. 2

*Phillips v. AWH Corp*., 415 F.3d 1303 (Fed. Cir. 2005) ......................................................... 2, 3, 6

*Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081 (Fed. Cir. 2003)............................................. 6

*Retractable Technologies, Inc. v. Becton, Dickinson & Co*., 653 F.3d 1296 (Fed. Cir. 2011)....... 5

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305 (Fed. Cir. 2010).... 5

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ........................................... 2

*Verizon Servs. Corp. v. Vonage Holdings Corp*., 503 F.3d 1295 (Fed. Cir. 2007) ......................... 3

Pursuant to P.R. 4-5(a) and the Court's Amended Docket Control Order (Doc. No. 109), Plaintiff Loyalty Conversion Systems Corporation ("Loyalty Conversion" or "Plaintiff") files this its Opening Claim Construction Brief, and in support thereof, states as follows:

## I.      BACKGROUND

### The Parties

Loyalty Conversion's allegations against Defendants Southwest Airlines, Co. ("Southwest"), JetBlue Airways Corporation ("JetBlue"), Delta Air Lines, Inc. ("Delta"), Frontier Airlines, Inc. ("Frontier"), United Airlines, Inc. ("United"), US Airways, Inc. ("US Airways"), American Airlines, Inc. ("American"), Hawaiian Airlines, Inc. ("Hawaiian") and Spirit Airlines, Inc. ("Spirit") (collectively "Defendants") are based on the infringement of two patents in the general fields of computer networks, data processing and rewards programs.  The inventions set forth in the Loyalty Conversion patents have enabled and enhanced new and improved features for the computerized implementation of rewards programs, and continue to drive sales and profits for those whose products practice the inventions.

### The Patents

Loyalty Conversion has asserted that Defendants infringe two of its patents, namely: United States Patent Nos. 8,313,023 (the "'023 patent"); and 8,511,550 (the "'550 patent").  True and correct copies of the '023 and '550 patents are attached as **Exhibits 1** and **2**.

Presently at issue before the Court in this proceeding are two claim terms from the '023 patent and one from the '550 patent.  *See* Doc. No. 88-1.

## II.     LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

This Court is well versed in claim construction.  Claim construction is a matter of law for the Court.  *See Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*,

517 U.S. 370 (1996). Only those terms with respect to which there is a "fundamental" dispute between the parties, however, must be construed by the Court. "[D]istrict courts are not (and should not be) required to construe <u>every</u> limitation present in a patent's asserted claims." *O2 Micro v. Beyond Innovation*, 521 F.3d 1351, 1362–63 (Fed. Cir. 2008) (emphasis in original).

> [A] district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims.

*Innovative Comm'ns Tech., Inc. v. Vivox, Inc.*, 2012 WL 5331573, *4 (E.D. Va. 2012) (citing *O2 Micro*, 521 F.3d at 1362).

A district court should construe the claims in light of their explicit language as informed by their preambles, as well as the patent's specification, figures, and prosecution history. *See id.* at 980; *see also Graham v. John Deere Co*., 383 U.S. 1, 33 (1966) ("[A]n invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office."). "In examining the specification for proper context, however," it is improper to "at any time import limitations from the specification into the claims." *CollegeNet, Inc. v. ApplyYourself, Inc*., 418 F.3d 1225, 1231 (Fed. Cir. 2005) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)); *accord Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*).

Construction of a means-plus-function limitation includes two steps. "First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006) (citations omitted). A structure disclosed in the specification qualifies as a "corresponding structure" if the specification or the prosecution history "clearly links or associates that structure to the function recited in the claim." *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1377 (Fed. Cir. 2008) (citations omitted).

It is improper to confine a claim to a particular embodiment; the claim language itself is paramount. *See, e.g.*, *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007); *Phillips*, 415 F.3d at 1312–13; *Chimie v. PPG Industries, Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1369 (Fed. Cir. 2003).

## III.   LOYALTY CONVERSION'S PROPOSED CONSTRUCTION OF CLAIM TERMS

### A.   The '550 Patent

1.   "TO CONVERT"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "to convert"<br><br>'550 Patent, claim 1 | Plain and ordinary meaning. | "to convert in an approximately immediate fashion" |

Claim construction begins and ends in all cases with the actual words of the claim. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention."). Nothing about claim 1 (reproduced below) requires ***immediacy*** in the conversion.

1. A method comprising:

a computer serving a set of one or more Web pages for a loyalty program of an entity to one or more remotely located client machines, wherein the Web pages are able to be rendered within a client-side browser as a graphical user interface on the one or more client machines, wherein upon being rendered within the client-side browser said graphical user interface shows a quantity of non-negotiable credits, wherein said non-negotiable credits are loyalty points of the loyalty program possessed by a member, wherein upon being rendered within the client-side browser the graphical user interface comprises a conversion option ***to convert*** at least a subset of the shown non-negotiable credits into a quantity entity independent funds,

3

wherein said entity independent funds are different loyalty points of a different loyalty program of a commerce partner, wherein said entity independent funds are possessed by the member, wherein an agreement exists between the entity and the commerce partner, wherein the agreement permits members **to convert** the non-negotiable credits to the entity independent funds in accordance with a fixed credits-to-funds conversion ratio, wherein the agreement specifies that the entity is to compensate the commerce partner in an agreed upon amount of cash or credit for conversions of non-negotiable credits to entity independent funds, wherein said agreed upon amount is a multiple of a quantity of converted non-negotiable credits, wherein the entity independent funds are redeemable per the different loyalty program for commerce partner goods or for commerce partner services, wherein the commerce partner is not said entity, wherein in absence of being converted the non-negotiable credits are not accepted as payment for commerce partner goods or for commerce partner services;

the computer responsive to receiving a message indicating a selection of the conversion option, processing the selection to effectuate changes in the served set of Web pages; and

responsive to the processing, the computer serving one or more Web pages or Web page updates that include the effectuated changes to the one or more remotely located client machines, wherein upon being rendered within the client-side browser the graphical user interface is updated with the effectuated changes, wherein the updated graphical user interface shows a reduced quantity of non-negotiable credits possessed by the member in the loyalty program, said reduced quantity resulting at least in part from the subset of non-negotiable credits being converted into the quantity of entity independent funds in accordance with the fixed credits-to-funds conversion ratio.

**Exhibit 2**, claim 1 (disputed term highlighted).

Defendants' proposal is circular, and uses the very term "convert" in their proposed construction. Essentially, Defendants do not construe "convert," apparently agreeing with Loyalty Conversion that the term needs no construction. Instead, Defendants would limit "to convert" to a subset, namely those that are approximately immediate. The only possible justification would be a prosecution history or specification disclaimer. Defendants do not rely on any prosecution history for this term (*see* Joint Claim Construction and Prehearing Statement

Pursuant to P.R. 4-3, Exhibit A [Doc. No. 88-1]).  Accordingly, they would have to prevail on a

specification disclaimer, which is simply not present.

> To disavow claim scope, the specification must contain "expressions of manifest
> exclusion or restriction, representing a clear disavowal of claim scope." *Epistar
> Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009).  In general,
> statements about the difficulties and failures in the prior art, without more, do not
> act to disclaim claim scope.  *See Spine Solutions, Inc. v. Medtronic Sofamor
> Danek USA, Inc.*, 620 F.3d 1305, 1315 (Fed. Cir. 2010) (concluding that
> statement that a prior art two-piece implant was "particularly difficult" to achieve
> did not disclaim two-piece implants).

*Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir.

2011).

Defendants' position appears to be entirely predicated on an embodiment described in the

specification:

> The conversion can occur automatically using a Web initiated action and can have
> approximately immediate results. Approximately immediate as used herein can
> signify that a transaction can occur within a single Web session with user
> acceptable delay tolerances, typically under half an hour and often under a few
> minutes. In one embodiment, credits can be automatically converted to funds as
> part of an e-commerce checkout. In another embodiment, credits can be converted
> into a user accessible account held with a financial institution.

'550 Patent, 2:53-3:2.  This passage discusses a possible implementation of the invention in

which "approximately immediate" is correlated to "a single Web session."  There are no words

of manifest exclusion.  Importantly, the term "approximately immediate" is not used in claim 1

of the '550 patent (or claims 31 and 39 of the '023 Patent).[1]

The doctrine of claim differentiation further supports the conclusion that the transfer or

conversion need not be approximately immediate in claim 1 of the '550 patent (or claims 31 and

39 of the '023 Patent).  Under this well-established doctrine, "the presence of a dependent claim

---

[1] It is also important to note that "approximately immediate" is described in the specification in the context of the
user experience.  Apparently, Defendants intend to argue noninfringement because of some back end reconciliation
and batching that occurs within their systems, which would in any case be unknown to the end user.

that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314-15.

In the '550 Patent, the act of showing the effects of conversion in a single web session is introduced in the dependent claims.   For example, claim 7 includes the limitations of "wherein the computer serves the set of one or more Web pages, processes the selection, and serves the one or more Web pages or Web page updates that include the effectuated changes ***within a single user-interactive Web session***." '550 Patent, claim 7 (emphasis added).  Dependent claim 7 thus makes clear that the patentee knew how to describe and claim the approximate immediacy described in the specification, and gives rise to a strong presumption that claim 1 does not require the changes to be effected within a single user-interactive Web session.  *See Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898 (Fed. Cir. 2004) ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest.").

Defendants' proposed claim construction runs afoul of this well-established doctrine because it nullifies the limitations in the dependent claims.  *See Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc*., 31 F.3d 1154 (Fed. Cir. 1994) (An interpretation of a claim that would render another claim in the patent "superfluous" is "presumptively unreasonable.");  *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081 (Fed. Cir. 2003) (district court's "construction [of an independent claim] would render claim language in dependent claims . . . meaningless.  This court disfavors such a construction.").   Accordingly, Defendants' proposal should be rejected.

### B.    The '023 Patent

1.    "TRANSFER(S) OR CONVERSION(S)" / "CONVERSION OR TRANSFER"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "transfer(s) or conversion(s)" / "conversion or transfer"<br><br>'023 Patent, claims 31, 39 | Plain and ordinary meaning. | "the approximately immediate transfer(s) or conversion(s)/ approximately immediate conversion or transfer" |

The dispute here is very similar to that with respect to the "to transfer" dispute in connection with the '550 Patent.  Those arguments are incorporated herein.

The statement of reasons for allowance corroborates that the Defendants' proposal is unsupported by the prosecution history:

> 6.    The following is an examiner's statement of reasons for allowance: the prior art of record fails to specifically teach at least one of one or more computers subtracting a quantity of the non-negotiable credits in response to the purchase of the goods or services, the purchase costing a quantity of entity independent funds, the entity independent funds resulting from a conversion of the subtracted quantity of non-negotiable credits into the entity independent funds in accordance with a credit to fund conversion ratio, wherein the entity provides compensation for the subtracted quantity of the non-negotiable credits, wherein the commerce partner receives at least a portion of the compensation. These limitations in conjunction with other limitations in the claimed invention were not shown by the prior art of record.

Notice of Allowability dated September 19, 2012 (attached as **Exhibit 3**).  Thus, neither the Applicant nor the Examiner manifested a belief that the approximate immediacy of the conversion was necessary to overcome the prior art.

2.      "THE AT LEAST ONE OF THE ONE OR MORE COMPUTERS" / "THE ONE OR MORE NONTRANSITORY COMPUTER-READABLE MEDIUMS"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "the at least one of the one or more computers" / "the one or more nontransitory computer-readable mediums"  '023 Patent, claims 31, 39 | Plain and ordinary meaning. | Indefinite. |

For reasons that have not been provided, Defendants claim that these similar phrases from claims 31 and 39 are indefinite.  In the context of these claims, these phrases inform, with reasonable certainty, those skilled in the art about the scope of the invention.  *See Nautilus, Inc. v. Biosig Instruments*, *Inc.*, 134 S. Ct. 2120, 2124 (2014).  Once Defendants have articulated a basis for their allegation of indefiniteness, Loyalty Conversion will substantively respond.

## IV.    CONCLUSION

For the reasons set forth above, Loyalty Conversion respectfully requests that its proposed claim constructions be adopted, and for such other and further relief to which it may show itself entitled.

Dated: July 24, 2014                                    Respectfully submitted,

 /s/ Andrew G. DiNovo
Andrew G. DiNovo
Texas State Bar No. 00790594
Adam G. Price
Texas State Bar No. 24027750
Stefanie T. Scott
Texas State Bar No. 24061617
DINOVO PRICE ELLWANGER & HARDY LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone:  (512) 539-2631
Facsimile:  (512) 539-2627
Email: adinovo@dpelaw.com
**ATTORNEYS FOR LOYALTY
CONVERSION SYSTEMS CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 24th day of July, 2014.

 /s/ Andrew G. DiNovo
Andrew G. DiNovo
