**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2:13-cv-00655-JRG |
| AMERICAN AIRLINES, INC., | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2:13-cv-00659-JRG |
| DELTA AIRLINES, INC., | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2:13-cv-00660-JRG |
| FRONTIER AIRLINES, INC., | ) ) ) | |
| Defendant. | ) | |

LOYALTY CONVERSION SYSTEMS
CORPORATION,

             Plaintiff,

    v.

HAWAIIAN AIRLINES, INC.,

             Defendant.

)
)
)
)
)
)
)
)
)

C.A. No. 2:13-cv-00661-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION, LLC,

             Plaintiff,

    v.

JETBLUE AIRWAYS CORP.,

             Defendant.

)
)
)
)
)
)
)
)
)

C.A. No. 2:13-cv-00662-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

             Plaintiff,

    v.

SOUTHWEST AIRLINES CO.,

             Defendant.

)
)
)
)
)
)
)
)
)

C.A. No. 2:13-cv-00663-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

             Plaintiff,

    v.

SPIRIT AIRLINES, INC.,

             Defendant.

)
)
)
)
)
)
)
)
)

C.A. No. 2:13-cv-00664-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

    Plaintiff,

  v.

UNITED AIRLINES, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)

C.A. No. 2:13-cv-00665-JRG

LOYALTY CONVERSION SYSTEMS
CORPORATION,

    Plaintiff,

  v.

US AIRWAYS, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)

C.A. No. 2:13-cv-00666-JRG

# DEFENDANTS' RESPONSIVE CLAIM-CONSTRUCTION BRIEF

# TABLE OF CONTENTS

PAGES

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Disputed Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.  "transfer(s) or conversion(s)"/"conversion or
transfer"/"to convert" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1.  Claims must be read in light of the specification. . . . . . . . . . . . . . . . . 3

2.  The written description of the '023 and '550 Patents
disclaims conversion techniques that do not occur
approximately immediately.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3.  The doctrine of claim differentiation does not bar
Defendants' construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B.  "the at least one of the one or more computers"/"the one
or more nontransitory computer-readable mediums" . . . . . . . . . . . . . . . . 10

1.  Claims must recite the scope of the invention with
reasonable certainty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2.  Under the Supreme Court's Nautilus standard, the
terms "the at least one of the one or more computers"
and "the one or more nontransitory computer-readable
mediums" are indefinite for lacking proper antecedent
bases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

PAGES

**Cases**

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
  No. 2:07-CV-468, 2009 U.S. Dist. Lexis 109173 (E.D. Tex., Jun. 26, 2009) . . . . . . . . 14

*Astrazenaca AB v. Mut. Pharm. Co.*,
  384 F.3d 1333 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brandywine Commc'ns Techs., LLC v. Centurytel Broadband Servs., LLC*,
  No. 6:12-cv-286-Orl-36DAB,
  2013 U.S. Dist. LEXIS 187334 (M.D. Fla. Apr. 17, 2013) . . . . . . . . . . . . . . . . 14, 15

*Cell & Network Selection LLC v. AT&T Inc.*,
  No. 6:13-CV-403, 2014 U.S. Dist. LEXIS 100248 (E.D. Tex. May 2, 2014) . . . . . . . . 14

*Curtiss–Wright Flow Control Corp. v. Velan, Inc.*,
  438 F.3d 1374 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Edward Lifesciences LLC v. Cook Inc.*,
  582 F.3d 1322 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Ekchian v. Home Depot, Inc.*,
  104 F.3d 1299 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Every Penny Counts, Inc. v. Wells Fargo Bank*, N.A.,
  ___F. Supp. 2d ___, 2014 U.S. Dist. LEXIS 28106 (M.D. Fla., Mar. 5, 2014) . . . . . . 14, 15

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Honeywell Int'l, Inc. v. ITT Indus. Inc.*,
  452 F.3d 1312 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kraft Foods, Inc. v. Int'l Trading Co.*,
  203 F.3d 1362 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Marine Polymer Techs., Inc. v. Hemcon, Inc.*,
  672 F.3d 1350 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Multiform Desiccants Inc. v. Medzam Ltd.*,
  133 F.3d 1473 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13, 14, 15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc). . . . . . . . . . . . . . . . . . . . . 3

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8

*Seachange Int'l, Inc. v. C–COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 9

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497, 2010 U.S. Dist. LEXIS 74808 (E.D. Tex. Jul. 26, 2010) . . . . . . . . 14

*The Toro Co. v. White Consolidated Indus., Inc.*,
    199 F.3d 1295 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 8

*United Carbon Co. v. Binney & Smith Co.*,
    317 U.S. 228 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wang Labs., Inc. v. Am. Online, Inc.*,
    197 F.3d 1377 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Watts v. XL Sys., Inc.*,
    232 F.3d 877 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Wireless Agents LLC v. Sony Ericsson Mobile Commc'ns AB*,
    189 Fed. Appx. 965 (Fed. Cir. 2006) (unpublished) . . . . . . . . . . . . . . . . 7

## Other Authorities

Bryan A. Garner, A Dictionary of Modern Legal Usage 128 (2d ed. 1995) . . . . . . . . . . . . 5

## Regulations

37 C.F.R. § 1.73 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Loyalty Conversion's Opening Brief ignores both the relevant law and the plain language of the patents. Properly applying the law to the claims in light of the specification, it is clear that: (1) the asserted claims require that the conversion of non-negotiable credits into entity-independent funds must occur in an approximately immediate fashion; and (2) claims 31 and 39 of the '023 Patent are invalid as indefinite.

## I.   INTRODUCTION

Both asserted patents in this case—U.S. Patent No. 8,313,023 ("the '023 Patent") and U.S. Patent No. 8,511,550 ("the '550 Patent")—share a common specification and disclose converting "non-negotiable credits provided by an entity to negotiable funds." '023 Patent at 2:32–34; '550 Patent at 2:53–55. The inventors admitted that "entities often reward consumers for utilizing their services with non-negotiable credits, such as frequent flier miles, consumer loyalty points, and entertainment credits," but stated that the known techniques for converting those credits to negotiable funds suffer from several problems, including time. '023 Patent at 1:20–33. In particular, the inventors criticized the prior art for the lengthy delay required to convert credits into usable funds. As they explained, "[o]nce a consumer submits a request to redeem their non-negotiable credits, the consumer must wait for the entity to perform one or more actions required to fulfill their request. These steps often require days or weeks to complete." *Id.* at 1:43–48. The inventors made very clear that "[t]he present disclosure" addresses this problem by permitting "consumers to transform non-negotiable credits provided by an entity to negotiable funds in an approximately immediate fashion using the Web." *Id.* at 2:32–34 (emphasis added). In fact, this is the first sentence of the "Detailed Description" of both asserted patents.

The patents then repeatedly and consistently state that the conversion takes place "approximately immediately." *See id.* at 40–42 ("The conversion agency can automatically <u>approximately immediately</u> convert a quantity of credits from the non-negotiable credit account to a quantity of funds in the negotiable funds account responsive to a request from the user.") (emphasis added); *id.* at 2:40–41 (stating that the conversion occurs "automatically using a Web initiated action and can have <u>approximately immediate</u> results") (emphasis added); *id.* at 42–45 ("<u>Approximately immediate</u> as used herein can signify that a transaction can occur within a single Web session with user acceptable delay tolerances, typically under half an hour and often under a few minutes.") (emphasis added); *id.* at 3:11–12 ("The entire method can occur in an <u>approximately immediate</u> fashion.") (emphasis added); *id.* at 3:24–28 ("The conversion agency can automatically and <u>approximately immediately</u> convert a quantity of credits from the non-negotiable credit account to a quantity of funds in the negotiable funds action responsive to a request from the user.") (emphasis added); *see also* Figs. 2 & 3 (showing that the conversion takes place during the course of a single web session).

Thus, contrary to Loyalty Conversion's assertion, Defendants are not reading an "approximately immediate" limitation from a particular embodiment into the asserted claims. Rather, their construction accurately describes the invention disclosed by the patents.[1]

Moreover, certain claims of the asserted patents are indefinite as they do not particularly point out or distinctly claim the subject matter the inventors regard as the invention. Specifically,

---

[1] Indeed, as Robert Berman, CEO of Copytele, Loyalty Conversion's parent company, explains: "Rewards programs used to be self-contained and what [these patents] cover[] is the ability to transfer points from one program to other programs electronically <u>in real-time</u>." **Ex. A**: *Patent enforcement company sues ten airlines over rewards programs technology*, The Balance Sheet — The Denver Post (Aug. 21, 2013), http://blogs.denverpost.com/thebalancesheet/2013/08/21/patentenforcement-company-sues-airlines/10607/. (emphasis added).

claims 31 and 39 of the '023 Patent disclose that "the one or more computers" and "the one or more non-transitory computer-readable mediums" conduct a series of steps in the claims. *Id.* at 10:21–24 and 11:30–38. The claims, however, disclose numerous "one or more computers" and "one or more non-transitory computer-readable mediums" and never specify which of these "one or more" computers or computer-readable mediums is the antecedent basis for "the one or more" computers or computer readable mediums that perform the claimed method steps. Without such antecedent basis, claims 31 and 39 are indefinite.

## II.   Disputed Terms

### A.   "transfer(s) or conversion(s)"/"conversion or transfer"/"to convert"

| Claim Term | LCSC's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "transfer(s) or conversion(s)"/ "conversion or transfer" <br><br> '023 patent, claims 31 and 39 | Plain and ordinary meaning. | "the approximately immediate transfer(s) or conversion(s)/ approximately immediate conversion or transfer" |
| "to convert" <br> '550 patent, claim 1 | Plain and ordinary meaning. | "to convert in an approximately immediate fashion" |

### 1.   *Claims must be read in light of the specification.*

Loyalty Conversion opens its argument with the following statement: "Claim construction begins and ends in all cases with the actual words of the claim."[2] Loyalty Conversion goes too far. While it is true that "the analytical focus must begin and remain centered on the language of the claims,"[3] the claims cannot be read in isolation without reference to the specification. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) ("[T]he specification is

---

[2]   Opening Br. at 3 (emphasis added).

[3]   Opening Br. at 3 (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

always relevant to the claim construction analysis. Usually it is dispositive; it is the single best

guide to the meaning of a disputed term.") (emphasis added) (internal quotation and citation

omitted).

"One purpose for examining the specification is to determine if the patentee has limited the

scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). If, for example,

the specification states that the invention does not cover a particular feature, "that feature is

deemed to be outside the reach of the claims of the patent, even though the language of the

claims, read without reference to the specification, might be considered broad enough to

encompass the feature in question." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,

242 F.3d 1337, 1341 (Fed. Cir. 2001) (emphasis added). In fact, the Federal Circuit has

consistently held that "where the general summary or description of the invention describes a

feature of the invention and criticizes other products that lack that same feature, this operates as

a clear disavowal of these other products." *Edward Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322,

1332–33 (Fed. Cir. 2009) (quoting *Astrazenaca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1340 (Fed.

Cir. 2004).[4]

> 2.    *The written description of the '023 and '550 Patents disclaims conversion*
> *techniques that do not occur approximately immediately.*

The Background section of the specification describes several problems in the "field of

exchanging non-negotiable credits for entity independent funds." '023 Patent at 1:28–29. One of

the problems was time:

> Another problem encountered by consumers when redeeming non-
> negotiable credits is time. Once a consumer submits a request to redeem
> their non-negotiable credits, the consumer must wait for the entity to

---

[4] *See also* notes 6–7, below, and accompanying text.

> perform one or more actions required to fulfill their request. <u>These steps</u>
> <u>often require days or weeks to complete</u>. For instance, consumers
> participating in online entertainment sites often are required to wait a
> minimum of three days for their entertainment credits to be redeemed.
> <u>Redemption delay can be particularly aggravating to e-commerce</u>
> <u>consumers, who by nature of an e-commerce marketplace expect rapid</u>
> <u>responses and immediate consumer gratification</u>.

*Id.* at 1:43–54 (emphasis added). The specification, therefore, clearly disparages prior-art

conversion techniques based on the lengthy delay consumers experience in redeeming their non-

negotiable credits.

Further, it expressly distinguishes the claimed invention on precisely this point. The

inventors explicitly state that their invention overcomes the time problem by providing systems

and methods for converting non-negotiable credits into negotiable funds <u>in an approximately</u>

<u>immediate fashion</u>:

- "The present disclosure permits consumers to transform non-negotiable credits provided by an entity to negotiable funds in an <u>approximately immediate</u> fashion using the Web." *Id.* at 2:32–34 (emphasis added).

- "The conversion can occur automatically using a web initiated action and can have <u>approximately immediate</u> results.[5] Approximately immediate as used herein can signify that a transaction can occur within a single web session with user acceptable delay tolerances, typically under half an hour and often under a few minutes." *Id.* at 2:40–45 (emphasis added).

- "The entire method can occur in an <u>approximately immediate</u> fashion." *Id.* at 3:11–12 (emphasis added).

- "The conversion agency can automatically <u>approximately immediately</u> convert a quantity of credits from the non-negotiable credit account to a quantity of funds in the negotiable funds account responsive to a request from the user." *Id.* at 24–28 (emphasis added).

Thus, the inventors (1) distinguished the prior art on the basis of the time required to

---

[5]  *See* Bryan A. Garner, A Dictionary of Modern Legal Usage 128 (2d ed. 1995) ("Generally, <u>can</u> expresses physical ability <he can lift 500 pounds>; <u>may</u> expresses permission or authorization <the defense may now close>, and sometimes possibility <the trial may end on Friday>.").

convert non-negotiable credits into negotiable funds and (2) praised the invention for its ability to accomplish such conversion transactions approximately immediately. By doing so, the inventors surrendered protection for conversion techniques that cannot occur in an approximately immediate fashion. *See, e.g.*, *SciMed*, 242 F.3d at 1343 ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection.") (quoting *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997)).

Indeed, the Federal Circuit has repeatedly found disclaimer of subject matter based on similar facts. In *SciMed*, for example, that court found "a clear case of disclaimer of subject matter that, absent the disclaimer, could have been considered to fall within the scope of the claim language." *Id.* at 1344. The patent at issue claimed a type of catheter, and the question was whether the claims were limited to catheters with coaxial lumens or also covered catheters with a dual-lumen configuration. Because the claim language was broad enough to include both types of catheter within its scope, "the case "turn[ed] entirely on an interpretation of the asserted claims in light of the specification." *Id.* at 1340. The Federal Circuit considered the fact that the specification described the "present invention" as using coaxial catheters and found that to be "strong evidence" that the claims did not cover dual-lumen catheters. *Id.* at 1342–43. In addition, the specification distinguished the prior art on the basis of the use of dual lumens and the court held that this too supported a conclusion that the claims did not cover dual-lumen catheters. *Id.*

*Eon-Net* provides another example. In that case, the patent at issue claimed a "system for inputting information from a document or file on a computer into at least one application

program." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1317 (Fed. Cir. 2011). The claims did

not define the terms "document" or "file." The specification, however, "repeatedly and

consistently define[d] the invention as a system that processes information derived from hard

copy documents." *Id.* at 1321. The issue was whether "document" and "file" should be

construed according to their ordinary meanings, as Eon-Net argued, or whether, following the

specification, they were limited to information originating from a hard copy document. *Id.* Both

the district court and the Federal Circuit held that the claimed "documents" and "files" were

limited to information originating from a hard copy document. *Id.* at 1319, 1323. Indeed, the

Federal Circuit held that the "specification unequivocally compels" such a construction and

upheld Rule 11 sanctions against the plaintiff for asserting claims based on a frivolous claim-

construction position. *Id.* at 1323, 1328–29 (agreeing with the district court's conclusion that

Eon-Net's claim-construction position "border[ed] on the illogical" and that "[t]he specification

exposes the frivolity of Eon-Net's claim construction position").[6]

Similarly, in *Honeywell*, the Federal Circuit held that the claim term "electrically

conductive fibers" excluded carbon fibers, even though carbon fibers are electrically conductive,

because the specification disparaged them: "[T]he patentee informed its readers specifically why

carbon fibers would not be suitable as 'electrically conductive fibers' in the claimed invention. If

the written description could talk, it would say, 'Do not use carbon fibers.'" *Honeywell*, 452 F.3d

---

[6] *See also, e.g.*, *Honeywell Int'l, Inc. v. ITT Indus. Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006)
(holding claim term was limited in scope by descriptions of "the invention" in the specification);
*Wireless Agents LLC v. Sony Ericsson Mobile Commc'ns AB*, 189 Fed. Appx. 965, 967 (Fed. Cir.
2006) (unpublished) (holding that a description of "the invention" in the specification is
"commensurate with the invention as claimed" (citing 37 C.F.R. § 1.73 (2004))); *Wang Labs., Inc.
v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999) ("[W]hen the 'preferred embodiment' is
described as the invention itself, the claims are not entitled to a broader scope than that
embodiment.").

at 1320. As the court further explained, the specification's "repeated derogatory statements

concerning one type of material [carbon fibers] [was] the equivalent of disavowal of that subject

matter from the scope of the patent's claims." *Id.*[7]

Here, the specification criticizes prior-art conversion techniques as being too slow, noting

that they often required days or weeks to complete. In sharp contrast, the claimed invention is

described as being a process that occurs in an approximately immediate fashion. Under these

facts, following *SciMed*, *Eon-Net*, and *Honeywell*, the claimed conversion or transfer of non-

negotiable credits to negotiable funds must occur in an approximately immediate fashion.

        3.       *The doctrine of claim differentiation does not bar Defendants' construction.*

Loyalty Conversion contends Defendants' construction is barred by the doctrine of claim

differentiation.[8] It is not. As the Federal Circuit has repeatedly held, "the doctrine of claim

differentiation does not serve to broaden claims beyond their meaning in light of the specification

. . . and does not override clear statements of scope in the specification and the prosecution

history." *The Toro Co. v. White Consolidated Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999)

(citing *Multiform Desiccants Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)).[9] Because

---

[7]  *See also, e.g.*, *Edward Lifesciences*, 582 F.3d at 1333 (holding that certain claimed wire structures must be malleable, even though the word "malleable" did not appear in any of the claims) (internal quotation and citation omitted); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (where the specification distinguished prior art as inferior and touted advantages of a conical shaped cup for use in an artificial hip device,"[s]uch statements ma[d]e clear that the [patent at issue] disclose[d] only conical shaped cups and nothing further").

[8]  Opening Br. at 5–6.

[9]  *See also, e.g.*, *Marine Polymer Techs., Inc. v. Hemcon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012) ("[C]laim differentiation is 'not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history." (quoting *Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)); *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) ("[T]he written description and prosecution history overcome any presumption arising from the doctrine of claim differentiation."); *Laitram Corp. v.*

the specification here clearly limits the scope of the invention to conversion techniques that occur approximately immediately, the doctrine of claim differentiation does not apply.

Further, Loyalty Conversion's claim-differentiation argument also fails because Defendants' construction does not render any claims superfluous. *See Curtiss–Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous[.]"). Independent claim 1 of the '550 Patent[10] recites a three-step method implemented by a computer—the computer: (1) serves a web page[11] with a "conversion option" to a client machine; (2) processes a selection made by the user of the client machine to effectuate changes on the web page; and (3) serves updates to the client machine with the changes, including changes based on the conversion of non-negotiable credits to entity-independent funds.

Defendants' construction relates to the second step, in which the computer processes the user's selection by converting non-negotiable credits to entity-independent funds. The conversion must occur approximately immediately, or, as the specification states, in a single web session. *See* '023 Patent at 2:42–45. Claim 1, however, does not require that steps 1 and 3 must occur in that same session. Dependent claim 7 adds that limitation: "The method of claim 1, wherein the computer serves the set of one or more Web pages, processes the selection, and

---

*Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) ("Claim differentiation is a guide, not a rigid rule.").

[10] Loyalty Conversion's claim-differentiation argument rests solely on its flawed analysis of claims 1 and 7 of the '550 Patent.

[11] It may actually serve multiple web pages, as the claim recites "a computer serving a set of one or more Web pages." '550 Patent at 6:43.

serves the one or more Web pages or Web page updates that include the effectuated changes within a single user-interactive Web session." '550 Patent at 7:51–55. Simply put, Defendants' construction clarifying that the <u>conversion in step 2</u> must occur in a single web session does not render superfluous the further limitation that <u>all three</u> method steps must occur in the same session.

Accordingly, there is no basis for holding that the asserted claims broadly cover all conversions, including lengthy conversions like those criticized in the specification. The Court should therefore reject Loyalty Conversion's arguments and construe the claims to require the approximately immediate conversion of non-negotiable credits to entity-independent funds.

**B.** **"the at least one of the one or more computers"/"the one or more nontransitory computer-readable mediums"**

| Claim Term | LCSC's Proposed Construction | Defendants' Proposed Construction |
| --- | --- | --- |
| "the at least one of the one or more computers"<br><br>'023 patent, claim 31 | Plain and ordinary meaning. | Indefinite |
| "the one or more nontransitory computer-readable mediums"<br><br>'023 patent, claim 39 | Plain and ordinary meaning. | Indefinite |

*1. Claims must recite the scope of the invention with reasonable certainty.*

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with <u>reasonable certainty</u>, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) (emphasis added) (overruling Federal Circuit precedent that required a finding of "insoluble ambiguity"). The definiteness requirement performs an important public notice function:

> It cannot be sufficient that a court can ascribe <u>some</u> meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters post hoc. To tolerate imprecision just short of that rendering a claim "insolubly ambiguous" would diminish the definiteness requirement's public-notice function and foster the innovation-discouraging "zone of uncertainty" . . . against which this Court has warned.

*Id.* at 2130 (emphasis in original) (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)).

> 2. *Under the Supreme Court's Nautilus standard, the terms "the at least one of the one or more computers" and "the one or more nontransitory computer-readable mediums" are indefinite for lacking proper antecedent bases.*

Claim 31 of the '023 Patent claims a method and recites, among other things: (1) "at least one or more computers <u>detecting</u> a communication over a network"; (2) "at least one or more computers <u>granting</u> the consumer the quantity of entity independent funds; and (3) "<u>the</u> at least one of <u>the</u> one or more computers <u>accepting</u> at least a portion of the quantity of entity independent funds." '023 Patent at 10:7–23 (emphasis added). The problem is that the third term lacks an antecedent basis. Thus, as illustrated by the accompanying figure, it is unclear whether the computers that accept the quantity of entity independent funds are the computers that <u>detect</u> a communication over a network or the computers that <u>grant</u> the consumer the quantity of entity independent funds. Based on the language of the claim, it could be either of the two.



A person of ordinary skill in the art would therefore interpret claim 31 to have at least two conflicting interpretations. <u>First</u>, the detecting and accepting steps could be performed by the same set of computers with the granting step performed by a different set of computers. <u>Second</u>, the detecting and granting steps could be performed by the same set of computers with the

accepting step performed by a different set of computers.[12] Because it is susceptible to at least two conflicting interpretations, claim 31 does not serve the public notice function of conveying the scope of a claim with reasonable certainty to one of ordinary skill in the art and creates the precise "zone of uncertainty" that Supreme Court warned against in *Nautilus*. *Nautilus*, 134 S. Ct. at 2130.

The specification of the '023 Patent does not overcome the indefiniteness of this term. In fact, the '023 Patent reinforces the contradictory interpretations by disclosing that "[t]he present disclosure may be realized in a centralized fashion in one computer system or in a distributed fashion where different elements are spread across several interconnected computers." '023 patent at 5:60–64.[13]

Claim 39 of the '023 Patent suffers the same lack of clarity. It claims a computer program product and claims, among other things: a first set of "one or more non-transitory computer-readable mediums"; (2) a first set of "program instructions, stored on a least one of the one or more non-transitory computer-readable mediums"; (3) a second set of "one or more non-transitory computer-readable mediums"; (4) a second set of "program instructions, stored on a least one of the one or more non-transitory computer-readable mediums"; and (5) a third set of "program instructions, stored on a least one of the one or more non-transitory computer-readable mediums." '023 Patent at 11:2–35 (emphasis added).

Thus, like claim 31, claim 39 includes terms that lack an antecedent basis. Specifically, as

---

[12] Two additional interpretations include all the steps being performed by the same one or more computers and all the steps being performed by different one or more computers.

[13] The file history of the '023 Patent is completely silent with respect to the term "the at least one of the one or more computers" and thus does not assist one of ordinary skill in the art to understand the scope of these terms with reasonable certainty.

the figure below illustrates, it is impossible to determine based on the claim language whether the second and third sets of program instructions must be stored in the first or the second computer-readable mediums.



Accordingly, a person of ordinary skill would interpret claim 39 to have multiple conflicting interpretations.[14] Further, the specification of the '023 Patent does not overcome the lack of clarity as it discloses that the "described program can be a single program or can be implemented as multiple subprograms, each of which interact within a single computing device or interact in a distributed fashion across a network space."[15] '023 Patent at 3:37–41.

Accordingly the terms "the at least one of the one or more computers" and "the one or more nontransitory computer-readable mediums" are indefinite under the "reasonable uncertainty" standard established by *Nautilus*. *See Nautilus*, 134 S. Ct. at 2124. Indeed, even under the overruled and higher "insolubly ambiguous" standard rejected by *Nautilus*, the Federal Circuit has held that "a claim could be indefinite if a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not

---

[14] To name three: (1) the second program instructions could be stored on the first computer readable medium and the third program instructions on the second computer-readable medium; (2) the second and third program instruction could both be stored on the second computer-readable medium; (3) the second program instructions could be stored on the second computer-readable medium and the third program instructions on the first computer-readable medium.

[15] The file history provides no guidance on this issue as it is silent on the meaning of the term "the one or more nontransitory computer-readable mediums."

reasonably ascertainable." *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249

(Fed. Cir. 2008). And courts in this district consistently found claims indefinite under the

insolubly-ambiguous standard because they included terms that lack proper antecedent basis. *See*

*e.g., Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 U.S. Dist. Lexis

109173, at *73–75 (E.D. Tex., Jun. 26, 2009) (finding claim that recited "the opening in the light

influencing material" indefinite for lack of antecedent basis for the term "the opening").[16]

Without question, therefore, claims that include terms that lack proper antecedent basis are

indefinite under the *Nautilus* standard. *See Nautilus*, 134 S. Ct. at 2130 (abrogating *Every Penny*

*Counts, Inc. v. Wells Fargo Bank*, N.A., ___F. Supp. 2d ___, 2014 U.S. Dist. LEXIS 28106, at *12,

15 (M.D. Fla., Mar. 5, 2014).

Indeed, the ambiguity in claims 31 and 39 create the same conflicting interpretations that

were caused by terms "the modem" and "the account" in *Brandywine Commc'ns* and *Every*

*Penny*, respectively. *See Brandywine Commc'ns Techs., LLC v. Centurytel Broadband Servs., LLC*,

No. 6:12-cv-286-Orl-36DAB, 2013 U.S. Dist. LEXIS 187334, at *15–16 (M.D. Fla. Apr. 17, 2013);

*see also Every Penny*, 2014 U.S. Dist. LEXIS 28106, at *13. In *Brandywine Communications*, the

Court found the term "the modem electrically couples" indefinite because the claim recited both

"a first modem" and a "second modem," but it was not clear which modem "the modem"

derived its antecedent basis from. *Brandywine Commc'ns*, 2013 U.S. Dist. LEXIS 187334, at *15–

16. And in *Every Penny*, the term "the account" was found indefinite because the claim recited

both "the customer account" and "the provider account," which meant that "'the account;

---

[16] *See also SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497, 2010 U.S. Dist. LEXIS 74808, at
*82–87 (E.D. Tex. Jul. 26, 2010); *Cell & Network Selection LLC v. AT&T Inc.*, No. 6:13-CV-403,
2014 U.S. Dist. LEXIS 100248, at *41 (E.D. Tex. May 2, 2014).

might mean 'the customer account,' 'the provider account," or 'the accounts,' or otherwise; no informed confident choice is available among the contending definitions." *See Every Penny*, 2014 U.S. Dist. LEXIS 28106, at *13 (holding the term "the account" indefinite but finding the claim to be definite for not being insolubly ambiguous) (abrogated with respect to the definiteness finding by *Nautilus*, 134 S. Ct. at 2130 ). Similarly, the terms "the at least one of the one or more computers" and "the one or more nontransitory computer-readable mediums" should also be found to be indefinite at least due to the rationale applied in *Brandywine Communications* and *Every Penny*.

In short, claims 31 and 39 of the '023 Patent do not provide "reasonable certainty" as to their scope. The lack of an antecedent basis for the terms "the at least one of the one or more computers" and "the one or more nontransitory computer-readable mediums" creates a "zone of uncertainty" that renders the claims invalid as indefinite. *See Nautilus*, 134 S. Ct. at 2129 (warning against imprecise claim language creating a zone of uncertainty and not affording clear notice of what is claimed).

## III.  CONCLUSION

For the reasons more particularly identified in this brief, the Court should construe the terms at issue as set forth above by Defendants.

Dated: August 7, 2014

Respectfully submitted,

*/s/ Max Ciccarelli*
Max Ciccarelli
 State Bar No. 00787242
 Max.Ciccarelli@tklaw.com
Daniel Murray
 State Bar No. 24086422
 Daniel.Murray@tklaw.com

THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**ATTORNEYS FOR DEFENDANT
SOUTHWEST AIRLINES CO.**

*/s/ Colin O. Miwa*
Colin O. Miwa
 Hawaii Bar No. 0-2997
 cmiwa@cades.com
Martin E. Hsia
 Hawaii Bar No. 0-2954
 mhsia@cades.com

CADES SCHUTTE
A LIMITED LIABILITY LAW PARTNERSHIP LLP
1000 Bishop Street, Suite 1200
Honolulu, HI 96813
Telephone: (808) 521-9200
Facsimile: (808) 540-5011

Trey Yarbrough
 Bar No. 24012752
 trey@yw-lawfirm.com
YARBROUGH & WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
Telephone: (903) 595-3111
Fax: (903) 595-0191

**ATTORNEYS FOR DEFENDANT
HAWAIIAN AIRLINES, INC.**

– 16 –

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
 Texas Bar No. 00784720
 jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON &
CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Telephone: (903) 509-5000
Facsimile: (903) 509-5092

Stephen E. Baskin
 Virginia Bar No. 47567
 sbaskin@mayerbrown.com
Ann Marie Duffy *(pro hac vice)*
 aduffy@mayerbrown.com
Saqib J. Siddiqui *(pro hac vice)*
 ssiddiqui@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

**ATTORNEYS FOR DEFENDANTS
AMERICAN AIRLINES, INC.; DELTA
AIRLINES, INC.; FRONTIER AIRLINES,
INC.; UNITED AIRLINES, INC.; AND
US AIRWAYS, INC.**

*/s/ Thomas C. Wright*
Ross Cunningham (Co-Lead Counsel)
 Texas Bar No. 24007062
 rcunningham@rosewalker.com
 Thomas C. Wright (Co-Lead Counsel)
 Texas Bar No. 24028146
 twright@rosewalker.com
 Alex J. Whitman
 Texas Bar No. 24081210
 awhitman@rosewalker.com

ROSE·WALKER, L.L.P.
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
Phone: 214.752.8600
Facsimile: 214.752.8700

**ATTORNEYS FOR DEFENDANT
SPIRIT AIRLINES, INC.**


*/s/ Casey L. Griffith*
Casey L. Griffith
 Texas Bar No. 24036687
 Casey.Griffith@kk-llp.com
 Austin S. Champion
 Texas Bar No. 24065030
 Austin.Champion@kk-llp.com

KLEMCHUK KUBASTA LLP
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001

**COUNSEL FOR DEFENDANT
JETBLUE AIRWAYS CORPORATION**

## Certificate of Service

I certify that the foregoing document was served electronically on all counsel of record on

August 7, 2014.

/s/ Max Ciccarelli
Max Ciccarelli