# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

LOYALTY CONVERSION SYSTEMS
CORPORATION

       Plaintiff,

    v.

AMERICAN AIRLINES, INC., *et al.*,
    Defendants.

Case No. 2:13-CV-655
(LEAD CASE)

## PLAINTIFF LOYALTY CONVERSION SYSTEMS CORPORATION'S
## REPLY CLAIM CONSTRUCTION BRIEF

Pursuant to P.R. 4-5(c) and the Court's Amended Docket Control Order (Doc. No. 109), Plaintiff Loyalty Conversion Systems Corporation ("Loyalty Conversion" or "Plaintiff") files this its Reply Claim Construction Brief, and in support thereof, states as follows:

## I.    REPLY

### A.    "To Convert"; "Transfer(s) or Conversion(s)" / "Conversion or Transfer"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "to convert"<br><br>'550 Patent, claim 1<br><br>"transfer(s) or conversion(s)" / "conversion or transfer"<br><br>'023 Patent, claims 31, 39 | Plain and ordinary meaning. | "to convert in an approximately immediate fashion"<br><br>"the approximately immediate transfer(s) or conversion(s)/ approximately immediate conversion or transfer" |

Defendants do not dispute that the claims themselves do not require immediacy in the conversion.  Furthermore, they do not dispute that the prosecution history does not support a disclaimer,  or that the prosecution histories of the '023 Patent and the '550 Patent do not emphasize "immediate" or approximate immediacy.  The Notices of Allowance do not use these terms, nor discuss them in any fashion; instead the Notices articulate other reasons for the allowance.  Thus, the sole issue before the Court is whether the specification disclaims conversions that are not "approximately immediate."

> To disavow claim scope, the specification must contain "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009).  In general, statements about the difficulties and failures in the prior art, without more, do not act to disclaim claim scope.  *See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1315 (Fed. Cir. 2010) (concluding that statement that a prior art two-piece implant was "particularly difficult" to achieve did not disclaim two-piece implants).

*Retractable Technologies, Inc. v. Becton, Dickinson & Co*., 653 F.3d 1296, 1306 (Fed. Cir. 2011).

As is manifest from Defendants' own citations on page 2 of their Responsive Claim Construction Brief, the specification refers to ***advantages*** with respect to the time during which a transfer can occur.  As explained by the Federal Circuit:

> [I]t is generally not appropriate "to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention .... An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them." *E–Pass Techs., Inc. v. 3Com Corp*., 343 F.3d 1364, 1370 (Fed.Cir.2003) (citation and footnote omitted); *see also Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1345 (Fed. Cir. 2008) (quoting and applying E–Pass ).

*Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1325 (Fed. Cir. 2008).  Even preamble language—not present here—"extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant."  *Catalina Mktg. Int'l v. Coolsavings.com, Inc.,* 289 F.3d 801, 808-09 (Fed. Cir. 2002).

It is true that written description of the patents describe an advantage of speed in exemplary and optional terms.  But the independent claims do not depend on the speed of the transfer to differentiate the prior art.  As with *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007), there are a number of advantages described in the specification that are not related to the timing of the transfer.  *See id*. at 1309-1310.  The '550 Patent describes the technical capability to overcome at least four distinct problems with prior art systems:

| restrictions on usage to goods and/or services of the entity | '550 Patent, 1:53-62 |
| length of time to effect the transfer | '550 Patent, 1:63-2:7 |
| miles expiry | '550 Patent, 2:8-15 |
| multiplicity of incompatible accounts | '550 Patent, 2:16-32 |

Notably, each of the five excerpts from the specification cited by Defendants in support of their disclaimer argument incorporates the word "***can***."  This terminology was important to the holding in *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121 (Fed. Cir. 2011):

> In this case, the '269 Patent is more like the patents at issue in *Voda*, *Praxair*, and *Rambus*, in that the specification does not uniformly refer to a one-call-per-time-period limitation as being co-extensive with the entire invention. Significantly, under the Description of Operation section, the specification of the '269 Patent states that:
>
> Some of the features that ***can*** be included in the ***present invention*** to make [a work around] more difficult are: . . .

*Id*. at 1137 (emphasis in original) (finding no disclaimer, and differentiating *Verizon Servs. Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295, 1308 (Fed.Cir.2007) and *Honeywell Int'l, Inc. v. ITT Indus., Inc.,* 452 F.3d 1312, 1318 (Fed.Cir.2006)).   The use of the word "can" in this case emphasizes an embodiment and possible advantage, not disclaimer.

Defendants rely on *Verizon* in support of their construction of this claim term. In *Verizon*, the Federal Circuit limited the scope of the term "localized wireless gateway system" to "one performing compression and packetization functions at the gateway." *Id*. at 1308. But in *Verizon*, the specification actually used those words in describing "the features of the 'present invention' as a whole," and the Court found that express description limited the scope of the invention. *Id*. The same is not true here. Neither the '550 Patent nor the '023 Patent describes the "present invention" as requiring substantially immediate conversion. These are Defendants' words; *Verizon* does not compel this Court to acquiesce to Defendants' attempt to put words in the mouths of the inventors.

Claim differentiation supports the same conclusion.   Under the principles of claim differentiation, the independent claims are presumed to be broader than the dependent claims. *Hill-Rom Services, Inc. v. Stryker Corp*., No. 2013–1450, 2014 WL 2898495, *6 (Fed. Cir. June 27, 2014) (citing *Liebel–Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 904 (Fed. Cir. 2004)); *accord GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014) (holding that district court erred by importing limitations from the dependent claims into the independent claims). Claim 1 of the '550 Patent is thus presumptively broader than claim 7.

Defendants attempt to circumvent the claim differentiation presumption by stating that the scope of claim 7 differs substantively from their proposed construction. *See* Defendants' Response at 9. In order for Defendants' argument to be understood, claim 1 requires substantial immediacy only for the conversion. But the specification describes the advantage of substantial immediacy in a single web session for the "transaction," which could only be reasonably understood as encompassing all three actions—option presentment, conversion and graphical user interface update—within a single web session. *See* '550 Patent, 2:63-66.

Further light is shed by reference to the parent case of these patents, U.S. Patent No. 7,703,673 (the "'673 Patent") (attached as **EXHIBIT** 1). Claim 2 of the '673 patent reads:

> 2. The method of claim 1, wherein the converting and permitting steps occur in an ***approximately immediate fashion***.

Exh. 1, claim 2 (emphasis added). Were the converting step necessarily "approximately immediate," as Defendants claim, then specifying that the converting step is approximately immediate in claim 2 would render superfluous that claim language, negating Defendants' reliance on *Curtiss–Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006). *See* Defendants' Response at 15.

### B.   "The at Least One of the One or More Computers" / "The One or More Nontransitory Computer-Readable Mediums"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "the at least one of the one or more computers" / "the one or more nontransitory computer-readable mediums"<br><br>'023 Patent, claims 31, 39 | Plain and ordinary meaning. | Indefinite. |

Defendants' claim of indefiniteness in both claims 31 and 39 is predicated the presence of claim terms without antecedent basis, and what Defendants argue is concomitant ambiguity as to

the meaning of the same term throughout the claim.  A claim term should be normally be construed consistently in its appearance in other places in the same claim or in other claims of the same patent.  *See Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1465, 45 USPQ2d 1421, 1426 (Fed. Cir. 1998) ("A word or phrase used consistently throughout a claim should be interpreted consistently."); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997) ("[W]e are obliged to construe the term 'elasticity' consistently throughout the claims."); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579, 34 USPQ2d 1673, 1679 (Fed. Cir. 1995) (holding that claim terms found in different claims should be interpreted consistently); *accord SIPCO, LLC v. Amazon.com, Inc*., 2012 WL 5195942, \*51 (E.D. Tex. Oct. 19, 2012).

Claims 31 and 39 provide antecedent basis for the subject terms.  That relationship is highlighted below in claim 31.

31. A method comprising:

a commerce partner agreeing to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds in accordance with a credits-to-funds ratio, wherein the non-negotiable credits have been earned as part of a rewards program of an entity, wherein the commerce partner accepts the entity independent funds for goods or services that the commerce partner provides, wherein in absence of the non-negotiable credits being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides, wherein the entity-independent funds are loyalty points of a loyalty program of the commerce partner;

***at least one of one or more computers*** detecting a communication over a network to grant a consumer a quantity of the entity independent funds, wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-funds ratio, wherein the subset of the non-negotiable credits are expended as part of the conversion or transfer, and wherein the commerce partner is compensated for providing the entity independent funds to the consumer;

responsive to the communication, ***at least one of one or more computers*** granting the consumer the quantity of the entity independent funds; and

> ***the at least one of the one or more computers*** accepting at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, wherein the one or more computers do not accept the non-negotiable credits of the entity's rewards program for the goods or services in absence of the conversion or transfer.

'023 Patent, claim 31 (emphasis added).

In each instance, the phrase "one or more computers" refers to the same set of computers. A person of ordinary skill in the art would understand the term to encompass that set, and "one" of the "one or more" could differ in different implementations. *See* Declaration of Zaydoon Jawadi ("Jawadi Decl."), ¶¶ 12, 13. Thus, the diagram appearing on page 11 of Defendants' Response is inapposite—there is only a single phrase providing antecedent basis for the same group of one or more computers. No ambiguity thus exists. *See* Jawadi Decl., ¶¶ 12, 13.

Similarly, claim 39 uses the term "one or more non-transitory computer-readable mediums" consistently throughout the claim. The phrase is drafted to be intentionally flexible, to encompass a single medium or several mediums.

> 39. A computer program product comprising:
>
> ***one or more non-transitory computer-readable mediums;***
>
> program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to detect a communication over a network to grant a consumer a quantity of entity independent funds, wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of non-negotiable credits into the quantity of entity independent funds in accordance with a credit-to-funds ratio, wherein the subset of the non-negotiable credits are expended as part of the conversion or transfer, and wherein the commerce partner is compensated for providing the entity independent funds to the consumer, wherein the commerce partner agrees to accept transfers or conversions of quantities of the non-negotiable credits to entity independent funds in accordance with the credits-to-funds ratio, wherein the non-negotiable credits have been earned as part of a rewards program of the entity, wherein the commerce partner accepts the entity independent funds for goods or services that the commerce partner provides, wherein in absence of the non-negotiable credits being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods

or services that the commerce partner provides, wherein the entity-independent funds are loyalty points of a loyalty program of the commerce partner;

*one or more non-transitory computer-readable mediums*;

program instructions, stored on *at least one of the one or more non-transitory computer-readable mediums*, to, responsive to the communication, grant the consumer the quantity of the entity independent funds; and

program instructions, stored on *at least one of the one or more non-transitory computer-readable mediums*, to accept at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, wherein, per the program instructions, the non-negotiable credits are not accepted for the goods or services in absence of the conversion or transfer.

'023 Patent, claim 39 (emphasis added). The second introduction of one or more non-transitory computer-readable mediums is unnecessary, but would be understood by a person of ordinary skill in to art to refer to the identical set of mediums, with the "at least one or more" in the following element providing the capability of further differentiation between the specific mediums recited in those portions of the claims. *See* Jawadi Decl., ¶¶ 14-16.

Even were Defendants correct that there is no formal antecedent basis for the subject terms, the inquiry does not end there. If the scope of the claim is ascertainable by a person of ordinary skill, then it is not indefinite.

> [T]he failure to provide explicit antecedent basis for terms does not always render a claim indefinite. If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite. Energizer Holdings Inc. v. Int'l Trade Comm'n, 435 F.3d 1366, 77 USPQ2d 1625 (Fed. Cir. 2006) (holding that "anode gel" provided by implication the antecedent basis for "zinc anode"); Ex parte Porter, 25 USPQ2d 1144, 1145 (Bd. Pat. App. & Inter. 1992) ("controlled stream of fluid" provided reasonable antecedent basis for "the controlled fluid"). Inherent components of elements recited have antecedent basis in the recitation of the components themselves. For example, the limitation "the outer surface of said sphere" would not require an antecedent recitation that the sphere has an outer surface. See Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1359, 61 USPQ2d 1216, 1218-19 (Fed. Cir 2001) (holding that recitation of "an ellipse" provided antecedent basis for "an ellipse having a major diameter"

7

because "[t]here can be no dispute that mathematically an inherent characteristic of an ellipse is a major diameter").

MPEP § 2173.05(e).

In *Fisher-Price v. Graco*, 154 Fed. Appx. 903 (Fed. Cir. 2005), Fisher-Price sued Graco for infringing a patent on a collapsible infant swing. The primary asserted claim reads as follows:

6. An infant swing comprising:

an upward extending frame support post;

a swing arm pivotally coupled to an upper end of said frame support post and extending in a downward direction from said upper end of said frame support post;

a seat coupled to said swing arm and having an *upper seating surface*;

*said swing arm and said frame support post defining a reconfigurable swing area there between*;

a shield coupled to said seat and extending upwardly from said seat and disposed between said reconfigurable swing area and *said seating area*.

Following claim construction, the district court found the italicized limitations of the claim indefinite and thus the claim invalid.

On appeal, the Federal Circuit explained that a defect in a claim must be "severe" before it will be invalidated as indefinite.  The Federal Circuit reversed because the "patent is not complex; it is readily understood by both the expert and layperson [and] the words used in the limitation are simple, with well-known ordinary meanings [that] can be construed without great difficulty, even if, as Graco points out, it is not mentioned in the specification."  Finally, regarding "said seating area," Graco argued that the term was indefinite because it had no antecedent basis in the claim. Although not rejecting the legal basis of this argument, the court found an implied antecedent basis in the term "upper seating surface."  *Fisher Price*, 154 Fed. Appx. at 905-06.

The Supreme Court's decision in *Nautilus* requires that the phrases inform, with reasonable certainty, those skilled in the art about the scope of the invention.  *See Nautilus, Inc. v. Biosig Instruments*, *Inc.*, 134 S. Ct. 2120, 2124 (2014).  As set forth in Mr. Jawadi's Declaration, a person of ordinary skill would be reasonably certain as to the meaning of the subject terms within the context of claims 31 and 39, and would apply a consistent meaning for the same terms throughout the claim.  *See* Jawadi Decl., ¶¶ 12-16.

## II.    CONCLUSION

For the reasons set forth above, Loyalty Conversion respectfully requests that its proposed claim constructions be adopted, and for such other and further relief to which it may show itself entitled.

Dated: August 14, 2014                                Respectfully submitted,

                                                                     /s/ Andrew G. DiNovo
                                                                    Andrew G. DiNovo
                                                                    Texas State Bar No. 00790594
                                                                    Adam G. Price
                                                                    Texas State Bar No. 24027750
                                                                    Chester Shiu
                                                                    Texas State Bar No. 24071126
                                                                    DINOVO PRICE ELLWANGER & HARDY LLP
                                                                    7000 N. MoPac Expressway, Suite 350
                                                                    Austin, Texas  78731
                                                                    Telephone:  (512) 539-2631
                                                                    Facsimile:  (512) 539-2627
                                                                    Email: adinovo@dplaw.com

                                                                    **ATTORNEYS FOR LOYALTY
                                                                    CONVERSION SYSTEMS CORPORATION**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 14th day of August, 2014, I caused a copy of the foregoing to be served on all counsel of record via ECF and/or electronic transmission.

/s/ Andrew G. DiNovo     
Andrew G. DiNovo
