IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

LOYALTY CONVERSION SYSTEMS CORPORATION
    Plaintiff,

v.

AMERICAN AIRLINES, INC., *et al.*,
    Defendants.

Case No. 2:13-CV-655
(LEAD CASE)

**DECLARATION OF ZAYDOON JAWADI**

I, Zaydoon Jawadi, hereby declare under penalty of perjury that the facts set forth herein are true and correct to the best of my knowledge and belief, and, if called as a witness, I can and will testify at trial as to the matters discussed in this Declaration.

1.  I have been retained as an expert in this case by counsel for Loyalty Conversion Systems Corporation ("Loyalty Conversion") to provide certain opinions in connection with United States Patent Nos. 8,313,023 (the "'023 Patent"). I have been asked in particular to review the '023 Patent in the context of the claims of indefiniteness raised by the defendants in this case as set forth in Defendants' Responsive Claim-Construction Brief ("Defendants' Brief"). Below, I set forth my opinion as to how certain claim terms are understood by a person of ordinary skill in the art of the '023 Patent at the time of its filing, and that those terms are not indefinite.

A.  **Qualifications**

2.  I am an independent computer expert and consultant.

3.  Attached hereto is a copy of my curriculum vitae ("CV"). As shown in my CV, I have a Bachelor of Science in Electrical Engineering, a Master of Science in Computer Science, and over 35 years of experience in software development, engineering, consulting, and management in the fields of computing systems, data storage, databases, Internet, website technologies, data networking, and embedded systems. In my professional career, I have been employed as a telecommunication engineer, a software engineer, a software consultant, a company executive, and an expert. I have worked with and hold expertise in numerous technologies, including software applications, databases, client/server systems, data networking, data storage, data management, data storage interfaces, disk drive software, firmware, device drivers, embedded systems, embedded software, real-time systems, Internet and website technologies, networking protocols, speech recognition, TCP/IP, and telephony. Additionally, I

have instructed thousands of students on computer technologies in both academic and corporate settings worldwide.

4. From 1978 to 1994, I was an employee of Emirtel as an electrical engineer, an employee of Amdahl Corporation as a software engineer, and a software development consultant for Fortune-1000 companies. In the early to mid 1980s, I developed a software bug tracking database system using the Ingress relational database, and I was a project leader and lead developer of a relational database that was designed and developed from scratch for AT&T/NCR.

5. From 1992 to 1996, I was founder and CEO of Zadian Technologies, Inc., which, by 1996, was the largest supplier of interface production test systems for data storage devices, including disk, tape, CD-ROM, and RAID devices. Zadian Technologies had over 50,000 units installed worldwide in mission-critical applications, with customers such as Fujitsu, Conner Peripherals (now Seagate), Quantum, Seagate, HP, DEC, IBM, EMC, Tandem, and Unisys. In 1996, Zadian Technologies was acquired by Xyratex International LTD (NASDAQ: XRTX, acquired by Seagate in March 2014). Following the acquisition by Xyratex, I was employed by Xyratex as general manager until 1998 where I led the interface test group and the data networking group.

6. From 1999 to 2001, I was founder, Chairman, and CEO of Can Do, Inc., a venture-backed Internet company selling over 10,000 products online and providing online services such as news, chat, messages, and product information. I defined website requirements and participated in the website design. I also assisted in the conception and architecting of a magnification technology and a sound adaptation technology to make websites more accessible to persons with vision and hearing impairments.

7. From 2001 to 2005, I was President and cofounder of CoAssure, Inc., a provider of Web-based technology services and solutions for automated telephony speech recognition and touchtone applications. I co-developed product and service requirements and specifications, modeled telephony applications using XML for use in generating automated tests, performed testing of telephony and speech recognition applications, conducted customer product training, maintained and enhanced ASP, SQL, and HTML web-based technologies, and participated in porting to OEM partner's platform.

8. From 2010 to the present, I have been President and cofounder of Rate Speeches, Inc., a Los Altos, California-based company providing online services, resources, and technologies for creating, rating, evaluating, and enhancing public speaking, presentation, and communication skills. Rate Speeches operates the ratespeeches.com website and the Speech Evaluator online software. I assisted in the development of an interactive online annotation and evaluation software, a website for rating public speaking and speeches, and a topic generation system, and I have performed detailed testing of all aspects of the ratespeeches.com website. In addition, I co-authored and filed a patent application for an annotation and evaluation system (US 13/198,001, published as US 20120042274 A1, entitled "Method and System for Evaluating Live or Prerecorded Activities").

B. **Person of Ordinary Skill**

9. Having reviewed the '023 Patent, its claims and associated prosecution history, in my opinion, the art to which the patent is directed is computer networking e-commerce systems. A person of ordinary skill in the art would have a Bachelor of Science in computer science or electrical engineering or the equivalent work experience, and 1-2 years of experience in ecommerce systems. For purposes of this Declaration, I apply those criteria for a person of ordinary skill in the art.

### C. Opinion

10. Based on my review of the '023 Patent, its claims (including claims 31 and 39) and associated prosecution history, I am of the opinion that the phrases "the at least one of the one or more computers" and "the one or more nontransitory computer-readable mediums" would be readily understandable to a person of ordinary skill in the art, who would understand them with reasonable certainty to refer to the same set of one or more computers or mediums in claims 31 and 39 respectively.

11. Claim 31 of the '023 Patent is set forth below.

> 31. A method comprising:
>
> a commerce partner agreeing to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds in accordance with a credits-to-funds ratio, wherein the non-negotiable credits have been earned as part of a rewards program of an entity, wherein the commerce partner accepts the entity independent funds for goods or services that the commerce partner provides, wherein in absence of the non-negotiable credits being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides, wherein the entity-independent funds are loyalty points of a loyalty program of the commerce partner;
>
> at least one of one or more computers detecting a communication over a network to grant a consumer a quantity of the entity independent funds, wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-funds ratio, wherein the subset of the non-negotiable credits are expended as part of the conversion or transfer, and wherein the commerce partner is compensated for providing the entity independent funds to the consumer;
>
> responsive to the communication, at least one of one or more computers granting the consumer the quantity of the entity independent funds; and
>
> the at least one of the one or more computers accepting at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, wherein the one or more computers do not accept the non-negotiable credits of the entity's rewards program for the goods or services in absence of the conversion or transfer.

12. A person of ordinary skill in the art reviewing claim 31 would understand the phrase "one or more computers" to be used consistently throughout the claim. Because one or more computers is essentially an open-ended set that can be identified by the patentee, that set could include a distributed architecture, as set forth in the specification of the '023 Patent.

> The present disclosure may be realized in hardware, software, or a combination of hardware and software. The present disclosure may be realized in a centralized fashion in one computer system or in a distributed fashion where different elements are spread across several interconnected computer systems.

'023 Patent, 5:59-64.

13. My review of the dependent claims corroborates this understanding. For example, claim 32 refers to "at least one of the one or more computers." I understand this to be at least one of the set defined consistently as the "one or more computers."

14. Similarly, with respect to claim 39, the phrase "one or more computer-readable mediums" would be understood to refer to the same set of one or more mediums each time that term appears in the claim.

15. Claim 39 is set forth below:

39. A computer program product comprising:

one or more non-transitory computer-readable mediums;

program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to detect a communication over a network to grant a consumer a quantity of entity independent funds, wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of non-negotiable credits into the quantity of entity independent funds in accordance with a credit-to-funds ratio, wherein the subset of the non-negotiable credits are expended as part of the conversion or transfer, and wherein the commerce partner is compensated for providing the entity independent funds to the consumer, wherein the commerce partner agrees to accept transfers or conversions of quantities of the non-negotiable credits to entity independent funds in accordance with the credits-to-funds ratio, wherein the non-negotiable credits have been earned as part of a rewards program of the entity, wherein the commerce partner accepts the entity independent funds for goods or services that the

>commerce partner provides, wherein in absence of the non-negotiable credits being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides, wherein the entity-independent funds are loyalty points of a loyalty program of the commerce partner;

>one or more non-transitory computer-readable mediums;

>program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to, responsive to the communication, grant the consumer the quantity of the entity independent funds; and

>program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to accept at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, wherein, per the program instructions, the non-negotiable credits are not accepted for the goods or services in absence of the conversion or transfer.

16. My understanding that "one or more non-transitory computer-readable mediums" is consistent with the following passage of the specification:

>The described program can be a single program or can be implemented as multiple subprograms, each of which interact within a single computing device or interact in a distributed fashion across a network space.

'023 Patent, 3:37-41.

17. I do note that claim 39 of the '023 Patent twice introduces the "one or more computer-readable mediums." A person of ordinary skill in the art would understand the second instance to refer to the same set as the first, and introductory of the limitations to follow.

18. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 14, 2014.

_____
Zaydoon Jawadi

8