**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

LOYALTY CONVERSION SYSTEMS
CORPORATION
    Plaintiff,

    v.

AMERICAN AIRLINES, INC., *et al.*,
    Defendants.

Case No. 2:13-CV-655
(LEAD CASE)

**PLAINTIFF LOYALTY CONVERSION SYSTEMS CORPORATION'S
SUPPLEMENTAL BRIEFING REGARDING PLAINTIFF'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Pursuant to the Court's July 29, 2014 Order [Dkt. 111], Plaintiff Loyalty Conversion Systems Corporation ("Loyalty Conversion" or "Plaintiff") files this Supplemental Briefing in support of its Motion to preliminarily enjoin Defendants Southwest Airlines, Co. ("Southwest"), JetBlue Airways Corporation ("JetBlue"), Delta Air Lines, Inc. ("Delta"), Frontier Airlines, Inc. ("Frontier"), United Airlines, Inc. ("United"), US Airways, Inc. ("US Airways"), American Airlines, Inc. ("American"), Hawaiian Airlines, Inc. ("Hawaiian") and Spirit Airlines, Inc. ("Spirit") (collectively "Defendants") from filing relating actions in other courts [Dkt. 91] ("Motion"), and in support thereof states as follows:

## I. INTRODUCTION

As this Court is aware, JetBlue filed suit against Plaintiff[1] in the Southern District of New York, alleging breach of contract, declaratory judgment, fraud, fraud in the inducement, and promissory estoppel ("New York Litigation"). *See* Dkt. 91-3 ("Complaint"). JetBlue's second-filed and retaliatory Complaint is putatively predicated on the collection of evidence to support claims made in the Original Complaint filed in the present case before this Court.

## II. ARGUMENT

### A. Claims Brought by JetBlue in its Action Against Plaintiff in the United States District Court for the Southern District of New York Are Compulsory Counterclaims in the Present Action

1. *The Claims in the New York Litigation are Logically Related to the Claims in the Present Action before this Court*

Federal Rule of Civil Procedure 13(a) "provides that a counterclaim is compulsory if it

---

[1] In addition to Loyalty Conversion, the New York Litigation also named as defendants Loyalty Conversion's parent company, CTI Patent Acquisition Corporation ("CTI"), its parent, CopyTele Inc. ("CopyTele"), and John Roop ("Roop), an officer of CopyTele, individually. JetBlue's allegations of breach of contract, promissory estoppel, fraud, and fraud in the inducement center around Roop's use of JetBlue's website to collect evidence in support of the patent infringement claims asserted by Loyalty Conversion in the case pending before this Court. *See, e.g.*, 93-1, ¶37.

1

'arises out of the transaction or occurrence' that is the subject matter of plaintiff's claim." *Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F.2d 1357, 1360 (5th Cir. 1979). In determining whether a claim arises from the same transaction, the Fifth Circuit has directed that courts consider four questions: "(1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim." *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85-86 (5th Cir. 1997); *see also Plant*, 598 F.2d at 1360 (citing 6 WRIGHT & MILLER, Federal Practice and Procedure s 1410 at 42 (1971)); *Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 483, n.2 (5th Cir. 1996); *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992. "An affirmative answer to <u>any</u> of the four questions indicates the counterclaim is compulsory." *Plant*, 598 F.2d at 1360-61 (citing 6 WRIGHT & MILLER, Federal Practice and Procedure s 1410 at 42 (1971) (emphasis added); *see also Tank Insulation*, 104 F.3d at 86.

"The test which has commended itself to most courts, including [the Fifth Circuit], is the logical relation test." *Plant*, 598 F.2d at 1361 (citing *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 714 (5th Cir. 1970); 6 WRIGHT & MILLER at 48). "The <u>logical relation test is a loose standard</u> which <u>permits 'a broad realistic interpretation in the interest of avoiding a multiplicity of suits</u>.'" *Plant*, 598 F.2d at 1361 (citing 3 Moore's Federal Practice P 13.13 at 300) (emphasis added); *see also Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, No. 10-20767, 2014 WL 2932671, at *6 (5th Cir. June 30, 2014). "The hallmark of this approach is its flexibility." *Plant*, 598 F.2d at 1361 (citing 6 WRIGHT & MILLER at 46-47)

(internal quotations omitted); *see also Revere,* 426 F.2d at 714 ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.") (quoting *Moore v. New York Cotton Exch.,* 270 U.S. 593, 609–610, 46 S.Ct. 367, 370–71, 70 L.Ed. 750 (1926)) (internal quotations omitted).

The claims asserted by JetBlue in the New York Litigation are logically related to the claims asserted in the case currently before this Court. In the New York Litigation, Defendant alleges Loyalty Conversion breached JetBlue's terms of service by:

a. Accessing the JetBlue website and secure TrueBlue website for commercial purposes;

b. <u>Pursuing claims for patent infringement against JetBlue</u> in violation of the provisions in the JetBlue Terms limiting JetBlue's liability and damages to Defendants;

c. <u>Pursuing claims for patent infringement against JetBlue</u> in violation of the provisions in the JetBlue Terms limiting JetBlue's liability and damages arising from acts of third parties;

d. <u>Pursuing claims for patent infringement against JetBlue</u> in violation of Defendants' obligations to indemnify, defend, and hold harmless JetBlue from and against any claims arising out of Defendants' breach of the JetBlue Terms and Defendants' use of the JetBlue Websites; and

e. <u>Pursuing claims for patent infringement against JetBlue</u> in the Eastern District of Texas, Marshall Division in violation of the mandatory forum selection clause in the JetBlue Terms.

Dkt. 91-3, ¶50 (emphasis added).

As evidenced by the above, JetBlue alleges Plaintiff breached the terms of service by investigating and pursuing through litigation the patent case currently before this Court. There is clearly a logical relationship—indeed, one of logical dependency and causation–between this case and JetBlue's allegations of breach of contract in the New York Litigation. As explained in

greater detail *infra*, the alleged breach of contract occurred when Loyalty Conversion accessed the JetBlue websites for purposes of its Rule 11 investigation, and pursuant to Court Order in its prosecution of the present case. Furthermore, the screen shots described and depicted in JetBlue's Complaint are taken from the claim charts Loyalty Conversion served in the present litigation. *See id.*, ¶35. Presumably, JetBlue will use these 3-1 claim charts as evidence in support of its claims in the New York Litigation. Thus, the evidence JetBlue intends to use to prove Loyalty Conversion's alleged breach of contract in the New York Litigation is contained in the claim chart that Plaintiff served in this lawsuit. Because the same evidence will be used in both cases, the lawsuits are logically related and JetBlue's claims are compulsory counterclaims to the instant litigation.

JetBlue's promissory estoppel, fraud, and fraud in the inducement claims are based on the same allegations that Plaintiff accessed JetBlue's website for the purposes of obtaining evidence in this litigation, and are similarly logically related to this litigation. *See id.*, Counts III, IV. Finally, JetBlue's allegation of declaratory judgment is intricately related to this case. In Count II of its Complaint, JetBlue requests the New York federal court grant a declaratory judgment stating that the case currently before this Court violates the mandatory forum selection clause contained in the JetBlue terms of service. Dkt. 93-1, ¶56. Clearly, a declaratory judgment regarding the present case is logically related to it.

Because there is a logical relationship between the claims in the New York litigation and the case currently before this Court, the allegations raised in the New York litigation are compulsory counterclaims.

> 2. *John Roop Accessed JetBlue's Website in Compliance with Federal Rule of Civil Procedure 11, which Requires a Thorough Pre-Suit Investigation, and in Compliance with this Court's Standing Order*

The Federal Circuit requirement that an attorney must investigate an accused product

4

before making a patent infringement claim is a well-established rule of law routinely followed by United States District Courts sitting in this State. *See Automated Business Companies, Inc. v. NEC America, Inc.*, 1999 U.S. Dist LEXIS 20962 at *8-9 (N.D. Tex. Feb. 8, 1999).

A patentee and its counsel are thus <u>required</u> to engage in a pre-filing investigation prior to asserting claims for infringement. Analysis of the prospective accused product, including possible reverse engineering, is an important step of the pre-suit investigation mandated by the Federal Circuit. *See Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (*citing Refac Int'l, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281, 286–88 (C.D. Cal.1991) (imposing Rule 11 sanctions on patent infringement plaintiff that failed to reverse engineer or examine accused products prior to filing complaint)).

The Federal Circuit has declared that counsel would violate Rule 11 of the Federal Rules of Civil Procedure if he or she did not compare and analyze the accused product to the claims of the patent. *See S. Bravo Systems v. Containment Technologies Comp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (emphasis added); *accord, View Engineering Inc v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("Before filing counterclaims of patent infringement, Rule 11, we think, must require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.").

Given this requirement, it would have been a violation of standards of patent litigation practice for Loyalty Conversion not to reasonably investigate JetBlue's website prior to making a claim for patent infringement. JetBlue's service is offered to the public at large, and potential users are encouraged to commence use on the Internet. *See Adrain v. Superchips, Inc*., 2006 U.S. Dist LEXIS 25212 at *23-24 (S.D. Tex. 2006) ("Rule 11 requires counsel for a plaintiff alleging

5

patent infringement to investigate the accused device(s) before filing suit. . . . This rule allows the assertion only of claims that a reasonable attorney would make, 'based on some actual evidence uncovered during a prefiling investigation.'" (quoting *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Citr. 2002).

Furthermore, as this Court is aware, Loyalty Conversion is subject to this Court's standing order requiring Plaintiff to provide competent evidence of infringement in the form of a claim chart as follows:

> Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality….

Patent L.R. 3-1.

The only allegations at issue in the New York litigation arise from Loyalty Conversion's investigation into JetBlue's patent infringement at issue in the case currently before this Court. In the New York Litigation, JetBlue seeks to impute the limitations of the JetBlue terms of service on Loyalty Conversion, where John Roop's actions and acceptance of the terms of service was limited to the pre-suit investigation in the case currently before this Court, and where the website was accessed to gather evidence in preparation of Plaintiff's 3-1 claim charts. JetBlue claims breach of contract, fraud, fraud in the inducement, and promissory estoppel occurred when John Roop gathered evidence for purposes of conducting a Rule 11 presuit investigation, and when Roop gathered evidence from JetBlue's website to include in the claim charts submitted by Plaintiff pursuant to Court Order and Local Patent Rule 3-1. Both investigations at issue in the New York Litigation were performed in response to obligations Loyalty Conversion had as a plaintiff in a patent litigation in this District.

6

Because there is a logical relationship between the claims asserted in the New York Litigation and those asserted in the present case, JetBlue's claims in the New York Litigation are compulsory counterclaims to Plaintiff's claims in this case.

**B. It Is Appropriate for this Court to Enjoin JetBlue from Prosecuting Its Claims in New York**

This Court should enjoin JetBlue from proceeding in the New York Litigation because the compulsory counterclaims included in the New York Litigation should have been filed in this Court—the court of first filing. *See, e.g.*, *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 731, n.5 (5th Cir. 1985) (citing *Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257 (7th Cir. 1977) (court of first filing should enjoin parties from proceeding in court of second filing on counterclaim which should have been asserted in court of first filing); *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620 (D.C.Cir. 1975) (same)).

"When a compulsory counterclaim is brought as an independent action while the first action is still pending, the proper response is to dismiss, enjoin, or stay the second action." *Directory Int'l, Inc. v. Bates Mfg. Co.*, 91 B.R. 738, 741 (N.D. Tex. 1988) (citing 6 C. Wright & A. Miller, Federal Practice and Procedure §§ 1409 & 1418 (1971); *Pumpelly v. Cook*, 106 F.R.D. 238, 239 (D.D.C.1985); *Donnkenny, Inc. v. Nadler,* 544 F.Supp. 166, 170)). *See also Johnny's Pizza House, Inc. v. G & H Properties, Inc.*, 524 F. Supp. 495, 498 (W.D. La. 1981) ("A . . . desire to achieve judicial economy also enters into the handling of the situation in which the counterclaimant institutes a second action to prosecute his claim even though it has previously been asserted in a pending action as a Rule 13(a) compulsory counter-claim. . . . [T]he fact that the compulsory counter-claim is so closely related to the main claim in the first suit generally motivates the Federal courts to enjoin or stay the second action in order to avoid duplication of

effort.") (quoting WRIGHT & MILLER, Federal Practice and Procedures, s 1409 at 38) (internal quotations omitted).

"Rule 13(a) provides that two actions which are part of the same controversy should be resolved in a single forum, and sound judicial administration counsels against separate proceedings and the wasteful expenditure of energy and money incidental to separate litigation of identical issues." *Directory Int'l*, 91 B.R. at 741 (N.D. Tex. 1988) (citing *Columbia Plaza C,* 525 F.2d at 626 (D.C.Cir. 1975)). "Federal district courts thus often dismiss, stay, or enjoin the second action filed." *Directory Int'l*, 91 B.R. at 741 (N.D. Tex. 1988) (citing *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*, 542 F.Supp. 1317, 1321 (S.D.N.Y.1982) (second action dismissed); *Pumpelly*, 106 F.R.D. at 240 (second action dismissed without prejudice to filing as counterclaim in first suit); *Donnkenny, Inc. v. Nadler*, 544 F. Supp. 166, 170 (S.D.N.Y. 1982) (court has choice and can stay or dismiss second commenced suit); *Seattle Totems Hockey Club v. National Hockey League*, 652 F.2d 852, 854 (9th Cir.1981), *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982) (court has power to enjoin party from bringing compulsory counterclaim as subsequent federal action)).

Because the claims asserted in the New York Litigation are compulsory, and because the related case was first filed in this Court, it is appropriate for this Court to enjoin JetBlue from prosecuting its claims in New York. The general first-to-file rule favors the forum of the first-filed action, whether or not it is a declaratory action. *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). The Federal Circuit has stated that "[t]here must . . . be sound reason that would make it unjust or inefficient to continue the first-filed action." *Id.* at 938.

The United States Supreme Court has acknowledged that application of the "first-filed" rule promotes "wise judicial administration, giving regard to conservation of judicial resources

and comprehensive disposition of litigation . . . ." *Id.* at 244 (*citing Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). The "first-filed" rule enables courts to prevent "duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue." *Id.*

All of JetBlue's claims in the New York Litigation arise out of Loyalty Conversion's investigation into the patent infringement claims at issue in the present case. These claims could have, and should have, been brought in this Court under Section 1367(a) to the identical extent pleaded by JetBlue in the Complaint, ¶ 6.

### C. JetBlue's Claims in New York Arise Under an Act of Congress Relating to Patents

JetBlue's own allegations confirm that the New York Litigation arises under an Act of Congress relating to patents. The sole allegations set forth in JetBlue's Complaint relating to federal question subject matter jurisdiction are 28 U.S.C. § 1338(a), relating to patent and copyright litigation, and 28 U.S.C. § 1367(a), providing supplemental jurisdiction to the foregoing. Dkt. 93-1, ¶ 6 ("<u>This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1338(a)</u>. For any claims over which the Court does not have original jurisdiction pursuant to § 1338(a), if any, <u>the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a)</u>) (emphasis added). JetBlue's Complaint does not allege copyright infringement, so it is apparent that JetBlue asserts subject matter jurisdiction in the New York Litigation pursuant to Acts of Congress relating to patent litigation, and on the basis of the same two patents asserted in the present case. JetBlue's own allegations answer this Court's question in the affirmative.

In addition to JetBlue's own claims regarding jurisdiction, the relevant facts at issue in the New York litigation, giving rise to JetBlue's various causes of action, include (1) the Rule 11

presuit investigation conducted by Loyalty Conversion and (2) the screenshots utilized in Plaintiff's P.R. 3-1 claim charts. Both investigations were conducted in response to obligations Loyalty Conversion had as a plaintiff in a patent lawsuit filed in the Eastern District of Texas. Furthermore, JetBlue seeks a declaratory judgment stating that the patent case pending in this Court violated JetBlue's forum selection clause.

Based on JetBlue's own allegations—including its allegations regarding subject matter jurisdiction—in the New York Litigation, JetBlue cannot deny that these claims arise under patent laws.

### III.  CONCLUSION

For the reasons set forth above and in Plaintiff's Motion and Reply, Plaintiff respectfully requests that the Motion for Preliminary Injunction be granted, that JetBlue be enjoined from prosecuting its claims in the New York Litigation, and for such other and further relief as the Court may deem just, including an award of Loyalty Conversion's fees and costs.

Dated: August 15, 2014

Respectfully submitted,

/s/  Andrew G.  DiNovo
Andrew G.  DiNovo
Texas State Bar No. 00790594
Jay D. Ellwanger
Texas State Bar No. 24036522
Adam G. Price
Texas State Bar No. 24027750
Stefanie T. Scott
Texas State Bar No. 24061617
**DiNovo Price Ellwanger & Hardy LLP**
7000 N.  MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone:  (512) 539-2626
Telecopier:  (512) 539-2627

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 15th day of August, 2014, with a copy of the foregoing document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

                                                 */s/ Andrew G. DiNovo*
                                                 Andrew G. DiNovo