# EXHIBIT A

JUDGE DANIELS

UNITED STATES DISTRICT COURT **14 CV** **1782**
SOUTHERN DISTRICT OF NEW YORK

JETBLUE AIRWAYS CORPORATION, §
§
§
Plaintiff, § CIVIL ACTION NO. _____
§
§
v. §
§
COPYTELE INC., JOHN ROOP, §
CTI PATENT ACQUISITION §
CORPORATION, and §
LOYALTY CONVERSION SYSTEMS §
CORPORATION, § JURY DEMANDED
§
Defendants. §



## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff JetBlue Airways Corporation ("JetBlue" or "Plaintiff") files this Original Complaint against CopyTele, Inc. ("CTI"), John Roop ("Roop"), CTI Patent Acquisition Corporation ("CTIPAC"), and Loyalty Conversions System Corporation ("LCS") (collectively, "Defendants") and states as follows:

### SUMMARY

On August 2, 2013, John Roop enrolled in the JetBlue TrueBlue membership rewards program via JetBlue's website. As a condition to his enrollment—and access to JetBlue's secure website—Roop agreed to JetBlue's TrueBlue Terms and Conditions and Website Terms and Conditions. In connection with this agreement, Roop promised, among other things: (1) he would use the JetBlue website only for personal, non-commercial purposes; (2) he would not sue JetBlue for anything relating to the JetBlue website; (3) he would indemnify, defend, and hold harmless JetBlue for any claims arising out of or resulting from his breach of the Terms and Conditions or his use of the JetBlue website; and (4) any suit Roop might file relating to the

JetBlue website would be brought in New York County, New York. But Roop never intended to comply with the JetBlue Terms and Conditions. Indeed, Roop—acting on behalf of CTI, CTIPAC, and LCS—was deliberately and surreptitiously searching for evidence on JetBlue's secure website to evaluate whether to file a lawsuit against and demand money from JetBlue. Only 18 days later, LCS filed suit against JetBlue for patent infringement in the Eastern District of Texas, Marshall Division, arising out of JetBlue's TrueBlue membership rewards program.

Through this suit, JetBlue seeks to enjoin the Defendants from pursuing patent litigation against it in the Eastern District of Texas in violation of the parties' express agreement and to recover, among other things, its actual damages plus exemplary damages sufficient to punish the defendants for their misconduct.

## PARTIES

1.     JetBlue is a Delaware corporation with its principal place of business located at 27-01 Queens Plaza N., Long Island City, NY 11101.

2.     On information and belief, Roop is an individual residing at 3 Brooks Road, Ben Lomond, CA 95005.

3.     On information and belief, CTI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 900 Walt Whitman Road, Melville, NY 11747.

4.     On information and belief, CTIPAC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 900 Walt Whitman Road, Melville, NY 11747.

5.      On information and belief, LCS is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 900 Walt Whitman Road, Melville, NY 11747.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1338(a).  For any claims over which the Court does not have original jurisdiction pursuant to § 1338(a), if any, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over CTI, CTIPAC, and LCS because, among other things, their principal places of business are in Melville, New York.  This Court has personal jurisdiction over Roop because, among other things:  (1) JetBlue's claims arise out of a written contract into which Roop entered with JetBlue in New York, as described in greater detail below; (2) he has consented to jurisdiction in this Court pursuant to that written contract; and (3) he is an officer of CTI, which has its principal place of business in New York.

8.      Venue is proper in the Southern District of New York because, among other things, all Defendants are bound by Roop's agreement to a forum-selection clause specifying this Court as a proper venue.  Venue also is proper pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

9.      JetBlue is an airline offering flights to over 84 destinations in 24 states and 12 countries.

10.     JetBlue operates a frequent-flyer rewards program known as TrueBlue (the "TrueBlue Program").  The TrueBlue Program is a voluntary rewards program available to

JetBlue customers.    Under the TrueBlue Program, JetBlue customers can earn points for purchasing JetBlue flights and redeem points for rewards, including free travel and vacations.

## I.    PROSPECTIVE TRUEBLUE MEMBERS MUST AGREE TO JETBLUE'S TERMS AND CONDITIONS AS A CONDITION TO JOINING THE TRUEBLUE PROGRAM.

11.    To join the TrueBlue Program, a JetBlue customer may access JetBlue's website and provide certain identifying information, including the customer's name, address, and email address.    Prospective TrueBlue members must also agree to JetBlue's TrueBlue Terms and Conditions.

---

### Terms and conditions

☐    Yes, I agree to the TrueBlue terms and conditions.

---

12.    If a prospective member of the TrueBlue Program does not agree to the TrueBlue Terms and Conditions, they are presented with an error message and denied access to the TrueBlue Program and JetBlue's secure TrueBlue website.

> **Oops!** You must accept the terms and conditions.

13.    By agreeing to the TrueBlue Terms and Conditions, a prospective TrueBlue member agrees to be bound by, among other things: (1) the TrueBlue Program Rules; and (2) JetBlue's Website Terms and Conditions.

14.    As a condition to joining the TrueBlue Program and accessing JetBlue's secure JetBlue website, a prospective member must agree to, among other things, the following TrueBlue Terms and Conditions:

a.   JetBlue shall not be held liable for, and you hereby waive any claims against JetBlue for, any damages whatsoever (whether direct, indirect, special, punitive, exemplary, incidental, consequential, or otherwise, whether stated in contract, tort, strict liability or otherwise, and even if JetBlue has been advised of the possibility of such damages) arising out of (a) your participating in the Program... (b) the acts, omissions, products or services of any person or company rendering services or providing offers in connection with the Program; and/or (c) any failure or delay arising out of use of [the] website . . . .

b.   In no event shall JetBlue be liable to any Member or anyone claiming through a Member or on a Member's behalf, for any other damages, including but not limited to direct, indirect or consequential damages, or lost revenue or profits, arising out of JetBlue's acts or omissions in connection with the TrueBlue Program, whether or not foreseen, even if advised of the possibility thereof.

c.   JetBlue assumes no responsibility for the actions of business partners in connection with any program that provides for the transfer or accumulation of Points.

d.   Fraud, misrepresentation, abuse, improper conduct . . . or violation of applicable rules . . . may result in . . . legal action by . . . JetBlue. . . . JetBlue reserves the right to take appropriate legal action to recover damages, including attorneys' fees, incurred in prosecuting any lawsuit.

15.   A true and correct copy of JetBlue's TrueBlue Terms and Conditions is attached to this Complaint as Exhibit A.

16.   As a condition to joining the TrueBlue Program and accessing JetBlue's secure JetBlue website, a prospective member must agree to, among other things, the following Website Terms and Conditions:

a.   . . . You may use the JetBlue Websites only for personal, non-commercial use.

b.   You agree to indemnify, defend, and hold harmless JetBlue, JetBlue's subsidiaries, and each of JetBlue's respective officers, directors, employees, and agents from and against any claims, demands, proceedings, suits and actions, including any related liabilities, obligations, losses, damages, deficiencies, penalties, taxes, levies, fines, judgments, settlements, expenses (including legal and accountants' fees and disbursements) and costs arising out of or resulting from (1) your breach of these Terms, including the JetBlue Privacy Policy and any other

document incorporated by reference, or (2) your violation of any law or the rights of any third party, (3) your posting of any User Generated Content, or (4) your use of the JetBlue Websites.

c.      IN NO EVENT SHALL JETBLUE OR ITS AFFILIATES BE LIABLE FOR ANY DAMAGES (WHETHER CONSEQUENTIAL, DIRECT, INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, OR OTHERWISE) ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE USE OF OR INABILITY TO USE THE JETBLUE WEBSITES OR FOR ANY USER GENERATED CONTENT POSTED THEREIN OR FOR ANY CONTENT OBTAINED THROUGH OR OTHERWISE IN CONNECTION WITH THE JETBLUE WEBSITES REGARDLESS OF WHETHER SUCH DAMAGES ARE BASED ON CONTRACT, STRICT LIABILITY, TORT OR OTHER THEORIES OF LIABILITY, AND ALSO REGARDLESS OF WHETHER JETBLUE WAS GIVEN ACTUAL OR CONSTRUCTIVE NOTICE THAT DAMAGES WERE POSSIBLE.

d.      JetBlue assumes no responsibility for the actions of business partners in connection with any program that provides for the transfer or accumulation of Points.

e.      You agree that the substantive laws of the State of New York, without regard to its conflicts of laws principles, will govern the interpretation of these Terms, as well as any dispute arising from your access to, dealing with, or use of the JetBlue Websites.

f.      You agree that, should You bring a lawsuit related to your access to, dealings with, or use of the JetBlue Websites, You must do so in the state or federal courts of New York County, New York.

g.      Should JetBlue bring a lawsuit against You related to your access to, dealings with, or use of the JetBlue Websites, You assent to the jurisdiction of the state or federal courts of New York County, New York, and hereby waive all defenses of improper venue, forum non conveniens, and personal jurisdiction.

17.     A true and correct copy of JetBlue's Website Terms and Conditions is attached to this Complaint as Exhibit B.

II.   **ROOP AGREED ON BEHALF OF DEFENDANTS TO JETBLUE'S TERMS AND CONDITIONS WHILE SURREPTITIOUSLY INVESTIGATING WHETHER TO SUE JETBLUE FOR PATENT INFRINGEMENT.**

18.   On or about August 2, 2013, Roop accessed the JetBlue website and enrolled in JetBlue's TrueBlue Program.

19.   On or about August 2, 2013, Roop agreed to be bound by, among other things, JetBlue's TrueBlue Terms and Conditions and Website Terms and Conditions (collectively, the "JetBlue Terms") as a condition to enrolling in the TrueBlue Program and obtaining access to JetBlue's secure JetBlue website.

20.   On information and belief, Roop is the Senior Vice President of Engineering for CTI.  According to CTI's website and a CTI Form 10-K on file with the U.S. Securities and Exchange Commission, Roop has 18 years of experience analyzing and evaluating patents for acquisition and licensing.  Prior to joining CTI, Roop was Senior Vice President of Engineering at Acacia Research, a publically traded patent licensing company that claims to have generated over $1,000,000,000 in revenue from patent monetization efforts.  In connection with his employment at Acacia, Roop engaged in "patent mining," licensing support, and litigation support, among other things.

21.   On information and belief, CTI develops and acquires patented technologies for the purposes of patent monetization and patent assertion.  CTI's primary—if not sole—business strategy is to generate revenue through patent monetization and assertion.  CTI contends that it has generated in excess of $150 million in patent licensing revenues through its patent monetization and assertion efforts.

22.   On information and belief, CTIPAC is a wholly owned subsidiary of CTI, and CTI exercises complete dominion or control over CTIPAC with regard to the conduct at issue in this Complaint.

23.     On information and belief, LCS is a wholly owned subsidiary of CTI, and CTI exercises complete dominion or control over LCS with regard to the conduct at issue in this Complaint.

24.     CTI has so dominated CTIPAC and LCS that any business conducted by CTIPAC and LCS is business conducted by CTI.

25.     On information and belief, Roop enrolled in the TrueBlue Program at the direction of CTI and in connection with his efforts to identify litigation targets on behalf of and for the benefit of CTI.

26.     On information and belief, Roop assented to the JetBlue Terms while acting on behalf of and for the benefit of CTI, and in connection with his duties as Senior Vice President of Engineering for CTI.

27.     Roop last accessed JetBlue's website on August 2, 2013.

## III.   LCS SUES JETBLUE FOR PATENT INFRINGEMENT IN THE EASTERN DISTRICT OF TEXAS.

28.     On August 20, 2013—only 18 days after Roop enrolled in JetBlue's TrueBlue Program and agreed to the JetBlue Terms—LCS filed suit against JetBlue in the United States District Court for the Eastern District of Texas, Marshall Division, Cause No. 2:13-cv-00662 (the "Texas Lawsuit").

29.     In its Original Complaint in the Texas Lawsuit (the "Texas Complaint"), LCS contends it holds all substantial rights and interest in and to United States Patent No. 8,313,023 ("the '023 Patent"), titled "Exchange of Non-negotiable Credits of an Entity's Rewards Program for Entity Independent Funds."  LCS also contends it holds all substantial rights and interest in and to United States Patent No. 8,511,550 ("the '550 Patent"), titled "Graphical User Interface for the Conversion of Loyalty Points Via a Loyalty Points Website."

30.     On information and belief, LCS acquired any rights it holds in the '023 Patent and the '550 Patent from CTIPAC.  Defendant CTI has at all times controlled any and all of LCS's or CTIPAC's ownership interest in the '023 Patent and the '550 Patent.

31.     In the Texas Complaint, LCS represented to the Court it was a limited liability company organized and existing under the laws of the State of Texas.  This was not true.

32.     In the Texas Complaint, LCS contends JetBlue infringes the '023 Patent and '550 Patent because JetBlue provides, makes, uses, sells, offers for sale, and/or distributes infringing systems, including "computerized systems whereby users manage and redeem loyalty rewards for JetBlue's loyalty rewards program, TrueBlue."

33.     On information and belief, LCS would not have filed a lawsuit against JetBlue but for Roop's unauthorized access of JetBlue's secure, non-public website on August 2, 2013.

34.     On or about December 20, 2013, LCS served its Disclosure of Asserted Claims and Infringement Contentions and Accompanying Document Production ("Infringement Contentions") pursuant to local Patent Rules 3-1 and 3-2.

35.     In connection with its Infringement Contentions, LCS provided JetBlue with infringement charts outlining how it contends each limitation of the '023 Patent and '550 Patent are met by JetBlue.  LCS's infringement charts include screenshots of secure portions of the JetBlue website.



36.   LCS could only access and copy portions of JetBlue's secure JetBlue website shown in LCS's infringement charts by enrolling in the TrueBlue Program and agreeing to the JetBlue Terms.

37.   On information and belief, LCS obtained the screenshots depicted in its infringement charts by logging in to Roop's TrueBlue account on August 2, 2013, before it filed its lawsuit against JetBlue in the Eastern District of Texas; LCS would not have filed a patent-infringement lawsuit against JetBlue but for Defendants' breach of the JetBlue Terms.

38.   LCS has filed similar lawsuits for patent infringement against other airlines, including Alaska Airlines, American Airlines, Delta Airlines, Frontier Airlines, Hawaiian Airlines, Southwest Airlines, Spirit Airlines, United Airlines, and U.S. Airways (the "Airlines"). On information and belief, Defendants have violated other Airlines' website terms of use and engaged in a pattern of improperly obtaining access to secure portions of at least some of the Airlines' websites for the purpose of obtaining evidence to support allegations of infringement against those Airlines.

## IV.   DEFENDANTS' ATTORNEYS AGREED TO JETBLUE'S TERMS AND CONDITIONS AND USED JETBLUE'S WEBSITE IN VIOLATION OF THOSE TERMS.

39.   On February 4, 2014, an individual by the name of Stefanie Scott ("Scott") agreed to the JetBlue Terms and accessed the secure JetBlue website.

40.   On information and belief, Scott is an associate attorney for the law firm of DiNovo Price Ellwanger & Hardy LLP ("DiNovo") in Austin, Texas.

41.   On information and belief, DiNovo was retained by CTI to monetize CTI and/or its subsidiaries' patent portfolios.

42.    On information and belief, Scott agreed to the JetBlue Terms and accessed JetBlue's secure website for the sole purpose of obtaining information to use in litigation against JetBlue and on behalf of DiNovo's client, LCS.

43.    On February 5, 2014—only 1 day after Scott accessed JetBlue's secure JetBlue website and agreed to the JetBlue Terms—LCS deposed JetBlue's corporate representative, Sam Kline, in connection with jurisdictional discovery.

44.    During the February 5, 2014 deposition of Kline, Scott introduced an exhibit depicting a screenshot of the secure JetBlue website.



45.    During the deposition of Kline, Scott represented on the record that she accessed JetBlue's secure JetBlue website with her own account information and obtained the screenshots in preparation for the deposition of JetBlue's corporate representative.

46.    Scott further acknowledged on the record that she was unable to obtain the screenshots of the secure JetBlue website "publicly," *i.e.*, without first signing into her TrueBlue account.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

47.     JetBlue repeats and realleges the preceding paragraphs as if fully set forth herein.

48.     Individually or through their authorized agents or representatives, Roop, CTI, CTIPAC and LCS agreed to be bound by the JetBlue Terms in exchange for membership in JetBlue's TrueBlue Program and access to JetBlue's secure JetBlue website.

49.     JetBlue performed or tendered performance of its obligations under the JetBlue Terms.

50.     Defendants breached the JetBlue Terms by, among other things:

a.     Accessing the JetBlue website and secure TrueBlue website for commercial purposes;

b.     Pursuing claims for patent infringement against JetBlue in violation of the provisions in the JetBlue Terms limiting JetBlue's liability and damages to Defendants;

c.     Pursuing claims for patent infringement against JetBlue in violation of the provisions in the JetBlue Terms limiting JetBlue's liability and damages arising from acts of third parties;

d.     Pursuing claims for patent infringement against JetBlue in violation of Defendants' obligations to indemnify, defend, and hold harmless JetBlue from and against any claims arising out of Defendants' breach of the JetBlue Terms and Defendants' use of the JetBlue Websites; and

e.     Pursuing claims for patent infringement against JetBlue in the Eastern District of Texas, Marshall Division in violation of the mandatory forum-selection clause in the JetBlue Terms.

51.     Defendants' breach of the JetBlue Terms has caused JetBlue injury, including actual damages.

## COUNT II – DECLARATORY JUDGMENT

52.     JetBlue repeats and realleges the preceding paragraphs as if fully set forth herein.

53.     LCS filed its patent-infringement lawsuit against JetBlue in the Eastern District of Texas, Marshall Division.

54.     The JetBlue Terms state, "You agree that, should You bring a lawsuit related to your access to, dealings with, or use of the JetBlue Websites, You must do so in the state or federal courts of New York County, New York."

55.     An actual, present, and justiciable controversy has arisen between JetBlue and LCS concerning whether LCS's patent-infringement lawsuit is covered by this mandatory forum-selection clause.   Thus, the facts evince a substantial controversy between parties having adverse legal interests.

56.     JetBlue therefore seeks a declaratory judgment from this Court that LCS's patent-infringement lawsuit against JetBlue in the Eastern District of Texas is covered by the mandatory forum-selection clause in the JetBlue Terms.

## COUNT III – FRAUD AND FRAUD IN THE INDUCEMENT

57.     JetBlue repeats and realleges the preceding paragraphs as if fully set forth herein.

58.     Defendants, individually or through their authorized agents or representatives, affirmatively represented to JetBlue that they agreed to be bound by the JetBlue Terms.

59.     Defendants made these representations when they enrolled in the JetBlue TrueBlue Program via JetBlue's website, selecting the check box next to the statement, "Yes, I agree to the TrueBlue terms and conditions," and submitting the completed enrollment form to JetBlue's computer servers.

60.     In connection with their agreement to the JetBlue Terms, Defendants further represented and warranted to JetBlue that they agreed to be bound by the Website Terms and

Conditions without modification and that they agreed to use the JetBlue Websites in strict compliance with applicable laws, rules, and regulations, and in a manner that does not reflect negatively on the goodwill or reputation of JetBlue.

61.     The representations made by Defendants were material, and they were false. When Defendants made the representations to JetBlue, Defendants knew they were untrue.

62.     Defendants made these false representations with the intent of inducing JetBlue to provide Defendants with membership in its TrueBlue Program and access to its secure JetBlue website.  At the time Defendants made these false representations to JetBlue, they possessed the undisclosed intention not to perform under the JetBlue Terms.

63.     JetBlue justifiably relied on Defendants' representations by providing Defendants with membership in its TrueBlue Program and access to its secure JetBlue website.

64.     The false representations made by Defendants caused injury to JetBlue, including actual damages.

**COUNT IV – PROMISSORY ESTOPPEL**

65.     JetBlue repeats and realleges the preceding paragraphs as if fully set forth herein and pleads the following in the alternative.

66.     Defendants promised to comply with the JetBlue Terms when they enrolled in the JetBlue TrueBlue Program.  Defendants' promise was sufficiently clear and unambiguous.

67.     JetBlue reasonably and substantially relied on Defendants' promises when it provided Defendants with membership in its TrueBlue Program and access to its secure JetBlue website.

68.     JetBlue's reliance was foreseeable by Defendants.

69.     JetBlue's reliance on Defendants' promises has caused JetBlue injury.

## ATTORNEYS' FEES AND COSTS

70.     JetBlue repeats and realleges the preceding paragraphs as if fully set forth herein.

71.     Pursuant to the JetBlue Terms, JetBlue seeks to recover its attorneys' fees and costs incurred in bringing this action against Defendants.

72.     All conditions precedent to JetBlue's claims for attorneys' fees have been performed or have occurred.

## DEMAND FOR JURY TRIAL

73.     JetBlue demands a trial by jury.

## PRAYER FOR RELIEF

74.     For the foregoing reasons, JetBlue respectfully requests judgment against Defendants for the following:

a.      A declaratory judgment from this Court declaring the forum-selection clause contained in the JetBlue Terms applies to LCS's patent-infringement lawsuit against JetBlue in the U.S. District Court for the Eastern District of Texas;

b.      Actual damages;

c.      Exemplary damages;

d.      Attorneys' fees;

e.      Costs of court;

f.      Pre-judgment and post-judgment interest at the highest rate(s) allowed by law; and

g.      Such other and further relief, at law or in equity, to which JetBlue may show itself to be justly entitled.

Dated:  March 14, 2014

Respectfully submitted,

**SHER TREMONTE LLP**

By: _M l l T_

Michael Tremonte
mtremonte@shertremonte.com
80 Broad Street, Suite 1301
New York, New York  10004
(212) 202-2603

-and-

**KLEMCHUK KUBASTA LLP**

Casey Griffith (*of counsel*)
Texas State Bar No. 24036687
casey.griffith@kk-llp.com

Austin Champion (*of counsel*)
Texas State Bar No. 24065030
austin.champion@kk-llp.com

8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
214.367.6000 telephone
214.367.6001 facsimile

**ATTORNEYS FOR PLAINTIFF
JETBLUE AIRWAYS CORPORATION**

# EXHIBIT A

jetBlue

TRAVEL ALERT: Winter Storm Vulcan Fee Waiver ▸

Español   Help   Contact us   SoFly   **T R U E B L U E**   SIGN IN   JOIN

Plan a trip

Manage flights

Where we jet

Flying on JetBlue

Travel information

TrueBlue

# TrueBlue Terms and Conditions

## 1. General

1.1 Thank you for your interest in the TrueBlue® Program ("TrueBlue" or "Program"). TrueBlue is a customer rewards program offered by JetBlue Airways Corporation ("JetBlue") whereby JetBlue customers can earn and use TrueBlue points ("TrueBlue Points" or "Points") in accordance with the terms and conditions below. The following terms and conditions (hereinafter "Program Rules" or "Rules") apply to TrueBlue. By gaining access to, using this site, or enrolling in TrueBlue you agree to be bound by these Program Rules, along with JetBlue's legal terms located at www.jetblue.com/legal, including, without limitation, the Website Terms and Conditions, Flight Terms and Conditions, and Getaways Terms and Conditions. JetBlue reserves the right to change or cancel these Program Rules, in whole or in part, at any time, in its sole discretion, without notice to or liability to you, by posting updated text on this site. Please review these Rules periodically to ensure you are aware of any changes and are familiar with the most current version. For clarity, any such change to or cancellation of these Program Rules will apply to all TrueBlue Members ("Members"), even those who enrolled before JetBlue made such a change or cancellation.

## 2. Membership/Program Registration

2.1 TrueBlue is a paperless, electronic customer loyalty program. Program registration is available online at www.jetblue.com/trueblue, or through the JetBlue call center at 1-800-JETBLUE. Hearing or speech impaired: TTY/TDD 1-800-336-5530.

2.2 Membership in TrueBlue is for individuals only. All other entities or parties, including but not limited to, corporations, animals, travel agencies, etc., are not eligible to enroll as Members or earn Points or receive any benefits in connection with the Program. Members must enroll as individuals and may not pool or combine Points with other Members, even if such Members are within the same family or household. Each Member may have only one (1) TrueBlue account.

2.3 Each Member must provide his or her first name, last name, gender, date of birth, address, telephone number, home airport, favorite destination, and a valid individual e-mail address in order to register and enroll in TrueBlue. Requests for name changes may require supporting legal documentation. For persons under the age of 13, please see Section 6.2 below.

2.4 While JetBlue issues monthly electronic statements for TrueBlue accounts, each Member shall be responsible for remaining knowledgeable about their account information, including, but not limited to, accumulated Points, redeemed Points, Point expiration and the Program Rules. Account information can be found at www.jetblue.com/trueblue.

## 3. Accumulation/Earning TrueBlue Points

3.1 Members may earn Points in the following ways: (1) purchasing a JetBlue flight (i.e., a flight operated and marketed by JetBlue); (2) purchasing a JetBlue Getaways vacation package; (3) using the JetBlue Card from American Express on eligible purchases (as set forth in the American Express Cardmember Agreement); and/or (4) through special offers and/or programs with JetBlue's business partners. Residents of Puerto Rico may also earn Points by using the Santander JetBlue MasterCard on eligible purchases (as set forth in the Santander Cardholder Agreement).

3.2 Members will earn three (3) Points per dollar spent on their individual JetBlue flight (i.e., a flight operated and marketed by JetBlue) plus three (3) bonus Points per dollar for flights booked on jetblue.com, for a total of six (6) Points per dollar. Points will be earned on the base fare of the flight only. Points will not be earned on government taxes/fees, travel insurance or other fees or charges (e.g., change/cancel fees, etc.). You will only earn Points based on the eligible amount spent on your individual flight. You will not earn any Points for amounts spent on any other traveler's flight, even if such traveler is on your booking and/or you paid for the flight. If you are traveling with other TrueBlue Members, each Member's TrueBlue account information (name and TrueBlue number) must be entered for the booking in order for every Member to earn TrueBlue Points on their individual JetBlue flight. Members may accumulate Points for multiple seats purchased for themselves on a single flight.

3.3 Members will earn six (6) TrueBlue Points per dollar spent on their individual per-person portion of a JetBlue Getaways vacation package. Points will be earned on the base price (air + hotel) of the package and on the base price of any car rental and activities purchased at the time of booking. Points will not be earned on government taxes/fees, travel insurance, or other fees or charges (e.g., change/cancel fees, activities added after booking, food, airport transfers, etc.). You will only earn Points based on the eligible amount spent on your individual per-person cost of the Getaways package. You will not earn any Points for amounts spent on any other traveler's Getaways package, even if such traveler is on your booking and/or you paid for the package. If you are traveling with other TrueBlue Members, each Member's TrueBlue account information (name and TrueBlue number) must be entered for the booking in order for every Member to earn TrueBlue Points on their individual per-person portion of the JetBlue Getaways vacation package.

3.4 TrueBlue Members who make purchases with JetBlue using their JetBlue Card from American Express can earn two (2) TrueBlue Points per dollar spent. Cardholders also accrue one (1) TrueBlue Point for each U.S. dollar of eligible purchases on their JetBlue Card account. Eligible purchases are purchases of goods or services minus returns and credits, and do NOT include: fees, interest charges, balance transfers, cash advances, purchases of American Express® Travelers Cheques, American Express® Gift Cheques, purchases or reloading of prepaid cards, or purchases of cash equivalents. Please see your current Cardmember TrueBlue Point Agreement for full terms and conditions, which are subject to change without notice.

3.5 JetBlue may, in its sole discretion, from time to time, offer Members the opportunity to earn additional Points through the purchase of JetBlue ancillary products or services (e.g., Even More Space seats, etc.), bonus offers and/or offers in connection with JetBlue business partners. These offers may be temporary in nature. JetBlue reserves the right to modify or eliminate such offers at any time. These offers are void where prohibited by law. The amount of Points offered is subject to JetBlue's sole discretion. All special offers involving Points or the Program are subject to these Program Rules. In addition to these Program Rules, JetBlue's business partners may have special terms and conditions that provide additional rules for the earning, transferring, accumulating, and redeeming of Points. Business partners are independent entities and are not agents, employees, or subcontractors of JetBlue, and JetBlue is not responsible for their acts or omissions (including, without limitation, their solicitation efforts) or any products or services supplied by them (including, without limitation, the nature or quality of their products or services).

3.6 TrueBlue Members that are residents of Puerto Rico who make purchases with JetBlue using their Santander JetBlue MasterCard can earn two (2) TrueBlue Points per dollar spent. Cardholders also accrue one (1) TrueBlue Point for each U.S. dollar of eligible purchases on their Santander JetBlue MasterCard account. Please see your current Santander

JetBlue MasterCard cardholder agreement for full terms and conditions, which are subject to change without notice.

3.7 There may be some delay between eligible transactions and the posting of Points in your TrueBlue Account.

3.8 To receive Points for eligible activities, the name and TrueBlue account number provided in connection with the reservation or purchase must exactly match the name and TrueBlue account number registered with JetBlue. For example, and without in any way limiting the generality of the foregoing, for a flight purchase, the name associated with the TrueBlue account number provided for that flight purchase must exactly match the name of the traveler. Any discrepancy may delay or void receipt of Points.

3.9 To receive Points for the purchase of JetBlue flights or JetBlue Getaways, Members must provide their TrueBlue Membership number either:

- At time of purchase through www.jetblue.com;
- At time of purchase or before your flight through 1-800-JETBLUE. Hearing or speech impaired: TTY/TDD 1-800-336-5530.
- At travel agency where travel is booked;
- At check-in; or
- Retroactively, at www.jetblue.com pursuant to the following:

Any claim for un-credited Points must be received by JetBlue within ninety (90) days after the Points were earned from a qualifying JetBlue flight (i.e., a fight operated and marketed by JetBlue) or a JetBlue Getaways vacation package. You are responsible for ensuring that Points earned are properly credited to your TrueBlue account. If you believe that Points have been earned but not properly credited, you may be required to submit documentation or other proof satisfactory to JetBlue, which may include, without limitation, copies of boarding passes and receipts.

3.10 Except for retroactive Point requests for Points earned from eligible JetBlue flights (i.e., flights operated and marketed by JetBlue) and JetBlue Getaways vacation packages as set forth in Section 3.9 above, no retroactive Point requests will be granted. Members must provide their TrueBlue account number at the time of the activity or purchase eligible for Points and engage in such activity or make such purchase in accordance with all instructions, rules and restrictions associated with that particular qualifying activity or purchase offer. No requests for retroactive.

3.11 In the event Membership numbers cannot be attached at time of purchase for travel sold by travel agents, Members are invited to use an alternate method to receive Points as described above. JetBlue reserves the right to make exceptions to this rule at its discretion.

3.12 Points will not be awarded on unused, cancelled, forfeited, refunded or fraudulent travel bookings or purchases or activities, as determined by JetBlue in its sole discretion.

3.13 Certain travel is not eligible for earning Points. This includes, without limitation, the following: all travel purchased with Points, in whole or in part (including but not limited to Award Flights or Award Getaways), free ticket promotions including free or reduced rate travel, any travel services or products purchased as a part Cruise packages, charter flights, travel agency/industry reduced rate travel, unpublished fares, non-revenue travel (e.g., travel booked using a travel certificate, etc.), and travel subject to special provisions. JetBlue reserves the right to determine in its sole discretion which travel is eligible to earn Points.

3.14 JetBlue reserves the right to offer incentive bonuses to Members who book travel online through www.jetblue.com.

3.15 The activities and/or transactions eligible for earning Points, and/or the amount of Points available to be accrued, are subject to change by JetBlue, at any time, without notice or liability.

## 4. Redemption of TrueBlue Points for JetBlue Award Travel

4.1 You may redeem TrueBlue Points for the base fare of a JetBlue operated flight ("Award Flight"). You may also use a combination of TrueBlue Points and a monetary payment for JetBlue Getaways vacation packages ("Award Getaways"). Both Award Flights and Award Getaways may be referred to herein individually and collectively as "Award Travel". JetBlue also may offer, in its sole discretion, opportunities to redeem Points for other products or services. Points may not be redeemed for any product or service except as expressly permitted by JetBlue.

4.2 For Award Flights, Points can be used only for flights operated and marketed by JetBlue and certain code-share or interline flights determined by JetBlue in its sole discretion from time to time; provided, however that Point redemption on such code-share or interline flights shall be subject to blackout dates as determined by the operating partner. The Points required to earn an Award Flight vary by flight, but the minimum number is 5,000 Points and $2.50 taxes/fees. The number of Points required for a particular flight is based on the published base fare at the time of booking, which depends on, among other things, the flight chosen and applicability of peak travel periods. The number of Points required for a particular flight may change at any time until the booking is confirmed and Points are applied as payment for the Award Flight. Taxes and fees apply to Award Flights, are the responsibility of the passenger, and will vary based on your departure and destination cities. For domestic award flights, taxes/fees range from $2.50-$5.00 for one-way and $5.00-$10.00 for roundtrip flights. For international award flights, taxes/fees range from $2.50-$82.10 for one-way and $22.34-$102.10 for roundtrip flights. Award flight fares also do not include fees for oversized/overweight/extra baggage, $25 fee per person for fares purchased by phone or at an airport or ticket office, and other fees for products/services sold separately. To view baggage fees and other optional services and fees, click here. Taxes and fees must be paid at time of Award Flight booking and are subject to change as required by law. Any change to your booking may result in a change to the number of Points required, and JetBlue's standard change fee/policy will apply. If you do not board your Award Flight and fail to cancel prior to departure, all Points used in connection with the Award Flight will be forfeited. Any change or cancellation to your Award Flight booking is subject to the JetBlue standard change and cancellation fees and policies, available here.

4.3 The Points and dollar amount required to earn an Award Getaway vary by package. The number of Points and the dollar amount required for a particular Getaways package will depend on, among other things, the flight, destination and hotel chosen and the applicability of peak travel periods. Award Getaway fares do not include fees for products or services sold separately and not expressly included as part of the package price (e.g., car rental costs and related taxes and fees, food, beverages, travel insurance, in-flight movies, hotel parking, hotel/resort fees, etc.). The number of Points and dollar amount required for a particular Getaways package may change at any time until the booking is confirmed and Points and the monetary payment are applied as payment for the Award Getaway. Any change to your booking, where permitted in JetBlue's sole discretion, may result in a change to the number of Points and/or dollar amount of the monetary payment required, and JetBlue Getaways' standard change fee/policy will apply. The amount of points and the amount of the monetary payment required for a particular package may not be changed or re-allocated in any way. Points used towards a Getaways purchase must be from one TrueBlue member's account; points may not be combined from multiple TrueBlue accounts. If you do not depart for your Award Getaway and fail to cancel prior to departure, all Points and monetary amounts used in connection with the Award Getaway will be forfeited. Monetary payments must be made at time of booking using a major credit card. Any change or cancellation to your Award Getaway booking is subject to the JetBlue Getaways standard change and cancellation fees and policies.

4.4 Points may be redeemed for Award Travel by calling 1-800-JETBLUE, or online at www.jetblue.com/trueblue. In order to redeem Award Travel online, Members must sign in to their TrueBlue account so that the number of Points in the account can be validated. $25 fee per person applies for Award fares purchased by phone or at an airport or ticket office.

4.5 Flights or Getaways purchased with a monetary payment may not be exchanged or refunded for payment with Points, in whole or in part.

4.6 JetBlue reserves the right to revise, amend, modify or discontinue the products or services for which Members may use Points (in whole or in part) and/or the amount of Points required to redeem any product or service (including but not limited to Award Travel) in connection with the Program.

4.7 JetBlue's Flight Terms and Conditions and Getaways Terms and Conditions (including but not limited to change/cancel policies and fees) apply to Award Flights and Award Getaways, respectively. In the event a Member cancels Award Travel, Points will be re-deposited to the Member's Account. Points used to purchase the Award Flight or Award

Getaways will be automatically forfeited if a passenger does not cancel prior to scheduled departure.

4.8 Air travel on JetBlue (including Award Flights and the air portion of Award Getaways) is governed by JetBlue's Contract of Carriage, a copy of which is available for inspection at all JetBlue ticket counters and at www.jetblue.com/p/jetblue_coc.pdf, and JetBlue's International Passenger Rules Tariffs on file with the U.S. Department of Transportation. Please review these documents for travel requirements and restrictions, liability and baggage limitations, and requirements for the travel of minor children. Please visit www.jetblue.com/travel/baggage for additional information on baggage requirements and restrictions. JetBlue's Passenger Service Plan and Contingency Plan for Lengthy Tarmac Delays also apply to flights operated by JetBlue. Click here for details. For clarity, these provisions only apply to the extent applicable to the air portion of a Getaways vacation package and do not apply to the non-air portion(s) of a Getaways vacation package.

4.9 For domestic and international travel, passengers must present government-issued photo identification. For international travel, please contact the relevant embassy or consulate for details on travel documentation requirements. It is your responsibility to verify your flight information and follow JetBlue's recommended check-in times, which can be found at: www.jetblue.com/travel/airports. Failure to do so may result in the loss of your seat to another passenger and/or denied boarding.

## 5. Points Expiration

5.1 As of June 17, 2013, TrueBlue Points do not expire. Should a Member close his or her TrueBlue account, the Points in that account will be terminated. As set forth in these Program Rules, JetBlue has the right to cancel all or some of the Points in a TrueBlue Member's Account should JetBlue determine, in its sole discretion, that the Member has violated these Rules or otherwise engaged in fraud, misrepresentation, abuse or other improper conduct.

## 6. Privacy

6.1 For information on how JetBlue collects and uses personally identifiable information that you may provide us in the course of enrolling as a Member, or updating your profiles or preferences with TrueBlue, please visit our privacy policy at www.jetblue.com/legal/privacy, or by accessing the "Privacy policy" link at the bottom of the page.

6.2 TrueBlue is a general audience website. In order to update a profile of or sign up a child under the age of 13, the parent or legal guardian of such child must contact 1-800-JET-BLUE. Hearing or speech impaired customers should call TTY/TDD 1-800-336-5530.

## 7. TrueBlue Mosaic

7.1 Beginning October 26, 2012, certain Members may be eligible to receive the TrueBlue Mosaic badge. To earn the Mosaic badge, the Member must have, within the calendar year: 1) purchased and flown thirty (30) JetBlue flight segments (i.e., flights marketed and operated by JetBlue) and earned a minimum of 12,000 base flight Points; or 2) earned 15,000 base flight Points. A "segment" means any origin-destination pair; a one-way flight (whether non-stop or including a connection) is one segment, and a roundtrip flight (whether non-stop or including a connection) is two segments. The following flights do not qualify as a "segment" for purposes of earning the TrueBlue Mosaic badge: flights booked using Points, in whole or in part (including but not limited to Award Flights), flights booked using a travel certificate, flights received as part of a free ticket promotions including free or reduced rate travel, flights purchased as a part of a Getaways or Cruise package, charter flights, flights booked with travel agency/industry reduced rates, and flights booked with unpublished fares. JetBlue reserves the right to determine in its sole discretion which flights qualify as a segment for purposes of TrueBlue Mosaic. Base flight Points are the three (3) points per dollar spent that Members earn on their individual JetBlue flight. All other Points, including but not limited to bonus Points, Points earned from the purchase of JetBlue Getaways, Points earned from using the JetBlue Card from American Express, Points earned from using the Santander JetBlue MasterCard, and Points earned from special offers or promotions, do not count towards earning the TrueBlue Mosaic badge.

7.2 The TrueBlue Mosaic badge is good for the remaining calendar year in which the Member earned the badge as well as the following calendar year only. By way of example only, if a Member earned the badge in October of 2013, the TrueBlue Mosaic badge would be valid from October to December 2013 and then for the full calendar year of 2014. The TrueBlue Mosaic badge is earned based on a Member's activity in the immediately preceding calendar year. A Member must qualify each calendar year in order to earn the TrueBlue Mosaic badge for the following year.

7.3 Members that have a valid TrueBlue Mosaic badge will receive certain additional benefits in connection with the Program: 1) complimentary access to Even More Speed at airports where Even More Speed is available and open; 2) the ability to redeem Points for Even More Space seats (the amount of Points required for redemption will vary by flight); 3) early boarding of JetBlue flights (i.e., flights operated and marketed by JetBlue); 4) their first and second checked bag free on JetBlue flights (subject to weight and size restrictions and exceptions for itineraries including flights marketed or operated by other carriers); 5) an additional three (3) Points per dollar spent on their individual JetBlue flight; and 6) a dedicated customer service line. For clarity, the three (3) additional bonus Points earned by a Member with a valid TrueBlue Mosaic badge will not count towards earning the TrueBlue Mosaic badge for the following calendar year. Beginning with bookings made on May 17, 2013, Members with a valid TrueBlue Mosaic badge will not pay the applicable JetBlue change/cancellation fee when they change or cancel their JetBlue flight or JetBlue Getaways vacation reservation by calling JetBlue. The change/cancel fee will also be waived for any traveler on the same reservation as the Mosaic member; the change/cancel fee for any other traveler not on that same reservation will still apply. Mosaic members must call JetBlue to change or cancel their reservation in order to receive the fee waiver benefit; any change or cancellation made online will not qualify for this benefit. For changes, a flight fare increase or Getaways package price increase may apply, and for Getaways, other Travel Supplier change or cancellation fees may still apply. For tickets booked through an entity other than JetBlue, booking agent or other third party change or cancellation fees may still apply. The Mosaic member will be responsible for any increase in fare or package price and for all change/cancellation fees other than the JetBlue change/cancellation fee, all of which must be paid at time of change or cancellation or when required by the party assessing the fee. As set forth in more detail in Section 10, JetBlue may, in its sole discretion and at any time, without notice or liability, revise, amend or cancel any or all benefits associated with the TrueBlue Mosaic badge.

7.4 Except as expressly stated in Section 7.3, a Member's receipt of a TrueBlue Mosaic badge in no way alters, constricts, expands or changes these Program Rules whatsoever. For clarity, TrueBlue Members with a valid TrueBlue Mosaic badge are considered Members, and the Program Rules apply to all Members.

## 8. Additional Terms Applicable to Holders of the JetBlue Card from American Express

8.1 See the Cardmember Agreement, which is between the JetBlue Cardmember and American Express Bank, FSB, for the terms and conditions that apply in connection with the accrual of Points and the transfer of Points to your TrueBlue account. The JetBlue Card from American Express is issued by American Express Bank, FSB and is subject to the terms and conditions of the Cardmember Agreement between the JetBlue Cardmember and American Express Bank, FSB.

8.2 If you initiate enrollment in TrueBlue at the time you apply for the JetBlue Card from American Express, you are required to complete registration at www.jetblue.com/trueblue and activate your TrueBlue account by logging into your TrueBlue Account with your temporary password. You will be required to agree to the applicable terms and conditions of the TrueBlue program before any TrueBlue Points can be redeemed.

## 9. Additional Terms Applicable to Holders of the Santander JetBlue MasterCard

9. Additional Terms Applicable to Holders of the Santander JetBlue MasterCard

9.1 See the Cardholder Agreement, which is between the Santander JetBlue MasterCard cardholder and Banco Santander, for the terms and conditions that apply in connection with the accrual of Points and the transfer of Points to your TrueBlue account. The Santander JetBlue MasterCard is issued by Banco Santander and is subject to the terms and conditions of the Cardholder Agreement between the cardholder and Banco Santander.

9.2 If you initiate enrollment in TrueBlue at the time you apply for the Santander JetBlue MasterCard, you are required to complete registration at www.jetblue.com/trueblue and activate your TrueBlue account by logging into your TrueBlue Account with your temporary password. You will be required to agree to the applicable terms and conditions of the TrueBlue program before any Points can be redeemed.

## 10. Changes to these Program Rules, TrueBlue Point Levels and Award Travel Levels

10.1 JetBlue may, among other things, in its sole discretion, for any reason, and without notice or liability to the TrueBlue Member (except as stated in 9.1 (iv) below): (i) withdraw, limit, modify, or cancel Points or Award Travel; (ii) suspend or cancel any Member's TrueBlue account (and/or seize any Points associated with such account and/or suspend or cancel any TrueBlue Mosaic badge associated with such account) if that Member has violated these Program Rules, in JetBlue's sole discretion; (iii) change, modify, delete (in whole or in part), supplement and/or cancel any Program Rules, regulations, benefits, or policies in connection with the Program, including but not limited to, TrueBlue Point balances, redemption requirements, qualifications for the TrueBlue Mosaic badge, participant affiliations, conditions of participation, rules for earning, redeeming, retaining or forfeiting Points, rules for the use of Points, awards or benefits in connection with the Program, Point expiration rules, etc.; (iii) introduce, add, change, modify, delete (in whole or in part), or supplement Award Travel restrictions, including but not limited to blackout dates, capacity controls, and limitations on the number of seats available for Award Travel, and/or otherwise restrict the continued availability of Points or Award Travel or special offers; or (iv) terminate the Program with six months notice, which notice shall appear on the JetBlue website. JetBlue may make any one or more of these changes even though such changes may affect the Member's ability to use the Points that the Member has already accumulated.

## 11. Responsibility and Limitation of Liability

11.1 JetBlue shall not be held liable for, and you hereby waive any claims against JetBlue, for any damages whatsoever (whether direct, indirect, special, punitive, exemplary incidental, consequential or otherwise, whether stated in contract, tort, strict liability or otherwise, and even if JetBlue has been advised of the possibility of such damages) arising out of (a) your participating in the Program (including but not limited to the accrual or use of Points or any travel or travel-related activities in connection with the Program); (b) the acts, omissions, products or services of any person or company rendering services or providing offers in connection with the Program; and/or (c) any failure or delay arising out of use of this website, including, without limitation, error, omission, interruption, defect, delay in transmission, or computer virus. Without limiting the generality of the foregoing, if JetBlue improperly denies a Member Points, Award Travel, or some other benefit, the Member's exclusive remedy shall be the issuance of the improperly denied Points, Award Travel or such other alternative benefit as determined by JetBlue in its sole discretion, and JetBlue shall have no additional liability whatsoever. In no event shall JetBlue be liable to any Member or anyone claiming through a Member or on a Member's behalf, for any other damages, including but not limited to direct, indirect or consequential damages, or lost revenue or profits, arising out of JetBlue's acts or omissions in connection with the TrueBlue Program, whether or not foreseen, even if advised of the possibility thereof.

11.2 JetBlue shall not be liable for damages for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to, weather conditions, acts of God, force majeure, strikes, civil commotions, embargoes, and wars or other hostilities, whether actual, threatened or reported, and/or any other cause beyond the reasonable control of JetBlue.

## 12. Disclaimer of Warranty

12.1 JetBlue makes no warranty of any kind regarding the Program. The Program is provided "as is" and without any warranty of any kind, either express or implied. JETBLUE EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS, INCLUDING WITHOUT LIMITATION ANY EXPRESS OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, AND/OR THOSE ARISING BY STATUTE OR OTHERWISE IN LAW FROM DEALING OR USAGE OF TRADE.

## 13. Miscellaneous Provisions

13.1 Points are non-transferable and may not be combined among TrueBlue Members, their estates, successors and assigns. Accrued Points and Award Travel do not constitute property of Member and are non-transferable (i) upon death, (ii) as part of a domestic relations matter, or (iii) otherwise.

13.2 Points and Award Travel have no cash value and may not be redeemed for cash. Points may not be re-deposited unless a Member properly cancels Award Travel in accordance with all applicable cancellation policies.

13.3 Except to the extent permitted through JetBlue's business partner Points.com or as expressly authorized by JetBlue, Points or Award Travel may not be sold, bartered, or

otherwise exchanged for value. Any Points or Award Travel that are/is purchased, sold, bartered, or otherwise exchanged for value are/is void. Violators (including any Member who uses a purchased or bartered award) may be liable for damages and litigation costs, including the actual cost of travel and/or JetBlue's attorneys' fees incurred in enforcing this rule.

13.4 Award Travel, accumulated Points and special offers are subject to applicable government regulations and are void where prohibited by law.

13.5 Fraud, misrepresentation, abuse, improper conduct (as determined by JetBlue in its sole discretion), or violation of applicable rules (including, but not limited to, JetBlue's Contract of Carriage, tariffs and Program Rules) may result in administrative and/or legal action by appropriate governmental authorities and/or JetBlue. Such action may include, without limitation, the forfeiture of all Points and/or Award Travel, forfeiture of any accumulated Points in a TrueBlue Member's Account, deduction of TrueBlue Points, as well as cancellation of the Account and proscription of the Member's future participation in TrueBlue. In addition, JetBlue reserves the right to take appropriate legal action to recover damages, including attorneys' fees, incurred in prosecuting any lawsuit. Any violation of such applicable rules as described above includes, but is not limited to, Members who are disruptive or otherwise threaten or endanger the safety and security of JetBlue Crewmembers or other JetBlue Customers as described in the JetBlue Contract of Carriage and tariffs.

13.6 JetBlue reserves the right to audit, at any time and without notice to TrueBlue Members, any and all TrueBlue accounts to ensure compliance with these Program Rules. If the audit reveals discrepancies or possible violations of these Program Rules or JetBlue believes that such audit will reveal discrepancies or possible violations of these Program Rules, JetBlue may delay or cancel the processing of Travel Award redemption requests, and/opr cancel any outstanding Award Travel, delay the posting of accumulated Points and/or withhold statements until the audit is completed.

13.7 You are responsible for referencing your online TrueBlue account information and these Program Rules in order to understand your rights, responsibilities and status under the TrueBlue Program. A copy of the most current Program Rules may be posted on the JetBlue website at www.jetblue.com/trueblue. JetBlue shall attempt to advise active members of various matters of interest through its website, but JetBlue shall have no liability for any failure to do so. JetBlue shall have no liability for correspondence, mail or e-mail, which is lost, delayed, or misdirected. Members are responsible for maintaining a current email address.

13.8 For questions about TrueBlue, please visit the JetBlue website at www.jetblue.com/trueblue or call JetBlue at 1-800- JETBLUE. Hearing or speech impaired: TTY/TDD 1-800-

13.9 For questions about TrueBlue, please visit the JetBlue website at www.jetblue.com/trueblue or call toll-free at 1 800 JETBLUE2. Hearing or speech impaired: TTY/TDD 1 800 336-5530.

13.8 JetBlue assumes no responsibility for the actions of business partners in connection with any program that provides for the transfer or accumulation of Points.

13.10 All rules are subject to interpretation by JetBlue. Headings used in these Program Rules are for convenience purposes only and shall not be used in interpreting the Program Rules.

13.11 Any disputes in connection with TrueBlue or these Program Rules shall be governed by New York law, exclusive of New York choice of law rules, and the TrueBlue Member agrees to the jurisdiction of the New York courts to resolve any dispute in connection with TrueBlue or these Program Rules.

13.12 Income tax liability on JetBlue Travel Awards, if any, is the responsibility of the Member.



**Same smart app. More smartphones.**
Download the JetBlue mobile app for iPhone and Android now!

Search jetblue.com

SoFly™  View and share JetBlue pics and travel tricks

**Like us on Facebook**

**Follow us at @JetBlue**

**Visit us on YouTube**

**BlueTales Blog** Your destination for all things JetBlue and beyond

**Get to know us**
About us
Press room
Promotions
CSR
Mobile
ShopBlue

**Services**
Partner airlines
Corporate
Cargo
Travel agents
Special assistance
Gift Cards
Travel Insurance

**Talk to us**
Contact us
Work here
Legal
Privacy
Site map
Website feedback

©2014 JetBlue Airways

# EXHIBIT B



## Website Terms and Conditions

Back to top ↑

**Website Terms and Conditions of Use and License for Downloading Digital Assets**

**1. Agreement between You and JetBlue**

1.1. By accessing, using, providing or obtaining any content from the JetBlue Websites (1) You warrant that You are at least 18 years of age and possess the legal authority to create a binding legal obligation, (2) You agree to be bound by these Terms without modification, and (3) You agree to use the JetBlue Websites in strict compliance with applicable laws, rules, and regulations, and in a manner that does not reflect negatively on the goodwill or reputation of JetBlue.

1.2. Please read these Terms carefully. If You do not accept these Terms, do not use the JetBlue Websites. JetBlue maintains the JetBlue Websites solely to provide you with information about, and assist you in determining the availability of, the Products and Services so that you may make legitimate purchases of the Products and Services.

1.3. Consistent with Section 13.3 below, JetBlue reserves the right to change these Terms at any time without notice or liability.

1.4. Consistent with Section 6 below, JetBlue reserves the right to terminate or restrict your access to the JetBlue Websites at any time without notice or liability.

**2. Definitions**

2.1. "JetBlue" or "we" means JetBlue Airways Corporation.

2.2. "JetBlue Websites" or "JetBlue Website" means the www.jetblue.com and www.jetblueairways.com website, their respective subdomains, and any other website owned, operated and/or controlled by JetBlue, together with the respective Content, Marks, Digital Assets, Products and Services available from these sites or subdomains. For the sake of clarity, JetBlue Websites do not include third-party websites linked from jetblue.com or websites managed by third-party content providers, such as jetblue.ezrez.com, cruises.jetblue.com, jetblue.wwte1.com, help.jetblue.com, workhere.jetblue.com, or shop.jetblue.com. These Terms apply only to websites and services the content of which is provided and/or controlled by JetBlue, including but not limited to jetblue.com, jetblueairways.com, T508.com, and happyjetting.com.

2.3. "Content" means the text, documents, information, data, articles, images, photographs, graphics, frame and border, software, applications, video and audio recordings, designs, features, and other materials made available by JetBlue on the JetBlue Websites. "Content" also includes Marks and Products and Services.

2.4. "User Generated Content" means the text, files, images, photos, video, sounds, musical works, works of authorship, or any other materials that JetBlue may, in its sole discretion, allow You to post on or through the JetBlue Websites from time to time.

2.5. "Mark" means trademark, trade name, service mark, trade dress, logo, custom graphic, image, or icon owned by JetBlue.

2.6. "Products and Services" means air travel, JetBlue Getaways vacation packages, JetBlue branded merchandise, and other products and services that are available through the JetBlue Websites.

2.7. "Purchase" includes book, reserve or purchase.

2.8. "Affiliate" means JetBlue's licensors, suppliers, information providers, and travel and leisure service providers.

2.9. "JetBlue Getaways" is a vacation package service offered by JetBlue through its business partner Ez-Rez.

2.10. "TrueBlue" is a customer loyalty program offered by JetBlue.

2.11. "Digital Assets" or "Assets" means the Marks that, subject to these Terms, may be available for downloading from http://www.jetblue.com/mediakit.

**3. Scope of these Terms and Conditions**

3.1. Privacy Policy

3.1.1. Your use of the JetBlue Websites is subject to the JetBlue Privacy Policy.

3.1.2. By accessing, using, or obtaining any content through the JetBlue Websites, You agree that You have read JetBlue's Privacy Policy and You consent to its terms. 3.2. Additional Terms 3.2.1. Additional terms may also apply to certain aspects of your use of the JetBlue Websites or purchase of Products and Services over the JetBlue Websites. Examples of such are included below: 3.2.1.1. Domestic and international air travel transportation on JetBlue is subject to the JetBlue Airways Contract of Carriage, and where applicable, treaties, governmental regulations, and Passenger Rules Tariffs on file with the Department of Transportation.

3.2.1.2. In addition to 3.2.1.1, Purchase of air travel on the JetBlue Websites is also subject to any terms and conditions as may be advertised or presented at the time of purchase.

3.2.1.3. Purchase of Products and Services through the JetBlue Getaways service is subject to the JetBlue Getaways Terms and Conditions.

3.2.1.4. Membership in the TrueBlue program is subject to the TrueBlue Terms and Conditions.


## 4. Ownership of JetBlue Information and Intellectual Property

4.1. Ownership Rights

4.1.1. The JetBlue Websites are the sole and exclusive property of JetBlue. JetBlue retains all right, title, and interest in the JetBlue Websites.

4.1.2. The JetBlue Websites are protected by copyright, trademark, patent, trade secrets, unfair competition, intellectual property and other local laws and international treaties. Any unauthorized use, reproduction, or modification of the JetBlue Websites may violate such laws.

4.1.3. For sake of clarity, this Section 4.1 does not apply to User Generated Content as provided for in Section 5 herein.

4.2. Trademarks

4.2.1. JetBlue Airways Corporation, JetBlue, TrueBlue and other Marks that appear, are displayed, or used on the JetBlue Websites are registered or unregistered trademarks or service marks of JetBlue or Affiliates. These Marks may not be copied, downloaded, reproduced, used, modified, or distributed in any way without (a) prior written permission from JetBlue or the relevant trademark owner, or (b) in the case of Digital Assets, in accordance with Section 7 herein.

4.2.2. Under no circumstances may JetBlue's Marks (including but not limited to trademarks and trade dress) be used in connection with any product or service that is not offered by JetBlue, in any manner that is likely to cause confusion among customers, or in any manner that disparages or discredits JetBlue.


## 5. User Generated Content

5.1. From time to time, JetBlue may, in its sole discretion, allow You to post User Generated Content on the JetBlue Websites.

5.2. JetBlue expressly reserves the right, in its sole discretion, to reject, refuse to post, or remove any posting by You, or to deny, restrict, suspend, or terminate your ability to post User Generated Content, for any or no reason, with or without prior notice or explanation, and without liability.

5.3. JetBlue exercises reasonable efforts to monitor User Generated Content posted on the JetBlue Websites. However, JetBlue nonetheless assumes no responsibility for the User Generated Content, no obligation to modify or remove any inappropriate User Generated Content, and no responsibility for the conduct of the User submitting any such User Generated Content.

5.4. You are solely responsible for the User Generated Content that you post on or through any of the JetBlue Websites, and any material or information that you transmit to other Users and for your interactions with other Users.

5.5. JetBlue does not claim any ownership rights in any User Generated Content that You post. You continue to retain any such rights that you may have in the User Generated Content, subject to the limited license herein.

5.6. By posting any User Generated Content on or through the JetBlue Websites, you hereby grant to JetBlue a limited license to use, modify, delete from, add to, publicly perform, publicly display, reproduce, and distribute such User Generated Content solely on or through the JetBlue Websites. This limited license does not grant JetBlue the right to sell or otherwise distribute such User Generated Content outside of the JetBlue Websites. After you remove such User Generated Content from the JetBlue Websites, JetBlue will cease distribution as soon as practicable, and at such time when distribution ceases, the license will terminate.

5.7. You represent and warrant that: (1) you own the User Generated Content posted by you on or through the JetBlue Websites or otherwise have the right to grant the license set forth in this Section 5, and (2) the posting of your User Generated Content on or through the JetBlue websites does not violate the privacy rights, publicity rights, copyrights, contract rights or any other rights of any person or entity. You agree to pay for all royalties, fees, and any other monies owing any person or entity by reason of any User Generated Content posted by You on or through the JetBlue Websites.


## 6. Personal License Granted to You by JetBlue

6.1. Except as may be provided by Section 7, JetBlue grants You a limited, personal, nonexclusive, nontransferable, revocable license to access and use

the JetBlue Websites as expressly permitted in these Terms.

6.2. Except for this limited license and as otherwise set forth in Section 6, JetBlue does not grant You any other rights or license with respect to the JetBlue Websites.

6.3. Consistent with the above, You agree that You will use the JetBlue Websites only to gather information about the Products and Services and/or to make legitimate Purchases for You or for another person for whom You are authorized to act.

## 7. License for Downloading Digital Assets

7.1. JetBlue is the owner of all Digital Assets contained on the JetBlue Websites, including all trademark, trade dress, copyright and other intellectual property rights. By agreeing to these terms and conditions, You may download the Digital Assets contained on page http://www.jetblue.com/mediakit for your personal or commercial use. Please note, this license applies only to the marks contained on this website. Downloading such assets does not transfer any ownership interest to You or any user. You are granted a non-exclusive, non-sublicenseable, non-transferable copyright license to use the Digital Assets only in accordance with these Terms.

7.2. You agree that the Digital Assets cannot be sold or sublicensed for any consideration by You. You shall not use the Digital Assets in any manner that suggests the endorsement, sponsorship or association of JetBlue with any product or service other than those provided by JetBlue, unless written permission for such use is first obtained from JetBlue.

7.3. You agree to JetBlue's Usage Guidelines. In addition, You may not use the Digital Assets as a link to any web page other than to the JetBlue home page. You also may not: 7.3.1. Resize, distort, add to, delete from, change any color of or otherwise modify any of the Digital Assets without the prior written permission of JetBlue;

7.3.2. Sublicense, distribute, transfer or assign the image(s) or rights to the image(s);

7.3.3. Remove any copyright notice, trademark notice, watermark or any other legal or proprietary notice or mark from any asset;

7.3.4. Display the Digital Asset in any digital format or for any digital use at a resolution greater than 72 dpi, except in editorial or preliminary design work. Doing so will be viewed as an attempt to distribute the asset in violation of these Terms;

7.3.5. Use the Digital Asset, or any part of it as part of a trademark, service mark, logo or copyrighted work;

7.3.6. Use the Digital Asset to compete with or cause harm to JetBlue in any way;

7.3.7. Use the Digital Asset in any way that could be considered defamatory, pornographic, libelous, immoral, obscene, fraudulent, or illegal by making physical changes to it, by positioning it to accompanying text or images, or otherwise;

7.3.8. Use the Digital Asset in any way that would infringe the rights of any third party, including any and all intellectual property rights and rights of publicity; 7.4. JetBlue reserves the right to:

7.4.1. Prohibit use of any Digital Asset for any reason whatsoever and at its sole discretion;

7.4.2. Notify You that a Digital Asset is no longer available for use. (Upon such notification, the license to use such asset shall automatically and immediately terminate and user shall immediately cease using the asset);

7.4.3. Replace a Digital Asset with an alternative asset for any reason. Upon notice of such replacement, the license for the replaced Asset immediately and automatically terminates for any use of the Asset and these Terms shall automatically apply to the replacement Asset. You agree not to use any replaced Digital Asset and take all reasonable steps to discontinue use of the replaced Digital Asset in its existing media, products and services;

7.5. All other terms and conditions contained herein apply to downloading of Digital Asset, including, without limitation, Jurisdiction, Venue, Indemnity.

## 8. Limitations on Your Use of the JetBlue Websites

8.1. No Copy or Distribution

8.1.1. You may copy, display, or print one copy of any portion of the Content. However, You shall not modify the Content in any manner whatsoever, and You must include the JetBlue copyright notice in the form: "© JetBlue Airways 2008. All rights reserved."

8.1.2. Except as provided in Section 7, You may not resize, upload, post, display, distort, add to, republish, distribute, delete or transmit any part of the Content in any form.

8.1.3. You may not modify, translate into any language or computer language, or create derivative works from or reverse engineer any Content or any part of the JetBlue Websites.

8.1.4. You may not sell, offer to sell, transfer, or license any portion of the JetBlue Websites or the Content in any form to any third parties.

8.1.5. You may not access, copy, acquire, or monitor any Content by using any manual process, or any "robot," "spider," "deep-link," "page-scrape," or any other automatic device, program, algorithm or methodology without first obtaining the prior written consent of JetBlue.

8.2. No Commercial Use 8.2.1. Except as provided by Section 7 or if JetBlue has granted You permission in advance and in writing, You may use the JetBlue Websites only for personal, non-commercial use.

8.2.2. Except as provided by Section 7 or if JetBlue has granted You permission in advance and in writing, You shall not use the JetBlue Websites to engage in any commercial purpose, including but not limited to: 8.2.2.1. Advertising or offering to sell any goods or services;

8.2.2.2. Conducting contests or surveys;

8.2.2.3. Distributing chain letters, or advertising with respect to any Ponzi scheme or pyramid scheme;

8.2.2.4. Advertising or offering to sell any business opportunities, direct sale opportunities, employment or contractor positions, multi-level marketing opportunities, or securities.

8.3. No Use for Illegal or Improper Motives 8.3.1. You shall not use the JetBlue Websites for any of the following purposes:

8.3.1.1. Distributing, disseminating, posting, or publishing any information or material that degrades, embarrasses, harasses, humiliates, intimidates, or threatens any individual or group of individuals on the basis of their age, ancestry, color, ethnicity, marital status, medical condition, mental or physical disability, national origin, race, sex, sexual orientation, union or nonunion affiliation, or any other basis protected by federal, state, or local law or ordinance;

8.3.1.2. Distributing, disseminating, posting, or publishing any indecent, infringing, libelous, obscene, or unlawful information or material, or any material that could constitute or encourage conduct that would be considered a criminal offense, give rise to civil liability, or otherwise violate any law;

8.3.1.3. Distributing, disseminating, posting, publishing, sending, or otherwise disclose confidential information, trade secrets, or any other confidential and/or proprietary data of JetBlue or any other entity or person;

8.3.1.4. Distributing, disseminating, posting, publishing, or otherwise making available any material that infringes any copyright, patent, trademark, or other proprietary rights of JetBlue or any other entity or person; or

8.3.1.5. To abuse, defame, harass, stalk, threaten, or otherwise violate others' legal rights, including but not limited to rights of privacy and publicity or the intellectual property rights or publicity rights of a third party.

8.4. No Other Misuse

8.4.1. You agree that You will not otherwise misuse the JetBlue Websites, including but not limited to any of the following:

8.4.1.1. Taking any action that will or is likely to interfere with, intercept, or impose an unreasonable or disproportionately large load on the infrastructure of the JetBlue Websites;

8.4.1.2. Manipulating the price of a Product or Service;

8.4.1.3. Uploading, downloading, or transmitting files that may damage the operation of another's computer, such as computer viruses (such as Trojan horses, worms, or time bombs), corrupt files, and/or similar software;

8.4.1.4. Disguising, misrepresenting, or omitting the source or origin of any information uploaded to, downloaded from, or transmitted through the JetBlue Websites;

8.4.1.5. Using or accessing the JetBlue Websites in any way that, in JetBlue's sole judgment, adversely affects the performance or function of the JetBlue Websites, or any other computer systems or networks used by JetBlue, or other JetBlue Website users.

## 9. Your Indemnity Obligation

9.1. You agree to indemnify, defend, and hold harmless JetBlue, JetBlue's subsidiaries, and each of JetBlue's respective officers, directors, employees, and agents from and against any claims, demands, proceedings, suits and actions, including any related liabilities, obligations, losses, damages, deficiencies, penalties, taxes, levies, fines, judgments, settlements, expenses (including legal and accountants' fees and disbursements) and costs arising out of or resulting from (1) your breach of these Terms, including the JetBlue Privacy Policy and any other document incorporated by reference, or (2) your violation of any law or the rights of any third party, (3) your posting of any User Generated Content, or (4) your use of the JetBlue Websites.

## 10. Rights Reserved by JetBlue

10.1. Rights Not Granted are Reserved

10.1.1. Any rights not expressly granted herein are reserved.

10.2. Changes and Updates

10.2.1. Any aspect of the JetBlue Websites may be changed, supplemented, deleted, updated, discontinued, suspended, or modified at any time, and without prior notice to You. However, JetBlue makes no commitment to update the information contained on the JetBlue Websites.

10.2.2. JetBlue may also change or impose fees for certain services, or establish or change general practices services, at any time and without prior notice to You. 10.3. Availability

10.3.1. JetBlue does not promise availability of the JetBlue Websites, and assumes no liability or responsibility for any delay, interruption, or downtime.

10.4. Accuracy of Content 10.4.1. The Content is intended for informational purposes only. Although JetBlue exercises reasonable efforts to ensure the Content's quality and accuracy, there might be errors, and the information provided may not be complete, current, or applicable to your particular

situation.

10.4.2. JetBlue assumes no liability or responsibility for any errors or omissions; You are responsible for evaluating the accuracy, completeness, and usefulness of any Content available through the JetBlue Websites or obtained from a linked website.

10.5. User Generated Content

10.5.1. Despite the prohibitions of Section 8 herein and JetBlue's reasonable efforts to monitor the User Generated Content, User Generated Content may from time to time appear on the JetBlue Websites which, in whole or in part, is unauthorized, impermissible, or otherwise violates these Terms, and JetBlue assumes no responsibility or liability for this material.

10.5.2. Users are solely responsible for the User Generated Content that they post on or through any of the JetBlue Websites.

10.6. Viruses

10.6.1. JetBlue makes reasonable attempts to exclude viruses from the JetBlue Websites. However, JetBlue cannot ensure that the JetBlue Websites will at all times be free from viruses or other destructive software.

10.6.2. JetBlue assumes no liability or responsibility for any damages to computer equipment or other property that may result from use of the JetBlue Websites; You are responsible for taking appropriate safeguards before downloading information from the JetBlue Websites.

10.7. Outbound Links

10.7.1. The JetBlue Websites may from time-to-time provide links to other websites. Such links are provided for your reference only.

10.7.2. When You click on these links, You are leaving the JetBlue Websites and entering a third-party's website. We are not responsible for such third party websites.

10.8. Inbound Links

10.8.1. JetBlue permits You to create links from a third party website to the JetBlue homepage (www.jetblue.com), through a plain text link, provided that:

10.8.1.1. You give JetBlue prior written notice of such link by contacting jetbluecommunity@gmail.com to request JetBlue' permission to establish the link, and;

10.8.1.2. You discontinue providing a link to the JetBlue homepage if so requested by JetBlue, and;

10.8.1.3. You do not imply in any fashion that JetBlue is endorsing any of your products or services, or products or services affiliated with you, and;

10.8.1.4. You do not present JetBlue in a false light, or provide misleading or false information about JetBlue, the JetBlue websites, the Content, or the Products and Services, and;

10.8.1.5. You do not remove or obscure the copyright notices, or other notices on the JetBlue websites, and;

10.8.1.6. You do not use any Mark of JetBlue, and;

10.8.1.7. You do not replicate, frame, or mirror the Content.

10.8.2. In the absence of a separate agreement with JetBlue to the contrary, You are strictly prohibited from linking to any page of the JetBlue Website other than the JetBlue homepage.

10.8.3. JetBlue explicitly reserves the right to require You, in the sole discretion of JetBlue, to remove links to the JetBlue homepage or any other JetBlue Website.

## 11. Disclaimer of Warranty and Limitation of Liability

11.1. Disclaimer of Warranty

11.1.1. The JetBlue Websites, and Digital Assets downloaded in accordance with Section 7 are provided "as is" and without warranty of any kind, either express or implied.

11.1.2. JETBLUE EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS, INCLUDING WITHOUT LIMITATION ANY EXPRESS OR IMPLIED WARRANTY OF EXPECTATION OF PRIVACY, FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, NON-INFRINGEMENT OR TITLE, THOSE ARISING BY STATUTE OR OTHERWISE IN LAW, OR FROM A COURSE OF DEALING OR USAGE OF TRADE.

11.2. Limitation of Liability

11.2.1. Subject to applicable law, You use the JetBlue Websites and download Digital Assets solely at your own risk.

11.2.2. IN NO EVENT SHALL JETBLUE OR ITS AFFILIATES BE LIABLE FOR ANY DAMAGES (WHETHER CONSEQUENTIAL, DIRECT, INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, OR OTHERWISE) ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE USE OF OR INABILITY TO USE THE JETBLUE WEBSITES OR FOR ANY USER GENERATED CONTENT POSTED THEREIN OR FOR ANY CONTENT OBTAINED THROUGH OR OTHERWISE IN CONNECTION WITH THE JETBLUE WEBSITES REGARDLESS OF WHETHER SUCH DAMAGES ARE BASED ON CONTRACT, STRICT LIABILITY, TORT OR OTHER THEORIES OF LIABILITY, AND ALSO REGARDLESS OF WHETHER JETBLUE WAS GIVEN ACTUAL OR CONSTRUCTIVE NOTICE THAT DAMAGES WERE POSSIBLE.

11.3. No Liability for Unauthorized Access of Your Information

11.3.1. JetBlue takes reasonable steps to safeguard and to prevent unauthorized access to your private information consistent with the terms of our privacy policy.

11.3.2. UNDER NO CIRCUMSTANCES WILL JETBLUE OR ITS AFFILIATES BE LIABLE FOR ANY DAMAGES WHATSOEVER (WHETHER CONSEQUENTIAL, DIRECT, INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, OR OTHERWISE) ARISING OUT OF OR IN ANY WAY CONNECTED WITH A THIRD PARTY'S UNAUTHORIZED ACCESS TO YOUR INFORMATION, REGARDLESS OF WHETHER SUCH DAMAGES ARE BASED ON CONTRACT, STRICT LIABILITY, TORT OR OTHER THEORIES OF LIABILITY, AND ALSO REGARDLESS OF WHETHER JETBLUE WAS GIVEN ACTUAL OR CONSTRUCTIVE NOTICE THAT SUCH DAMAGES WERE POSSIBLE.

## 12. Communications and Confidentiality

12.1. Any communications You send to the JetBlue Website or otherwise to JetBlue via electronic mail are on a non-confidential basis, and JetBlue is under no obligation to refrain from reproducing, publishing, or otherwise using them in any way and for any purpose.

12.2. You acknowledge and agree that JetBlue will be free to use the content of such electronic mail communications, including any ideas, inventions, concepts, techniques or know-how disclosed therein, for any purpose, to include the development, production, and/or marketing of goods or services, without incurring any obligation to You for such use.

## 13. General Provisions

13.1. No Offer to Buy or Sell Securities

13.1.1. The information on the JetBlue Websites does not constitute an offer to sell, or the solicitation of an offer to buy any securities, and must not be relied upon in connection with any investment decision.

13.2. Independent Contractors

13.2.1. Your acceptance of these Terms, and your use of the JetBlue Websites, does not create a joint venture, partnership, employment, or agency relationship with JetBlue.

13.3. Modification to These Terms and Conditions

13.3.1. JetBlue may modify, revise, or update these Terms, and/or the documents incorporated by reference, at any time, by updating this posting. Therefore, You should periodically visit this page when You use the JetBlue Websites to review current Terms. 13.4. Governing Law, Choice of Forum, and Procedural Restrictions

13.4.1. You agree that the substantive laws of the State of New York, without regard to its conflicts of laws principles, will govern the interpretation of these Terms, as well as any dispute arising from your access to, dealing with, or use of the JetBlue Websites.

13.4.2. You agree that, should You bring a lawsuit related to your access to, dealings with, or use of the JetBlue Websites, You must do so in the state or federal courts of New York County, New York.

13.4.3. Should JetBlue bring a lawsuit against You related to your access to, dealings with, or use of the JetBlue Websites, You assent to the jurisdiction of the state or federal courts of New York County, New York, and hereby waive all defenses of improper venue, forum non conveniens, and personal jurisdiction.

13.4.4. You understand and agree that You will not bring any class action lawsuit against JetBlue or its Affiliates related to your access to, dealings with, or use of the JetBlue Websites. 13.5. No Assignment of Rights or Duties

13.5.1. You may not assign, delegate, or transfer your rights or obligations under these Terms.

13.6. Entire Agreement

13.6.1. These Terms make up the entire agreement between You and JetBlue relating to your use of the JetBlue Websites, and replaces and prior understandings or agreements, whether oral or written, regarding your use of the JetBlue Websites.

13.7. Severability

13.7.1. If a court finds any of these Terms to be unenforceable or invalid, that Term will be enforced to the fullest extent permitted by applicable law and the other Terms will remain valid and enforceable.

13.8. Headings

13.8.1. The section headings herein are provided for solely for convenience and ease of reference; they do not limit or affect these Terms.

13.9. Notices

13.9.1. All notices, consents, requests, instructions, approvals and other communications to JetBlue provided for herein shall be deemed validly given, made or served if in writing and delivered personally or sent by certified mail, postage prepaid, or by overnight courier, to:

JetBlue Airways Corporation

Attn: General Counsel's Office

27-01 Queens Plaza North

Long Island City, NY 11101

13.10. Failure to Act Does Not Constitute Waiver

13.10.1. If JetBlue fails to act with respect to your breach or anyone else's breach on any occasion, this will not constitute a waiver of JetBlue's right to act with respect to future or similar breaches.

**14. Intellectual Property Protection**

14.1. JetBlue respects the intellectual property rights of others, and requires that users of the JetBlue Websites do the same.

14.2. If you believe your work has been copied and posted on or through the JetBlue Websites in a way that constitutes trademark or copyright infringement, please send JetBlue a notification of claimed infringement with all of the following information: (a) identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works are covered by a single notification, a representative list of such works; (b) identification of the claimed infringing material and information reasonably sufficient to permit us to locate the material on the JetBlue Websites (providing the URL(s) of the claimed infringing material satisfies this requirement); (c) information reasonably sufficient to permit us to contact you, such as an address, telephone number, and, if available, an email address; (d) a statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; (e) a statement by you, made under penalty of perjury, that the above information in your notification is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf; and (f) your physical or electronic signature.

14.3. JetBlue's contact information for notification of claimed infringement is as follows: JetBlue Airways Corporation, 27-01 Queens Plaza North, Long Island City, NY 11101; Facsimile: (718) 709-3631; Attn: Legal Department.



**Top JetBlue Vacation packages:** Aruba | Barbados | Bermuda | Cancún, Mexico | Fort Lauderdale | Grand Cayman | Jamaica | Las Vegas | Nassau, Bahamas | Orlando | Puerto Plata, Dominican Republic | Punta Cana, Dominican Republic | Saint Martin | San Juan, Puerto Rico | Samana, Dominican Republic | St. Lucia | Turks & Caicos | Walt Disney World® Resort | West Palm Beach

Show more cities

©2014 JetBlue Airways©2014 JetBlue Airways

JS 44C/SDNY
REV. 2/2014

CIVIL COVER SHEET  14 CV  1782

MAR 1 4 2014

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| JETBLUE AIRWAYS CORPORATION | COPYTELE INC., JOHN ROOP, CTI PATENT ACQUISTION CORPORATION, and LOYALTY CONVERSION SYSTEMS CORPORATION |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| SHER TREMONTE LLP, 80 BROAD ST., SUITE 1301, NEW YORK, NY 10004 KLEMCHUK KUBASTA LLP, 8150 N. Central Expressway, 10th Fl. | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Suit pursuant to 28 U.S.C. 1338.  Causes of action are breach of contract, declaratory judgment, fraud and promissory estoppel.

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No [ ] Yes [x] Judge Previously Assigned

If yes, was this case  Vol. [ ]  Invol. [ ]  Dismissed. No [ ]  Yes [ ]   If yes, give date _____ & Case No. _____

IS THIS AN INTERNATIONAL ARBITRATION CASE?   No [x]   Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*                NATURE OF SUIT

**TORTS**

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | [ ] 620 OTHER FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | | [ ] 430 BANKS & BANKING |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | | | **PROPERTY RIGHTS** | [ ] 450 COMMERCE |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | **PERSONAL INJURY** | [ ] 630 LIQUOR LAWS | [ ] 820 COPYRIGHTS | [ ] 460 DEPORTATION |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT LIABILITY | [ ] 370 OTHER FRAUD | [ ] 640 RR & TRUCK | [ ] 830 PATENT | [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | [ ] 650 AIRLINE REGS | [ ] 840 TRADEMARK | [ ] 480 CONSUMER CREDIT |
| | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | [ ] 660 OCCUPATIONAL SAFETY/HEALTH | | [ ] 490 CABLE/SATELLITE TV |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | [ ] 360 OTHER PERSONAL INJURY | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 690 OTHER | **SOCIAL SECURITY** | [ ] 810 SELECTIVE SERVICE |
| [ ] 160 STOCKHOLDERS SUITS | | | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| [x] 190 OTHER CONTRACT | | | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 862 BLACK LUNG (923) | [ ] 875 CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 195 CONTRACT PRODUCT LIABILITY | **PRISONER PETITIONS** | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 OTHER STATUTORY ACTIONS |
| [ ] 196 FRANCHISE | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | | [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT | [ ] 864 SSID TITLE XVI | [ ] 891 AGRICULTURAL ACTS |
| | [ ] 530 HABEAS CORPUS | **ACTIONS UNDER STATUTES** | [ ] 740 RAILWAY LABOR ACT | [ ] 865 RSI (405(g)) | [ ] 892 ECONOMIC STABILIZATION ACT |
| | [ ] 535 DEATH PENALTY | **CIVIL RIGHTS** | [ ] 790 OTHER LABOR LITIGATION | **FEDERAL TAX SUITS** | [ ] 893 ENVIRONMENTAL MATTERS |
| | [ ] 540 MANDAMUS & OTHER | [ ] 441 VOTING | [ ] 791 EMPL RET INC SECURITY ACT | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 894 ENERGY ALLOCATION ACT |
| **REAL PROPERTY** | | [ ] 442 EMPLOYMENT | | [ ] 871 IRS-THIRD PARTY 26 USC 7609 | [ ] 895 FREEDOM OF INFORMATION ACT |
| | | [ ] 443 HOUSING/ ACCOMMODATIONS | **IMMIGRATION** | | [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 210 LAND CONDEMNATION | | [ ] 444 WELFARE | [ ] 462 NATURALIZATION APPLICATION | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 220 FORECLOSURE | **PRISONER CIVIL RIGHTS** | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 463 HABEAS CORPUS-ALIEN DETAINEE | | |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 550 CIVIL RIGHTS | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 465 OTHER IMMIGRATION ACTIONS | | |
| [ ] 240 TORTS TO LAND | [ ] 555 PRISON CONDITION | [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner) | | | |
| [ ] 245 TORT PRODUCT LIABILITY | | | | | |
| [ ] 290 ALL OTHER REAL PROPERTY | | | | | |

Check if demanded in complaint:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $_____  OTHER _____  JUDGE _____  DOCKET NUMBER_____

Check YES only if demanded in complaint
JURY DEMAND: [x] YES  [ ] NO          NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

| *(PLACE AN x IN ONE BOX ONLY)* | | | | ORIGIN | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from (Specify District) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judge Judgment | |
| | ☐ a. all parties represented | | | | | | |
| | ☐ b. At least one party is pro se. | | | | | | |

| *(PLACE AN x IN ONE BOX ONLY)* | | BASIS OF JURISDICTION | | *IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)* |
|---|---|---|---|---|
| ☐ 1 U.S. PLAINTIFF | ☐ 2 U.S. DEFENDANT | ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY) | ☐ 4 DIVERSITY | |

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

JetBlue Airways Corporation, 27-01 Queens Plaza N., Long Island City, NY 11101 [Queens County]

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

Copytele Inc., 900 Walt Whitman Road, Melville NY 11747 [Suffolk County]
John Roop, 3 Brooks Road, Ben Lomond California
CTI Patent Acquisition Corporation, 900 Walt Whitman Road, Melville NY 11747 [Suffolk County]
Loyalty Conversion Systems Corporation, 900 Walt Whitman Road, Melville NY 11747 [Suffolk County]

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   ☐ WHITE PLAINS   ☒ MANHATTAN
(DO NOT check either box if this a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.)

DATE 3/14/2014   SIGNATURE OF ATTORNEY OF RECORD   *(signature)*

RECEIPT #

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[X] YES (DATE ADMITTED Mo. 9 Yr. 99 )
Attorney Bar Code # MT 5996

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)