# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JETBLUE AIRWAYS CORPORATION,

                Plaintiff,

    -against-

COPYTELE INC., JOHN ROOP, CTI PATENT
ACQUISITION CORPORATION, and LOYALTY
CONVERSION SYSTEMS CORPORATION,

                Defendants.

**14 CV 1782**

Civil Action No. _____

## <u>NOTICE OF MOTION</u>

      PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law in Support of Its Motion for Preliminary Injunction, the Declaration of Jaclyn Vida, dated March 12, 2014, the Declaration of Shelley Pederson, dated March 12, 2014, and the Declaration of Matthew Morgan, dated March 13, 2014, and all exhibits thereto, Plaintiff JetBlue Airways Corporation will move this Court at a date, time, and place to be designated by this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction enjoining Defendants from pursuing their claims for patent infringement in the Eastern District of Texas pending a final resolution of Plaintiff's claims in this action, and for such other relief as the Court deems appropriate.

Dated: New York, New York
       March 14, 2014

**SHER TREMONTE LLP**

By  /s/  ~~M_____~~

           Michael Tremonte

80 Broad St., Suite 1301
New York, New York 10004
Tel:  212.202.2600
Fax:  212.202.4156
E-mail: mtremonte@shertremonte.com

-and-

**KLEMCHUK KUBASTA LLP**

By  /s/ Casey Griffith_____
Casey Griffith (*of counsel*)
Texas State Bar No. 24036687
casey.griffith@kk-llp.com

By  /s/ Austin Champion____
Austin Champion (*of counsel*)
Texas State Bar No. 24065030
austin.champion@kk-llp.com

8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
214.367.6000 telephone
214.367.6001 facsimile

**ATTORNEYS FOR PLAINTIFF
JETBLUE AIRWAYS CORPORATION**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**_____ DIVISION**

| | | |
|---|---|---|
| JETBLUE AIRWAYS CORPORATION, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. _____ |
| | § | |
| v. | § | |
| | § | |
| COPYTELE INC., JOHN ROOP, | § | |
| CTI PATENT ACQUISITION | § | |
| CORPORATION, and | § | |
| LOYALTY CONVERSION SYSTEMS | § | |
| CORPORATION, | § | JURY DEMANDED |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff JetBlue Airways Corporation ("JetBlue") files this Memorandum of Law in

Support of its Motion for Preliminary Injunction and states as follows:

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ........................................................................................................ 1

FACTS ......................................................................................................................... 1

   I.   The TrueBlue Terms contain a mandatory forum-selection clause. ............................ 2

   II.   CTI agreed to the JetBlue Terms, including the mandatory forum-selection clause. 3

ARGUMENT ................................................................................................................ 4

   I.   JetBlue will likely succeed on its claim that this Court possesses exclusive jurisdiction over LCS's claims brought in the Eastern District of Texas. ..................................... 4

     A.   The forum-selection clause is mandatory, valid, and enforceable. ........................... 5

     B.   The broadly-worded forum-selection clause covers LCS's patent infringement claims in Texas. ..................................................................................................... 6

   II.   Serious questions going to the merits exist to make them fair ground for trial and the balance of hardships tips decidedly in JetBlue's favor. ............................................... 7

   III.   JetBlue will suffer irreparable harm if preliminary relief is withheld because it will be deprived of its bargained-for forum. .................................................................. 11

CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010).................................................................................................................4, 8

*Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123 (2d Cir. 2001)....................................7

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580(HB), 2008 WL 4833001 (S.D.N.Y. Nov. 5, 2008)........................................................................................................7

*Eslworldwide.com, Inc. v. Interland, Inc.*, No. 06-cv-2503, 2006 WL 1716881 (S.D.N.Y. June 21, 2006).......................................................................................................................5

*Gen. Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011) ...........8, 9, 10, 11

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007)....................................4

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953) .......................................8

*Int'l Fashion Prods., B.V. v. Calvin Klein, Inc.*, No. 95 Civ. 0982 (JFK), 1995 WL 92321 (S.D.N.Y. Mar. 7, 1995)......................................................................................................11

*Jalee Consulting Group, Inc. v. Xenoone, Inc.*, 908 F. Supp. 2d 387 (S.D.N.Y. 2012)..............5, 6

*Magi XXI, Inc. v. Stato Della Città Del Vaticano*, 818 F. Supp. 2d 597 (E.D.N.Y. 2011) ............6

*Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03-cv-5262, 2004 WL 421793 (S.D.N.Y. Mar. 5, 2004)....................................................................................................5, 11

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) ............................................................6

*Prod. Res. Group, LLC v. Martin Prof'l*, 907 F. Supp. 2d 401 (S.D.N.Y. 2012)...........................6

*Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385 (S.D.N.Y. 1997).......11

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993)................................................................5

*Univ. Grading Serv. v. eBay, Inc.*, No. 08-cv-3557, 2008 WL 2029796 (E.D.N.Y. June 10, 2009) ................................................................................................................................5, 6

## OTHER AUTHORITIES

11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.3 (2d ed. 2009) ...........................................................................................8

## INTRODUCTION

On August 2, 2013, Defendant CopyTele Inc. ("CTI"), through its Senior Vice President of Engineering, John Roop ("Roop"), agreed to a mandatory forum-selection clause in return for enrollment in the JetBlue Airways Corporation ("JetBlue") TrueBlue Program and access to secure portions of JetBlue's website.   The JetBlue forum-selection clause contained in the agreement between CTI and JetBlue requires that any litigation related to access or use of JetBlue's websites be brought in the state or federal courts of New York County, New York. Only eighteen days after their agreement, CTI directed its wholly owned subsidiary, Loyalty Conversion Systems Corporation ("LCS"), to sue JetBlue for patent infringement in the United States District Court for the Eastern District of Texas, Marshall Division.  LCS's lawsuit alleges JetBlue is infringing U.S. Patent Nos. 8,313,023 ("the '023 Patent") and 8,511,550 ("the '550 Patent").  Specifically, LCS claims JetBlue infringes the '023 Patent and '550 Patent through the operation of its TrueBlue Program.

If LCS is permitted to pursue litigation against JetBlue in the Eastern District of Texas in violation of the parties' mandatory forum-selection clause, JetBlue will be permanently deprived of its bargained-for forum and irreparably harmed.  Accordingly, JetBlue respectfully requests the Court enjoin Defendants from pursuing their claims for patent infringement in the Eastern District of Texas pending a final resolution of JetBlue's claims against Defendants for, among other things, breach of contract and fraud.

## FACTS

TrueBlue is an electronic rewards program available to JetBlue customers.   As a condition to joining the TrueBlue Program, a prospective member must agree to the TrueBlue Terms and Conditions ("TrueBlue Terms").  To join the TrueBlue Program and obtain access to secure portions of JetBlue's website, a prospective member must affirmatively check a box next

to language indicating agreement to the TrueBlue Terms.  If a prospective member does not indicate assent to the TrueBlue Terms, the prospective member cannot enroll in the TrueBlue Program, is presented with an error message, and is denied access to the secure portions of JetBlue's website.

## I.    The TrueBlue Terms contain a mandatory forum-selection clause.

Section 1 of the TrueBlue Terms states that by gaining access to, using the website, or enrolling in the TrueBlue Program, the user agrees to, among other things, be bound by the TrueBlue Terms and Website Terms and Conditions ("Website Terms") (collectively, the "JetBlue Terms").[1]  The Website Terms state that by accessing, using, or obtaining any content from JetBlue's websites, the user warrants he has legal authority to create a binding legal obligation, agrees to be bound by the terms, and agrees to use JetBlue's websites in strict compliance with the law.[2]  Section 1 urges users to read the terms carefully and avoid use of JetBlue's websites if the terms are unacceptable.[3]

Importantly, Section 13 of the Website Terms contains forum-selection and choice-of-law provisions.[4]  The choice-of-law clause provides New York law will govern "any dispute arising from [the user's] access to, dealing with, or use of" JetBlue's websites.[5]  Similarly, the forum-selection clause states, in full: "You agree that, should You bring a lawsuit *related to* your access to, dealings with, or use of the JetBlue Websites**,** You ***must*** do so in the state or federal courts of New York County, New York."[6]

---

[1] *See* Ex. 1-A, TrueBlue Terms and Conditions; Ex. 2-A, Website Terms and Conditions.
[2] *See* Ex. 2-A.
[3] *See id.* § 1.2.
[4] *See id.* §§ 13.4.1, 13.4.2.
[5] *Id.* § 13.4.1.
[6] *Id.* § 13.4.2 (emphasis added).

## II.    CTI agreed to the JetBlue Terms, including the mandatory forum-selection clause.

John Roop is the Senior Vice President of Engineering for CTI and has eighteen years of experience analyzing and evaluating patents for acquisition and licensing.[7]  LCS is a wholly owned subsidiary of and is controlled by CTI.[8]  On August 2, 2013, Roop enrolled in the TrueBlue Program via JetBlue's website.[9]  By enrolling in the TrueBlue Program, Roop agreed to the JetBlue Terms, including the mandatory forum-selection clause.  Unbeknownst to JetBlue at the time, Roop was surreptitiously searching JetBlue's secure website to gather information on behalf of CTI to use against JetBlue in litigation.

On August 20, 2013—a mere eighteen days after Roop enrolled in the TrueBlue Program and affirmatively consented to the JetBlue Terms—LCS filed suit in the U.S. District Court for the Eastern District of Texas accusing JetBlue of infringing the '023 and '550 Patents.[10]  Specifically, LCS contends that JetBlue infringes the patents-in-suit by operating a computerized system whereby users convert loyalty points into other units for acquiring goods or services.[11]  In support of LCS's allegations, LCS subsequently served claim charts incorporating screenshots taken from Roop's TrueBlue account on August 2, 2013.[12]

---

[7] *See* Ex. 3, CTI, Form 10-k, p. 31.

[8] *See* Ex. 3, p. 4 ("On August 20, 2013, CTI's wholly owned subsidiary, Loyalty Conversion System Corporation, filed 10 separate patent infringement lawsuits in the United States District Court for the Eastern District of Texas . . . in connection with our Loyalty Conversion Systems patent portfolio"). *Id.* at p. F-7 ("We currently **own or control** 9 patent portfolios which we have identified for patent monetization: . . . Loyalty Conversion Systems . . . .") (emphasis added).

[9] *See* Ex. 4, Morgan Decl., ¶ 11.

[10] The case is styled *Loyalty Conversion Systems Corp. v. JetBlue Airways Corp.*, Civil Action No. 2:13-cv-00662.

[11] *See* Ex. 5, LCS's Original Complaint, ¶ 4.

[12] *See* Ex. 6, LCS's claim chart related to American Express's Membership Rewards Program and the '550 Patent, which was served as part of LCS's P.R. 3-1 and 3-2 Disclosures.

Prior to filing suit in Texas, Roop, acting on behalf of CTI, agreed to be bound by the JetBlue Terms. As discussed above, the JetBlue Terms require LCS's patent-infringement action be brought in New York County, New York. Accordingly, LCS and CTI should be enjoined from prosecuting their claims in the Eastern District of Texas.

**ARGUMENT**

To justify preliminary relief, JetBlue must show, first, either (a) there is a likelihood it will succeed on its claim that the state and federal courts of New York County, New York have exclusive jurisdiction over LCS's patent-infringement claims filed in Texas or (b) serious questions going to the merits exist to make them a fair ground for trial, with a balance of hardships tipping decidedly in JetBlue's favor; and, second, JetBlue is likely to suffer irreparable injury if preliminary relief is not granted. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010). District courts possess wide discretion in deciding whether to grant preliminary injunctions,[13] and, as outlined below, an injunction is warranted here.

**I.      JetBlue will likely succeed on its claim that this Court possesses exclusive jurisdiction over LCS's claims brought in the Eastern District of Texas.**

Defendants entered into a valid, enforceable contract containing a forum-selection clause requiring that lawsuits related to their access to, dealings with, or use of JetBlue's websites be brought in the state or federal courts of New York County, New York. LCS then filed its patent-infringement suit against JetBlue in the Eastern District of Texas in direct violation of its agreement with JetBlue. As shown below, the forum-selection clause is valid and enforceable, and LCS is be required to litigate its claims in New York.

---

[13] *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).

A.     **The forum-selection clause is mandatory, valid, and enforceable.**

Parties may consent to personal jurisdiction through forum-selection clauses in contracts. *See Univ. Grading Serv. v. eBay, Inc.*, No. 08-cv-3557, 2008 WL 2029796, at *14 (E.D.N.Y. June 10, 2009).   In fact, there is a strong presumption in favor of enforcing forum-selection clauses.  *Jalee Consulting Group, Inc. v. Xenoone, Inc.*, 908 F. Supp. 2d 387, 393 (S.D.N.Y. 2012).  Forum-selection clauses "carry an economic benefit to at least one of the parties that is typically reflected in the overall economics of the contract" and as such are "bargained for terms of the contract that deserved to be honored by courts." *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03-cv-5262, 2004 WL 421793, at *3 (S.D.N.Y. Mar. 5, 2004).

Given the strong public policy in favor of enforcing forum selection clauses, they are *prima facie* valid and should be enforced unless enforcement is shown by the opposing party to be "unreasonable" under the circumstances. *Jalee Consulting*, 908 F. Supp. 2d at 393.  There are four circumstances in which a forum-selection clause may be deemed unreasonable and thus unenforceable:

> (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citations and internal quotation marks omitted).  A party seeking to avoid enforcement on these grounds bears the "***heavy burden*** of making a ***strong showing***" to overcome the presumption of validity. *Eslworldwide.com, Inc. v. Interland, Inc.*, No. 06-cv-2503, 2006 WL 1716881, at *2 (S.D.N.Y. June 21, 2006) (emphasis added).  Indeed, "mere difficulty and inconvenience is insufficient to

establish the unreasonableness of enforcing a forum-selection clause." *Jalee Consulting*, 908 F. Supp. 2d at 396.

Moreover, JetBlue gave clear notice of the mandatory forum-selection clause to CTI. A forum-selection clause is reasonably communicated if it is phrased in clear and unambiguous language. *Magi XXI, Inc. v. Stato Della Città Del Vaticano*, 818 F. Supp. 2d 597, 604-05 (E.D.N.Y. 2011). It is viewed as mandatory "when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). Notice of the exclusive jurisdiction was unquestionably communicated to Roop (and therefore the other Defendants) given the mandatory "must" language contained in the unambiguously-phrased forum-selection clause provided in standard font in the main body of the Website Terms.

In short, given the strong presumption of enforcing forum-selection clauses and the heavy burden required to avoid enforcement, the clause contained in the JetBlue Terms is enforceable against CTI and LCS.

**B.      The broadly-worded forum-selection clause covers LCS's patent infringement claims in Texas.**

Courts not only prefer to enforce forum-selection clauses, they also interpret them broadly. *Univ. Grading Serv.*, 2008 WL 2029796, at *14. When determining their scope, courts look to the "substance of th[e] claims, shorn of their labels," and connect the substance of the claims "to the precise language of the clause." *Phillips*, 494 F.3d at 383. Language characterizing the scope of a forum-selection clause is divided into two categories: (1) the narrower, "arising under," "arise from," or "arise out of" language; and (2) the broad, "relating to," "in connection with," or "associate with" language. *Prod. Res. Group, LLC v. Martin Prof'l*, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012).

The forum-selection clause at issue here uses the term "related to" in designating its scope.[14]  The term "related to" is "*extremely broad*."  *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580(HB), 2008 WL 4833001, at *8 (S.D.N.Y. Nov. 5, 2008) (emphasis added).  Indeed, it "is not necessarily tied to the concept of a causal connection." *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001).  Moreover, the scope of the forum-selection clause binding CTI and LCS is even broader than most because the clause is not tied merely to lawsuits related to the JetBlue Terms; rather, it encompasses lawsuits related to the user's "access to, dealings with, or use of" JetBlue's websites—a key distinction.[15]

LCS's patent-infringement suit is squarely related to its "access to, dealings with, or use of" JetBlue's websites.  Indeed, LCS relies on screen shots of JetBlue's secure website to establish its theory of infringement in its Disclosure of Asserted Claims and Infringement Contentions served in the Texas lawsuit under Local Patent Rule 3-1.  LCS's infringement contentions include at least one screenshot prepared by Roop from information he obtained during his unauthorized access to JetBlue's website before LCS filed suit.[16]  The forum-selection clause therefore covers LCS's patent-infringement claims.

## II.     Serious questions going to the merits exist to make them fair ground for trial and the balance of hardships tips decidedly in JetBlue's favor.

Even if the Court finds JetBlue has failed to demonstrate a likelihood of success on the merits, a preliminary injunction is still warranted because serious questions going to the merits exist and the balance of hardships weighs in JetBlue's favor.

---

[14] *See* Ex. 2-A, § 13.4.2.
[15] *Id.*
[16] *See* Ex. 6.

The "serious questions" standard permits a district court to grant a preliminary injunction when "it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup*, 598 F.3d at 35. This standard provides courts with flexibility when the probability of success is less than likely or uncertainty is present. *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) ("[I]f the other elements are present . . . it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation."). Indeed, requiring a showing in every case that the "ultimate success on the merits is more likely than not is unacceptable as a general rule." *Citigroup*, 598 F.3d at 35 (internal quotation marks omitted). The serious questions standard allows courts to shed the shackles confining preliminary injunctions to legally and factually basic cases. *See id.* ("Preliminary injunctions should not be mechanically confined to cases that are simple or easy."). After all, the very purpose of preliminary injunctions is to provide temporary relief based on an initial estimate of the strength of the movant's claims prior to fully resolving the issues at trial. *Id.* at 35-36. Limiting the granting of preliminary injunctions to "cases that do not present significant difficulties would deprive the remedy of much of its utility." *Id.* at 36 (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.3 (2d ed. 2009).

Serious questions undeniably exist concerning the applicability of the forum-selection clause to LCS's patent infringement claims. Yet, even a merely non-frivolous argument regarding the scope of a forum-selection clause supports a preliminary injunction. *See, e.g., Gen. Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011).

In *Protecht*, the parties had settled a previous action alleging patent infringement. *Id.* at 1357. The settlement agreement provided that the patent owner would not sue for infringement of the patents-in-suit based on products accused of infringement and anticipated future products. *Id.* It also contained a forum-selection clause specifying the District of New Mexico as the exclusive venue for disputes arising out of the agreement. *Id.* at 1357-58. Three years later, however, the patent owner filed a Section 337 action at the International Trade Commission and patent infringement action in the Northern District of California alleging infringement of two patents that were continuations of the patents at issue in the agreement. *Id.* at 1358. In response, the accused infringer filed suit in the District of New Mexico asserting declaratory-judgment claims for breach of contract, non-infringement, and invalidity. *Id.* The accused infringer also requested a preliminary injunction against litigation outside of its bargained-for forum—New Mexico. *Id.* The New Mexico district court granted the preliminary injunction enforcing the forum-selection clause of the settlement agreement. *Id.* It reasoned that the clause's "relating to or arising out of [the settlement agreement]" provision was triggered by assertion of the defense of implied license and thus there was a likelihood of success on the merits of applying the forum-selection clause. *Id.*

On appeal, the Federal Circuit found the implied license defense crossed the threshold required to trigger the "relating to or arising out of" provision of the forum-selection clause. *Id* at 1359. Consequently, it affirmed the district court's grant of preliminary relief on the grounds that the accused infringer was likely to succeed on the merits of applying the forum-selection clause. *Id.* In doing so, the Court stated "[t]his case presents a non-frivolous dispute regarding the scope of a patent license." *Id.* And, since the outcome of that dispute would determine whether the patent owner could sustain its infringement suit, there was "no question . . . the

dispute relate[d] to or [arose] out of" the settlement agreement. *Id.* (internal quotation marks omitted).

LCS's claims unquestionably relate to Defendants' access to, dealings with, or use of JetBlue's websites. LCS itself included screenshots of JetBlue's website in its contentions purporting to show how JetBlue infringes LCS's patent, and those screenshots were ***created from Defendants' use of JetBlue's websites even before LCS filed suit against JetBlue.***[17] Serious questions clearly exist as to the merits of JetBlue's contention that the forum-selection clause applies to LCS's Texas claims.

Further, the balance of hardships weighs heavily in JetBlue's favor. In the absence of preliminary relief, JetBlue will be forced to litigate related issues on multiple fronts and clearly be deprived of its bargained-for forum. By virtue of the forum-selection clause—to which CTI and LCS undeniably agreed—JetBlue is entitled to litigate the claims brought against it in the forum of its choice—the state and federal courts of New York County, New York. Defending LCS's claims in Texas is a clear hardship JetBlue contracted to avoid.

LCS, on the other hand, faces no hardship in litigating its claims in this forum. Indeed, Defendants' principal places of business are in the same building in Melville, New York. And in fact, CTI (LCS's parent company) recently filed three patent-infringement suits in the Eastern District of New York—almost 1,500 miles closer to Defendants' headquarters than where the Texas lawsuit is pending—through its wholly owned subsidiary Secure Web Conference Corporation.[18] LCS certainly cannot claim litigating in a forum it knowingly bargained for is

---

[17] *See* Ex. 6.
[18] *See* Ex. 3, p. 4. The lawsuits referenced are styled: *Secure Web Conference Corp. v. Logitech, Inc.*, No. 2:13-cv-03809-JS-WDW; *Secure Web Conference Corp. v. Citrix Systems, Inc.*, No. 2:13-cv-03810-JS-AKT; and

burdensome, especially given that its parent company recently filed multiple suits in a neighboring District and it can obtain the same relief here as it can in the Eastern District of Texas.

Accordingly, because serious questions going to the merits exist and the balance of hardships leans decidedly in JetBlue's favor, preliminary relief is warranted.

### III. JetBlue will suffer irreparable harm if preliminary relief is withheld because it will be deprived of its bargained-for forum.

Unless an injunction is granted enjoining CTI and LCS from prosecuting their claims against JetBlue in Texas, JetBlue will suffer irreparable harm. *See Gen. Protecht*, 651 F.3d at 1363-65 (affirming District Court's finding of irreparable harm absent preliminary injunction because movant would be "deprived of its bargained-for forum" and "would likely be forced to litigate the same issues on multiple fronts at the same time"). JetBlue is being deprived of its bargained-for forum, and no monetary award can adequately compensate it for Defendants' breach. *See Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 391 (S.D.N.Y. 1997) (finding deprivation of right to arbitrate constitutes irreparable harm); *Int'l Fashion Prods., B.V. v. Calvin Klein, Inc.*, No. 95 Civ. 0982 (JFK), 1995 WL 92321, at *2 (S.D.N.Y. Mar. 7, 1995) (finding irreparable harm where defendant was forced to defend itself in foreign forum in contradiction to agreement to litigate in New York). Indeed, the very reason courts favor forum-selection clauses is that they provide an economic benefit to one of the parties that is reflected in the overall economics of the agreement and as such are bargained-for terms. *Mercury West A.G.*, 2004 WL 421793, at *3. Continuing litigation in Texas effectively reduces the forum-selection clause to a nullity and causes irreparable harm and disruption to

*Secure Web Conference Corp. v. Microsoft Corp.*, No. 2:13-cv-02642-JS-AKT.

JetBlue's business. Accordingly, absent an injunction, JetBlue will continue to suffer irreparable harm by being deprived of its contractual right to defend itself in its bargained-for forum.

## CONCLUSION

CTI agreed to the forum-selection clause providing for exclusive jurisdiction in the state and federal courts of New York County, New York for disputes related to LCS's access or use of JetBlue's secure website. Weeks later, CTI directed its wholly owned and controlled subsidiary, LCS, to file suit for patent infringement against JetBlue in the Eastern District of Texas based on evidence obtained by accessing and using JetBlue's secure website. JetBlue gave Defendants notice in plain, unambiguous language of its bargained-for forum. Yet, CTI and LCS chose to file suit in Texas in direct conflict with the mandatory, valid, and enforceable, forum-selection clause that clearly encompasses LCS's claims.

JetBlue has carried its burden to establish a sufficiently serious question going to the merits of its claim. It has exceeded this burden by demonstrating a likelihood of success on the merits. It has also shown the balance of equities tips strongly in JetBlue's favor. And lastly, it has illustrated the irreparable harm it will suffer if forced to continue to litigate these claims outside of the forum it bargained for in the agreement. Accordingly, JetBlue requests this Court enjoin Defendants from prosecuting the patent-infringement lawsuit in the Eastern District of Texas.

Dated:  March 14, 2014

Respectfully submitted,

**SHER TREMONTE LLP**

By:

Michael Tremonte
mtremonte@shertremonte.com
80 Broad Street, Suite 1301
New York, New York  10004
(212) 202-2603

-and-

**KLEMCHUK KUBASTA LLP**

Casey Griffith (*of counsel*)
Texas State Bar No. 24036687
casey.griffith@kk-llp.com

Austin Champion (*of counsel*)
Texas State Bar No. 24065030
austin.champion@kk-llp.com

8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
214.367.6000 telephone
214.367.6001 facsimile

**ATTORNEYS FOR PLAINTIFF
JETBLUE AIRWAYS CORPORATION**

# EXHIBIT 1

## DECLARATION OF JACLYN VIDA

1.　　　My name is Jaclyn Vida.  I am over the age of twenty-one years and am competent to make this Declaration.  I have personal knowledge of the facts stated in this Declaration, and they are true and correct.

2.　　　I am Manager, Loyalty Marketing for JetBlue Airways Corporation ("JetBlue").  I work at JetBlue's headquarters in Long Island City, New York.  JetBlue has employed me since before June 5, 2013.

3.　　　I am personally familiar with the TrueBlue Terms and Conditions to which all users enrolling in the TrueBlue program through JetBlue's website located at http://www.JetBlue.com are required to agree.  Attached hereto as Exhibit A is a true and correct copy of those TrueBlue Terms and Conditions.

4.　　　Paragraphs 1.1, 11.1, 13.5, 13.9, and 13.10 of those TrueBlue Terms and Conditions have not been modified since June 4, 2013.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on this 12th day of March, 2014

Jaclyn Vida

# EXHIBIT 1A



# TrueBlue Terms and Conditions

## 1. General

1.1 Thank you for your interest in the TrueBlue® Program ("TrueBlue" or "Program"). TrueBlue is a customer rewards program offered by JetBlue Airways Corporation ("JetBlue") whereby JetBlue customers can earn and use TrueBlue points ("TrueBlue Points" or "Points") in accordance with the terms and conditions below. The following terms and conditions (hereinafter "Program Rules" or "Rules") apply to TrueBlue. By gaining access to, using this site, or enrolling in TrueBlue you agree to be bound by these Program Rules, along with JetBlue's legal terms located at www.jetblue.com/legal, including, without limitation, the Website Terms and Conditions, Flight Terms and Conditions, and Getaways Terms and Conditions. JetBlue reserves the right to change or cancel these Program Rules, in whole or in part, at any time, in its sole discretion, without notice to or liability to you, by posting updated text on this site. Please review these Rules periodically to ensure you are aware of any changes and are familiar with the most current version. For clarity, any such change to or cancellation of these Program Rules will apply to all TrueBlue Members ("Members"), even those who enrolled before JetBlue made such a change or cancellation.

## 2. Membership/Program Registration

2.1 TrueBlue is a paperless, electronic customer loyalty program. Program registration is available online at www.jetblue.com/trueblue, or through the JetBlue call center at 1-800-JETBLUE. Hearing or speech impaired: TTY/TDD 1-800-336-5530.

2.2 Membership in TrueBlue is for individuals only. All other entities or parties, including but not limited to, corporations, animals, travel agencies, etc., are not eligible to enroll as Members or earn Points or receive any benefits in connection with the Program. Members must enroll as individuals and may not pool or combine Points with other Members, even if such Members are within the same family or household. Each Member may have only one (1) TrueBlue account.

2.3 Each Member must provide his or her first name, last name, gender, date of birth, address, telephone number, home airport, favorite destination, and a valid individual e-mail address in order to register and enroll in TrueBlue. Requests for name changes may require supporting legal documentation. For persons under the age of 13, please see Section 6.2 below.

2.4 While JetBlue issues monthly electronic statements for TrueBlue accounts, each Member shall be responsible for remaining knowledgeable about their account information, including, but not limited to, accumulated Points, redeemed Points, Point expiration and the Program Rules. Account information can be found at www.jetblue.com/trueblue.

## 3. Accumulation/Earning TrueBlue Points

3.1 Members may earn Points in the following ways: (1) purchasing a JetBlue flight (i.e., a flight operated and marketed by JetBlue); (2) purchasing a JetBlue Getaways vacation package; (3) using the JetBlue Card from American Express on eligible purchases (as set forth in the American Express Cardmember Agreement); and/or (4) through special offers and/or programs with JetBlue's business partners. Residents of Puerto Rico may also earn Points by using the Santander JetBlue MasterCard on eligible purchases (as set forth in the Santander Cardholder Agreement).

3.2 Members will earn three (3) Points per dollar spent on their individual JetBlue flight (i.e., a flight operated and marketed by JetBlue) plus three (3) bonus Points per dollar for flights booked on jetblue.com, for a total of six (6) Points per dollar. Points will be earned on the base fare of the flight only. Points will not be earned on government taxes/fees, travel insurance or other fees or charges (e.g., change/cancel fees, etc.). You will only earn Points based on the eligible amount spent on your individual flight. You will not earn any Points for amounts spent on any other traveler's flight, even if such traveler is on your booking and/or you paid for the flight. If you are traveling with other TrueBlue Members, each Member's TrueBlue account information (name and TrueBlue number) must be entered for the booking in order for every Member to earn TrueBlue Points on their individual JetBlue flight. Members may accumulate Points for multiple seats purchased for themselves on a single flight.

3.3 Members will earn six (6) TrueBlue Points per dollar spent on their individual per-person portion of a JetBlue Getaways vacation package. Points will be earned on the base price (air + hotel) of the package and on the base price of any car rental and activities purchased at the time of booking. Points will not be earned on government taxes/fees, travel insurance, or other fees or charges (e.g., change/cancel fees, activities added after booking, food, airport transfers, etc.) You will only earn Points based on the eligible amount spent on your individual per-person cost of the Getaways package. You will not earn any Points for amounts spent on any other traveler's Getaways package, even if such traveler is on your booking and/or you paid for the package. If you are traveling with other TrueBlue Members, each Member's TrueBlue account information (name and TrueBlue number) must be entered for the booking in order for every Member to earn TrueBlue Points on their individual per-person portion of the JetBlue Getaways vacation package.

3.4 TrueBlue Members who make purchases with JetBlue using their JetBlue Card from American Express can earn two (2) TrueBlue Points per dollar spent. Cardholders also accrue one (1) TrueBlue Point for each U.S. dollar of eligible purchases on their JetBlue Card account. Eligible purchases are purchases of goods or services minus returns and credits, and do NOT include: fees, interest charges, balance transfers, cash advances, purchases of American Express® Travelers Cheques, American Express® Gift Cheques, purchases or reloading of prepaid cards, or purchases of cash equivalents. Please see your current Cardmember TrueBlue Point Agreement for full terms and conditions, which are subject to change without notice.

3.5 JetBlue may, in its sole discretion, from time to time, offer Members the opportunity to earn additional Points through the purchase of JetBlue ancillary products or services (e.g., Even More Space seats, etc.), bonus offers and/or offers in connection with JetBlue business partners. These offers may be temporary in nature. JetBlue reserves the right to modify or eliminate such offers at any time. These offers are void where prohibited by law. The amount of Points offered is subject to JetBlue's sole discretion. All special offers involving Points or the Program are subject to these Program Rules. In addition to these Program Rules, JetBlue's business partners may have special terms and conditions that provide additional rules for the earning, transferring, accumulating, and redeeming of Points. Business partners are independent entities and are not agents, employees, or subcontractors of JetBlue, and JetBlue is not responsible for their acts or omissions (including, without limitation, their solicitation efforts) or any products or services supplied by them (including, without limitation, the nature or quality of their products or services).

3.6 TrueBlue Members that are residents of Puerto Rico who make purchases with JetBlue using their Santander JetBlue MasterCard can earn two (2) TrueBlue Points per dollar spent. Cardholders also accrue one (1) TrueBlue Point for each U.S. dollar of eligible purchases on their Santander JetBlue MasterCard account. Please see your current Santander

JetBlue MasterCard cardholder agreement for full terms and conditions, which are subject to change without notice.

3.7 There may be some delay between eligible transactions and the posting of Points in your TrueBlue Account.

3.8 To receive Points for eligible activities, the name and TrueBlue account number provided in connection with the reservation or purchase must exactly match the name and TrueBlue account number registered with JetBlue. For example, and without in any way limiting the generality of the foregoing, for a flight purchase, the name associated with the TrueBlue account number provided for that flight purchase must exactly match the name of the traveler. Any discrepancy may delay or void receipt of Points.

3.9 To receive Points for the purchase of JetBlue flights or JetBlue Getaways, Members must provide their TrueBlue Membership number either:

- At time of purchase through www.jetblue.com;
- At time of purchase or before your flight through 1-800-JETBLUE. Hearing or speech impaired: TTY/TDD 1-800-336-5530.
- At travel agency where travel is booked;
- At check-in; or
- Retroactively, at www.jetblue.com pursuant to the following:

Any claim for un-credited Points must be received by JetBlue within ninety (90) days after the Points were earned from a qualifying JetBlue flight (i.e., a flight operated and marketed by JetBlue) or a JetBlue Getaways vacation package. You are responsible for ensuring that Points earned are properly credited to your TrueBlue account. If you believe that Points have been earned but not properly credited, you may be required to submit documentation or other proof satisfactory to JetBlue, which may include, without limitation, copies of boarding passes and receipts.

3.10 Except for retroactive Point requests for Points earned from eligible JetBlue flights (i.e., flights operated and marketed by JetBlue) and JetBlue Getaways vacation packages as set forth in Section 3.9 above, no retroactive Point requests will be granted. Members must provide their TrueBlue account number at the time of the activity or purchase eligible for Points and engage in such activity or make such purchase in accordance with all instructions, rules and restrictions associated with that particular qualifying activity or purchase offer. No requests for retroactive.

3.11 In the event Membership numbers cannot be attached at time of purchase for travel sold by travel agents, Members are invited to use an alternate method to receive Points as described above. JetBlue reserves the right to make exceptions to this rule at its discretion.

3.12 Points will not be awarded on unused, cancelled, forfeited, refunded or fraudulent travel bookings or purchases or activities, as determined by JetBlue in its sole discretion.

3.13 Certain travel is not eligible for earning Points. This includes, without limitation, the following: all travel purchased with Points, in whole or in part (including but not limited to Award Flights or Award Getaways), free ticket promotions including free or reduced rate travel, any travel services or products purchased as a part Cruise packages, charter flights, travel agency/industry reduced rate travel, unpublished fares, non-revenue travel (e.g., travel booked using a travel certificate, etc.), and travel subject to special provisions. JetBlue reserves the right to determine in its sole discretion which travel is eligible to earn Points.

3.14 JetBlue reserves the right to offer incentive bonuses to Members who book travel online through www.jetblue.com.

3.15 The activities and/or transactions eligible for earning Points, and/or the amount of Points available to be accrued, are subject to change by JetBlue, at any time, without notice or liability.

## 4. Redemption of TrueBlue Points for JetBlue Award Travel

4.1 You may redeem TrueBlue Points for the base fare of a JetBlue operated flight ("Award Flight"). You may also use a combination of TrueBlue Points and a monetary payment for JetBlue Getaways vacation packages ("Award Getaways"). Both Award Flights and Award Getaways may be referred to herein individually and collectively as "Award Travel". JetBlue also may offer, in its sole discretion, opportunities to redeem Points for other products or services. Points may not be redeemed for any product or service except as expressly permitted by JetBlue.

4.2 For Award Flights, Points can be used only for flights operated and marketed by JetBlue and certain code-share or interline flights determined by JetBlue in its sole discretion from time to time; provided, however that Point redemption on such code-share or interline flights shall be subject to blackout dates as determined by the operating partner. The Points required to earn an Award Flight vary by flight, but the minimum number is 5,000 Points and $2.50 taxes/fees. The number of Points required for a particular flight is based on the published base fare at the time of booking, which depends on, among other things, the flight chosen and applicability of peak travel periods. The number of Points required for a particular flight may change at any time until the booking is confirmed and Points are applied as payment for the Award Flight. Taxes and fees apply to Award Flights, are the responsibility of the passenger, and will vary based on your departure and destination cities. For domestic award flights, taxes/fees range from $2.50-$5.00 for one-way and $5.00-$10.00 for roundtrip flights. For international award flights, taxes/fees range from $2.50-$82.10 for one-way and $22.34-$102.10 for roundtrip flights. Award flight fares also do not include fees for oversized/overweight/extra baggage, $25 fee per person for fares purchased by phone or at an airport or ticket office, and other fees for products/services sold separately. To view baggage fees and other optional services and fees, click here. Taxes and fees must be paid at time of Award Flight booking and are subject to change as required by law. Any change to your booking may result in a change to the number of Points required, and JetBlue's standard change fee/policy will apply. If you do not board your Award Flight and fail to cancel prior to departure, all Points used in connection with the Award Flight will be forfeited. Any change or cancellation to your Award Flight booking is subject to the JetBlue standard change and cancellation fees and policies, available here.

4.3 The Points and dollar amount required to earn an Award Getaway vary by package. The number of Points and the dollar amount required for a particular Getaways package will depend on, among other things, the flight, destination and hotel chosen and the applicability of peak travel periods. Award Getaway fares do not include fees for products or services sold separately or not expressly included as part of the package price (e.g., car rental costs and related taxes and fees, food, beverages, travel insurance, in-flight movies, hotel parking, hotel/resort fees, etc.). The number of Points and dollar amount required for a particular Getaways package may change at any time until the booking is confirmed and Points and the monetary payment are applied as payment for the Award Getaway. Any change to your booking, where permitted in JetBlue's sole discretion, may result in a change to the number of Points and/or monetary payment required, and JetBlue Getaways' standard change fee/policy will apply. The amount of points and the amount of the monetary payment required for a particular package may not be changed or re-allocated in any way. Points used towards a Getaways purchase must be from one TrueBlue member's account; points may not be combined from multiple TrueBlue accounts. If you do not depart for your Award Getaway and fail to cancel prior to departure, all Points and monetary amounts used in connection with the Award Getaway will be forfeited. Monetary payments must be made at time of booking using a major credit card. Any change or cancellation to your Award Getaway booking is subject to the JetBlue Getaways standard change and cancellation fees and policies.

4.4 Points may be redeemed for Award Travel by calling 1-800-JETBLUE, or online at www.jetblue.com/trueblue. In order to redeem Award Travel online, Members must sign in to their TrueBlue account so that the number of Points in the account can be validated. $25 fee per person applies for Award fares purchased by phone or at an airport or ticket office.

4.5 Flights or Getaways purchased with a monetary payment may not be exchanged or refunded for payment with Points, in whole or in part.

4.6 JetBlue reserves the right to revise, amend, modify or discontinue the products or services for which Members may use Points (in whole or in part) and/or the amount of Points required to redeem any product or service (including but not limited to Award Travel) in connection with the Program.

4.7 JetBlue's Flight Terms and Conditions and Getaways Terms and Conditions (including but not limited to change/cancel policies and fees) apply to Award Flights and Award Getaways, respectively. In the event a Member cancels Award Travel, Points will be re-deposited to the Member's Account. Points used to purchase the Award Flight or Award

Getaways, respectively, in the event a Member cancels riv and/or travel, Points will be re-deposited to the member or Account. Points used to purchase an Award flight or future

Getaways will be automatically forfeited if a passenger does not cancel prior to scheduled departure.

4.8 Air travel on JetBlue (including Award Flights and the air portion of Award Getaways) is governed by JetBlue's Contract of Carriage, a copy of which is available for inspection at all JetBlue ticket counters and at www.jetblue.com/p/jetblue_coc.pdf, and JetBlue's International Passenger Rules Tariffs on file with the U.S. Department of Transportation. Please review these documents for travel requirements and restrictions, liability and baggage limitations, and requirements for the travel of minor children. Please visit www.jetblue.com/travel/baggage for additional information on baggage requirements and restrictions. JetBlue's Passenger Service Plan and Contingency Plan for Lengthy Tarmac Delays also apply to flights operated by JetBlue. Click here for details. For clarity, these provisions only apply to the extent applicable to the air portion of a Getaways vacation package and do not apply to the non-air portion(s) of a Getaways vacation package.

4.9 For domestic and international travel, passengers must present government-issued photo identification. For international travel, please contact the relevant embassy or consulate for details on travel documentation requirements. It is your responsibility to verify your flight information and follow JetBlue's recommended check-in times, which can be found at: www.jetblue.com/travel/airports. Failure to do so may result in the loss of your seat to another passenger and/or denied boarding.

## 5. Points Expiration

5.1 As of June 17, 2013, TrueBlue Points do not expire. Should a Member close his or her TrueBlue account, the Points in that account will be terminated. As set forth in these Program Rules, JetBlue has the right to cancel all or some of the Points in a TrueBlue Member's Account should JetBlue determine, in its sole discretion, that the Member has violated these Rules or otherwise engaged in fraud, misrepresentation, abuse or other improper conduct.

## 6. Privacy

6.1 For information on how JetBlue collects and uses personally identifiable information that you may provide us in the course of enrolling as a Member, or updating your profiles or preferences with TrueBlue, please visit our privacy policy at www.jetblue.com/legal/privacy, or by accessing the "Privacy policy" link at the bottom of the page.

6.2 TrueBlue is a general audience website. In order to update a profile of or sign up a child under the age of 13, the parent or legal guardian of such child must contact 1-800-JET-BLUE. Hearing or speech impaired customers should call TTY/TDD 1-800-336-5530.

## 7. TrueBlue Mosaic

7.1 Beginning October 26, 2012, certain Members may be eligible to receive the TrueBlue Mosaic badge. To earn the Mosaic badge, the Member must have, within the calendar year: 1) purchased and flown thirty (30) JetBlue flight segments (i.e., flights marketed and operated by JetBlue) and earned a minimum of 12,000 base flight Points; or 2) earned 15,000 base flight Points. A "segment" means any origin-destination pair; a one-way flight (whether non-stop or including a connection) is one segment, and a roundtrip flight (whether non-stop or including a connection) is two segments. The following flights do not qualify as a "segment" for purposes of earning the TrueBlue Mosaic badge: flights booked using Points, in whole or in part (including but not limited to Award Flights), flights booked using a travel certificate, flights received as part of a free ticket promotions including free or reduced rate travel, flights purchased as a part of a Getaways or Cruise package, charter flights, flights booked with travel agency/industry reduced rates, and flights booked with unpublished fares. JetBlue reserves the right to determine in its sole discretion which flights qualify as a segment for purposes of TrueBlue Mosaic. Base flight Points are the three (3) points per dollar spent that Members earn on their individual JetBlue flight. All other Points, including but not limited to bonus Points, Points earned from the purchase of JetBlue Getaways, Points earned from using the JetBlue Card from American Express, Points earned from using the Santander JetBlue MasterCard, and Points earned from special offers or promotions, do not count toward earning the TrueBlue Mosaic badge.

7.2 The TrueBlue Mosaic badge is good for the remaining calendar year in which the Member earned the badge as well as the following calendar year only. By way of example only, if a Member earned the badge in October of 2013, the TrueBlue Mosaic badge would be valid from October to December 2013 and then for the full calendar year of 2014. The TrueBlue Mosaic badge is earned based on a Member's activity in the immediately preceding calendar year. A Member must qualify each calendar year in order to earn the TrueBlue Mosaic badge for the following year.

7.3 Members that have a valid TrueBlue Mosaic badge will receive certain additional benefits in connection with the Program: 1) complimentary access to Even More Speed at airports where Even More Speed is available and open; 2) the ability to redeem Points for Even More Space seats (the amount of Points required for redemption will vary by flight); 3) early boarding of JetBlue flights (i.e., flights operated and marketed by JetBlue); 4) their first and second checked bag free on Jetblue flights (subject to weight and size restrictions and exceptions for itineraries including flights marketed or operated by other carriers); 5) an additional three (3) Points per dollar spent on their individual JetBlue flight; and 6) a dedicated customer service line. For clarity, the three (3) additional bonus Points earned by a Member with a valid TrueBlue Mosaic badge will not count towards earning the TrueBlue Mosaic badge for the following calendar year. Beginning with bookings made on May 17, 2013, Members with a valid TrueBlue Mosaic badge will not pay the applicable JetBlue change/cancellation fee when they change or cancel their JetBlue flight or JetBlue Getaways vacation reservation by calling JetBlue. The change/cancel fee will also be waived for any traveler on the same reservation as the Mosaic member; the change/cancel fee for any other traveler not on that same reservation will still apply. Mosaic members must call JetBlue to change or cancel their reservation in order to receive the fee waiver benefit; any change or cancellation made online will not qualify for this benefit. For changes, a flight fare increase or Getaways package price increase may apply, and for Getaways, other Travel Supplier change or cancellation fees may still apply. For tickets booked through an entity other than JetBlue, booking agent or other third party change or cancellation fees may still apply. The Mosaic member will be responsible for any increase in fare or package price and for all change/cancellation fees other than the JetBlue change/cancellation fee, all of which must be paid at time of change or cancellation or when required by the party assessing the fee. As set forth in more detail in Section 10, JetBlue may, in its sole discretion and at any time, without notice or liability, revise, amend or cancel any or all benefits associated with the TrueBlue Mosaic badge.

7.4 Except as expressly stated in Section 7.3, a Member's receipt of a TrueBlue Mosaic badge in no way alters, constricts, expands or changes these Program Rules whatsoever. For clarity, TrueBlue Members with a valid TrueBlue Mosaic badge are considered Members, and the Program Rules apply to all Members.

## 8. Additional Terms Applicable to Holders of the JetBlue Card from American Express

8.1 See the Cardmember Agreement, which is between the JetBlue Cardmember and American Express Bank, FSB, for the terms and conditions that apply in connection with the accrual of Points and the transfer of Points to your TrueBlue account. The JetBlue Card from American Express is issued by American Express Bank, FSB and is subject to the terms and conditions of the Cardmember Agreement between the JetBlue Cardmember and American Express Bank, FSB.

8.2 If you initiate enrollment in TrueBlue at the time you apply for the JetBlue Card from American Express, you are required to complete registration at www.jetblue.com/trueblue and activate your TrueBlue account by logging into your TrueBlue Account with your temporary password. You will be required to agree to the applicable terms and conditions of the TrueBlue program before any TrueBlue Points can be redeemed.

## 9. Additional Terms Applicable to Holders of the Santander JetBlue MasterCard

7. Additional Terms Applicable to Holders of the Santander JetBlue MasterCard

9.1 See the Cardholder Agreement, which is between the Santander JetBlue MasterCard cardholder and Banco Santander, for the terms and conditions that apply in connection with the accrual of Points and the transfer of Points to your TrueBlue account. The Santander JetBlue MasterCard is issued by Banco Santander and is subject to the terms and conditions of the Cardholder Agreement between the cardholder and Banco Santander.

9.2 If you initiate enrollment in TrueBlue at the time you apply for the Santander JetBlue MasterCard, you are required to complete registration at www.jetblue.com/trueblue and activate your TrueBlue account by logging into your TrueBlue Account with your temporary password. You will be required to agree to the applicable terms and conditions of the TrueBlue program before any Points can be redeemed.

## 10. Changes to these Program Rules, TrueBlue Point Levels and Award Travel Levels

10.1 JetBlue may, among other things, in its sole discretion, for any reason, and without notice or liability to the TrueBlue Member (except as stated in 9.1 (iv) below): (i) withdraw, limit, modify, or cancel Points or Award Travel; (ii) suspend or cancel any Member's TrueBlue account (and/or seize any Points associated with such account and/or suspend or cancel any TrueBlue Mosaic badge associated with such account) if that Member has violated these Program Rules, in JetBlue's sole discretion; (iii) change, modify, delete (in whole or in part), supplement and/or cancel any Program Rules, regulations, benefits, or policies in connection with the Program, including but not limited to, TrueBlue Point balances, redemption requirements, qualifications for the TrueBlue Mosaic badge, participant affiliations, conditions of participation, rules for earning, redeeming, retaining or forfeiting Points, rules for the use of Points, awards or benefits in connection with the Program, Point expiration rules, etc.; (iii) introduce, add, change, modify, delete (in whole or in part), or supplement Award Travel restrictions, including but not limited to blackout dates, capacity controls, and limitations on the number of seats available for Award Travel, and/or otherwise restrict the continued availability of Points or Award Travel or special offers; or (iv) terminate the Program with six months notice, which notice shall appear on the JetBlue website. JetBlue may make any one or more of these changes even though such changes may affect the Member's ability to use the Points that the Member has already accumulated.

## 11. Responsibility and Limitation of Liability

11.1 JetBlue shall not be held liable for, and you hereby waive any claims against JetBlue for, any damages whatsoever (whether direct, indirect, special, punitive, exemplary incidental, consequential or otherwise, whether stated in contract, tort, strict liability or otherwise, and even if JetBlue has been advised of the possibility of such damages) arising out of (a) your participating in the Program (including but not limited to the accrual or use of Points or any travel or travel-related activities in connection with the Program); (b) the acts, omissions, products or services of any person or company rendering services or providing offers in connection with the Program; and/or (c) any failure or delay arising out of use of this website, including, without limitation, error, omission, interruption, defect, delay in transmission, or computer virus. Without limiting the generality of the foregoing, if JetBlue improperly denies a Member Points, Award Travel, or some other benefit, the Member's exclusive remedy shall be the issuance of the improperly denied Points, Award Travel or such other alternative benefit as determined by JetBlue in its sole discretion, and JetBlue shall have no additional liability whatsoever. In no event shall JetBlue be liable to any Member or anyone claiming through a Member or on a Member's behalf, for any other damages, including but not limited to direct, indirect or consequential damages, or lost revenue or profits, arising out of JetBlue's acts or omissions in connection with the TrueBlue Program, whether or not foreseen, even if advised of the possibility thereof.

11.2 JetBlue shall not be liable for damages for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to, weather conditions, acts of God, force majeure, strikes, civil commotions, embargoes, and wars or other hostilities, whether actual, threatened or reported, and/or any other cause beyond the reasonable control of JetBlue.

## 12. Disclaimer of Warranty

12.1 JetBlue makes no warranty of any kind regarding the Program. The Program is provided "as is" and without any warranty of any kind, either express or implied. JETBLUE EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS, INCLUDING WITHOUT LIMITATION ANY EXPRESS OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, AND/OR THOSE ARISING BY STATUTE OR OTHERWISE IN LAW FROM DEALING OR USAGE OF TRADE.

## 13. Miscellaneous Provisions

13.1 Points are non-transferable and may not be combined among TrueBlue Members, their estates, successors and assigns. Accrued Points and Award Travel do not constitute property of Member and are non-transferable (i) upon death, (ii) as part of a domestic relations matter, or (iii) otherwise.

13.2 Points and Award Travel have no cash value and may not be redeemed for cash. Points may not be re-deposited unless a Member properly cancels Award Travel in accordance with all applicable cancellation policies.

13.3 Except to the extent permitted through JetBlue's business partner Points.com or as expressly authorized by JetBlue, Points or Award Travel may not be sold, bartered, or

otherwise exchanged for value. Any Points or Award Travel that are/is purchased, sold, bartered, or otherwise exchanged for value are/is void. Violators (including any Member who uses a purchased or bartered award) may be liable for damages and litigation costs, including the actual cost of travel and/or JetBlue's attorneys' fees incurred in enforcing this rule.

13.4 Award Travel, accumulated Points and special offers are subject to applicable government regulations and are void where prohibited by law.

13.5 Fraud, misrepresentation, abuse, improper conduct (as determined by JetBlue in its sole discretion), or violation of applicable rules (including, but not limited to, JetBlue's Contract of Carriage, tariffs and Program Rules) may result in administrative and/or legal action by appropriate governmental authorities and/or JetBlue. Such action may include, without limitation, the forfeiture of all Points and/or Award Travel, forfeiture of any accumulated Points in a TrueBlue Member's Account, deduction of TrueBlue Points, as well as cancellation of the Account and proscription of the Member's future participation in TrueBlue. In addition, JetBlue reserves the right to take appropriate legal action to recover damages, including attorneys' fees, incurred in prosecuting any lawsuit. Any violation of such applicable rules as described above includes, but is not limited to, Members who are disruptive or otherwise threaten or endanger the safety and security of JetBlue Crewmembers or other JetBlue Customers as described in the JetBlue Contract of Carriage and tariffs.

13.6 JetBlue reserves the right to audit, at any time and without notice to TrueBlue Members, any and all TrueBlue accounts to ensure compliance with these Program Rules. If the audit reveals discrepancies or possible violations of these Program Rules or JetBlue believes that such audit will reveal discrepancies or possible violations of these Program Rules, JetBlue may delay or cancel the processing of Travel Award redemption requests, and/opr cancel any outstanding Award Travel, delay the posting of accumulated Points and/or withhold statements until the audit is completed.

13.7 You are responsible for referencing your online Program account information and these Program Rules in order to understand your rights, responsibilities and status under the TrueBlue Program. A copy of the most current Program Rules may be inspected on the JetBlue website at www.jetblue.com/trueblue. JetBlue shall attempt to advise active members of various matters of interest through its website, but JetBlue shall have no liability for any failure to do so. JetBlue shall have no liability for correspondence, mail or e-mail, which is lost, delayed, or misdirected. Members are responsible for maintaining a current email address.

13.8 For questions about TrueBlue, please visit the JetBlue website at www.jetblue.com/trueblue or call JetBlue at 1-800- JETBLUE. Hearing or speech impaired: TTY/TDD 1-800-

13.8 For questions about TrueBlue, please visit the JetBlue website at www.jetblue.com/trueblue or call JetBlue at 1-800-JETBLUE. Hearing or speech impaired: TTY/TDD 1-800-336-5530.

13.9 JetBlue assumes no responsibility for the actions of business partners in connection with any program that provides for the transfer or accumulation of Points.

13.10 All rules are subject to interpretation by JetBlue. Headings used in these Program Rules are for convenience purposes only and shall not be used in interpreting the Program Rules.

13.11 Any disputes in connection with TrueBlue or these Program Rules shall be governed by New York law, exclusive of New York choice of law rules, and the TrueBlue Member agrees to the jurisdiction of the New York courts to resolve any dispute in connection with TrueBlue or these Program Rules.

13.12 Income tax liability on JetBlue Travel Awards, if any, is the responsibility of the Member.

**Same smart app. More smartphones.**
Download the JetBlue mobile app for iPhone and Android now!

Search jetblue.com

**SoFly™** View and share JetBlue pics and travel tricks

**Like us on Facebook**

**Follow us at @JetBlue**

**Visit us on YouTube**

**BlueTales Blog** Your destination for all things JetBlue and beyond

**Get to know us**
About us
Press room
Promotions
CSR
Mobile
ShopBlue

**Services**
Partner airlines
Corporate
Cargo
Travel agents
Special assistance
Gift Cards
Travel Insurance

**Talk to us**
Contact us
Work here
Legal
Privacy
Site map
Website feedback

©2014 JetBlue Airways

# EXHIBIT 2

## DECLARATION OF SHELLEY PEDERSON

1.      My name is Shelley Pederson.  I am over the age of twenty-one years and am competent to make this Declaration.  I have personal knowledge of the facts stated in this Declaration, and they are true and correct.

2.      I am Manager, Digital Commerce for JetBlue Airways Corporation ("JetBlue").  I work at JetBlue's headquarters in Long Island City, New York.  JetBlue has employed me since before June 5, 2013.

3.      I am personally familiar with the Website Terms and Conditions that are displayed when the user clicks on the "Website Terms and Conditions" hyperlink that is shown in blue lettering at http://www.jetblue.com/legal.  Attached hereto as Exhibit A is a true and correct copy of those Website Terms and Conditions.

4.      The terms of those Website Terms and Conditions have not been modified since  June 4, 2013.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on this 12th day of March, 2014

Shelley Pederson

# EXHIBIT 2A



## Website Terms and Conditions

Back to top ↑

**Website Terms and Conditions of Use and License for Downloading Digital Assets**

**1. Agreement between You and JetBlue**

1.1. By accessing, using, providing or obtaining any content from the JetBlue Websites (1) You warrant that You are at least 18 years of age and possess the legal authority to create a binding legal obligation, (2) You agree to be bound by these Terms without modification, and (3) You agree to use the JetBlue Websites in strict compliance with applicable laws, rules, and regulations, and in a manner that does not reflect negatively on the goodwill or reputation of JetBlue.

1.2. Please read these Terms carefully. If You do not accept these Terms, do not use the JetBlue Websites. JetBlue maintains the JetBlue Websites solely to provide you with information about, and assist you in determining the availability of, the Products and Services so that you may make legitimate purchases of the Products and Services.

1.3. Consistent with Section 13.3 below, JetBlue reserves the right to change these Terms at any time without notice or liability.

1.4. Consistent with Section 6 below, JetBlue reserves the right to terminate or restrict your access to the JetBlue Websites at any time without notice or liability.

**2. Definitions**

2.1. "JetBlue" or "we" means JetBlue Airways Corporation.

2.2. "JetBlue Websites" or "JetBlue Website" means the www.jetblue.com and www.jetblueairways.com website, their respective subdomains, and any other website owned, operated and/or controlled by JetBlue, together with the respective Content, Marks, Digital Assets, Products and Services available from these sites or subdomains. For the sake of clarity, JetBlue Websites do not include third-party websites linked from jetblue.com or websites managed by third-party content providers, such as jetblue.ezrez.com, cruises.jetblue.com, jetblue.wwte1.com, help.jetblue.com, workhere.jetblue.com, or shop.jetblue.com. These Terms apply only to websites and services the content of which is provided and/or controlled by JetBlue, including but not limited to jetblue.com, jetblueairways.com, T508.com, and happyjetting.com.

2.3. "Content" means the text, documents, information, data, articles, images, photographs, graphics, frame and border, software, applications, video and audio recordings, designs, features, and other materials made available by JetBlue on the JetBlue Websites. "Content" also includes Marks and Products and Services.

2.4. "User Generated Content" means the text, files, images, photos, video, sounds, musical works, works of authorship, or any other materials that JetBlue may, in its sole discretion, allow You to post on or through the JetBlue Websites from time to time.

2.5. "Mark" means trademark, trade name, service mark, trade dress, logo, custom graphic, image, or icon owned by JetBlue.

2.6. "Products and Services" means air travel, JetBlue Getaways vacation packages, JetBlue branded merchandise, and other products and services that are available through the JetBlue Websites.

2.7. "Purchase" includes book, reserve or purchase.

2.8. "Affiliate" means JetBlue's licensors, suppliers, information providers, and travel and leisure service providers.

2.9. "JetBlue Getaways" is a vacation package service offered by JetBlue through its business partner Ez-Rez.

2.10. "TrueBlue" is a customer loyalty program offered by JetBlue.

2.11. "Digital Assets" or "Assets" means the Marks that, subject to these Terms, may be available for downloading from http://www.jetblue.com/mediakit.

**3. Scope of these Terms and Conditions**

3.1. Privacy Policy

3.1.1. Your use of the JetBlue Websites is subject to the JetBlue Privacy Policy.

3.1.2. By accessing, using, or obtaining any content through the JetBlue Websites, You agree that You have read JetBlue's Privacy Policy and You consent to its terms. 3.2. Additional Terms 3.2.1. Additional terms may also apply to certain aspects of your use of the JetBlue Websites or purchase of Products and Services over the JetBlue Websites. Examples of such are included below: 3.2.1.1. Domestic and international air travel transportation on JetBlue is subject to the JetBlue Airways Contract of Carriage, and where applicable, treaties, governmental regulations, and Passenger Rules Tariffs on file with the Department of Transportation.

3.2.1.2. In addition to 3.2.1.1, Purchase of air travel on the JetBlue Websites is also subject to any terms and conditions as may be advertised or presented at the time of purchase.

3.2.1.3. Purchase of Products and Services through the JetBlue Getaways service is subject to the JetBlue Getaways Terms and Conditions.

3.2.1.4. Membership in the TrueBlue program is subject to the TrueBlue Terms and Conditions.

**4. Ownership of JetBlue Information and Intellectual Property**

4.1. Ownership Rights

4.1.1. The JetBlue Websites are the sole and exclusive property of JetBlue. JetBlue retains all right, title, and interest in the JetBlue Websites.

4.1.2. The JetBlue Websites are protected by copyright, trademark, patent, trade secrets, unfair competition, intellectual property and other local laws and international treaties. Any unauthorized use, reproduction, or modification of the JetBlue Websites may violate such laws.

4.1.3. For sake of clarity, this Section 4.1 does not apply to User Generated Content as provided for in Section 5 herein.

4.2. Trademarks

4.2.1. JetBlue Airways Corporation, JetBlue, TrueBlue and other Marks that appear, are displayed, or used on the JetBlue Websites are registered or unregistered trademarks or service marks of JetBlue or Affiliates. These Marks may not be copied, downloaded, reproduced, used, modified, or distributed in any way without (a) prior written permission from JetBlue or the relevant trademark owner, or (b) in the case of Digital Assets, in accordance with Section 7 herein.

4.2.2. Under no circumstances may JetBlue's Marks (including but not limited to trademarks and trade dress) be used in connection with any product or service that is not offered by JetBlue, in any manner that is likely to cause confusion among customers, or in any manner that disparages or discredits JetBlue.

**5. User Generated Content**

5.1. From time to time, JetBlue may, in its sole discretion, allow You to post User Generated Content on the JetBlue Websites.

5.2. JetBlue expressly reserves the right, in its sole discretion, to reject, refuse to post, or remove any posting by You, or to deny, restrict, suspend, or terminate your ability to post User Generated Content, for any or no reason, with or without prior notice or explanation, and without liability.

5.3. JetBlue exercises reasonable efforts to monitor User Generated Content posted on the JetBlue Websites. However, JetBlue nonetheless assumes no responsibility for the User Generated Content, no obligation to modify or remove any inappropriate User Generated Content, and no responsibility for the conduct of the User submitting any such User Generated Content.

5.4. You are solely responsible for the User Generated Content that you post on or through any of the JetBlue Websites, and any material or information that you transmit to other Users and for your interactions with other Users.

5.5. JetBlue does not claim any ownership rights in any User Generated Content that You post. You continue to retain any such rights that you may have in the User Generated Content, subject to the limited license herein.

5.6. By posting any User Generated Content on or through the JetBlue Websites, you hereby grant to JetBlue a limited license to use, modify, delete from, add to, publicly perform, publicly display, reproduce, and distribute such User Generated Content solely on or through the JetBlue Websites. This limited license does not grant JetBlue the right to sell or otherwise distribute such User Generated Content outside of the JetBlue Websites. After you remove such User Generated Content from the JetBlue Websites, JetBlue will cease distribution as soon as practicable, and at such time when distribution ceases, the license will terminate.

5.7. You represent and warrant that: (1) you own the User Generated Content posted by you on or through the JetBlue Websites or otherwise have the right to grant the license set forth in this Section 5, and (2) the posting of your User Generated Content on or through the JetBlue websites does not violate the privacy rights, publicity rights, copyrights, contract rights or any other rights of any person or entity. You agree to pay for all royalties, fees, and any other monies owing any person or entity by reason of any User Generated Content posted by You on or through the JetBlue Websites.

**6. Personal License Granted to You by JetBlue**

6.1. Except as may be provided by Section 7, JetBlue grants You a limited, personal, nonexclusive, nontransferable, revocable license to access and use

the JetBlue Websites as expressly permitted in these Terms.

6.2. Except for this limited license and as otherwise set forth in Section 6, JetBlue does not grant You any other rights or license with respect to the JetBlue Websites.

6.3. Consistent with the above, You agree that You will use the JetBlue Websites only to gather information about the Products and Services and/or to make legitimate Purchases for You or for another person for whom You are authorized to act.

## 7. License for Downloading Digital Assets

7.1. JetBlue is the owner of all Digital Assets contained on the JetBlue Websites, including all trademark, trade dress, copyright and other intellectual property rights. By agreeing to these terms and conditions, You may download the Digital Assets contained on page http://www.jetblue.com/mediakit for your personal or commercial use. Please note, this license applies only to the marks contained on this website. Downloading such assets does not transfer any ownership interest to You or any user. You are granted a non-exclusive, non-sublicenseable, non-transferable copyright license to use the Digital Assets only in accordance with these Terms.

7.2. You agree that the Digital Assets cannot be sold or sublicensed for any consideration by You. You shall not use the Digital Assets in any manner that suggests the endorsement, sponsorship or association of JetBlue with any product or service other than those provided by JetBlue, unless written permission for such use is first obtained from JetBlue.

7.3. You agree to JetBlue's Usage Guidelines. In addition, You may not use the Digital Assets as a link to any web page other than to the JetBlue home page. You also may not: 7.3.1. Resize, distort, add to, delete from, change any color of or otherwise modify any of the Digital Assets without the prior written permission of JetBlue;

7.3.2. Sublicense, distribute, transfer or assign the image(s) or rights to the image(s);

7.3.3. Remove any copyright notice, trademark notice, watermark or any other legal or proprietary notice or mark from any asset;

7.3.4. Display the Digital Asset in any digital format or for any digital use at a resolution greater than 72 dpi, except in editorial or preliminary design work. Doing so will be viewed as an attempt to distribute the asset in violation of these Terms;

7.3.5. Use the Digital Asset, or any part of it as part of a trademark, service mark, logo or copyrighted work;

7.3.6. Use the Digital Asset to compete with or cause harm to JetBlue in any way;

7.3.7. Use the Digital Asset in any way that could be considered defamatory, pornographic, libelous, immoral, obscene, fraudulent, or illegal by making physical changes to it, by positioning it to accompanying text or images, or otherwise;

7.3.8. Use the Digital Asset in any way that would infringe the rights of any third party, including any and all intellectual property rights and rights of publicity; 7.4. JetBlue reserves the right to:

7.4.1. Prohibit use of any Digital Asset for any reason whatsoever and at its sole discretion;

7.4.2. Notify You that a Digital Asset is no longer available for use. (Upon such notification, the license to use such asset shall automatically and immediately terminate and user shall immediately cease using the asset);

7.4.3. Replace a Digital Asset with an alternative asset for any reason. Upon notice of such replacement, the license for the replaced Asset immediately and automatically terminates for any use of the Asset and these Terms shall automatically apply to the replacement Asset. You agree not to use any replaced Digital Asset and take all reasonable steps to discontinue use of the replaced Digital Asset in its existing media, products and services;

7.5. All other terms and conditions contained herein apply to downloading of Digital Asset, including, without limitation, Jurisdiction, Venue, Indemnity.

## 8. Limitations on Your Use of the JetBlue Websites

8.1. No Copy or Distribution

8.1.1. You may copy, display, or print one copy of any portion of the Content. However, You shall not modify the Content in any manner whatsoever, and You must include the JetBlue copyright notice in the form: "© JetBlue Airways 2008. All rights reserved."

8.1.2. Except as provided in Section 7, You may not resize, upload, post, display, distort, add to, republish, distribute, delete or transmit any part of the Content in any form.

8.1.3. You may not modify, translate into any language or computer language, or create derivative works from or reverse engineer any Content or any part of the JetBlue Websites.

8.1.4. You may not sell, offer to sell, transfer, or license any portion of the JetBlue Websites or the Content in any form to any third parties.

8.1.5. You may not access, copy, acquire, or monitor any Content by using any manual process, or any "robot," "spider," "deep-link," "page-scrape," or any other automatic device, program, algorithm or methodology without first obtaining the prior written consent of JetBlue.

8.2. No Commercial Use 8.2.1. Except as provided by Section 7 or if JetBlue has granted You permission in advance and in writing, You may use the JetBlue Websites only for personal, non-commercial use.

8.2.2. Except as provided by Section 7 or if JetBlue has granted You permission in advance and in writing, You shall not use the JetBlue Websites to engage in any commercial purpose, including but not limited to: 8.2.2.1. Advertising or offering to sell any goods or services;

8.2.2.2. Conducting contests or surveys;

8.2.2.3. Distributing chain letters, or advertising with respect to any Ponzi scheme or pyramid scheme;

8.2.2.4. Advertising or offering to sell any business opportunities, direct sale opportunities, employment or contractor positions, multi-level marketing opportunities, or securities.

8.3. No Use for Illegal or Improper Motives 8.3.1. You shall not use the JetBlue Websites for any of the following purposes:

8.3.1.1. Distributing, disseminating, posting, or publishing any information or material that degrades, embarrasses, harasses, humiliates, intimidates, or threatens any individual or group of individuals on the basis of their age, ancestry, color, ethnicity, marital status, medical condition, mental or physical disability, national origin, race, sex, sexual orientation, union or nonunion affiliation, or any other basis protected by federal, state, or local law or ordinance;

8.3.1.2. Distributing, disseminating, posting, or publishing any indecent, infringing, libelous, obscene, or unlawful information or material, or any material that could constitute or encourage conduct that would be considered a criminal offense, give rise to civil liability, or otherwise violate any law;

8.3.1.3. Distributing, disseminating, posting, publishing, sending, or otherwise disclose confidential information, trade secrets, or any other confidential and/or proprietary data of JetBlue or any other entity or person;

8.3.1.4. Distributing, disseminating, posting, or otherwise making available any material that infringes any copyright, patent, trademark, or other proprietary rights of JetBlue or any other entity or person; or

8.3.1.5. To abuse, defame, harass, stalk, threaten, or otherwise violate others' legal rights, including but not limited to rights of privacy and publicity or the intellectual property rights or publicity rights of a third party.

8.4. No Other Misuse

8.4.1. You agree that You will not otherwise misuse the JetBlue Websites, including but not limited to any of the following:

8.4.1.1. Taking any action that will or is likely to interfere with, intercept, or impose an unreasonable or disproportionately large load on the infrastructure of the JetBlue Websites;

8.4.1.2. Manipulating the price of a Product or Service;

8.4.1.3. Uploading, downloading, or transmitting files that may damage the operation of another's computer, such as computer viruses (such as Trojan horses, worms, or time bombs), corrupt files, and/or similar software;

8.4.1.4. Disguising, misrepresenting, or omitting the source or origin of any information uploaded to, downloaded from, or transmitted through the JetBlue Websites;

8.4.1.5. Using or accessing the JetBlue Websites in any way that, in JetBlue's sole judgment, adversely affects the performance or function of the JetBlue Websites, or any other computer systems or networks used by JetBlue, or other JetBlue Website users.

## 9. Your Indemnity Obligation

9.1. You agree to indemnify, defend, and hold harmless JetBlue, JetBlue's subsidiaries, and each of JetBlue's respective officers, directors, employees, and agents from and against any claims, demands, proceedings, suits and actions, including any related liabilities, obligations, losses, damages, deficiencies, penalties, taxes, levies, fines, judgments, settlements, expenses (including legal and accountants' fees and disbursements) and costs arising out of or resulting from (1) your breach of these Terms, including the JetBlue Privacy Policy and any other document incorporated by reference, or (2) your violation of any law or the rights of any third party, (3) your posting of any User Generated Content, or (4) your use of the JetBlue Websites.

## 10. Rights Reserved by JetBlue

10.1. Rights Not Granted are Reserved

10.1.1. Any rights not expressly granted herein are reserved.

10.2. Changes and Updates

10.2.1. Any aspect of the JetBlue Websites may be changed, supplemented, deleted, updated, discontinued, suspended, or modified at any time, and without prior notice to You. However, JetBlue makes no commitment to update the information contained on the JetBlue Websites.

10.2.2. JetBlue may also change or impose fees for certain services, or establish or change general practices services, at any time and without prior notice to You. 10.3. Availability

10.3.1. JetBlue does not promise availability of the JetBlue Websites, and assumes no liability or responsibility for any delay, interruption, or downtime. 10.4. Accuracy of Content 10.4.1. The Content is intended for informational purposes only. Although JetBlue exercises reasonable efforts to ensure the Content's quality and accuracy, there might be errors, and the information provided may not be complete, current, or applicable to your particular

situation.

10.4.2. JetBlue assumes no liability or responsibility for any errors or omissions; You are responsible for evaluating the accuracy, completeness, and usefulness of any Content available through the JetBlue Websites or obtained from a linked website.

10.5. User Generated Content

10.5.1. Despite the prohibitions of Section 8 herein and JetBlue's reasonable efforts to monitor the User Generated Content, User Generated Content may from time to time appear on the JetBlue Websites which, in whole or in part, is unauthorized, impermissible, or otherwise violates these Terms, and JetBlue assumes no responsibility or liability for this material.

10.5.2. Users are solely responsible for the User Generated Content that they post on or through any of the JetBlue Websites.

10.6. Viruses

10.6.1. JetBlue makes reasonable attempts to exclude viruses from the JetBlue Websites. However, JetBlue cannot ensure that the JetBlue Websites will at all times be free from viruses or other destructive software.

10.6.2. JetBlue assumes no liability or responsibility for any damages to computer equipment or other property that may result from use of the JetBlue Websites; You are responsible for taking appropriate safeguards before downloading information from the JetBlue Websites.

10.7. Outbound Links

10.7.1. The JetBlue Websites may from time-to-time provide links to other websites. Such links are provided for your reference only.

10.7.2. When You click on these links, You are leaving the JetBlue Websites and entering a third-party's website. We are not responsible for such third party websites.

10.8. Inbound Links

10.8.1. JetBlue permits You to create links from a third party website to the JetBlue homepage (www.jetblue.com), through a plain text link, provided that:

10.8.1.1. You give JetBlue prior written notice of such link by contacting jetbluecommunity@gmail.com to request JetBlue' permission to establish the link, and;

10.8.1.2. You discontinue providing a link to the JetBlue homepage if so requested by JetBlue, and;

10.8.1.3. You do not imply in any fashion that JetBlue is endorsing any of your products or services, or products or services affiliated with you, and;

10.8.1.4. You do not present JetBlue in a false light, or provide misleading or false information about JetBlue, the JetBlue websites, the Content, or the Products and Services, and;

10.8.1.5. You do not remove or obscure the copyright notices, or other notices on the JetBlue websites, and;

10.8.1.6. You do not use any Mark of JetBlue, and;

10.8.1.7. You do not replicate, frame, or mirror the Content.

10.8.2. In the absence of a separate agreement with JetBlue to the contrary, You are strictly prohibited from linking to any page of the JetBlue Website other than the JetBlue homepage.

10.8.3. JetBlue explicitly reserves the right to require You, in the sole discretion of JetBlue, to remove links to the JetBlue homepage or any other JetBlue Website.

## 11. Disclaimer of Warranty and Limitation of Liability

11.1. Disclaimer of Warranty

11.1.1. The JetBlue Websites, and Digital Assets downloaded in accordance with Section 7 are provided "as is" and without warranty of any kind, either express or implied.

11.1.2. JETBLUE EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS, INCLUDING WITHOUT LIMITATION ANY EXPRESS OR IMPLIED WARRANTY OF EXPECTATION OF PRIVACY, FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, NON-INFRINGEMENT OR TITLE, THOSE ARISING BY STATUTE OR OTHERWISE IN LAW, OR FROM A COURSE OF DEALING OR USAGE OF TRADE.

11.2. Limitation of Liability

11.2.1. Subject to applicable law, You use the JetBlue Websites and download Digital Assets solely at your own risk.

11.2.2. IN NO EVENT SHALL JETBLUE OR ITS AFFILIATES BE LIABLE FOR ANY DAMAGES (WHETHER CONSEQUENTIAL, DIRECT, INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, OR OTHERWISE) ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE USE OF OR INABILITY TO USE THE JETBLUE WEBSITES OR FOR ANY USER GENERATED CONTENT POSTED THEREIN OR FOR ANY CONTENT OBTAINED THROUGH OR OTHERWISE IN CONNECTION WITH THE JETBLUE WEBSITES REGARDLESS OF WHETHER SUCH DAMAGES ARE BASED ON CONTRACT, STRICT LIABILITY, TORT OR OTHER THEORIES OF LIABILITY, AND ALSO REGARDLESS OF WHETHER JETBLUE WAS GIVEN ACTUAL OR CONSTRUCTIVE NOTICE THAT DAMAGES WERE POSSIBLE.

11.3. No Liability for Unauthorized Access of Your Information

11.3.1. JetBlue takes reasonable steps to safeguard and to prevent unauthorized access to your private information consistent with the terms of our privacy policy.

11.3.2. UNDER NO CIRCUMSTANCES WILL JETBLUE OR ITS AFFILIATES BE LIABLE FOR ANY DAMAGES WHATSOEVER (WHETHER CONSEQUENTIAL, DIRECT, INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, OR OTHERWISE) ARISING OUT OF OR IN ANY WAY CONNECTED WITH A THIRD PARTY'S UNAUTHORIZED ACCESS TO YOUR INFORMATION, REGARDLESS OF WHETHER SUCH DAMAGES ARE BASED ON CONTRACT, STRICT LIABILITY, TORT OR OTHER THEORIES OF LIABILITY, AND ALSO REGARDLESS OF WHETHER JETBLUE WAS GIVEN ACTUAL OR CONSTRUCTIVE NOTICE THAT SUCH DAMAGES WERE POSSIBLE.

## 12. Communications and Confidentiality

12.1. Any communications You send to the JetBlue Website or otherwise to JetBlue via electronic mail are on a non-confidential basis, and JetBlue is under no obligation to refrain from reproducing, publishing, or otherwise using them in any way and for any purpose.

12.2. You acknowledge and agree that JetBlue will be free to use the content of such electronic mail communications, including any ideas, inventions, concepts, techniques or know-how disclosed therein, for any purpose, to include the development, production, and/or marketing of goods or services, without incurring any obligation to You for such use.

## 13. General Provisions

13.1. No Offer to Buy or Sell Securities

13.1.1. The information on the JetBlue Websites does not constitute an offer to sell, or the solicitation of an offer to buy any securities, and must not be relied upon in connection with any investment decision.

13.2. Independent Contractors

13.2.1. Your acceptance of these Terms, and your use of the JetBlue Websites, does not create a joint venture, partnership, employment, or agency relationship with JetBlue.

13.3. Modification to These Terms and Conditions

13.3.1. JetBlue may modify, revise, or update these Terms, and/or the documents incorporated by reference, at any time, by updating this posting. Therefore, You should periodically visit this page when You use the JetBlue Websites to review current Terms. 13.4. Governing Law, Choice of Forum, and Procedural Restrictions

13.4.1. You agree that the substantive laws of the State of New York, without regard to its conflicts of laws principles, will govern the interpretation of these Terms, as well as any dispute arising from your access to, dealing with, or use of the JetBlue Websites.

13.4.2. You agree that, should You bring a lawsuit related to your access to, dealings with, or use of the JetBlue Websites, You must do so in the state or federal courts of New York County, New York.

13.4.3. Should JetBlue bring a lawsuit against You related to your access to, dealings with, or use of the JetBlue Websites, You assent to the jurisdiction of the state or federal courts of New York County, New York, and hereby waive all defenses of improper venue, forum non conveniens, and personal jurisdiction.

13.4.4. You understand and agree that You will not bring any class action lawsuit against JetBlue or its Affiliates related to your access to, dealings with, or use of the JetBlue Websites. 13.5. No Assignment of Rights or Duties

13.5.1. You may not assign, delegate, or transfer your rights or obligations under these Terms.

13.6. Entire Agreement

13.6.1. These Terms make up the entire agreement between You and JetBlue relating to your use of the JetBlue Websites, and replaces and prior understandings or agreements, whether oral or written, regarding your use of the JetBlue Websites.

13.7. Severability

13.7.1. If a court finds any of these Terms to be unenforceable or invalid, that Term will be enforced to the fullest extent permitted by applicable law and the other Terms will remain valid and enforceable.

13.8. Headings

13.8.1. The section headings herein are provided for solely for convenience and ease of reference; they do not limit or affect these Terms.

13.9. Notices

13.9.1. All notices, consents, requests, instructions, approvals and other communications to JetBlue provided for herein shall be deemed validly given, made or served if in writing and delivered personally or sent by certified mail, postage prepaid, or by overnight courier, to:

JetBlue Airways Corporation

Attn: General Counsel's Office

27-01 Queens Plaza North

Long Island City, NY 11101

**13.10. Failure to Act Does Not Constitute Waiver**

13.10.1. If JetBlue fails to act with respect to your breach or anyone else's breach on any occasion, this will not constitute a waiver of JetBlue's right to act with respect to future or similar breaches.

**14. Intellectual Property Protection**

14.1. JetBlue respects the intellectual property rights of others, and requires that users of the JetBlue Websites do the same.

14.2. If you believe your work has been copied and posted on or through the JetBlue Websites in a way that constitutes trademark or copyright infringement, please send JetBlue a notification of claimed infringement with all of the following information: (a) identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works are covered by a single notification, a representative list of such works; (b) identification of the claimed infringing material and information reasonably sufficient to permit us to locate the material on the JetBlue Websites (providing the URL(s) of the claimed infringing material satisfies this requirement); (c) information reasonably sufficient to permit us to contact you, such as an address, telephone number, and, if available, an email address; (d) a statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; (e) a statement by you, made under penalty of perjury, that the above information in your notification is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf; and (f) your physical or electronic signature.

14.3. JetBlue's contact information for notification of claimed infringement is as follows: JetBlue Airways Corporation, 27-01 Queens Plaza North, Long Island City, NY 11101; Facsimile: (718) 709-3631; Attn: Legal Department.



**Same smart app. More smartphones.**
Download the JetBlue mobile app for iPhone and Android now!

**SoFly™** View and share JetBlue pics and travel tricks  NEW

**Like us on Facebook** 880,954 like this

**Follow us at @JetBlue** 1,756,459 followers

**Visit us on YouTube** 5,521,245 total views

**BlueTales Blog** Your destination for all things JetBlue and beyond

Search jetblue.com

**Get to know us**
About us
Press room
Promotions
CSR
Mobile
ShopBlue

**Services**
Partner airlines
Corporate
Cargo
Travel agents
Special assistance
Gift Cards
Travel Insurance

**Talk to us**
Contact us
Work here
Legal
Privacy
Site map
Website feedback

**Top JetBlue Vacation packages:** Aruba | Barbados | Bermuda | Cancún, Mexico | Fort Lauderdale | Grand Cayman | Jamaica | Las Vegas | Nassau, Bahamas | Orlando | Puerto Plata, Dominican Republic | Punta Cana, Dominican Republic | Saint Martin | San Juan, Puerto Rico | Samana, Dominican Republic | St. Lucia | Turks & Caicos | Walt Disney World® Resort | West Palm Beach

Show more cities

©2014 JetBlue Airways©2014 JetBlue Airways

# EXHIBIT 3

10-K 1 copytele10k_2013.htm FORM 10-K

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

# FORM 10-K

[x] ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 For the fiscal year ended October 31, 2013

or

[ ] TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 For the transition period from _____ to _____

Commission file number: 0-11254

# COPYTELE, INC.

(Exact Name of Registrant as Specified in its Charter)

| Delaware | 11-2622630 |
|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |

**900 Walt Whitman Road**
**Melville, NY 11747**
**(631) 549-5900**

(Address, Including Zip Code, and Telephone Number, Including Area Code, of Registrant's Principal Executive Offices)

**Securities registered pursuant to Section 12(b) of the Act:**
**None**
**Securities registered pursuant to Section 12(g) of the Act:**
**Common Stock, $.01 par value**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes [_] No [x]

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes [_] No [x]

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [x] No [_]

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes [x] No [_]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer [__] Accelerated filer [__]

Non-accelerated filer [__] (Do not check if a smaller reporting company) Smaller reporting company [x]

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes [_] No [x]

Aggregate market value of the voting stock (which consists solely of shares of common stock) held by non-affiliates of the registrant as of April 30, 2013 (the last business day of the registrant's most recently completed second fiscal quarter), computed by reference to the closing sale price of the registrant's common stock on the Over-the-Counter Bulletin Board on such date ($0.228 ): $37,710,056

On January 10, 2014, the registrant had outstanding 210,447,530 shares of common stock, par value $.01 per share, which is the registrant's only class of common stock.

DOCUMENTS INCORPORATED BY REFERENCE:
NONE

Table of Contents

### Nano Field Emission Display

The Nano Field Emission Display patent portfolio covers a new type of flat panel display consisting of low voltage color phosphors, specially coated carbon nanotubes, nano materials to generate secondary electrons, and ionized noble gas, resulting in a bright, sharp, high contrast color image.  This emerging technology could result in a flat panel display utilizing less power, with better picture quality and lower manufacturing costs than is currently found in the flat panel display industry.

### VPN Multicast Communications

The VPN Multicast Communications patent portfolio covers the multicast, internet delivery of streaming data, media, and other content to large numbers of recipients, within the confines of specialized virtual private networks ("VPN's). Multicasting is a commonly used content delivery protocol that enables several recipients to simultaneous receive content from a single internet transmission, greatly reducing Internet bandwidth costs. When combined with specialized VPN's, the content and communications are protected from unwanted disclosure and piracy. Applications for these live, VPN multicast communications include videoconferences, online training and e-learning classes, internet television, web-based corporate events and strategy sessions, and other live transmissions of sensitive or protected content.

## Patent Monetization and Patent Assertion Activities

On January 28, 2013, CTI initiated a patent infringement lawsuit in the United States District Court for the Northern District of California against E Ink Corporation ("E Ink"), regarding certain patents owned by CTI pertaining to CTI's ePaper® Electrophoretic Display technology. CTI alleges that E Ink has infringed and continues to infringe such patents in connection with the manufacture, sale, use, and importation of electrophoretic displays.  On January 28, 2013, CTI also filed a separate joint lawsuit against both AU Optronics Corp. ("AUO") and E Ink, the AUO/E Ink Lawsuit (as defined below). In June of 2013, CTI and AUO greed to arbitrate CTI's charges in the AUO/E Ink Lawsuit.  The Court also ordered E Ink to participate in the arbitration, for purposes of discovery. Because issues in the AUO/E Ink arbitration need to be resolved before the patent infringement case can proceed against E Ink, the Court dismissed the patent infringement case, without prejudice, meaning that CTI can re-file the patent infringement lawsuit, if necessary, following the arbitration.

On May 1, 2013, CTI's wholly owned subsidiary, Secure Web Conference Corporation, initiated a patent infringement lawsuit in the United States District Court for the Eastern District of New York against Microsoft Corporation, with respect to encryption technology utilized by Microsoft's SKYPE video conferencing service.  On July 8, 2013, Secure Web Conference Corporation initiated similar lawsuits in the United States District Court for the Eastern District of New York against Citrix Systems and Logitech International.

On August 7, 2013, CTI's wholly owned subsidiary, J-Channel Industries Corporation, filed 8 separate patent infringement lawsuits in the United States District Court for the Eastern District of Tennessee, against Lowe's Companies, Clayton Homes, Pella Corporation, Jeld-Wen, Atrium Windows and Doors, Ply Gem Industries, RGF Industries, Tafco Corporation, Kinro Manufacturing, and Elixir Industries, all in connection with our patented J-Channel Window Frame Construction technology.

On August 20, 2013, CTI's wholly owned subsidiary, Loyalty Conversion System Corporation, filed 10 separate patent infringement lawsuits in the United States District Court for the Eastern District of Texas, against Alaska Airlines, American Airlines, Delta Airlines, Frontier Airlines, Hawaiian Airlines, JetBlue Airways, Southwest Airlines, Spirit Airlines, United Airlines, and U.S. Airways, all in connection with our Loyalty Conversion Systems patent portfolio.

On October 9, 2013, CTI's wholly owned subsidiary, J-Channel Industries Corporation, filed 19 patent infringement lawsuits in the Federal District Court for the Eastern District of Tennessee, in connection with its patented J-Channel Window Frame Construction technology. Defendants in the lawsuits consist of retailers and window manufacturers, including: Home Depot U.S.A., Inc.; Anderson Corporation; American Builders & Contractors Supply Co., Inc. (ABC Supply); Comfort View Products, LLC; Croft, LLC; Moss Supply Company; Wincore Window Company LLC; Vinylmax, LLC; Simonton Building Products, Inc.; HWD Acquisition, Inc. (Hurd Windows); Magnolia Windows and Doors, LLC; MGM Industries, Inc., MI Windows and Doors LLC; PGT Industries, Inc.; Quaker Window Products, Inc.; Sun Windows, Inc.; Weather Shield Manufacturing, Inc.; West Window Corporation; Woodgrain Millwork, Inc.; and YKK-AP American Inc.

The Company has engaged in and will continue to engage in patent infringement lawsuits in the ordinary course of its business operations.  All litigation involves a significant degree of uncertainty, and we give no assurances as to the outcome or duration of any lawsuit.

4

Table of Contents

*Robert P. Herms, 68, Director, Chief Financial Officer and Vice President* – Finance. Mr. Herms has served as our Chief Financial Officer and Vice President – Finance since November 2000 and as one of our Directors since August 2001. Mr. Herms was also our Chief Financial Officer from 1982 to 1987. He is also a former audit manager and CPA with the firm of Arthur Andersen LLP. He holds a B.B.A. degree from Adelphi University. Mr. Herms has a deep understanding of the financial aspects of our business. He also has substantial experience as a public accountant, which is important to the Board's ability to review our consolidated financial statements, assess potential financings and strategies and otherwise supervise and evaluate our business decisions.

*Dr. Amit Kumar, 49, Director, Strategic Advisor.* Dr. Kumar has served on our Board since November 30, 2012 and has been a strategic advisor to the Company since September 19, 2012. Dr. Kumar has been CEO of Geo Fossil Fuels LLC, an energy company, since December 2010. From September 2001 to June 2010, Dr. Kumar was President and CEO of CombiMatrix Corporation, a Nasdaq listed biotechnology company and also served as director from September 2000 to June 2012. Dr. Kumar was Vice President of Life Sciences of Acacia Research Corp., a publicly traded patent monetization company, from July 2000 to August 2007 and also served as a director from January 2003 to August 2007. Dr. Kumar has served as Chairman of the board of directors of Ascent Solar Technologies, Inc., a publicly-held solar energy company, since June 2007, and as a director of Aeolus Pharmaceuticals, Inc. since June 2004. Dr. Kumar holds an A.B. in Chemistry from Occidental College and Ph.D. from Caltech. Dr. Kumar has experience in development, licensing, and monetization of intellectual property as well as a broad variety of other areas including finance, acquisitions, R&D, and marketing, and has served as a director and officer of another publicly traded patent monetization company.

*Bruce F. Johnson, 71, Director.* Mr. Johnson has served on our Board since August 29, 2012. Mr. Johnson has been a commodity trader on the Chicago Mercantile Exchange for over 40 years. He has served as a member of the board of directors of CME Group Inc. since 1998. He had previously served as President, Director and part-owner of Packers Trading Company, a former futures commission merchant/clearing firm at the CME from 1969 to 2003. He also serves on the board of directors of the Chicago Crime Commission. Mr. Johnson holds a B.S. in Marketing from Bradley University and a J.D. from John Marshall Law School. Mr. Johnson has been involved with the Company as an investor for over 10 years and has over 30 years' experience in the capital markets as a result of his investment background.

*Kent B. Williams, 64, Director.* Mr. Williams has served on our Board since August 21, 2012. He has the managing member of Vista Asset Management LLC, an investment advisory firm, since 2002. He has more than 40 years' experience in the capital markets, including positions with U.S. Trust, Wood Island Associates and Merrill Lynch. In 2011, he also founded VIA Motors, a clean tech, plug-in electric vehicle company. He is a member of the CFA Institute and the CFA Society of San Francisco and received his M.B.A. from St Mary's College of California and a B.A. from the University of California at Berkeley. Mr. Williams has been involved with the Company as an investor for over 13 years and has over 40 years' experience in the capital markets.

*John Roop, 64, Senior Vice President, Engineering.* Mr. Roop has served as our Senior Vice President – Engineering since September 19, 2012. Mr. Roop has 18 years of experience analyzing and evaluating patents for acquisition and licensing, and over 20 years of experience as a Silicon Valley design engineer and engineering executive. From June 2008 until September 2012, he was a technology consultant and expert witness. Prior thereto, he was Senior Vice President of Engineering at Acacia Research from November 2002 until June 2008 and was instrumental in developing Acacia's patent acquisition operations. Previously, Mr. Roop was a co-founder and Senior Vice President of Engineering at StarSight Telecast, a pioneering developer of electronic program guides, and Vice President of Engineering at VSAT Systems, Inc., a satellite telecommunications systems developer. Mr. Roop holds a B.S.E.E degree in Electrical Engineering from University of California, Berkeley.

Except for Dr. Kumar and Mr. Johnson, none of our current directors or executive officers has served as a director of another public company within the past five years.

Table of Contents

**COPYTELE, INC. AND SUBSIDIARIES**
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

1.   BUSINESS AND FUNDING

Description of Business

As used herein, "we," "us," "our," the "Company", "CopyTele" or "CTI" means CopyTele, Inc. and its wholly-owned subsidiaries.  While in the past, the primary operations of the Company involved licensing in connection with the development of patented technologies, our principal operations are now the development, acquisition, licensing, and enforcement of patented technologies that are either owned or controlled by the Company.  The Company currently owns or controls 9 patent portfolios. As part of our patent assertion activities and in the ordinary course of our business, the Company has initiated and will likely continue to initiate patent infringement lawsuits, and engage in patent infringement litigation.  Since implementing our new business model in January of 2013, the Company has initiated 41 lawsuits in connection with 5 of our patent portfolios. Our primary source of revenue will come from licenses resulting from the unauthorized use of our patented technologies, including the settlement of patent infringement lawsuits. In fiscal year 2013, we entered into 4 revenue producing licenses from 2 of our patent portfolios.  In addition to continuing to mine and monetize our existing patents, our wholly owned subsidiary, CTI Patent Acquisition Corporation, will continue to acquire patents and the exclusive rights to license and enforce patents from third parties.

Due to arrangements previously entered into by the Company, certain of our patents contain encumbrances which may negatively impact our patent monetization and patent assertion activities. Where we are able, we will take the steps necessary to remove any encumbrances that may inhibit our patent monetization and patent assertion activities.  We have obtained and will continue to obtain the rights to license and enforce additional patents from third parties, and when necessary, will assist such parties in the further development of their patent portfolios through the filing of additional patent applications.

In April 2013, CopyTele, through its wholly owned subsidiary, CTI Patent Acquisition Corporation, acquired the exclusive rights to license and enforce patent portfolios relating to (i) loyalty awards programs commonly provided by airlines, credit card companies, hotels, retailers, casinos, and others, and (ii) vinyl windows with integrated J-Channels, commonly used in modular buildings, mobile homes, and conventional, new construction.  In exchange, the respective licensors will receive a percentage of all net amounts received from the licensing and enforcement of each patent portfolio.

In November 2013, CTI Patent Acquisition Corporation acquired 2 patent portfolios in the rapidly expanding area of unified communications relating to (i) the multicast Internet delivery of streaming data, media, and other content, within the confines of specialized virtual private networks, and (ii) the integration of telephonic participation in web-based audio/video conferences by creating a gateway between the Internet and cellular or traditional landline telephones.

We currently own or control 9 patent portfolios which we have identified for patent monetization: Encrypted Mobile Communication; ePaper® Electrophoretic Display; Internet Telephonic Gateway; J-Channel Window Frame Construction; Key Based Web Conferencing Encryption; Loyalty Conversion Systems; Micro Electro Mechanical Systems Display; Nano Field Emission Display; and VPN Multicast Communications.

F-7

# EXHIBIT 4

## DECLARATION OF MATTHEW MORGAN

1.      My name is Matthew Morgan.  I am over the age of twenty-one years and am competent to make this Declaration.  I have personal knowledge of the facts stated in this Declaration, and they are true and correct.

2.      I am Manager, Information Technology for JetBlue Airways Corporation ("JetBlue"). I work at JetBlue's headquarters in Long Island City, New York.

3.      I am personally familiar with JetBlue's websites, including the JetBlue website located at http://www.JetBlue.com, JetBlue's secure TrueBlue Program website, and JetBlue's TrueBlue sign-up web page located at https://trueblue.jetblue.com/web/trueblue/register (collectively, "JetBlue Websites").  Based on my personal knowledge of the JetBlue Websites, the document attached hereto as Exhibit A appears to include a screenshot of a non-public portion of JetBlue's Website.  This screenshot will hereafter be referred to as "Roop screenshot."

4.      Based on my personal knowledge of the JetBlue Websites, the documents attached hereto as Exhibit B appear to be screenshots from non-public portions of JetBlue.com. These screenshots will hereafter be referred to as "Scott screenshot."

5.      Since at least as early as June 5, 2013, the information depicted in the Roop screenshot and Scott screenshot could only be been accessed after the user signs up to become a member of JetBlue's TrueBlue program.  Since at least as early as June 5, 2013, a consumer could only become a member of the TrueBlue program by either calling 1-800-JETBLUE (538-2583), TTY/TDD 1-800-336-5530, or by enrolling in the TrueBlue program at JetBlue.com.

6.      To enroll in the TrueBlue program online at JetBlue.com, a user must enter certain information via the user's web browser and submit that information to JetBlue's web servers.  Since at least as early as June 5, 2013, to enroll in the TrueBlue program on

JetBlue.com, a user has been required to enter and submit the following information, among other things: first name; last name; city and state of residence; residence ZIP code; date of birth; and email address. The user must have confirmed the email address by entering the information twice. The user must also have chosen a TrueBlue password, and entered it twice as well. The user then must have affirmed that they agree to the TrueBlue Terms and Conditions. To acknowledge that a user agrees to the TrueBlue Terms and Conditions, a user must have checked a box to the left of the language indicating agreement to the TrueBlue terms and conditions. Once a user completes the web form on JetBlue's Website, the user must have clicked the button titled JOIN TRUEBLUE.

7.      When a user clicks JOIN TRUEBLUE, the information entered into the user's browser is submitted to JetBlue's web servers. The JetBlue web servers validate the submitted information. If certain information is missing or incomplete, the server will return an error message to the user and prompt the user to correct the error.

8.      For example, if a user does not select the check box next to the statement, "Yes, I agree to the TrueBlue terms and conditions" and submits the TrueBlue enrollment form to the JetBlue web servers, the servers will return an error message to the user and present the following warning message in red lettering: "**Oops!** You must accept the terms and conditions."

9.      The JetBlue web servers will not allow a prospective TrueBlue member to enroll in the TrueBlue program unless the prospective member selects the check box next to the statement, "Yes, I agree to the TrueBlue terms and conditions."

10.     A screenshot showing the box that must be checked indicating agreement to the TrueBlue terms and conditions and its proximity to the JOIN TRUEBLUE button is attached hereto as Exhibit C. As shown in Exhibit C, the phrase "terms and conditions" appears in blue

lettering and is a hyperlink.  When the user clicks on that hyperlink, a new window is displayed to the user.  The newly displayed window is shown in the screenshot that is attached hereto as Exhibit D.  Another hyperlink, in this instance embedded in the phrase www.jetblue.com/legal that is displayed in blue lettering, is included in the newly displayed window in the following sentence:  "By gaining access to, using this site, or enrolling in TrueBlue you agree to be bound by these Program Rules, along with JetBlue's legal terms located at www.jetblue.com/legal, including, without limitation, the Website Terms and Conditions, Flight Terms and Conditions, and Getaways Terms and Conditions."  The Website Terms and Conditions are displayed when the user clicks on the "Website Terms and Conditions" hyperlink that is shown in blue lettering at www.jetblue.com/legal.

11.   JetBlue maintains records related to users that sign up to become TrueBlue members. JetBlue's records show the following:

> (a)   someone identifying themself as John Roop signed up on JetBlue.com to become a TrueBlue member on August 2, 2013;

> (b)   the city of residence listed by user John Roop was Ben Lomond, California;

> (c)   the ZIP code listed by user John Roop was 95005;

> (d)   user John Roop agreed to the TrueBlue Terms and Conditions on August 2, 2013; and

> (e)   user John Roop last logged in to JetBlue.com on August 2, 2013.

12.   JetBlue's records also show the following:

> (a)   someone identifying themself as Stefanie Scott signed up to become a TrueBlue member on June 5, 2013;

(b)     the city of residence listed by user Stefanie Scott was Austin, Texas;

(c)     the ZIP code listed by user Stefanie Scott was 78705;

(d)     user Stefanie Scott last logged in to JetBlue.com on February 4, 2014; and

(e)     on February 4, 2014, user Stefanie Scott agreed to the TrueBlue Terms and Conditions then in effect.


    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on this 13th day of March, 2014

Matthew Morgan

# EXHIBIT 4A



# EXHIBIT 4B


EXHIBIT
PLEs G
NB 2·5·14
PENGAD 800-631-6989

https://trueblue.jetblue.com/group/trueblue/manage-my-points

[US] | 🔲 🗋 🗋 Young House Love ... 🗋 Web Slice Gallery 🗋 Imported From IE 🗋 Travel 🗋 Court Rules 🗋 🗋 1993 prom 🗋 WEDDING!!



# jetBlue

Plan a trip  |  Manage flights  |  Where we jet  |  Flying on JetBlue  |  Travel information

Español   Help   Contact us   Softy

🔵 TRAVEL ALERT Winter Storm Nika Fee Waiver ▸

TRUEBLUE

Stefanie's
TrueBlue
2,480 pts

TRUEBLUE

DASHBOARD ▸

ACTIVITY HISTORY

MANAGE MY POINTS

BADGES ▸

OUR PARTNERS ▸

CURRENT DEALS

COMMUNITY

HOW IT WORKS

## Manage my points

Get rewards, transfer, buy,
or request missing points.



2,480
AVAILABLE POINTS

SEE HOW IT WORKS ▸

SEE OUR LIST OF PARTNERS ▸

### Buy or transfer

**Buy** ▸
Buy yourself some points.

**Gift** ▸
Buy a friend some points.

**Transfer** ▸
Transfer your TrueBlue points
to another TrueBlue member.

### Get 20,000 TrueBlue® points

after spending $1,000 with your
Card in your first 3 months of
Cardmembership.



LEARN MORE ▸
Terms and restrictions apply

### Transfer Membership Rewards® points from American Express

Transfer from your Membership Rewards account ▸

### Request missing points

SEE HISTORY ▸

# EXHIBIT 4C

## Terms and conditions

☐   Yes, I agree to the TrueBlue terms and conditions.

## Profile preferences

Home airport

FROM

Favorite destination 1

TO

Favorite destination 2 (optional)

TO

JOIN TRUEBLUE

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **LOYALTY CONVERSION SYSTEMS CORPORATION,** | § § § |
| *Plaintiff,* | § § **Civil Action No. 2:13-cv-00662** |
| v. | § § |
| **JETBLUE AIRWAYS CORPORATION,** | § § |
| *Defendant.* | § **Jury Trial Demanded** § |

## ORIGINAL COMPLAINT

Loyalty Conversion Systems Corporation ("Plaintiff" or "Loyalty Conversion"), by and through its attorneys, for its Original Complaint against Defendant JetBlue Airways Corporation, ("JetBlue" or "Defendant"), hereby alleges as follows:

### I.     NATURE OF THE ACTION

1.     This is a patent infringement action to end Defendant's unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of products and methods incorporating Plaintiff Loyalty Conversion's patented inventions.

2.     Loyalty Conversion holds all substantial rights and interest in and to United States Patent No. 8,313,023 (the "'023 Patent"), issued on November 20, 2012, for "Exchange of Non-negotiable Credits of an Entity's Rewards Program for Entity Independent Funds."  A true and correct copy of the '023 Patent is attached hereto as Exhibit 1.

3.     Loyalty Conversion further holds all substantial rights and interest in and to United States Patent No. 8,511,550 (the "'550 Patent"), issued on August 20, 2013, for "Graphical User Interface for the Conversion of Loyalty Points Via a Loyalty Points Website." A true and correct copy of the '550 Patent is attached hereto as Exhibit 2.

ORIGINAL COMPLAINT

4.      Defendant makes, uses, sells and imports infringing products and provides infringing services in violation of the Patents.   More specifically, Defendant operates a computerized system whereby users and administrators convert loyalty program points into other units for acquiring goods or services. Plaintiff Loyalty Conversion seeks injunctive relief to prevent Defendant from continuing infringement of Plaintiff's patent rights.   Plaintiff Loyalty Conversion further seeks monetary damages and prejudgment interest for Defendant's past infringement of the '023 Patent and the '550 Patent.

## II.      THE PARTIES

5.      Plaintiff Loyalty is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 900 Walt Whitman Drive, Melville NY 11747.

6.      Upon information and belief, Defendant is a Delaware corporation with its principal place of business located at 27-01 Queens Plaza N., Long Island City, NY 11101. JetBlue has appointed National Registered Agents, Inc., 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234 as its agent for service of process. JetBlue does business within the State of Texas and this District.

## III.      JURISDICTION AND VENUE

7.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§271, 281, 283, 284, and 285.   This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1338(a).

8.      This Court has personal jurisdiction over each of the Defendants, and venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c), and 1400.

ORIGINAL COMPLAINT

2

## IV.   THE '023 PATENT AND '550 PATENT

9.     The '023 and '550 Patents relate to computerized systems for administering loyalty points programs.  In accordance with these patents, a system and method is disclosed wherein a commerce partner agrees to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds in accordance with a credit-to-funds ratio applied to such transactions.  Computers grant a consumer a quantity of the entity independent funds based on a conversion of the credits into funds.  The commerce partner is compensated for providing the entity independent funds to the consumer.

10.     Loyalty Conversion holds all substantial rights in and to the '023 and '550 Patents, including all rights to recover for all past and future infringements thereof.

## VI.   JETBLUE'S ACTS

11.     JetBlue provides, makes, uses, sells, offers for sale, and/or distributes infringing systems.  The infringing systems include, for example, computerized systems whereby users manage and redeem loyalty rewards for JetBlue's loyalty rewards program, TrueBlue.  JetBlue has entered into agreements with partners such as Marriott, and provides for the conversion of Marriott Rewards points to TrueBlue miles.  JetBlue provides related support services and instructions for the infringing operation of such systems to its customers.

12.     Through its actions, JetBlue has directly infringed the '023 and '550 Patents.  In addition, with knowledge of the '023 and '550 Patents at least as early as the filing of Plaintiff's complaint, JetBlue has actively induced others including its customers to infringe and contributed to the infringement by others of the '023 and '550 Patents throughout the United States, knowing that Loyalty alleges such activities to be infringing.  JetBlue agrees and specifies with its loyalty program partners that conversions shall occur in the manner claimed in the '023

ORIGINAL COMPLAINT

and '050 Patents.   JetBlue has designed, installed, operated and implemented its computer systems to operate in an infringing manner.   The infringing systems have no substantial non-infringing uses.

13.     Loyalty has been and will continue to suffer damages as a result of Defendant JetBlue's infringing acts unless and until enjoined.

## COUNT ONE
### PATENT INFRINGEMENT—U.S. PATENT NO. 8,313,023

14.     Plaintiff Loyalty realleges and incorporates herein paragraphs 1–19.

15.     Defendant has directly infringed the '023 Patent in violation of 35 U.S.C. §271(a).

16.     Defendant has indirectly infringed the '023 Patent by inducing the infringement of the '023 Patent and contributing to the infringement of the '023 Patent in violation of 35 U.S.C. §§271(b) and (c), including by their respective customers.

17.     Upon information and belief, Defendant has jointly infringed the '023 Patent, including by controlling, instructing and/or directing others to perform one or more of the claimed method steps. More specifically, Defendant has agreed, controlled, instructed and/or directed its loyalty program partners to cooperate in the loyalty point conversion acts described above.

18.     Defendant's aforementioned acts have caused damage to Loyalty and will continue to do so unless and until enjoined.

## COUNT TWO
### PATENT INFRINGEMENT—U.S. PATENT NO. 8,511,550

19.     Plaintiff Loyalty Conversion realleges and incorporates herein paragraphs 1–13.

20.     Defendant has directly infringed the '550 Patent in violation of 35 U.S.C. §271(a).

ORIGINAL COMPLAINT

4

21.     Defendant has indirectly infringed the '550 Patent by inducing the infringement of the '023 Patent and contributing to the infringement of the '550 Patent in violation of 35 U.S.C. §§271(b) and (c), including by their respective customers.

22.     Upon information and belief, Defendant has jointly infringed the '550 Patent, including by controlling, instructing and/or directing others to perform one or more of the claimed method steps. More specifically, Defendant has agreed, controlled, instructed and/or directed its loyalty program partners to cooperate in the loyalty point conversion acts described above.

23.     Defendant's aforementioned acts have caused damage to Loyalty Conversion and will continue to do so unless and until enjoined.

## VII.   JURY DEMAND

24.     Plaintiff Loyalty hereby demands a jury on all issues so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff Loyalty respectfully requests that the Court:

A.     Enter judgment that Defendant infringes one or more claims of the '023 Patent and '550 Patent literally and/or under the doctrine of equivalents;

B.     Permanently enjoin Defendant, its agents, servants, and employees, and all those in privity with Defendant or in active concert and participation with Defendant, from engaging in acts of infringement of the '023 Patent and '550 Patent;

C.     Award Plaintiff Loyalty Conversion past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendant of the '023 Patent and '550 Patent in accordance with 35 U.S.C. §284; and

D.     Award Plaintiff Loyalty Conversion its costs, disbursements, and such further and additional relief as is deemed appropriate by this Court.

ORIGINAL COMPLAINT

Respectfully submitted,

Dated:  August 20, 2013

By: /s/ *Andrew G. DiNovo*
  Andrew G.  DiNovo
  Texas State Bar No. 00790594
  Jay D. Ellwanger
  Texas State Bar No. 24036522
  Adam G. Price
  Texas State Bar No. 24027750
  **DiNovo Price Ellwanger & Hardy LLP**
  7000 N.  MoPac Expressway, Suite 350
  Austin, Texas  78731
  Telephone:  (512) 539-2626
  Telecopier:  (512) 539-2627

ORIGINAL COMPLAINT

# EXHIBIT 6

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

**Overview of Infringement of the '023 Patent by JETBLUE AIRLINES, Inc. ("JETBLUE AIRLINES")**

Plaintiff accuses JETBLUE AIRLINES's computerized systems for the management, redemption and conversion of miles for JETBLUE AIRLINES's loyalty rewards program, TRUEBLUE POINTS (collectively, the "Accused System and Method"). JETBLUE AIRLINES has entered into agreements with partners, and provides for the conversion of points to TRUEBLUE POINTS miles. JETBLUE AIRLINES provides related support services and instructions for the infringing operation of such systems to its customers. Plaintiff accuses JETBLUE AIRLINES of directly infringing United States Patent No. 8,313,023 (the "'023 Patent"). The term "Accused System and Method" includes the associated computer hardware and internal semiconductors, software and data, and processes and methods related thereto. Charted as exemplary of the Accused System and Method is the conversion of AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS to TRUEBLUE POINTS.

Plaintiff further accuses JETBLUE AIRLINES of indirectly infringing the '023 Patent through providing, authorizing and instructing regarding the commercial exploitation of Accused System and Method by others, including its partners and customers. JETBLUE AIRLINES intends to cause infringement by its customers and users. JETBLUE AIRLINES instructs users to use the Accused System and Method in an infringing manner. JETBLUE AIRLINES further instructs users to configure and operate the Accused System and Method in an infringing manner. JETBLUE AIRLINES also provides support services for the Accused System and Method, including providing instructions, guides, online materials and technical support. [See, e.g., https://www.jetblue.com/help/?intcmp=hd_help].

The asserted claims include elements that are implemented, at least in part, by proprietary electronics and software in the Accused System and Method. The precise network topology, processes and algorithms used in them are held secret, at least in part, and are not publicly available in their entirety. An analysis of JETBLUE AIRLINES's internal documentation and/or source code may be necessary to fully and accurately describe all infringing features and functionality of the Accused System and Method and, accordingly, Plaintiff reserves the right to supplement these contentions once such information is made available to Plaintiff. Furthermore, Plaintiff reserves the right to revise these contentions, including as discovery in the case progresses, in view of the Court's final claim construction in this action and in connection with the provision of its expert reports.

1

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM



# TrueBlue. For your loyalty, we give you ours.

Join now to personalize your JetBlue experience with a customized Wishlist and bonuses that reward all types of travel.

## Join.

**TRUEBLUE**

Not a member? Join now to start earning points and get rewards.

JOIN NOW   OR SIGN IN!

CONFIDENTIAL – ATTORNEY'S EYES ONLY

2

## 8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| 8.313.023 Claim Language | Accused System and Method |
|---|---|
| [31 A] | JETBLUE AIRLINES is a commerce partner and operates the TRUEBLUE POINTS program. |
| A method comprising: | JETBLUE AIRLINES accepts conversions of AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS to TRUEBLUE POINTS, which are entity independent funds. |
| a commerce partner agreeing to accept transfers or conversions of quantities of non-negotiable credits to entity independent funds | 

FINANCIAL PARTNERS

MEMBERSHIP REWARDS

**Membership Rewards**

Turn Membership Rewards® points from American Express into TrueBlue points with simplicity and speed.

LEARN MORE

https://trueblue.jetblue.com/web/trueblue/our-partners |

3
CONFIDENTIAL – ATTORNEY'S EYES ONLY

[31 B]

in accordance with a credits-to-funds ratio,

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

JETBLUE AIRLINES accepts conversions of AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS at a ratio of 250 points to 200 JETBLUE AIRLINES TRUEBLUE POINTS.



http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=13000000&aid=57298&mrip=502%3aA48F28BACEEFDF7C2BDD980FAD0C3934

4

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| [31 C]<br>wherein the non-negotiable credits have been earned as part of a rewards program of an entity, | The Accused System and Method provides for the conversion of the AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS to TRUEBLUE POINTS, which are "entity independent funds." The non-negotiable credits, such as AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS, were earned as part of a rewards program with American Express.<br><br><br><br>http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=13000 000&aid=57298&mrip=502%3aA48F28BACEEFDF7C2BDD980FAD0C3934 |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| [31 D] | Once AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS have been converted to TRUEBLUE POINTS, JETBLUE AIRLINES accepts them for goods and services it provides. |
|---|---|
| wherein the commerce partner accepts the entity independent funds for goods or services that the commerce partner provides, | ## Redeem for JetBlue Flights |

**At 10,000 points...**
Get round-trip Award Flights to any of our destinations starting at 10,000 TrueBlue points and $5 gov't taxes/fees.*

**At 5,000 points...**
starting at 5,000 TrueBlue points and $2.50 gov't taxes/fees, you can redeem a one-way Award Flight.*

We don't have any blackout dates!

### Vacation    Magazines    Aloha

Now you can turn your Vacation, Magazines, and Aloha into unlimited TrueBlue points.

https://trueblue.jetblue.com/web/trueblue/how-it-works-using-points

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| [31 E]<br><br>wherein in absence of the non-negotiable credits being converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides, | JETBLUE AIRLINES does not accept AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS that have not been converted to TRUEBLUE POINTS for goods and services it provides.<br><br>## Terms & Conditions<br><br>*Offer available to TrueBlue members in good standing. The name and TrueBlue number provided must exactly match those listed in the TrueBlue account. Please allow six to eight weeks for credits to post. Offer has no cash value, nontransferable and cannot be combined with other offers. TrueBlue points may not be granted retroactively. TrueBlue points accrued and awards issued are subject to the terms and conditions of the TrueBlue rewards program, as applicable. Hilton HHonors™ membership, earning of Points & Miles™, and redemption of points are subject to HHonors' Terms and Conditions.<br><br>https://trueblue.jetblue.com/web/trueblue/our-partners |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| [31 F]<br><br>wherein the entity-independent<br>funds are loyalty points of a<br>loyalty program of the<br>commerce partner; | TRUEBLUE POINTS are loyalty points of a loyalty program operated by JETBLUE AIRLINES—<br>the JETBLUE AIRLINES TRUEBLUE POINTS program.<br><br><br><br>https://trueblue.jetblue.com/web/trueblue/home |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| [31 G]<br><br>at least one of one or more computers detecting a communication over a network to grant a consumer a quantity of the entity independent funds, | The Accused System and Method is implemented by JETBLUE AIRLINES's computer systems. When a conversion from AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS to TRUEBLUE POINTS miles occurs, the Accused System and Method automatically adds additional miles to the associated user's TRUEBLUE POINTS account. This addition of TRUEBLUE POINTS is performed in response to a JETBLUE AIRLINES computer receiving user ID, miles quantity, and other information about the conversion transaction.<br><br><br><br>https://trueblue.jetblue.com/group/trueblue/manage-my-points |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

**[31 H]**

wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-funds ratio.

## 8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

In connection with a conversion, the quantity of TRUEBLUE POINTS added to a particular account corresponds to the credit-to-funds ratio agreed between the entity and JETBLUE AIRLINES.



http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=13000000&aid=5729&mnrip=502%3aA48F28BACEEFDF7C2BDD980FAD0C3934

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023.: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| [31 I] wherein the subset of the non-negotiable credits are expended as part of the conversion or transfer, | Once the conversion operation is complete, the quantity of points selected for conversion will have been expended in return for the JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM airline miles. |
|---|---|



http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=13000
000&aid=57298&mrip=502%3aA48F28BACEEFDF7C2BDD980FAD0C3934

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| [31 J] and wherein the commerce partner is compensated for providing the entity independent discharge this liability. funds to the consumer; | When JETBLUE AIRLINES adds miles to the user's TRUEBLUE POINTS account, JETBLUE AIRLINES assumes a liability, and has incurred an obligation to provide goods or services to discharge this liability.   JETBLUE AIRLINES is compensated for the assumption of this liability. |
|---|---|
| | In analogous fashion, JETBLUE AIRLINES charges its users for miles they wish to purchase directly (rather than conversions).



https://trueblue.jetblue.com/web/trueblue/how-it-works-start-earning |

8,313,023 : JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| [31 K] | An electronic communication from the entity's computer systems is received by JETBLUE AIRLINES.  In response, the JETBLUE AIRLINES computer systems add miles to the appropriate user's TRUEBLUE POINTS account. |
|---|---|
| responsive to the communication, at least one of one or more computers granting the consumer the quantity of the entity independent funds; and | https://trueblue.jetblue.com/group/trueblue/manage-my-points  |

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| [31 L]<br><br>the at least one of the one or more computers accepting at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, | The JETBLUE AIRLINES computer network provides the opportunity to exchange miles for goods or services.  For example, one or more JETBLUE AIRLINES computers allow tickets to be paid for by redemption of TRUEBLUE POINTS.<br><br>## Redeem for JetBlue Flights<br><br>**At 10,000 points...**<br><br>Get roundtrip Award Flights to any of our destinations starting at 10,000 TrueBlue points and $5 gov't taxes/fees.*<br><br>**At 5,000 points...**<br><br>Starting at 5,000 TrueBlue points and $2.50 gov't taxes/fees, you can redeem a one way Award Flight.*<br><br><br><br>Vacation    Magazines    Aloha<br><br>https://trueblue.jetblue.com/web/trueblue/how-it-works-using-points |

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| [31 M] | The AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS must first be converted into |
|---|---|
| wherein the one or more computers do not accept the non-negotiable credits of the entity's rewards program for the goods or services in absence of the conversion or transfer. | TRUEBLUE POINTS before JETBLUE AIRLINES will accept them for redemption.

T R U E | jetBlue
B L U E

[TRANSFER POINTS]

TrueBlue Points
JetBlue Airways®

**Starting at 250 points**

http://www.membershiprewards.com/catalog/search/?N=13000000&endeca_url=us_nu%3dsubtab%26zone%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2bD%26rule%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2bD%2b-%2bAirlines%26mrexc%3d494dion0512g[dimrd1%26style%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2bD%2b%2bis_recognized%3dfalse&mrip=502%3aA48F28BACEEFDF7C2BDD980FAD0C3934 |

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| 32. The method of claim 31, wherein the granting of the quantity of entity independent funds comprises: | The commerce partner (JETBLUE AIRLINES) requires the customer to enter login information to access their loyalty program account that JETBLUE AIRLINES maintains for the consumer. |
| A. at least one of the one or more computers accessing a loyalty program account for the loyalty program that the commerce partner maintains for the consumer; | |
| B. and at least one of the one or more computers adding the quantity of entity independent funds, referred to as loyalty points, to an existing quantity of loyalty points for the consumer, where in records for the loyalty program account are maintained by the one or more computers within one or more non-transitory storage mediums. | **T R U E** B L U E<br><br>**It's nice to see you again.**<br>Please sign in to your TrueBlue account to continue.<br><br>Email address:<br><br>Password:                    Forgot or need a new password?<br><br>**Sign in**<br><br>https://book.jetblue.com/B6/auth/login?service=https%3A%2F%2Ftrueblue.jetblue.com%2Fc%2Fportal%2Flogin%3Fredirect%3D%252Fgroup%252Ftrueblue%252Fmy-trueblue-home%26p_l_id%3D[056] |

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

B. JETBLUE AIRLINES adds the entity independent funds (airline miles) to the amount previously existing in the consumer's account, which is maintained and stored by JETBLUE AIRLINES.



https://trueblue.jetblue.com/group/trueblue/manage-my-points

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| 33. The method of claim 32, further comprising:<br><br>at least one of the one or more computers completing a sale of the goods or services, where the consumer expends at least the portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides. | JETBLUE AIRLINES allows the consumer to expend a portion of the entity independent funds (TRUEBLUE POINTS) in exchange for the goods that the commerce partner provides (in this case, a plane ticket).<br><br><br><br>https://trueblue.jetblue.com/web/trueblue/how-it-works-using-points |

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| 34. The method of claim 31, further comprising:<br><br>At least one of the one or more computers transferring or converting the subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-credit funds ratio. | The non-negotiable credits (AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS) are transferred to entity independent funds (TRUEBLUE POINTS) using the credit-to-credit funds ratio based on flight fares.<br><br>**TRANSFER<br>POINTS** T R U E \| jetBlue<br>B L U E<br><br>**TrueBlue Points**<br>JetBlue Airways®<br><br>**Starting at 250 points**<br><br>http://www.membershiprewards.com/catalog/search/?N=13000000&endeca_url=us_nu%3dsubhab<br>%26zone%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-<br>%2bBullets%2bD%2c26rule%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-<br>%2bBullets%2bD%2b-%2bAirlines%26mrexc%3d4944ion0512gldimrdi%26style%3dBasic%2b-<br>%2bTravel%2b-%2bNavigation%2b-<br>%2bBullets%2bD%26is_recognized%3dfalse&mrip=502%3aA48F28BACEEFDF7C2BDD980F<br>AD0C3934 |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| 36. The method of claim 31, wherein a single one of the one or more computers detects the communication, grants the consumer the quantity of entity independent funds, and accepts the portion of the quantity of entity independent funds. | Claims 36 and 37 describe alternative infringing scenarios.  On information and belief, the Accused System and Method must implement one or the other of these alternative infringing scenarios.  A review of JETBLUE AIRLINES' technical documentation will be necessary to determine which one or both are implicated. |
| 37. The method of claim 31, wherein a plurality of different ones of the one or more computers detects the communication, grants the consumer the quantity of entity independent funds, and accepts the portion of the quantity of entity independent funds. | Claims 36 and 37 describe alternative infringing scenarios.  On information and belief, the Accused System and Method must implement one or the other of these alternative infringing scenarios.  A review of JETBLUE AIRLINES' technical documentation will be necessary to determine which one or both are implicated.<br><br>While the precise architecture of the plurality of different computers employed to implement the Accused System and Method is unknown until further discovery, on information and belief a plurality of computers implement the steps claimed herein. |
| 38. The method of claim 31, wherein the one or more computers are owned by or operated for the commerce partner.<br><br>[39 A] | JETBLUE AIRLINES operates (or has operated on its behalf) a network of computers to implement the method of claim 31. |
| A computer program product comprising: one or more non-transitory computer-readable mediums; program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to detect a communication over a | The Accused System and Method is implemented by program instructions implemented on one or more non-transitory computer-readable mediums.<br><br>*See* claim 31 A-J, *supra*. |

network to grant a consumer a quantity of entity independent funds, wherein the quantity of entity independent funds results from a conversion or transfer of at least a subset of non-negotiable credits into the quantity of entity independent funds in accordance with a credit-to-funds ratio, wherein the subset of the non-negotiable credits are expended as part of the conversion or transfer, and wherein the commerce partner is compensated for providing the entity independent funds to the consumer, wherein the commerce partner agrees to accept transfers or conversions of quantities of the non-negotiable credits to entity independent funds in accordance with the credits-to-funds ratio, wherein the non-negotiable credits have been earned as part of a rewards program of the entity, wherein the commerce partner accepts the entity independent funds for goods or services that the commerce partner provides, wherein in absence of the non-negotiable credits being

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| converted or transferred into the entity independent funds the commerce partner does not accept the non-negotiable credits for the goods or services that the commerce partner provides, wherein the entity-independent funds are loyalty points of a loyalty program of the commerce partner; | |
| [39 B] | The Accused System and Method is implemented by program instructions implemented on one or more non-transitory computer-readable mediums. |
| one or more non-transitory computer-readable mediums; program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to, responsive to the communication, grant the consumer the quantity of the entity independent funds; | See claim 31 K, supra. |
| [39 C] | The Accused System and Method is implemented by program instructions implemented on one or more non-transitory computer-readable mediums. |
| and program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to accept at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, wherein, per | See claim 31 L and M, supra. |

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| the program instructions, the non-negotiable credits are not accepted for the goods or services in absence of the conversion or transfer. | |
| 40. The computer program product of claim 39, wherein the program instructions to grant of the quantity of entity independent funds comprise: program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to access a loyalty program account for the loyalty program that the commerce partner maintains for the consumer; and program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to add the quantity of entity independent funds, referred to as loyalty points, to an existing quantity of loyalty points for the consumer, wherein records for the loyalty program account are maintained by the one or more computers within one or more non-transitory storage mediums. | The Accused System and Method is implemented by program instructions implemented on one or more non-transitory computer-readable mediums.

*See* claim 32, *supra*.

Records for the JETBLUE AIRLINES TRUEBLUE POINTS program are maintained and updated by computers operated on JETBLUE AIRLINES' behalf.



It's nice to see you again.
Please sign in to your TrueBlue account to continue.

Email address:

Password:

Sign in

Forgot or need a new password?

https://book.jetblue.com/B6.auth/login?service=https%3A%2F%2Ftrueblue.jetblue.com%2Fc%2F portal%2Flogin%3Fredirect%3D%252Fgroup%252Ftrueblue%252Fmy-trueblue-home%26p_l_id%3D10561 |

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| 41. The computer program product of claim 39, further comprising: program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to complete a sale of the goods or services, where the consumer expends at least the portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides. | The Accused System and Method is implemented by program instructions implemented on one or more non-transitory computer-readable mediums.

The consumer expends TRUEBLUE POINTS for goods or services provided by JETBLUE AIRLINES.

## Redeem for JetBlue Flights

**At 10,000 points...**
Get roundtrip Award Flights to any of our destinations starting at 10,000 TrueBlue points and $5 gov't taxes/fees.*

**At 5,000 points...**
Starting at 5,000 TrueBlue points and $2.50 gov't taxes/fees, you can redeem a one-way Award Flight.*

We don't have any blackout dates!

### Vacation
Book your Getaway vacation package with a combination of cash + TrueBlue Points. Terms apply.

### Magazines
Subscribe to and start reading all your favorite magazines using TrueBlue points

### Aloha
Start saving and redeeming TrueBlue points on Hawaiian Airlines flights today |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023: JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| https://trueblue.jetblue.com/web/trueblue/how-it-works-using-points | |
|---|---|
| 42. The computer program product of claim 39, further comprising: program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to transfer or convert the subset of the non-negotiable credits into the quantity of entity independent funds in accordance with the credit-to-funds ratio. | The Accused System and Method is implemented by program instructions implemented on one or more non-transitory computer-readable mediums.<br><br>*See* claim 34, *supra*. |
| 44. The computer program product of claim 39, wherein a single computer executes the program instructions to detect the communication, the program instructions to grant the consumer the quantity of entity independent funds, and the program instructions to accept the portion of the quantity of entity independent funds. | *See* claim 36, *supra*. |
| 45. The computer program product of claim 39, wherein a plurality of different computers communicating with each other | The Accused System and Method is implemented by program instructions implemented on one or more non-transitory computer-readable mediums.<br><br>*See* claim 37, *supra*. |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,313,023 : JETBLUE AIRLINES TRUEBLUE POINTS LOYALTY PROGRAM

| | |
|---|---|
| execute the program instructions to detect the communication, the program instructions to grant the consumer the quantity of entity independent funds, and the program instructions to accept the portion of the quantity of entity independent funds. | The Accused System and Method is implemented by program instructions implemented on one or more non-transitory computer-readable mediums. |
| 46. The computer program product of claim 39, wherein the one or more computers upon which the program instructions are loaded and executed are owned by or operated for the commerce partner. | *See* claim 38, *supra.* |

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

## Overview of JETBLUE AIRLINES' Infringement of the '550 Patent

Plaintiff accuses JETBLUE AIRLINES' computerized systems for the management, redemption and conversion of miles for JETBLUE AIRLINES' loyalty rewards program, TRUEBLUE POINTS (collectively, the "Accused System and Method"). JETBLUE AIRLINES has entered into agreements with partners, and provides for the conversion of points to JETBLUE AIRLINES miles. JETBLUE AIRLINES provides related support services and instructions for the infringing operation of such systems to its customers. Plaintiff accuses JETBLUE AIRLINES of directly infringing United States Patent No. 8,511,550 (the "'550 Patent"). The term "Accused System and Method" includes the associated computer hardware and internal semiconductors, software and data, and processes and methods related thereto. Charted as exemplary of the Accused System and Method is the conversion of AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS to TRUEBLUE POINTS.

Plaintiff further accuses JETBLUE AIRLINES of indirectly infringing the '550 Patent through providing, authorizing and instructing regarding the commercial exploitation of Accused System and Method by others, including its partners and customers. JETBLUE AIRLINES intends to cause infringement by its customers and users. JETBLUE AIRLINES instructs users to use the Accused System and Method in an infringing manner. JETBLUE AIRLINES further instructs users to configure and operate the Accused System and Method in an infringing manner. JETBLUE AIRLINES also provides support services for the Accused System and Method, including providing instructions, guides, online materials and technical support. [See, e.g., https://www.jetblue.com/help/?intcmp=hd_help].

The asserted claims include elements that are implemented, at least in part, by proprietary electronics and software in the Accused System and Method. The precise network topology, processes and algorithms used in them are held secret, at least in part, and are not publicly available in their entirety. An analysis of JETBLUE AIRLINES' internal documentation and/or source code may be necessary to fully and accurately describe all infringing features and functionality of the Accused System and Method and, accordingly, Plaintiff reserves the right to supplement these contentions once such information is made available to Plaintiff. Furthermore, Plaintiff reserves the right to revise these contentions, including as discovery in the case progresses, in view of the Court's final claim construction in this action and in connection with the provision of its expert reports.

CONFIDENTIAL – ATTORNEY'S EYES ONLY

## 8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| 8,511,550 Claim Language | Accused System and Method |
|---|---|
| **[1 A]**<br><br>A method comprising: | The Accused System and method provides for the serving of a web page for an entity such as AMERICAN EXPRESS MEMBERSHIP REWARDS to client machines. The client interface displays non-negotiable credits in the form of loyalty program points. |
| a computer serving a set of one or more Web pages for a loyalty program of an entity to one or more remotely located client machines, wherein the Web pages are able to be rendered within a client-side browser as a graphical user interface on the one or more client machines, wherein upon being rendered within the client-side browser said graphical user interface shows a quantity of non-negotiable credits, wherein said non-negotiable credits are loyalty points of the loyalty program possessed by a member, | <br><br>https://online.americanexpress.com/myca/logon/us/action?request_type=LogonHandler&Face=en_US&DestPage=https%3A%2F%2Fonline.americanexpress.com%2Fmyca%2F2Facctmem1%2Fus%2%2Fmyaccountsummary.do%3Frequest_type%3Dauthreg_acctAccountSummary |

2

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| [1 B] | |
|---|---|
| wherein upon being rendered within the client-side browser the graphical user interface comprises a conversion option to convert at least a subset of the shown non-negotiable credits into a quantity entity independent funds, | The user interface presented by the Accused System and Method provides for a conversion option to convert the non-negotiable credits into TRUEBLUE POINTS for JETBLUE AIRLINES.<br><br>**T R U E** \| jetBlue<br>**B L U E**<br><br>TRANSFER POINTS<br><br>**TrueBlue Points**<br>JetBlue Airways®<br><br>**Starting at 250 points**<br><br>http://www.membershiprewards.com/catalog/search/?N=13000000&endeca_url=us_nu%3dsubtab%26.zone%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2bD%26rule%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2bD%2b-%2bAirlines%26mrexc%3d4944tion0512gIdimrdl%26style%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2bD%2b-%2bNavigation%2b-%2bBullets%2bD%26is_recognized%3dfalse&mrip=502%3aA48F28BACEEFDF7C2BDD980FAD0C3934 |

| [1 C] | 8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM |
|---|---|
| wherein said entity independent funds are different loyalty points of a different loyalty program of a commerce partner, | The TRUEBLUE POINTS are loyalty program points for JETBLUE AIRLINES, a commerce partner. |



TrueBlue. For your loyalty,
we give you ours.

Join now to personalize your JetBlue experience
with a customized Wishlist and bonuses that reward
all types of travel.

https://trueblue.jetblue.com/web/trueblue/home

| [1 D]<br><br>wherein said entity independent funds are possessed by the member, | The TRUEBLUE POINTS are attributed to a particular member.<br><br><br><br>https://trueblue.jetblue.com/group/trueblue/manage-my-points |
|---|---|

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

CONFIDENTIAL – ATTORNEY'S EYES ONLY

| [1 E] wherein an agreement exists between the entity and the commerce partner, wherein the agreement permits members to convert the non-negotiable credits to the entity independent funds in accordance with a fixed credits-to-funds conversion ratio, | **8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM**<br><br>JETBLUE AIRLINES and the converting entity have entered into contractual arrangements whereby a credits-to-funds conversion may be effected as a prescribed ratio.<br><br><br><br><br>http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=130000<br>00&aid=57298&mrip=502%3aA48T28BACEEFDF7C2BDD980FADDC5934 |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

# 8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

**[1 F]** wherein the agreement specifies that the entity is to compensate the commerce partner in an agreed upon amount of cash or credit for conversions of non-negotiable credits to entity independent funds,

JETBLUE AIRLINES and the entity have entered into contractual arrangements whereby JETBLUE AIRLINES is compensated in an agreed-upon amount for its miles, which it recognizes as a liability on its balance sheet.



CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=130000 00&aid=57298&mrip=502%3aA48f28BACEEFDF7C2BDD980FAD0C3934

8
CONFIDENTIAL – ATTORNEY'S EYES ONLY

| [1 G] |
| --- |
| wherein said agreed upon amount is a multiple of a quantity of converted non-negotiable credits, | The agreed-upon amount is directly correlated to the number of miles converted. |

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM



CONFIDENTIAL – ATTORNEY'S EYES ONLY

http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=130000
00&aid=57298&mrip=502%3a.A48F28BAC/EEFDE7C2BDD980FADDC3934

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| | |
|---|---|
| [1 H]<br><br>wherein the entity independent funds are redeemable per the different loyalty program for commerce partner goods or for commerce partner services, wherein the commerce partner is not said entity, | The TRUEBLUE POINTS may be redeemed for goods or services of JETBLUE AIRLINES. |

## Redeem for JetBlue Flights

**At 10,000 points...**
Get round-trip Award Flights to any of our destinations starting at 10,000 TrueBlue points and $5 gov't taxes/fees.*

**At 5,000 points...**
Starting at 5,000 TrueBlue points and $2.50 gov't taxes/fees, you can redeem a one-way Award Flight.*

We don't have any blackout dates!

Vacation          Magazines          Aloha

https://trueblue.jetblue.com/web/trueblue/how-it-works-using-points

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| | |
|---|---|
| [1 I]<br><br>wherein in absence of being converted the non-negotiable credits are not accepted as payment for commerce partner goods or for commerce partner services; | JETBLUE AIRLINES does not accept AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS that have not been converted to JETBLUE AIRLINES TRUEBLUE POINTS for goods and services it provides.<br><br>**Terms & Conditions**<br><br>*Offer available to TrueBlue members in good standing. The name and TrueBlue number provided must exactly match those listed in the TrueBlue account. Please allow six to eight weeks for credits to post. Offer has no cash value, non-transferable and cannot be combined with other offers. TrueBlue points may not be granted retroactively. TrueBlue points accrued and awards issued are subject to the terms and conditions of the TrueBlue rewards program, as applicable. Hilton HHonors™ membership, earning of Points & Miles™, and redemption of points are subject to HHonors Terms and Conditions.<br><br>https://trueblue.jetblue.com/web/trueblue/our-partners<br><br>TRUE BLUE \| jetBlue<br>TRANSFER POINTS<br>TrueBlue Points<br>JetBlue Airways®<br>**Starting at 250 points**<br><br>http://www.membershiprewards.com/catalog/search/?N=130000 00&endeca_url=us_nu%3dsubtab%26zone%3dBasic%2b-%2bTravel%2bD%26rule%3dBasic%2b-%2bNavigation%2b-%2bBullets%2bD%26rule%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2bD%2b-%2bAirlines%26mrexc%3d494dion0512gldimd0%26style%3dB asic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2bD%26is_recognized%3dfalse&mrip=502%3a%3aA4 8F28BACEEFDF7C2BDD980FAD0C3934 |

CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| [1 J] | The user interface receives the message indicating a selection of the conversion option (e.g. 200 |
| --- | --- |

the computer responsive to receiving a message indicating a selection of the conversion option, processing the selection to effectuate changes in the served set of Web pages; and

JETBLUE AIRLINES TRUEBLUE POINTS in exchange for 250 AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS, as shown below).



http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=130000 00&aid=57298&mrip=S02%3aA48F28BACEEFDF7C2BDD980FAD0C3934

12
CONFIDENTIAL – ATTORNEY'S EYES ONLY

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| [1 K] |
| --- |
| responsive to the processing, the computer serving one or more Web pages or Web page updates that include the effectuated changes to the one or more remotely located client machines, |

The updated amount of available AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS shows on the user's My Account Home page.



https://online.americanexpress.com/myca/logon/us/action?request_type=LogonHandler&Face=en_US&DestPage=https%3A%2F%2Fonline.americanexpress.com%2Fmyca%2Facctmgmt%2Fus%2Fmyaccountsummary.do%3Frequest_type%3Dauthreg_acctAccountSummary

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| [1 L] wherein upon being rendered within the client-side browser the graphical user interface is updated with the effectuated changes, | The updated amount of available AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS shows on the user's My Account Home page.<br><br><br><br>https://online.americanexpress.com/myca/logon/us/action?request_type=LogonHandler&Face=en-US&DestPage=https%3A%2F%2Fonline.americanexpress.com%2Fmyca%2Faccttmgmt%2Fus%2Faccttmgmt%2Fus%2Fmyaccountsummary.do%3Frequest_type%3Dauthreg_acctAccountSummary |

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| [1 M] | |
|---|---|
| wherein the updated graphical user interface shows a reduced quantity of non-negotiable credits possessed by the member in the loyalty program, said reduced quantity resulting at least in part from the subset of non-negotiable credits being converted into the quantity of entity independent funds in accordance with the fixed credits-to-funds conversion ratio. | The updated amount of available AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS shows on the user's My Account Home page. Once the credits-to-funds conversion has been executed, the remaining balance (reduced quantity) of AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS will be the initial amount minus the credit amount.  https://online.americanexpress.com/myca/logon/us/action?request_type=LogonHandler&Face=en_US&DestPage=https%3A%2F%2Fonline.americanexpress.com%2Fmyca%2F2Facctmgmt%2Fus%2Faccountsummary.do%3Frequest_type%3Dauthreg_acctAccountSummary |

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| 2. The method of claim 1, wherein the updated graphical user interface shows a quantity of entity independent funds resulting from converting the subset of non-negotiable credits into the quantity of entity independent funds in accordance with the fixed credits-to-funds conversion ratio. | The updated graphical user interface displays an updated quantity after conversion.  https://trueblue.jetblue.com/group/trueblue/manage-my-points |

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| 3. The method of claim 1, wherein the updated graphical user interface shows a quantity of available entity independent funds possessed by the member for use as payment for the goods or services provided by the commerce partner, said quantity of available entity independent funds including an amount resulting from the conversion operation. | The updated graphical user interface displays a quantity of JETBLUE AIRLINES TRUEBLUE POINTS available after conversion.<br><br><br><br><br>https://trueblue.jetblue.com/group/trueblue/manage-my-points |
|---|---|

| 8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM | |
|---|---|
| 5. The method of claim 1, wherein the entity imposes a lower threshold on the quantity of non-negotiable credits able to be converted via conversion option the Web pages, wherein the lower threshold is greater than one hundred non-negotiable credits. | AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS are redeemable in blocks of 250.<br><br>T R U E<br>B L U E \| jetBlue<br><br>TRANSFER POINTS<br><br>TrueBlue Points<br>JetBlue Airways®<br><br>**Starting at 250 points**<br><br>http://www.membershiprewards.com/catalog/search/?N=13000000&endeca_url=us_nu%3dsubtab%26zone%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2b-%26rule%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2b-%2b-%2bAirlines%26mrexc%3d4944ion0512gfdimrd!%26style%3dBasic%2b-%2bTravel%2b-%2bNavigation%2b-%2bTravel%2b-%2bNavigation%2b-%2bBullets%2b-%26is_recognized%3dfalse&mrip=502%3A48F28BACEEFDF7C2BDD980FAD0C3934 |

8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| | |
|---|---|
| 6. The method of claim 1, wherein the loyalty program of the entity is an airline, hotel, or credit card loyalty program, wherein the different loyalty program of the commerce partner is an airline, hotel, or credit card loyalty program. | AMERICAN EXPRESS MEMBERSHIP REWARDS POINTS are associated with a credit card loyalty program.<br><br>FINANCIAL PARTNERS<br><br>MEMBERSHIP REWARDS<br><br>**Membership Rewards**<br><br>Turn Membership Rewards® points from American Express into TrueBlue points with simplicity and speed.<br><br>LEARN MORE<br><br>https://trueblue.jetblue.com/web/trueblue/our-partners |

## 8,511,550: JETBLUE TRUE BLUE LOYALTY PROGRAM

| 7. The method of claim 1, wherein the computer serves the set of one or more Web pages, processes the selection, and serves the one or more Web pages or Web page updates that include the effectuated changes within a single user-interactive Web session. | Conversions are effectuated in real time, in a single user session.<br><br><br><br>http://www.membershiprewards.com/catalog/travel/TravelPartner.aspx?brandId=4621&N=130000 00&aid=57298&mrip=502%3aA48F28BACEEFDF7C2BDD980FAD0C3934 |

CONFIDENTIAL – ATTORNEY'S EYES ONLY