IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, § § § | |
| Plaintiff, § § | Case No. 2:13-CV-655 |
| v. § § | |
| AMERICAN AIRLINES, INC., et al., § § | |
| Defendants. § | |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

On August 28, 2014, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent Nos. 8,313,023 ("the '023 patent") and 8,511,550 ("the '550 patent"), owned by plaintiff Loyalty Conversion Systems Corporation ("Loyalty"). After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 110, 113, and 115), the Court issues this Claim Construction Memorandum Opinion and Order.

### I. BACKGROUND

On August 20, 2013, Loyalty filed separate actions against each of the nine defendants. All nine actions were later consolidated for all purposes except venue under the lead case, No. 2:13-cv-655. Case No. 2:13-cv-655, Dkt. No. 18. In its complaints, Loyalty asserted claims 31-34, 36-42, and 44-46 of the '023 patent, and claims 1-3 and 5-7 of the '550 patent against each of the nine defendants.

The '023 patent, entitled "Exchange of Non-Negotiable Credits of an Entity's Rewards Program for Entity Independent Funds," is directed to a system by which non-negotiable credits earned in an awards program (such as airline frequent flyer miles or hotel loyalty award points) can be converted into credits that can be used to purchase goods or services from a vendor other than the issuing entity. The '550 patent, entitled "Graphical User Interface for the Conversion of Loyalty Points Via a Loyalty Point Website," is directed to a graphical user interface, such as a website, that includes a conversion option that, as in the '023 patent, allows the conversion of non-negotiable credits earned from one entity into a form that can be used to purchase goods or services from another vendor.

The common specification of the two patents explains that loyalty rewards issued to customers are typically redeemable with the granting entity or its affiliates, but not with other unaffiliated entities. The lack of transferability reduces the attractiveness of the rewards to customers and leads to some customers having modest amounts of rewards from multiple providers, none of which have significant value to the customer. In addition, the specification cites delays in processing requests for redemption of awards and the expiration of awards as discouraging consumers from participating in awards programs. '023 patent, col. 1, line 18, through col. 2, line 11; '550 patent, col. 1, line 37, through col. 2, line 32.

Other aspects of the invention described in the common specification are (1) "a software method for converting non-negotiable credits into negotiable funds," in which the conversion of non-negotiable credits into negotiable funds at an agreed-upon conversion rate is automatically determined and the conversion transaction automatically performed; and (2) a "Web-based credit to fund conversion system," in which the negotiable funds obtained through conversion of non-

2

negotiable credits can be used for e-commerce purchases from vendors that do not honor the non-negotiable credits. '023 patent, col. 2, line 66, through col. 3, line 24; '550 patent, col. 3, ll. 21-46.

## II. DISCUSSION

Only three groups of terms or phrases from the two patents are in dispute: In the '550 patent, the parties dispute the meaning of the phrase "to convert." In the '023 patent, the parties dispute the meaning of the term "transfer[s] or conversion[s]," and the related term "conversion or transfer." Also at issue are the phrase "the at least one of the one or more computers" and the phrase "the one or more non-transitory computer-related mediums" in claims 31 and 39 of the '023 patent, respectively. The plaintiff contends that none of those terms needs construction, as each should be given its plain and ordinary meaning. The defendants disagree. In their view, the terms "convert," "transfer[s] or conversion[s]," and "conversion or transfer" should all be construed to mean conversions that occur approximately immediately. The defendants contend that the phrases "the at least one of the one or more computers" and "the one or more non-transitory computer-related mediums," are both indefinite for lack of proper antecedent bases, and that the claims in which those terms appear are therefore invalid on indefiniteness grounds.

### A. "To Convert," "Transfer[s] or Conversion[s]," and "Conversion or Transfer"

The plaintiff argues that the phrases "transfer[s] or conversion[s]" and "conversion or transfer," used in the '023 patent, and the phrase "to convert," used in the '550 patent, should be given their plain and ordinary meaning. The defendants argue that each of those phrases should be construed to mean "to convert in an approximately immediate fashion." The Court concludes that the disputed terms should be given their plain and ordinary meaning and that they are not

3

used in the '023 and '550 patents in a way to require that they be accorded the narrower meaning advocated by the defendants.

The claim language contains nothing that would support the defendants' argument that the disputed phrases, and in particular the term "convert," as those phrases are used in the patents, mean "to convert in an approximately immediate fashion." To the contrary, the context in which the phrases are used in the claims suggests that the terms are intended to be accorded their ordinary meaning in common parlance. In particular, several dependent claims in the '550 patent, claims 7, 15, and 19, recite methods in which the customer's selection of the conversion option and the updating of the Web page or pages in accordance with the selection is done "within a single user-interactive Web session" or a "single user-interactive session."

Loyalty argues that the presence of those dependent claims, in which the entire transaction (and thus the conversion) is approximately immediate, indicates that the independent claims of the two patents are not limited to embodiments featuring "approximately immediate" transactions. The defendants respond that principles of claim differentiation are inapplicable here, because the defendants' proposed construction would not render any of the dependent claims wholly superfluous. While that is so, the dependent claims, which are directed to processing "within a single user-interactive Web session" or "user-interactive session," capture the concept of "approximately immediate" transactions. That is particularly clear because the specification states that the term "approximately immediate," as used in the patents, signifies "that a transaction can occur within a single Web session." '023 patent, col. 2, ll. 42-43; '550 patent, col. 2, ll. 63-64. The specification does not describe any other method of attaining "approximately immediate" results, so the presence of the dependent claims strongly suggests

that the independent claims do not require the entire transaction, including the conversion, to be conducted in a single web session. The specification thus supports Loyalty's argument that the terms "convert," "transfer," and "conversion," as used in the independent claims of the two asserted patents, are not limited to conversions and transfers that are "approximately immediate."

As support for their proposed construction, the defendants look to the common specification of the '023 and '550 patents. In particular, they focus on the portion of the specification that describes one of the problems encountered by consumers when redeeming non-negotiable credits: the time that such conversions can take. The specification explains that the steps of a conventional redemption

> often require days or weeks to complete. For instance, consumers participating in online entertainment sites often are required to wait a minimum of three days for their entertainment credits to be redeemed. Redemption delay can be particularly aggravating to e-commerce consumers, who by nature of an e-commerce marketplace expect rapid responses and immediate consumer gratification.

'023 patent, col. 1 ll. 47-54; '550 patent, col. 1, line 67 through col. 2 line 7. From this language, the defendants infer that the specification "clearly disparages prior-art conversion techniques based on the lengthy delay consumers experience in redeeming their non-negotiable credits." Dkt. No. 113, at 5. According to the defendants, the specification "expressly distinguishes the claimed invention on precisely this point," by stating that the invention overcomes the time problem by "providing systems and methods for converting non-negotiable credits into negotiable funds <u>in an approximately immediate fashion</u>." <u>Id.</u> The defendants then quote several excerpts from the specification in which the specification states that the invention permits consumers to convert non-negotiable credits "in an approximately immediate fashion"; that it "can have approximately immediate results"; that the entire method "can occur in an

approximately immediate fashion"; and that the conversion agency "can automatically approximately immediately convert" such credits into a quantity of negotiable funds. Id. The defendants conclude that, by distinguishing the prior art for not allowing approximately immediate conversions and praising the invention for allowing conversions in that manner, the patentees disclaimed a broader meaning for the term "conversion" and limited themselves to a method in which conversions occur in an approximately immediate fashion.

The defendants' argument is unconvincing. Nothing in the specification requires that the claimed method convert non-negotiable credits into negotiable funds "approximately immediately," as the defendants claim, much less that the term "convert" be given that unconventional meaning. The specification simply points out that the computerized system gives the claimed method the capacity to conduct such conversions quickly, which the prior art systems discussed in the specification did not do. The immediate conversion feature is thus expressed as an advantage of the system as a whole, not as a limitation of the claims, and certainly not as a limitation of the claims driven by a narrow definition of the term "convert." It is common for a specification to describe various advantages or purposes of a claimed invention, but that does not mean that an accused product that does not embody each of those advantages or serve each of those purposes is thereby excluded from the patent's coverage. See Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1325 (Fed. Cir. 2008) ("[I]t is generally not appropriate to limit claim language to exclude particular devices because they do not serve a perceived purpose of the invention.") (internal quotation marks omitted); Kim v. ConAgra Foods, Inc., 465 F.3d 1312, 1319 (Fed. Cir. 2006) ("The mere fact that one object of the invention is to produce a slow acting oxidant which is functional throughout the entire manufacturing process does not mean that this

particular feature was adopted as a limitation in each claim of the patent."); E-Pass Techs., Inc. v. 3Com Corp., 343 F.3d 1364, 1370 (Fed. Cir. 2003) ("An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them."); Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1301 (Fed. Cir. 2003) ("Advantages described in the body of the specification, if not included in the claims, are not per se limitations to the claimed invention.") (internal quotation marks omitted). Those principles apply even if the specification disparages the prior art on the ground that it lacks advantages found in the invention; absent a clear disavowal of claim scope, language touting the advantages of the claimed invention over the prior art does not justify reading limitations into otherwise clear claim language. See Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1332-33 (Fed. Cir. 2004).

The cases relied upon by the defendants are not helpful to them. In each of those cases the specification defined the invention restrictively, so as to exclude a particular embodiment. In SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337 (Fed. Cir. 2001), the specification made clear that the catheters recited in the claims used coaxial structures, not the alternative, dual lumen structures. The specification was sufficiently clear on that point that the court was able to conclude that the patent used the term "catheter" to mean coaxial catheters, not catheters having any other structure. Id. at 1340-45. The same is true of Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314 (Fed. Cir. 2011), where the court defined the term "document or file" as limited to information originated from hard copy documents, in light of the specification's definition of the invention "as a system that processes information derived from hard copy documents." Id. at 1321-23. Likewise, in Honeywell International, Inc. v. ITT

Industries, Inc., 452 F.3d 1312 (Fed. Cir. 2006), the court construed the term "electrically conductive fibers" to exclude carbon fibers in light of the remarks in the specification explaining why carbon fibers would not be suitable as "electrically conductive fibers." Id. at 1320.

In all three of those cases, the specification made clear that the term used in the claims was to be defined narrowly, to exclude the broader meaning proposed in the litigation. Here, the specification merely touted the capacity of the patented system to allow immediate conversion and disparaged the referenced prior art systems for not allowing such conversions. Nothing in the specification suggests that the patent does not cover embodiments that use the patented method but do not allow conversions to be performed immediately.

The Federal Circuit has criticized courts for importing limitations from the specification into the claims. See Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc). What the defendants are proposing is even worse: to import an advantageous feature of the invention from the specification and convert it into a restrictive limitation on the claims. The Court concludes that nothing in the specification supports such a strained construction of the terms in dispute here. The Court therefore holds that the phrase "to convert" needs no construction and can be easily understood by reference to its plain and ordinary meaning.

### B. "The at Least One of the One or More Computers"

The plaintiffs contend that the phrase "the at least one of the one or more computers" in claim 31 of the '023 patent should be given its plain and ordinary meaning. The defendants do not propose a construction to that phrase, but instead assert that the phrase is indefinite and that claim 31 and its dependent claims are therefore invalid for indefiniteness.

Claim 31 contains the following three limitations, quoted in pertinent part:

>> at least one of one or more computers detecting a communication over a network to grant a consumer a quantity of the entity independent funds . . .
>> responsive to the communication, at least one of one or more computers granting the consumer the quantity of the entity independent funds; and
>> the at least one of the one or more computers accepting at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides, wherein the one or more computers do not accept the non-negotiable credits of the entity's rewards program for the goods or services in [the] absence of the conversion or transfer.

'023 patent, col. 10, ll. 7-27 (emphases added).

The defendants argue that the portion of the third underlined limitation, which recites "the at least one of the one or more computers," is indefinite because it lacks a clear antecedent basis. In particular, the defendants argue that it is unclear whether the computers that accept the quantity of entity-independent funds are the computers that detect a communication over a network or the computers that grant the consumer the quantity of entity-independent funds. According to the defendants, a person of ordinary skill reading the patent would "interpret claim 31 to have at least two conflicting interpretations. First, the detecting and accepting steps could be performed by the same set of computers with the granting step performed by a different set of computers. Second, the detecting and granting steps could be performed by the same set of computers with the accepting step performed by a different set of computers." Dkt. No. 113, at 11-12 (emphases removed). Because the claim is susceptible to two conflicting interpretations, the defendants argue, it does not serve to provide public notice of the scope of the claim with reasonable certainty and is therefore invalid for indefiniteness in light of the Supreme Court's recent decision in Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120 (2014).

Taken in isolation, the language of claim 31 can be construed in a manner that makes the claim coherent, albeit awkward. The first two references to sets of "one or more computers"

9

provide that at least one of one or more computers detects a communication to grant a consumer a quantity of entity-independent funds (the first reference) and that in response to the communication at least one of one or more computers grants the consumer the quantity of entity-independent funds (the second reference). That much is clear, and the defendants do not contend otherwise. The third reference to a set of "one or more computers" provides that a portion of the entity-independent funds are accepted in exchange for goods or services, a function that is performed by "the at least one of the one or more computers."

It is those introductory words—"the at least one of the one or more"—that create confusion as to the meaning of the claim. However, that language can be squared with the rest of the claim if the claim as a whole is read to mean that at least one of the first set of computers or at least one of the second set of computers not only performs the function assigned to its own set of computers, but also performs the function of accepting the entity-independent funds in exchange for goods or services. Although the claim language does not specify which of the "at least one of one or more computers" is the antecedent for the third reference to "one or more computers," that problem can be solved by construing the antecedent for the third reference to be either the first set of computers or the second set of computers, or both.

To be sure, there is no indication in the specification or elsewhere that the invention was intended to be limited in that fashion. However, the alternative construction offered by Loyalty—that each of the three functions can be performed by a different computer or set of computers—is unsatisfactory, because it wholly ignores the antecedent reference in the limitation that recites "the at least one of the one or more computers accepting at least a portion of the quantity of entity independent funds." Based on the language of claim 31 standing alone, the

Court would be prepared to construe that claim to mean that a computer performing the "accepting" function would also have to perform the "detecting" function, or the "granting" function, or both. But the language of claim 31 does not stand alone.

As the defendants pointed out at the claim construction hearing, claim 37, which depends from claim 31, is inconsistent with that interpretation of claim 31. Claim 37 recites the method of claim 31 and then adds "wherein a plurality of different ones of the one or more computers detects the communication, grants the consumer the quantity of entity independent funds, and accepts the portion of the quantity of entity independent funds." In referring to a plurality of "different ones of the one or more computers," claim 37 requires that the three functions—detecting, granting, and accepting—each be performed by a different computer or set of computers. As such, claim 37 conflicts with the construction of claim 31 set out above, in which the computer or computers that perform the accepting step also perform either the detecting step or the granting step, or both.

The clash between claim 37 and the only construction of claim 31 that makes linguistic sense leaves the Court in a quandary as to the meaning of claim 31. Under the Federal Circuit's pre-Nautilus test, the Court might be inclined to disregard the incoherent language of the "the at least one of the one or more computers" limitation and construe claim 31 as if that limitation read simply "at least one of one or more computers." But it is hard to ignore the patentee's obviously conscious decision to depart from that language in the "the at least one of the one or more computers" limitation, in favor of a different formulation using the word "the" twice. In the end, the Court is left to guess at the meaning of claim 31. Because the meaning of that claim, in the Court's view, would not "inform those skilled in the art about the scope of the invention

with reasonable certainty," Nautilus, 134 S. Ct. at 2129, the Court holds that claim 31 is invalid for indefiniteness.[1]

### C. "The One or More Non-Transitory Computer-Readable Mediums"

The defendants also contend that the phrase "the one or more non-transitory computer-readable mediums," which is found in claim 39 of the '023 patent, is indefinite.

Claim 39 of the '023 patent contains the following limitations, quoted in pertinent part:

> A computer program product comprising:
> one or more non-transitory computer-readable mediums;
> program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to detect a communication over a network to grant a consumer a quantity of entity independent funds . . .
> one or more non-transitory computer-readable mediums;
> program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to, responsive to the communication, grant the consumer the quantity of entity independent funds; and
> program instructions, stored on at least one of the one or more non-transitory computer-readable mediums, to accept at least a portion of the quantity of entity independent funds in exchange for the goods or services that the commerce partner provides . . . .

'023 patent, col. 11, ll. 1-38 (emphases added).

The defendants argue that claim 39 and its dependent claims are indefinite because claim 39 refers to two non-transitory computer-readable mediums and three program instructions, but does not make clear which of the three program instructions are stored on which of the two non-

---

[1] Loyalty offered an expert declaration in support of its argument that claim 31 is not indefinite. The declaration, however, simply asserts that the phrase "the at least one of the one or more computers" would be "readily understandable to a person of ordinary skill in the art who would understand [it] with reasonable certainty to refer to the same set of one or more computers . . . in claim[] 31," and that the phrase "one or more computers" is "used consistently throughout the claim." Dkt. No. 115-2, at 5, 6. Those statements are of no help to the Court. They are entirely conclusory and do not focus on, explain, or even appear to recognize the linguistic problem created by the confusing antecedent reference in the "the at least one of the one or more computers" limitation.

transitory computer-readable mediums, except to specify that the first program instruction is stored on the first non-transitory computer-readable medium.

Once again, the claim drafting is sloppy, but in this case it is not indefinite. The second reference to the "one or more non-transitory computer-readable mediums" is entirely redundant of the first. The claim does not recite a second set of non-transitory computer-readable mediums, but simply repeats that limitation, which appears to be the result of a drafting error. Interpreting the second reference to the "one or more non-transitory computer-readable mediums" as simply a duplication of the first, the claim is not indefinite, as it simply recites that the three program instructions are stored on at least one of the one or more non-transitory computer-readable mediums, a concept that would be perfectly clear to a person of ordinary skill in the art.

Even if the second reference to "one or more non-transitory computer-readable mediums" were not regarded as a drafting error but instead were treated as a separate limitation, the claim would still not be indefinite. The defendants appear to agree that the first set of program instructions must be stored on the first of the "one or more non-transitory computer-readable mediums," as the reference to the first set of program instructions comes before the second recitation of "one or more non-transitory computer-readable mediums." But even as to the second and third set of program instructions, the requirement that they be "stored on at least one of the one or more non-transitory computer-readable mediums" does not create ambiguity, as the reference to "one or more non-transitory computer-readable mediums" could refer to either the first iteration of that limitation or the second. Accordingly, the claim is properly read to allow for the second and third set of program instructions to be stored on either the first or second set

of "one or more non-transitory computer-readable mediums." That is, the second and third set of program instructions can be stored on any of the non-transitory computer-readable mediums. Reading the claim language in that way, the claims have exactly the same coverage, whether the second recitation of "one or more non-transitory computer-readable mediums" was a drafting error or was intended to be an independent limitation, separate from the first reference to "one or more non-transitory computer-readable mediums."

Thus, while the language of claim 39 of the '023 patent is broad and permissive, the scope of the claim is clear. Because the claim language does not restrict how program instructions are distributed across computers, it does not leave the reader with doubt as to the scope of the claim. The challenged language from claim 39 is therefore not indefinite, and claim 39 and its dependent claims are not invalid for indefiniteness.

IT IS SO ORDERED.

SIGNED this 2d day of September, 2014.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE