IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | § § § § § § § § § § § | |
| Plaintiff, | | |
| | | Case No. 2:13-CV-655 |
| v. | | |
| AMERICAN AIRLINES, INC., et al., | | |
| Defendants. | | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Loyalty Conversion Systems Corporation's Motion For Preliminary Injunction. Dkt. No. 91. The Court DENIES the motion.

### I. BACKGROUND

Loyalty Conversion Systems Corporation ("Loyalty") has filed a motion for a preliminary injunction against all nine defendants in this case, seeking to enjoin them "from filing relat[ed] actions in other courts." The motion was triggered by an action filed by defendant JetBlue Airways Corporation ("JetBlue") against Loyalty and several related parties in the United States District Court for the Southern District of New York and a threat by Southwest Airlines Company ("Southwest") to file an action against Loyalty and a corporate relative in a Texas state court.

The only one of the nine defendants as to which there is even a plausible claim of right to injunctive relief is JetBlue, which has filed an action against Loyalty in federal court in New

1

York. Because none of the other defendants has filed an action against Loyalty, there is no basis for injunctive relief against any of them. The only other defendant that has even threatened a lawsuit against Loyalty is Southwest, and Southwest has apparently taken no further steps toward filing such an action beyond sending a draft complaint to Loyalty that would raise a Texas state law tort action of libel based on the allegations in Loyalty's complaint in this case. Unless and until it does, and unless and until it becomes clear that the lawsuit is one that this Court would be authorized to enjoin Southwest from pursuing, there is no basis for this Court to issue injunctive relief against Southwest. Accordingly, the request for a preliminary injunction will be addressed only as it pertains to JetBlue; to the extent that the motion is directed to the other defendants, it will be denied without further discussion.

Loyalty filed this action against JetBlue on August 20, 2013, charging JetBlue with infringing Loyalty's U.S. Patent Nos. 8,313,023 and 8,511,550. Loyalty alleged that JetBlue infringed the patents through the operation of its loyalty award credit program, and in particular by permitting customers to convert loyalty award credits issued by other vendors into frequent flyer miles in JetBlue's loyalty awards program, TrueBlue.

On March 14, 2014, JetBlue brought a separate action against Loyalty and three related parties in the United States District Court for the Southern District of New York. In that action, styled <u>JetBlue Airways Corp. v. Copytele Inc., et al.</u>, No. 1:14-cv-1782, JetBlue raised a series of claims relating to the actions of Loyalty, two of its corporate affiliates, and one individual during the investigation that led to the patent infringement action pending against JetBlue in the Eastern District of Texas. In particular, JetBlue alleged that John Roop, an employee of one of Loyalty's corporate affiliates entered into JetBlue's website and joined the TrueBlue program under false

pretenses, after having agreed to be bound by the Terms and Conditions on that website governing TrueBlue and the Terms and Conditions governing usage of the website (collectively, the "Terms and Conditions"). The complaint alleged that the conduct of Mr. Roop in using his access to the JetBlue website and his membership in the TrueBlue program to obtain evidence for Loyalty's patent infringement action made Mr. Roop and the corporate defendants liable for breach of contract and fraud, and gave rise to promissory estoppel under New York law. The complaint further alleged that in addition to improperly accessing JetBlue's website for commercial purposes, Mr. Roop and the corporate defendants had breached the Terms and Conditions of the JetBlue website by pursuing claims of patent infringement against JetBlue in the present action. Loyalty's lawsuit, the complaint alleged, violated the provisions of the Terms and Conditions limiting JetBlue's liability, and pursuing claims for patent infringement in the Eastern District of Texas breached the mandatory forum-selection clause in the Terms and Conditions, which requires that any lawsuit "related to your access to, dealings with, or use of the JetBlue Websites" must be brought "in the state or federal courts of New York County, New York." For relief on that issue, the complaint sought a declaratory judgment that the action against JetBlue in the Eastern District of Texas is barred by the mandatory forum-selection clause.

      JetBlue alleged that the district court in the New York case had jurisdiction under the special jurisdictional statute for actions "arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a). For any claims not arising under the Patent Act, the complaint asserted that the district court had supplemental jurisdiction under 28 U.S.C. § 1367(a).

3

Loyalty contends that the New York lawsuit has been brought solely to harass it and that any claims against it should have been brought as counterclaims in this action. Based on its legal position that the claims in the New York action cannot lawfully be pursued in an action separate from this one, Loyalty asks this Court to issue a preliminary injunction barring JetBlue from further prosecution of the New York action.

## II. DISCUSSION

**A. Jet Blue's Claims Are Not Compulsory Counterclaims in This Action**

A district court having jurisdiction over a lawsuit is authorized to enjoin a defendant in that action from prosecuting a separate lawsuit in another federal district court if the claim raised in the separate lawsuit would have been a compulsory counterclaim in the first lawsuit.[1] See United Broad. Co. v. Armes, 506 F.2d 766, 771 (5th Cir. 1975); Computer Assocs. Int'l, Inc. v. Altai, Inc., 893 F.2d 26, 28-29 (2d Cir. 1990); see also Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1004 (8th Cir. 1993) (federal court where first-filed action is pending may enjoin parties from proceeding with a later-filed action in another federal court). Issuing such an injunction is a matter within the district court's discretion. See Warshawsky & Co. v. Arcata Nat'l Corp., 552 F.2d 1257, 1263 (7th Cir. 1977); Martin v. Graybar Elec. Co., 266 F.2d 202, 204 (7th Cir. 1959). However, if the claims raised in the second action would not be compulsory

---

[1] With limited exceptions, an injunction against a state-court proceeding would be barred by the Anti-Injunction Act, 28 U.S.C. § 2283. See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286-87 (1970). The Anti-Injunction Act has no application to actions pending in other federal courts, but one of the policies underlying the Act—to avoid one court interfering with proceedings in another court except where necessary—nonetheless informs the Court's exercise of its discretion in a case such as this one involving a request to enjoin proceedings in another federal district court.

counterclaims in the first action, there is no basis for an injunction against the second action.[2] See Computer Assocs., 893 F.2d at 29.

The critical question is thus whether the claims set forth in JetBlue's New York action would be compulsory counterclaims in the present action. The Court concludes that they would not be. Rule 13(a)(1)(A) of the Federal Rules of Civil Procedure provides that a compulsory counterclaim is a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." To determine whether a claim is a compulsory counterclaim that must be raised, if at all, in the initial action, the courts apply four tests, "any one of which can render a counterclaim compulsory: (1) whether the legal and factual issues raised by the claim and counterclaim are largely the same; (2) whether, absent the compulsory counterclaim rule, res judicata would bar a subsequent suit on the counterclaim; (3) whether substantially the same evidence supports or refutes both the claim and counterclaim; or (4) whether there is a logical relation between the claim and counterclaim." Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 801 (Fed. Cir. 1999); 6 Charles Alan Wright, Arthur R. Miller, & Mary Ann Kane, Federal Practice & Procedure § 1410 (3d ed. 2014) (citing cases).

A commonly arising example of a compulsory counterclaim in the field of patent law is a counterclaim of patent infringement in response to a complaint seeking a declaratory judgment of noninfringement of the same patent. Vivid Techs., 200 F.3d at 801-02. The Federal Circuit

---

[2] Based on cases involving repetitive and vexatious litigants, Loyalty argues that this Court is authorized to enjoin proceedings in other courts upon finding that any such action has been filed for the purpose of harassment. The "vexatious litigant" cases, however, are carefully confined to instances in which litigants have demonstrated a pattern of filing vexatious actions and in which an order restricting their rights to file is deemed to be the only effective means to curb the abuse. There is no such pattern of vexatious litigation in this case, even accepting Loyalty's assertion that the New York action is harassing in nature.

has also held that in some circumstances a district court may find that a claim that an accused infringer's marketing practices with respect to the accused products violate the antitrust laws is a compulsory counterclaim in a patent infringement action. Genentech, Inc. v. Regents of Univ. of Cal., 143 F.3d 1446, 1455-56 (Fed. Cir. 1998) (upholding an injunction against prosecuting an antitrust claim in a second action that the court determined should have been pleaded as a counterclaim to the patent infringement claim in the first action).

      This case, however, is not like those. The breach of contract, fraud, and promissory estoppel causes of action asserted by JetBlue do not arise from the same underlying transaction as the patent infringement claims. Loyalty's patent infringement claims arise from JetBlue's implementation of a conversion feature in its TrueBlue loyalty miles program, while JetBlue's claims arise from Loyalty's efforts to obtain evidence to support its patent infringement claims against JetBlue. Those efforts led to the New York defendants' purported breach of the Terms and Conditions applicable to the TrueBlue program and JetBlue's website.

      This case is not different in principle from a case in which, for example, an individual conducts a burglary of the offices of a physician in an effort to obtain evidence pertaining to a potential medical malpractice claim and then later brings a malpractice action against the physician. Each party in such a case would be free to file a separate civil action against the other; the malpractice defendant would not be required to file his trespass claim as a compulsory counterclaim in the malpractice action, nor would the malpractice plaintiff be required to file his malpractice claim as a compulsory counterclaim in the trespass action. The first three tests for a compulsory counterclaim would clearly point against requiring the burglary claim to be brought as a counterclaim in the malpractice action: The legal and factual questions raised in the two

actions would be completely different; res judicata in one of the actions would not bar the other; and the same evidence would not support or refute both claims. The fourth test—whether there is a logical relation between the claim and the counterclaim—would similarly not require the two sets of claims to be consolidated in the same lawsuit, because the question whether the doctor was guilty of medical malpractice has no logical relationship to the question whether the plaintiff unlawfully burglarized the doctor's office. The only connection between the two claims is that the burglary was motivated by a desire to obtain evidence for the malpractice claim, which falls far short of establishing a "logical relation" between the two claims.

In this case, similarly, JetBlue's breach of contract, fraud, and promissory estoppel causes of action based on Loyalty's use of information obtained from JetBlue's website do not arise from "the same transaction or occurrence that is the subject matter" of Loyalty's patent infringement claims. Fed. R. Civ. P. 13(a)(1)(A). The infringement claims relate to the way JetBlue operates its loyalty program, while the breach of contract, fraud, and promissory estoppel claims relate to the action of an agent of a different corporation (i.e., Loyalty's corporate affiliate) in connection with JetBlue's website. JetBlue's claim that Loyalty gathered evidence from the JetBlue website, in violation of the Terms and Conditions relating to the use of that website, would therefore not be a compulsory counterclaim in the patent infringement action pending before this Court.[3]

---

[3] Among JetBlue's arguments is that its claims would not qualify as compulsory counterclaims because it has not yet filed an answer in this case. That argument is unconvincing. While a counterclaim need not be filed until the defendant files an answer, that does not mean that a defendant can avoid the policy underlying the compulsory counterclaim rule simply by filing a second action before filing a responsive pleading in the first. If the claims in the second action would have been compulsory counterclaims in the first, the second action can be enjoined without regard to whether the defendant has filed an answer in the first action.

### B. A Preliminary Injunction Is Not Warranted Because JetBlue's Requests for Relief Are Unlikely to Succeed on the Merits

The only allegations in JetBlue's New York complaint that relate directly to the merits or the procedures at issue in the present patent infringement action are the allegations that Loyalty was bound by the JetBlue Terms and Conditions to bring its patent infringement action in a New York court and that the limitations on monetary recovery in the Terms and Conditions are binding on Loyalty in the patent infringement case. However, those assertions, while facially related to the patent infringement action, are clearly lacking in merit, as explained below.

First, the Terms and Conditions governing conduct relating to the TrueBlue program and JetBlue's website plainly do not limit liability or damages in Loyalty's patent infringement action. The TrueBlue Terms and Conditions contain a clause stating that the website user agrees that "JetBlue shall not be held liable for, and [the user] hereby waive[s] any claims against JetBlue for[] any damages whatsoever . . . arising out of" the user's participation in the program or arising out of JetBlue's acts or omissions in connection with the TrueBlue Program. The Website Terms and Conditions contain a similar clause stating that "[i]n no event shall JetBlue or its affiliates be liable for any damages . . . arising out of or in any way connected with the use of or inability to use the JetBlue Websites." In addition, the Website Terms and Conditions contain a clause in which the website user agrees to hold JetBlue harmless from any claims arising out of or resulting from the user's breach of the Terms and Conditions.

Those clauses apply to actions arising from or connected with the user's participation in the TrueBlue program or use of the JetBlue website. The restrictions in those clauses limit the remedies Mr. Roop could assert against JetBlue based on his use of the website or participation in the TrueBlue program. They have no effect on Loyalty's rights to sue for patent infringement,

8

even if some of the allegedly infringing steps of the claimed methods are performed on JetBlue's website. Moreover, the patent infringement action did not arise from Mr. Roop's use of the website, nor is JetBlue's asserted infringement connected to Mr. Roop's activities on the website. Evidence relating to the charged infringement may have been obtained through the use of the website, but that does not render the patent action one that arose from or was connected to Mr. Roop's use of the website. The effect of those clauses limiting liability and damages cannot even remotely be held to bar Loyalty's patent infringement action or limit JetBlue's liability in that action.

Second, the forum-selection clause in JetBlue's Website Terms and Conditions reads as follows: "You agree that, should You bring a lawsuit related to your access to, dealings with, or the use of the JetBlue Websites, You must do so in the state or federal courts of New York County, New York." Even setting aside the point that the Terms and Conditions bound Mr. Roop, not Loyalty, that language cannot be stretched to cover a patent infringement action based on JetBlue's loyalty award conversion program. Loyalty's patent infringement action is not related to Mr. Roop's "access to, dealings with, or the use of the JetBlue Websites." As in the case of the liability and damages limitation clauses, Mr. Roop's actions may have been designed to obtain evidence for the patent infringement action, but the patent infringement action was not thereby converted into "a lawsuit related to" Mr. Roop's "access to, dealings with, or use of" the website.

An example may be useful to illustrate the point. Suppose an employee of a Massachusetts contactor with a contract to build a bridge in California signed an confidentiality agreement with his employer that contained a clause specifying that any dispute related to his

9

employment would be heard in the state courts of Massachusetts. Suppose further that the employee disclosed information about shoddy workmanship on the bridge to the authorities in California, who were considering an action for fraud or contract breach against the contractor. In that case, the forum-selection clause in the employee's contract could not conceivably be held to require the State of California to bring its contract breach or fraud action against the contractor in Massachusetts. The same would be true even if the California authorities paid the employee to obtain the inculpatory information for them. As silly as that example seems, that is essentially what JetBlue is arguing in this instance. The forum-selection clause simply has no application to the action before this Court.[4]

While this Court is troubled by JetBlue's effort to obtain a declaratory judgment in the district court action in New York that the patent infringement action should have been brought in the New York courts, the Court will not enjoin that aspect of the proceedings in New York, for three reasons:

First, as noted, the forum-selection-clause argument, as applied to Loyalty's patent infringement action, is plainly without merit and is likely to be promptly rejected on the merits by the New York court if the New York court should reach the issue.

Second, in exercising its equitable powers to decide whether to issue the requested declaratory judgment, the New York court is likely to conclude that the forum-selection-clause issue should be decided, if necessary, by this Court in the patent infringement case. There is no

---

[4] JetBlue relies on the decision in Sokkia Credit Corp. v. Bush, 147 F. Supp. 2d 1101 (D. Kan. 2001), in support of its claim that the forum-selection clause in the Terms and Conditions required Loyalty to file its patent infringement action in New York, rather than in the Eastern District of Texas, but that case is entirely inapposite. The claim at issue in that case was clearly covered by the forum-selection clause; the patent claims at issue in this case are clearly not covered by the forum-selection clause in the Terms and Conditions.

reason that JetBlue needs to assert the forum-selection-clause in an ancillary declaratory judgment action, rather than asserting it as a basis for transfer or dismissal in this Court, where the original patent infringement action was brought.  Yet JetBlue has not asserted the forum-selection clause in this case, but instead has raised it for the first time in the New York case, where it has sought a declaratory judgment that, if granted, would have the effect of depriving this Court of its authority over the patent infringement action.  Although there is no prohibition against a court's granting declaratory relief simply because there is another adequate remedy available, see Fed. R. Civ. P. 57, courts typically deny requests for declaratory relief when the effect would be to interfere with an ongoing proceeding in which the same issue could be raised.  See AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004) (declaratory judgment action inappropriate if its only purpose is to deny the plaintiff his choice of forum) (citing cases); Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359-60 (2d Cir. 2003) (declaratory judgment should not be issued if the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata," or if there is a "better or more effective remedy"); Glitsch, Inc. v. Koch Eng'g Co., 216 F.3d 1382, 1384-85 (Fed. Cir. 2000) (denying request for declaratory judgment where plaintiff was attempting "to use a second action to raise a defense that should be litigated in the first action, which is still pending"; plaintiff's strategy would undermine policy "that litigation relating to a single matter should take place in a single action"); Allied-General Nuclear Servs. v. Commonwealth Edison Co., 675 F.2d 610, 611 (4th Cir. 1982) (declaratory judgment should not be used to "interfere with an action which has already been instituted"); Puerto Rico Int'l Airlines, Inc. v. Silva Recio, 520 F.2d 1342, 1346 (1st Cir. 1975) ("The fact that another action, involving substantially the same issue, is pending in a state or federal court is a potent factor in

discretionary refusal to assume jurisdiction."); Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) ("It is well settled that the declaratory remedy should not be invoked merely to try issues or determine the validity of defenses in pending cases."); 10B Charles Alan Wright et al., Federal Practice & Procedure § 2759 (3d ed. 2014). Thus, it is difficult to see why equity would justify the district court's granting declaratory relief in the ancillary proceeding in the New York district court.

Third, the Court believes the New York district court is likely to dismiss JetBlue's action for lack of subject matter jurisdiction. The complaint in the New York case alleges that the court has subject matter jurisdiction under 28 U.S.C. § 1338(a) (exclusive jurisdiction of any civil action arising under any Act of Congress relating to patents) and 28 U.S.C. § 1367(a) (supplemental jurisdiction). It is difficult to fathom how claimed breaches of the obligations created by JetBlue's Terms and Conditions arise under the patent laws, and the parties have offered no convincing argument in support of their contention that the New York court has subject matter jurisdiction over JetBlue's claims. The fact that evidence was obtained from JetBlue's website for use in the patent infringement case does not render the case one that arises under the patent laws; at most, the claims relating to JetBlue's Terms and Conditions would be defenses to damages claims or grounds for transfer in the patent infringement action, which does not satisfy the "arising under" requirement of section 1338. See Gunn v. Minton, 133 S. Ct. 1059, 1064-65 (2013) (action does not arise under patent laws unless patent laws create the cause of action or the state law claim would "necessarily raise" a patent issue); see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005).

12

There is also no force to the contention that because Loyalty had a duty to investigate its claim in order to avoid sanctions under Fed. R. Civ. P. 11 in the patent infringement action, this case "arises under" federal patent law. The claims in the New York case do not arise under Rule 11: The rule does not create the state law causes of action, nor does the resolution of those claims necessarily raise a disputed and substantial federal issue. See Grable, 545 U.S. at 314. Beyond that, Rule 11 is not a law relating to patents, so it would not support jurisdiction under section 1338(a) in any event. Nor does the supplemental jurisdiction statute provide a jurisdictional basis for the New York action. Supplemental jurisdiction under section 1367(a) does not provide an independent basis for jurisdiction and therefore cannot provide a jurisdictional basis for the federal court to entertain state law claims if there are no claims before the court over which it has original jurisdiction. See 28 U.S.C. § 1367(a) (supplemental jurisdiction available only "in any civil action of which the district courts have original jurisdiction").

Based on that analysis, it seems likely that the New York action will be dismissed for lack of subject matter jurisdiction. Loyalty and its co-defendants have already filed a motion to dismiss in that case, although, curiously, not based on lack of subject matter jurisdiction. That motion is pending, and although neither party has raised subject matter jurisdiction, the New York court is required to address the issue of its own jurisdiction over the case. In this Court's opinion, the district court in New York is likely to dismiss JetBlue's action for lack of jurisdiction. Alternatively, the New York court may elect to dismiss the declaratory judgment claim—the one that on its face seems most likely to interfere with the present case—on the ground that the forum-selection-clause issue should be litigated in this Court.

Because the New York case, or at least the declaratory judgment claim, is likely to be disposed of promptly, the pendency of the New York case is not likely to interfere with the disposition of this case. Accordingly, this Court believes that the exceptional remedy of a preliminary injunction is not needed and therefore should not be issued.

In sum, the Court concludes that the claims raised in the New York action—and in particular the claims regarding the allegedly improper use of the JetBlue website—are not compulsory counterclaims in the present action. For that reason, and because the Court has concluded that equitable considerations do not favor issuing a preliminary injunction to bar JetBlue from prosecuting the action it has brought against Loyalty and three other co-defendants in the Southern District of New York, the Court DENIES the motion for a preliminary injunction.

IT IS SO ORDERED.

SIGNED this 2d day of September, 2014.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE