IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | § § § | |
| Plaintiff, | § § | Case No. 2:13-CV-655 |
| v. | § § | (LEAD CASE) |
| AMERICAN AIRLINES, INC., et al., | § § | |
| Defendants. | § | |

| | | |
|---|---|---|
| LOYALTY CONVERSION SYSTEMS CORPORATION, | § § § | |
| Plaintiff, | § § | Case No. 2:13-CV-662 |
| v. | § § | |
| JETBLUE AIRWAYS CORPORTATION, | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant JetBlue Airways Corporation's Rule 12(b)(3) Motion to Dismiss for Improper Venue. Case No. 2:13-cv-662, Dkt. No. 11. After considering full briefing and argument on the motion, the Court DENIES the motion.

## I. BACKGROUND

This action against JetBlue Airways Corporation ("JetBlue") is one of nine separate actions brought against various United States airline companies by plaintiff Loyalty Conversion

1

Systems Corporation ("Loyalty").  Loyalty owns two U.S. patents, U.S. Patent Nos. 8,313,023 ("the '023 patent") and 8,511,550 ("the '550 patent"), which relate to methods and computer program products for converting loyalty award credits earned from one vendor into loyalty award credits of a second vendor that the second vendor will accept as payment for purchases. Loyalty alleges that JetBlue, like the other eight defendant airlines, infringes those patents through the operation of its frequent flyer mileage program.  In particular, Loyalty alleges that JetBlue infringes the patents by allowing customers to exchange loyalty award credits earned from other vendors for mileage credits in JetBlue's frequent flyer program, which is known as TrueBlue.

JetBlue is a Delaware corporation with its principal place of business and corporate headquarters in New York.  Although JetBlue has flights to three airports in Texas, none of those airports are in the Eastern District of Texas.  It has no offices or employees in the Eastern District of Texas, nor does it own any property in the district.  Based on the absence of contacts between JetBlue and this district, JetBlue has moved to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).

### A.  Governing Legal Principles

A patent infringement action may be brought "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); see In re Cordis Corp., 769 F.2d 733, 734-35 (Fed. Cir. 1985).  JetBlue does not have "a regular and established place of business" in the Eastern District of Texas.  Venue is therefore proper in the Eastern District only if JetBlue can be said to "reside" there.

As a defendant, a corporation or other entity that is subject to suit is deemed to reside, for venue purposes, "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2); see also VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1584 (Fed. Cir. 1990).  A different subsection of the same statute, 28 U.S.C. § 1391(d), provides that when a suit is filed against a corporate defendant in a multidistrict state such as Texas, the corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."  See In re Volkswagen of Am., Inc., 545 F.3d 304, 312-13 (5th Cir. 2008).  In a case such as this one, then, the question of proper venue turns on the question whether there is personal jurisdiction over the defendant in the district where the action has been brought.

The general principles that apply to the question whether a federal court has in personam jurisdiction over a non-resident defendant are well-settled.  If the federal statute under which an action is brought contains an applicable service-of-process provision, the court looks to whether that provision can be satisfied by service of process on the defendant.  See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 105-06 (1987).  When the federal statute has no such applicable service of process provision, as is the case for the Patent Act,[1] the federal court may reach those entities that are subject to the jurisdiction of the state in which the district court sits.

---

[1]   A federal statute, 28 U.S.C. § 1694, provides that in a patent infringement action commenced in a district "where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business."  That statute, however, does not apply in this case, as JetBlue does not have a regular and established place of business in the Eastern District of Texas.

<u>See</u> Fed. R. Civ. P. 4(e).  In that setting, federal courts "follow state law in determining the bounds of their jurisdiction over persons."  <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746, 753 (2014).

A district court may exercise personal jurisdiction over a defendant if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  In order to satisfy that requirement, the district court's exercise of jurisdiction over an out-of-state defendant must be consistent with both the forum state's long-arm statute and the requirements of due process.  <u>See</u> <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1121 (2014); <u>Radio Sys. Corp. v. Accession, Inc.</u>, 638 F.3d 785, 788-89 (Fed. Cir. 2011); <u>Avocent Huntsville Corp. v. Aten Int'l Co.</u>, 552 F.3d 1324, 1329 (Fed. Cir. 2008); <u>Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.</u>, 148 F.3d 1355, 1358 (Fed. Cir. 1998).[2]

Texas's long-arm statute is coterminous with the extent of personal jurisdiction permitted by due process principles.  <u>See</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 413 & n.7 (1984); <u>Great W. United Corp. v. Kidwell</u>, 577 F.2d 1256, 1266 (5th Cir. 1978), <u>rev'd on other grounds</u>, 443 U.S. 173 (1979); <u>Prod. Promotions, Inc. v. Cousteau</u>, 495 F.2d 483, 491 (5th Cir. 1974); <u>Schlobohm v. Schapiro</u>, 784 S.W.2d 355, 357 (Tex. 1990); <u>U-Anchor Advertising, Inc. v. Burt</u>, 553 S.W.2d 760, 762 (Tex. 1977).  Where, as here, the forum state's long-arm statute "is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process."  <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

---

[2]    Federal Circuit law governs the question whether a particular district court may exercise personal jurisdiction over the defendant in a patent case.  <u>See</u> <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1359 (Fed. Cir. 2001); <u>Akro Corp. v. Luker</u>, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

Due process requires that, to subject a defendant to the judicial power of a forum state, the defendant must have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).  As a general matter, the sovereign's exercise of judicial power requires "some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2787 (2011) (plurality opinion), quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958).  In that manner, due process principles "give[] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

There are several ways that a defendant can submit to the adjudicative authority of a forum state (and thus of federal courts sitting within that state).  Besides consent or presence within the state at the time the suit is filed and process is served, citizenship or domicile "indicates general submission to a State's powers." McIntyre, 131 S. Ct. at 2787.  For a corporation, the state of "citizenship or domicile" means the state of incorporation or the corporation's principal place of business, or some equivalent.  Id.  In such instances, the defendant is said to be subject to "general jurisdiction" in the forum.  Because general jurisdiction exposes the defendant to suit on any claim, regardless of the place of its origin, the minimum contacts required to establish general jurisdiction must satisfy "an exacting standard" that "'approximate[s] physical presence' in the forum state." Schwarzenegger v. Fred Martin

Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (minimum contacts standard for general jurisdiction is high "because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world").

A more limited form of submission to a state's authority, referred to as "specific jurisdiction," applies only in cases of disputes that "arise out of or are connected with the activities within the state." Int'l Shoe, 326 U.S. at 319.  "[W]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985) (citations and internal quotation marks omitted).  That is, when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Hanson, 357 U.S. at 253, "it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State," McIntyre, 131 S. Ct. at 2788.  For that reason, "submission through contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"  Id., quoting Helicopteros, 466 U.S. at 414 n.8.

To satisfy the due process standard for specific jurisdiction, the defendant must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." Burger King, 471 U.S. at 472.  That is, the defendant's "conduct and connection with the forum

6

State" must be "such that he should reasonably anticipate being haled into court there."  Id. at 474.

When a court seeks to exercise specific jurisdiction over an out-of-state defendant, the "fair warning" requirement is satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King, 471 U.S. at 472 (citations omitted).  That is, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson, 357 U.S. at 253.  The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"  Burger King, 471 U.S. at 475 (citations omitted).  Thus, if the sale of a product in the forum district is "not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other [districts], it is not unreasonable to subject it to suit in one of those [districts]" in which a claim arises.  World-Wide Volkswagen, 444 U.S. at 297.  Jurisdiction is therefore proper where the contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State."  Burger King, 471 U.S. at 475 (emphasis in original).

The minimum contacts determination does not end the due process inquiry.  Once it has been determined that a defendant purposefully established minimum contacts with the forum, those contacts "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Burger King, 471

U.S. at 476.   However, the Supreme Court has emphasized that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Id. at 477.  Normally, when a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," Hanson, 357 U.S at 253, its contacts with that state giving rise to a cause of action there are deemed sufficient to satisfy the requirement that the exercise of specific personal jurisdiction by a court in that forum be fair and reasonable.   See Burger King, 471 U.S. at 477.   As the Court explained in World-Wide Volkswagen:

> When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.  Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others.

444 U.S. at 297 (citation omitted).

The Federal Circuit has summarized the Supreme Court's guidance regarding the due process requirement for establishing specific jurisdiction as follows:  The plaintiff bears the burden of showing (1) that the defendant purposefully directed its activities at residents of the forum, and (2) that the plaintiff's claim arises out of or relates to those activities.  See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1297 (Fed. Cir. 2009); Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003); see also Revell v. Lidov, 317 F.3d 467, 469-70 (5th Cir. 2002); Stuart v. Spademan, 772 F.2d 1185, 1191 (5th

8

Cir. 1985).  However, if jurisdictional discovery has not taken place and an evidentiary hearing on jurisdiction has not been held, the plaintiff need only make a prima facie showing that the defendants are subject to personal jurisdiction in the forum.  See Pennington Seed Inc. v. Produce Exchange No. 299, 457 F.3d 1334, 1344 (Fed. Cir. 2006); Elecs. for Imaging, 340 F.3d at 1349; Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002); Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (Fed. Cir. 2008); see also Paz v. Brush Engineered Materials, Inc., 445 F.3d 809, 812 (5th Cir. 2006); Wilson v. Belin, 20 F.3d 644, 647-48 (5th Cir. 1994); Guidry v. U.S. Tobacco Co., 188 F.3d 619, 625 (5th Cir. 1999).  In that setting, the Court must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts.  Deprenyl, 297 F.3d at 1347; Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999); Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).

If the plaintiff makes such a showing, the burden shifts to the defendant to show that the assertion of personal jurisdiction would not be fair and reasonable under the circumstances.  See Radio Sys. Corp., 638 F.3d at 789; Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006); Inamed Corp., 249 F.3d at 1360, 1363.  That factor "applies only sparingly."  Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231 (Fed. Cir. 2010); see Campbell Pet Co. v. Miale, 542 F.3d 879, 885 (Fed. Cir. 2008); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994).  Once the plaintiff has shown that the defendant purposefully directed its activities at residents of the forum and that the plaintiff's claim arises out of or relates to those activities, the assertion of personal jurisdiction is considered unfair and unreasonable only in "the rare situation in which the plaintiff's interest and

the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."   Akro Corp. v. Luker, 45 F.3d 1541, 1549 (Fed. Cir. 1995).

**B.  General Personal Jurisdiction over JetBlue**

Loyalty argues that this Court has general personal jurisdiction over JetBlue.   That contention is clearly without merit.

To be subject to general jurisdiction in a forum, a foreign corporation, i.e., a corporation that is not incorporated or headquartered in the forum state, must engage in "continuous corporate operations within a state" that are "so substantial and of such a nature as to justify suits against it on causes of action arising from dealings entirely distinct from those activities." Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014), quoting Int'l Shoe, 326 U.S. at 318.[3]   The Supreme Court has described that test as requiring that the corporation's "affiliations with the State [be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler, 134 S. Ct. at 754, quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).  That means that the defendant corporation must either be headquartered in the forum state, incorporated in the forum state, or have some equivalent presence in the state.

---

[3]  Loyalty attempts to distinguish Daimler on the ground that it dealt with a non-United States corporation.   That distinction is not viable, as Daimler did not restrict its analysis to foreign-country corporations.   While the Court addressed the "transnational context" of the case in the last section of its opinion, see 134 S. Ct. at 762-63, it is clear that the rest of the opinion, which includes the portions quoted here, dealt with the issue of general jurisdiction as to corporations that were either sister-state or foreign-country corporations, and that it used the term "foreign" to refer to both of those categories.   See 134 S. Ct. at 754 ("'[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'"), quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (alteration in original).

Daimler, 134 S. Ct. at 761 n.19; Goodyear, 131 S. Ct. at 2853-54; see also Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 611 (5th Cir. 2008) ("This circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues. . . . [W]e emphasized that in order to confer general jurisdiction a defendant must have a business presence in Texas. . . .   It is not enough that a corporation do business with Texas."); see also Helicopteros, 466 U.S. at 414-16; LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000); Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001).

JetBlue has no such presence in this district.  It has no flights into or out of this district; it has no office or other physical presence in Texas; and it has no employees in this district.  While JetBlue makes sales to persons residing in the district and offers loyalty award credits to those customers, doing business with persons in a particular district is not enough to satisfy the requirement of general jurisdiction that the corporation's contacts with the forum be so continuous and systematic as to render the corporation essentially at home in the forum.   See Daimler, 134 S. Ct. at 761-62 (general jurisdiction does not exist in a forum just because a defendant's has sizeable sales in that forum).

Loyalty argues that even if that proposition is true as a general matter, the volume of business that JetBlue conducts with residents of this district is enough to subject it to the general personal jurisdiction of this Court.  However, the Supreme Court in Daimler directly addressed, and rejected, the argument that the volume of business done within a forum is sufficient to form the basis for general jurisdiction.  The Court wrote:

> the general jurisdiction inquiry does not "focu[s] solely on the magnitude of the defendant's in-state contacts."  General jurisdiction instead calls for an appraisal

11

of a corporation's activities in their entirety, nationwide and worldwide.  A corporation that operates in many places can scarcely be deemed at home in all of them.  Otherwise, "at home" would be synonymous with "doing business" tests framed before specific jurisdiction evolved in the United States.  Nothing in International Shoe and its progeny suggests that "a particular quantum of local activity" should give a State authority over a "far larger quantum of . . . activity" having no connection to any in-state activity.

Daimler, 134 S. Ct. at 762 n.20 (alteration and omission in original) (citations omitted).

The Supreme Court's decision in the Helicopteros case illustrates just how far short Loyalty's evidence falls.  In that case, the Supreme Court held that the Texas courts could not exercise general jurisdiction over Helicol, a Colombian helicopter transportation company, in a suit arising from a fatal helicopter crash in Peru.  466 U.S. at 418-19.  The decedents' employer, a Texas-based joint venture, had contracted with Helicol in Peru to provide transportation in Peru.  As the Supreme Court summarized the facts relevant to jurisdiction, "Helicol's contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training service from [a Texas helicopter manufacturer] for substantial sums; and sending personnel to [the manufacturer's] facilities in Fort Worth for training." Id. at 416.  The Court held that those contacts, although extensive, were not sufficient to serve as a basis for the exercise of general jurisdiction.  Id.

By contrast, the Supreme Court's decision in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952), shows how much is required in order to support a claim for general jurisdiction against a corporation that is neither headquartered nor incorporated in the forum state.  The defendant in Perkins was a Philippines mining company that had stopped its mining operations when Japan invaded the Philippines.  The company's president relocated to Ohio,

where he continued to carry on the company's business from an office in that State.  Within that office, the president "kept . . . office files of the company," "carried on . . . correspondence relating to the business of the company," and "drew and distributed . . . salary checks on behalf of the company."  Id. at 448.  The corporation employed two secretaries in Ohio, maintained "two active bank accounts carrying substantial balances," and used an Ohio bank to "act[] as transfer agent for [its] stock."  Id.  The president hosted "[s]everal directors' meetings . . . at his office or home" in Ohio, "supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines," and "dispatched funds to cover purchases of machinery for such rehabilitation."  Id.  Under those circumstances, the Supreme Court concluded that the president had "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company."  Id.  That was enough to persuade the Court that Ohio courts could exercise general personal jurisdiction over the company, and thus adjudicate a suit against the company that did not arise in Ohio and did not relate to the corporation's activities there.  Id.

The jurisdictional facts in this case are not as strong as the facts presented by the plaintiffs in Helicopteros and are not even remotely as strong as the jurisdictional facts that were present in Perkins.   The best that Loyalty can do by way of an argument on general jurisdiction is to say that some of JetBlue's customers reside in this district and that some of those customers earn frequent flyer miles from JetBlue.  The domicile of customers of a company, however, says nothing about whether the company has a sufficient presence in the state where those customers are located.

Loyalty's argument on general jurisdiction is essentially the same as the argument made by the respondent in the Daimler case—that the Court should "approve the exercise of general

jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'"  <u>Daimler</u>, 134 S. Ct. at 761.  The Supreme Court,  however, referred to that formulation as "unacceptably grasping."  The Court noted that if Daimler's California activities sufficed to allow the adjudication of foreign claims in California courts, "the same global reach would presumably be available in every other State in which [Daimler's subsidiary's] sales are sizable."  <u>Id.</u>  That argument, the Court held, would be an "exorbitant exercise[] of all-purpose jurisdiction."  <u>Id.</u>  In sum, because there is no evidence that JetBlue is "essentially at home" in the Eastern District of Texas, the Court rejects Loyalty's argument that the Court may exercise general personal jurisdiction over JetBlue.

### C.  Specific Personal Jurisdiction over JetBlue

Loyalty's argument that this Court can exercise specific personal jurisdiction over JetBlue presents a very different question.  Specific jurisdiction, unlike general jurisdiction, applies only to disputes that "arise out of or are connected with the activities within the state."  <u>Int'l Shoe</u>, 326 U.S. at 319.  The Supreme Court has explained that a defendant may fairly be subjected to the jurisdiction of the courts of a forum state if the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  <u>Burger King</u>, 471 U.S. at 472 (citations and internal quotation marks omitted).

After a review of the evidence pertaining to the jurisdictional question, the Court is satisfied (1) that JetBlue has purposefully directed certain of its activities at residents of the district—in particular, its loyalty awards program with its conversion features; and (2) that this litigation results from alleged injuries that are related to those activities.  The Court also

14

concludes that JetBlue cannot defeat personal jurisdiction by showing that the assertion of personal jurisdiction in this case would not comport with fair play and substantial justice.  Burger King, 471 U.S. at 472-73, 476; Campbell Pet Co., 542 F.3d at 884-85.  The Court therefore holds that it has specific personal jurisdiction over JetBlue in this case.

In its complaint, Loyalty alleges that JetBlue "has entered into agreements with partners such as Marriott, and provides for the conversion of Marriott Rewards points to TrueBlue miles. JetBlue provides related support services and instructions for the infringing operation of such [award credit conversion] systems to its customers."  Case No. 2-13-cv-662, Dkt. No. 1, at 3.  In addition, the complaint alleges:

> Through its actions, JetBlue has directly infringed the '023 and '550 Patents.  In addition, with knowledge of the '023 and '550 Patents at least as early as the filing of Plaintiff's complaint, JetBlue has actively induced others including its customers to infringe and contributed to the infringement by others of the '023 and '550 Patents throughout the United States, knowing that Loyalty alleges such activities to be infringing.  JetBlue agrees and specifies with its loyalty program partners that conversions shall occur in the manner claimed in the '023 and '550 Patents.  JetBlue has designed, installed, operated and implemented its computer systems to operate in an infringing manner.  The infringing systems have no substantial non-infringing uses.

Id. at 3-4.

Although JetBlue disputes those allegations and contends that it has not actively participated in the alleged infringing activity, the Court is required to "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits."  Latshaw, 167 F.3d at 211.

JetBlue introduced evidence that although 8,943 persons with addresses in the district are members of its TrueBlue loyalty award program, none of those members has ever used Marriott Rewards points to obtain TrueBlue points.  Case No. 2:13-662, Dkt. No. 11-3, at 2-3.  Loyalty

has not taken factual issue with that representation.  However, Loyalty points out that JetBlue's interrogatory responses reveal that there have been 887 instances in which a TrueBlue member having an address in the Eastern District of Texas has converted American Express Membership Rewards points into TrueBlue points.  See id., Dkt. No. 26-3, at 7.

Notwithstanding the number of TrueBlue members who live in the Eastern District of Texas and the number of occasions on which those customers have converted American Express Membership Rewards points into TrueBlue points, JetBlue argues that it does not engage in infringing activity in the Eastern District of Texas because it "does not make, use, sell, offer to sell, or import the accused methods or systems" in the district.  However, the conversions of loyalty points that JetBlue has offered and made constitute activities that are purposefully directed at residents of the district.  Moreover, Loyalty's claims arise from injuries relating to JetBlue's contacts with the district.  The alleged injury suffered by Loyalty is the infringement of its patents.  That injury occurred, according to Loyalty, when the conversions of reward points were made and recorded, and when they resulted in customers' purchases of goods and services. JetBlue's acts of making the conversion process available to almost 9000 TrueBlue members living in the Eastern District of Texas, and its conversion of American Express loyalty points on nearly 900 occasions, is conduct that is directly related to the infringement allegations.

Loyalty's theory of the case against JetBlue under the '023 patent claims is that JetBlue is a party to the agreement to convert loyalty award credits with various "commerce partners" and that it is responsible, at least in part, for causing the infringement of the claimed method by granting its customers award credits with JetBlue and accepting the converted award credits of its commerce partners as payment for purchases of airline travel.  Loyalty's theory under the

16

'550 patent claims is that JetBlue has created Web pages accessible by customers that allow the customers to convert loyalty award credits with JetBlue's commerce partners.

The allegations of infringement against JetBlue plainly relate to interactions between JetBlue and its customers in the Eastern District of Texas.   Under Loyalty's infringement theories, JetBlue is responsible for acts of infringement by making it possible for its loyalty award program members, many of whom live in the Eastern District, to convert points of its commerce partners into TrueBlue miles.   It is thus incorrect to say, as JetBlue does, that Loyalty's allegations of infringement against JetBlue "have no relationship to the Eastern District of Texas."  Case No. 2:13-cv-662, Dkt. No. 11, at 11.

JetBlue argues that Loyalty's evidence does not show that JetBlue is responsible for any acts of alleged infringement in this district.  In the case of the conversions of American Express Membership Awards points into TrueBlue miles, JetBlue argues that even under Loyalty's theory, none of the limitations of the asserted claims are performed by customers, and that if JetBlue had performed any of the steps of the asserted claims, "such performance necessarily would have taken place outside this District," as JetBlue has no employees or servers in the district.  Case No. 2:13-cv-662, Dkt. No. 29, at 7.  While it may be true that the agreements between JetBlue and its commerce partners to allow transfers of loyalty award credits in exchange for TrueBlue miles were executed outside the district and that the computers that effectuate and record the transfers are located outside the district, the process of converting loyalty award credits into TrueBlue miles necessarily begins with requests from the customer, requests that are presumably sent from customers within the district, who are notified of the

transfers when they are completed, and are allowed to purchase services from JetBlue as a result, again presumably from their residences in the district.

JetBlue enables its customers to interact with JetBlue's loyalty program through the use of JetBlue's website.  Indeed Loyalty's theory of infringement with respect to the '550 patent is that JetBlue infringes through web pages it has created that allow customers to convert loyalty award credits with its commerce partners.  When a defendant's interactions with its contacts in a forum state occur through a website, courts frequently analyze the issue of personal jurisdiction by applying the test enunciated in <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997).  Under that test, courts "examin[e] the level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine whether the defendant has subjected itself to personal jurisdiction in a state or district where the defendant's customers receive the defendant's messages.  <u>Id.</u> at 1124.  On one end the spectrum, personal jurisdiction is most likely to exist where the defendant "clearly does business over the Internet."  <u>Id.</u>  On the other end of the spectrum are passive websites where a defendant "has simply posted information" that customers can access.  <u>Id.</u>  In between are interactive websites, where the existence of personal jurisdiction "is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." <u>Id.</u>; see also <u>Mink v. AAAA Development LLC</u>, 190 F.3d 333, 336 (5th Cir. 1999) (adopting the <u>Zippo</u> framework in the Fifth Circuit); <u>Maynard v. Phila. Cervical Collar Co.</u>, 18 F. App'x 814, 816-17 (Fed. Cir. 2001) (nonprecedential) ("A passive website is insufficient to establish purposeful availment for the purpose of due process.").  This case falls at the end of the spectrum that allows for the exercise of personal jurisdiction.  The allegedly infringing activity involves

18

customers who purchase air travel on JetBlue with converted loyalty miles.   When those purchases occur through JetBlue's website, they clearly constitute "do[ing] business over the Internet."   Furthermore, the conversion of American Express Membership Rewards into True Blue points is itself a commercial transaction that constitutes "do[ing] business over the Internet."   The exercise of jurisdiction over JetBlue in this case is therefore proper under the Zippo test.   See also Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003) ("In cases where the defendant is clearly doing business through its web site in the forum state, and where the claim relates to or arises out of use of the web site, the Zippo court held that personal jurisdiction exists."); Autobytel, Inc. v. Insweb Corp, 2009 WL 901482, at *2-3 (E.D. Tex. Mar. 31, 2009) (personal jurisdiction existed where Texas residents could use defendant's website to contact auto dealers in Texas, submit financial information, and apply for a loan); AdvanceMe, Inc. v. Rapidpay LLC, 450 F. Supp. 2d 669, 673-74 (E.D. Tex. 2006) (accused infringer's website allowed potential customers in Texas to receive state-specific quotes, apply for the allegedly infringing services, and receive those services through the website); CoolSavings.com, Inc. v. IQ.Commerce Corp., 53 F. Supp. 2d 1000, 1001-03 & n.3 (N.D. Ill. 1999) (noting, in a case in which the alleged contact with the forum state occurred through the defendant's operation of its allegedly infringing interactive website, that "a case in which the contact itself is the wrong is a stronger case for jurisdiction than one in which the contact merely relates to the wrong").

Based on the foregoing analysis, the Court is satisfied that Loyalty has met the first two elements of the showing required for specific jurisdiction:   (1) that JetBlue has purposefully directed its loyalty awards program and the conversion feature of that program at residents of this district and (2) that this litigation results from injuries related to those activities.

19

The defendant has the burden of showing that the third element—the "fair play and substantial justice" factor—requires dismissal.  See Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1018 (Fed. Cir. 2009); Breckenridge Pharm., 444 F.3d at 1363.  Moreover, the Supreme Court and the Federal Circuit have made clear that the "fair play and substantial justice factor is to be applied "sparingly" and only in extreme cases.  See Burger King, 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (emphasis added)); Campbell Pet Co., 542 F.3d at 885 (rare situations); Elecs. for Imaging, 340 F.3d at 1351-52; Deprenyl, 297 F.3d at 1355-56; Inamed Corp., 249 F.3d at 1363.  Such cases, in which otherwise constitutional personal jurisdiction is defeated, "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan, 21 F.3d at 1568.  The Court is not persuaded that JetBlue has met its burden to show that this is a "compelling" case in which "fair play and substantial justice" require a finding that personal jurisdiction over it does not exist.

Determining whether JetBlue has demonstrated that the exercise of jurisdiction would be so unreasonable as to violate fair play and substantial justice requires consideration of several factors, including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in

furthering fundamental substantive social policies.  <u>Deprenyl</u>, 297 F.3d at 1355; <u>Inamed</u>, 249 F.3d at 1363.

It is no doubt burdensome for JetBlue to have to defend this action in Texas rather than in New York, the location of its headquarters, or even Delaware, where it is incorporated.  Other factors, however, cut the other way.  As for the interests of the forum state, the Federal Circuit has recognized that a state has a significant interest in discouraging injuries that occur within the state, including patent infringement.  <u>Beverly Hills Fan</u>, 21 F.3d at 1568, <u>citing</u> <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 776 (1984).  Texas's interest in preventing infringement by JetBlue is sufficient, in light of the volume of alleged infringing acts, to make the state's interest a significant factor in the fairness inquiry.  Moreover, the several states have a "shared interest" in preventing infringement, which bears on the "fair play" factor and supports the exercise of personal jurisdiction in one such state.

With respect to its activities in Texas, JetBlue is in the same situation as many other national corporations that sell products or services nationwide.  Those companies are subject to specific jurisdiction in any district in which they sell their infringing products.  The volume of business that JetBlue does with residents of this district, and the number of district residents who are members of JetBlue's loyalty rewards program and have used the conversion feature of that program bear heavily on the "fair play and substantial justice" factor.  This is not a case in which a single isolated sale or use of a product is being employed to obtain personal jurisdiction over a defendant that otherwise has had no business relationship with the forum, and in which it would be perverse to impose on the defendant the burden of defending in a foreign forum based on so little contact there.

Beyond that, the interest of the plaintiff in obtaining relief and the interest of the judicial system in obtaining the most efficient resolution of controversies weigh against dismissal of JetBlue for improper venue based on lack of personal jurisdiction.  Some of the factors bearing on JetBlue's personal jurisdiction argument apply to several of the other defendant airlines in this case.  If the Court were to conclude that it would be unfair to exercise personal jurisdiction over JetBlue, a similar argument could be made with respect to several of the other defendant airlines as well.  The result of ruling in JetBlue's favor on "fair play" grounds would thus be to divide this case into several parts and among several districts, imposing a substantial burden not only on the plaintiff but on other district courts.  The Court concludes that the plaintiff's interests and the interest of judicial economy favor retaining jurisdiction over JetBlue in this forum, and that it is not unfair to exercise jurisdiction over JetBlue in a district where it has engaged in substantial business activity, including activity relating to the alleged infringement.  Accordingly, the Court concludes that JetBlue has not met its burden to show that this is one of those rare cases in which the defendant has met its burden of showing that the action should be dismissed for lack of personal jurisdiction based on  the "fair play and substantial justice" factor.

The motion to dismiss is DENIED.

IT IS SO ORDERED.

SIGNED this 2d day of September, 2014.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

22